IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | **JURY TRIAL DEMANDED** |
| | : | |
| v. | : | Civil Action No. |
| | : | |
| PANKAJ SHETH; | : | |
| RAJAN SHETH; | : | |
| RENUKA SHETH; | : | |
| ROHIT SHETH; | : | |
| KHUSHALI SHETH; | : | |
| LISA SHETH; | : | |
| RISHI SHETH; | : | |
| 501 HOSPITALITY MANAGEMENT, | : | |
| LLC; | : | |
| 2015 HOSPITALITY | : | |
| MANAGEMENT, LLC; | : | |
| CAMELBACK RESORT, LLC; | : | |
| CHATEAU HOSPITALITY | : | |
| MANAGEMENT, LLC; | : | |
| CNH MANAGEMENT, LLC; | : | |
| FORTUNE HOLDING, LLC; | : | |
| JBL HOLDING, LLC; | : | |
| JULIUS MANAGEMENT, LLC; | : | |
| K&D ASSOCIATES, LP; | : | |
| K&D HOSPITALITY, LLC; | : | |
| MOUNT HOLLY HOSPITALITY, | : | |
| LLC; | : | |
| PENN HOSPITALITY | : | |
| MANAGEMENT, LLC; | : | |
| PUJA HOSPITALITY, LLC; | : | |
| PUSTI MANAGEMENT, LLC; | : | |
| RELAX INN; | : | |
| RS LAND INVESTMENT, LLC; | : | |
| SHRI BHAKTINIDHI, INC.; | : | |
| STAR HOSPITALITY, LLC; | : | |
| TANNERSVILLE BEVERAGE, LLC; | : | |
| VRAJ BRIG PA, LLC; | : | |
| WONDER HOSPITALITY, LLC; | : | |
| PIYUSH BHAIDASWALA; | : | |
| JOHN CALZARETTO; | : | |

CALZARETTO & BERNSTEIN, LLC;   :
CREATIVE FUNDING, INC.;   :
VIMAL MADHIWALA;   :
NIRANJAN PATEL;   :
SANJAY PATEL; and   :
BHAVESH SHETH,   :
   :
         Defendants.   :

## COMPLAINT

DAVID METCALF
United States Attorney

GREGORY B. DAVID
Assistant United States Attorney
Chief, Civil Division

BRYAN C. HUGHES
ISAAC J. JEAN-PIERRE
FERNANDO I. RIVERA
Assistant United States Attorneys
615 Chestnut St., Ste. 1250
Philadelphia, PA 19106
(215) 861-8433/8372/8432
Bryan.Hughes@usdoj.gov
Isaac.Jean-Pierre@usdoj.gov
Fernando.Rivera@usdoj.gov

Dated: August 14, 2026

**TABLE OF CONTENTS**

INTRODUCTION.................................................................................. 1

JURISDICTION & VENUE..................................................................11

PARTIES...........................................................................................12

LEGAL AND REGULATORY FRAMEWORK.........................................22

I.      The False Claims Act...............................................................22
II.     The Financial Institutions Reform, Recovery, and Enforcement Act......23
III.    The United States Small Business Administration......................... 24
        A.      The Section 504 Loan Program....................................... 25
        B.      The Section 7(a) Loan Program....................................... 26
        C.      The Paycheck Protection Program (PPP)............................... 30
        D.      The Economic Injury Disaster Loan Program (EIDL)................ 31

BACKGROUND................................................................................. 33

I.      Bankruptcies........................................................................... 33
        A.      Sheth Brothers, Inc........................................................ 34
        B.      Relex Hospitality, LLC.................................................... 35
        C.      Vraj Brig PA, LLC........................................................... 38
        D.      Shan Holding, LP............................................................ 42
II.     The MEPA Litigation................................................................ 44
III.    The SEDA-COG Loan................................................................. 48
IV.     The Noah Bank Loans............................................................... 53
        A.      $5 Million SBA 7(a) Loan to Vraj Brig/Skyview....................... 54
        B.      $1.5 Million SBA 7(a) Loan to JBL Holding/Madhu.................. 60
        C.      $3.95 Million SBA 7(a) Loan to 501 Hospitality/IVS................. 62
        D.      $500,000 Commercial Loan to Vraj Brig/Skyview.................... 66

MATERIAL ALLEGATIONS................................................................ 61

I.      The Bank United SBA 7(a) Loan.................................................. 73
II.     The First Bank SBA 7(a) Loan..................................................... 81
III.    The Poconos Loans................................................................... 110
        A.      The Parke Bank Commercial Loan.....................................112
        B.      The Peapack-Gladstone Bank SBA 7(a) Loan........................ 118
IV.     The BCB Bank Loans.................................................................131
        A.      The 2018 BCB Bank SBA 7(a) Loan and Commercial Loan.........136
        B.      The 2022 BCB Bank Commercial Loan..................................150
V.      The Mount Holly Hospitality Bankruptcy.......................................152

i

VI.     The Northfield Bank Loan............................................................... 160
VII.    The CARES Act Loans................................................................. 162
     A.    CARES Act Loans Associated with the Poconos Property.......... 162
           *The Chateau Hospitality PPP Loan*............................... 163
           *The "Chateau Resort Management, LLC" EIDL Loan*....... 165
           *The Camelback Resort EIDL Loan*................................ 167
     B.    CARES Act Loan Associated with the Lincoln Highway
         Property............................................................................. 169
           *The Fortune Holding EIDL Loan*................................. 170
     C.    CARES Act Loan Associated with the Temple Property............ 171
           *The Shri Bhaktinidhi EIDL Loan*................................. 172
     D.    CARES Act Loans Associated with the Penrose Property.......... 173
           *The Penn Hospitality EIDL Loan*................................. 174
           *The Vraj Brig EIDL Loan*........................................... 175
           *The Penn Hospitality PPP Loan*.................................. 177
           *The Penn Hospitality Second Draw PPP Loan*...................179
     E.    CARES Act Loan Associated with the Hershey Property............ 181
           *The Puja Hospitality EIDL Loan*...................................182
     F.    CARES Act Loans Associated with the Englishtown Property.... 184
           *The Pusti Management EIDL Loan*............................... 184
           *The CNH Management EIDL Loan*.............................. 185
     G.    CARES Act Loans Associated with the Ocean Township
         Property............................................................................. 187
           *The Star Hospitality EIDL Loan*.................................. 188
           *The Star Hospitality PPP Loan*.................................... 189
           *The Star Hospitality Second Draw PPP Loan*.................. 191
     H.    CARES Act Loan Associated with the Lebanon Property............193
           *The Relax Inn EIDL Loan*...........................................193
     I.    CARES Act Loan Associated with the Browns Mills Property......194
           *The "Juliustown Management, LLC" EIDL Loan*.............. 195
     J.    CARES Act Loan Associated with the Clearfield Property.......... 196
           *The JBL Holding EIDL Loan*....................................... 196

CAUSES OF ACTION................................................................................. 198

I.     The Bank United SBA 7(a) Loan................................................. 198
II.    The First Bank SBA 7(a) Loan.................................................... 202
III.   The Parke Bank Commercial Loan................................................ 207
IV.   The Peapack-Gladstone Bank SBA 7(a) Loan................................. 208
V.    The BCB Bank SBA 7(a) Loan.................................................... 212
VI.   The 2018 BCB Bank Commercial Loan.......................................... 217
VII.  The 2022 BCB Bank Commercial Loan.......................................... 218
VIII. The Mount Holly Bankruptcy/TD Bank SBA 7(a) Loan..................... 220
IX.   The Northfield Bank Commercial Loan.......................................... 221

X. The Chateau Hospitality Management PPP Loan............................... 223
XI. The Star Hospitality PPP Loan...................................................... 229
XII. The Penn Hospitality PPP Loan..................................................... 235
XIII. The Penn Hospitality Second Draw PPP Loan.................................. 241
XIV. The Star Hospitality Second Draw PPP Loan................................... 247
XV. The "Chateau Hospitality Management, LLC" EIDL Loan.................. 253
XVI. The Puja Hospitality EIDL Loan................................................... 258
XVII. The Penn Hospitality EIDL Loan.................................................. 264
XVIII. The Pusti Management EIDL Loan................................................ 270
XIX. The Shri Bhaktinidhi EIDL Loan.................................................. 275
XX. The Fortune Holding EIDL Loan.................................................. 281
XXI. The Star Hospitality EIDL Loan.................................................. 287
XXII. The Vraj Brig EIDL Loan............................................................ 292
XXIII. The CNH Management EIDL Loan................................................ 298
XXIV. The JBL Holding EIDL Loan........................................................ 303
XXV. The "Julius Management, LLC" EIDL Loan.................................... 309
XXVI. The Camelback Resort EIDL Loan................................................ 315
XXVII. The Relax Inn EIDL Loan............................................................ 320

PRAYER FOR RELIEF...................................................................326

## **INTRODUCTION**

1.      Through dozens of business entities ("Sheth entities") nominally owned by strawpersons acting under their control, Defendants Pankaj Sheth ("Pankaj")[1] and/or his son Rajan Sheth ("Rajan") were the beneficial owners of numerous hotels throughout the Mid-Atlantic United States, including at least two hotels in this district. *See* 31 U.S.C. § 5336(a)(3)(A) (definition of "beneficial owner" under the Corporate Transparency Act).

2.      Pankaj and/or Rajan delegated day-to-day operations of these hotels to various family members ("Sheths" or "Sheth family") and/or family associates ("Sheth associates"), but at all times retained executive control of the Sheth entities—including control of financial accounts, tax returns, contracting, membership interests, and decisions to buy, sell, or refinance properties.

3.      The Sheth entities observed no corporate formalities. They routinely commingled finances. Pankaj and/or Rajan haphazardly manipulated membership interests according to their needs at any given time, leaving a confusing, and often contradictory, trail of corporate organizational and tax records in their wake.

4.      The Sheths' hotels were largely unsuccessful. They were chronically understaffed, underfunded, and many were in gross disrepair. Public nuisance and accessibility complaints were common, as were municipal code violations, tax and

---

[1] Because numerous defendants share the surname "Sheth," this Complaint often distinguishes the Sheth defendants by reference to their first names only.

utility liens, and scathing customer reviews, such as those summarized in this 2019

article regarding the Sheths' hotel in South Philadelphia:



AUGUST 08, 2019

## Is this prominent South Philly fixture the worst hotel in the city?

Reviews of the tall, round Penrose Hotel draw comparisons to post-apocalyptic movies and Hell itself

BY **BRIAN HICKEY**
*PhillyVoice Staff*

The Penrose Hotel, located at 2033 Penrose Avenue, has been subjected to countless horrible reviews from customers who cite uncleanly conditions, an inoperable elevator and, among other things, suffering bug bites while staying there.

*BRIAN HICKEY/PHILLYVOICE*

*See* *https://www.phillyvoice.com/south-philadelphia-fire-code-violations-penrose-hotel-bad-reviews/* (last accessed April 20, 2026).

5.      But the Sheths' ownership of these properties was highly lucrative in

other respects. That is because, over the course of more than three decades, Pankaj

and/or Rajan repeatedly pledged the properties as collateral on an extended series

of loans to a revolving door of business entities with constantly shifting

memberships. Upon information and belief, the aggregate total of those loans was

over $100 million, including many loans guaranteed by the United States Small Business Administration ("SBA") and/or insured by the Federal Deposit Insurance Corporation ("FDIC").

6.     At times relevant to this Complaint, the Sheths received loans related to the following properties owned and/or operated by the Sheth family:

- 2015-2033 Penrose Avenue, Philadelphia, PA 19145 ("Penrose" hotel or property);[2]

- 2250 Lincoln Highway East, Lancaster, PA 17602 ("Lincoln Highway" or "Lincoln Hwy." hotel or property);

- 475 Camelback Road, Tannersville, PA 18372 ("Poconos" hotel or property);

- 14451 Clearfield Shawville Highway, Clearfield, PA 16830 ("Clearfield" hotel or property);

- 914 Cocoa Avenue, Hershey, PA 17033 ("Hershey" hotel or property);

- 1524 East Cumberland Street, Lebanon, PA 17042 ("Lebanon" hotel or property);

- 141 U.S. Highway 9, Englishtown, NJ 07726 ("Englishtown" hotel or property);

- 13 Juliustown Road, Browns Mills, NJ 08015 ("Browns Mills" hotel or property); and

- 735 State Route 35, Ocean Township, NJ 07712 ("Ocean Township" or "Ocean Twp." hotel or property).[3]

---

[2] The address of the Penrose hotel was varyingly reported as 2015 Penrose Avenue, 2033 Penrose Avenue, or 2015-2033 Penrose Avenue. Upon information and belief, these all refer to the same property.

[3] The address of the Ocean Township hotel was varyingly reported as being located in Ocean Township, Ocean, or Asbury Park, New Jersey. Upon information and belief, these locations all refer to the same property.

3

7.    Pankaj Sheth was also a founder and longtime chairman of the board of trustees of Shri Dwarkadhish (a.k.a. Shree Dwarkadhish), a Hindu temple located at 717 Washington Road, Parlin, NJ 08859 ("Temple" property), in which capacity he induced additional loans and commingled loan proceeds with the finances of other Sheth entities.

8.    The loans discussed in this Complaint include, but are not limited to, those identified in the chart below, totaling $52,776,775:[4]

| # | Date | Loan Type/No. | Loan Amt. | Lender | Borrower(s)/ (Property) | Purported Owner(s) | Disposition |
|---|------|---------------|-----------|--------|-------------------------|--------------------|-------------|
| 1 | 06/04/2003 | SBA 7(a) 51273940-07 | $1.2 million | TD Bank | Mount Holly Hospitality, LLC (Browns Mills) | Trupti Shah | Defaulted; compromise payment resulting in loss |
| *2 | 12/17/2003 | SBA 504 65404045-07 | $1.3 million | SEDA-COG CDC | Shan Holding, LP (Lincoln Hwy.) | Pankaj & Jayprakash Sheth | Defaulted; compromise payment resulting in loss |
| *3 | 09/16/2013 | SBA 7(a) GP 63939150-00 | $5 million | Noah Bank | Vraj Brig PA, LLC & Skyview Mgmt., LLC (Penrose) | Ravi Sheth | Defaulted; paid off with private loan |
| *4 | 09/27/2013 | SBA 7(a) PLP 64836850-06 | $1.5 million | Noah Bank | JBL Holding, LLC & Madhu, LLC (Clearfield) | Lisa Sheth | Defaulted; paid off with SBA loan |
| *5 | 05/09/2014 | SBA 7(a) PLP 68130150-10 | $3.95 million | Noah Bank | 501 Hospitality Mgmt., LLC & IVS, LLC (Lincoln Hwy.) | Rajan Sheth | Paid off with SBA loan |

---

[4] Asterisks in the first column designate loans discussed for background purposes only. Liability in this Complaint is based on allegations regarding the remaining (non-asterisked) loans.

4

| *6 | 11/25/2014 | Commercial | $500,000 | Noah Bank | Vraj Brig PA, LLC & Skyview Mgmt., LLC (Penrose) | Ravi Sheth | Defaulted; paid off with private loan |
|---|---|---|---|---|---|---|---|
| 7 | 08/15/2016 | SBA 7(a) PLP 83895650-10 | $2,104,100 | Bank United | JBL Holding, LLC (Clearfield) | Rishi Sheth | Paid off with private loan |
| 8 | 06/02/2017 | Commercial | $3.675 million | Parke Bank | Camelback Resort, LLC & Tannersville Beverage, LLC (Poconos) | Pankaj Sheth & Vimal Madhiwala | Defaulted; paid off with SBA loan |
| 9 | 09/14/2017 | SBA 7(a) PLP 96198850-02 | $5 million | First Bank | Fortune Holding, LLC & Wonder Hospitality, LLC (Lincoln Hwy.) | Rohit Sheth | Defaulted; paid off with private loan |
| 10 | 06/28/2018 | SBA 7(a) PLP 26861370-01 | $4 million | Peapack-Gladstone Bank | Camelback Resort, LLC & Chateau Hospitality Mgmt., LLC (Poconos) | Vimal Madhiwala & Khushali Sheth | Currently in repayment |
| 11 | 11/01/2018 | SBA 7(a) PLP 29916470-08 | $5 million | BCB Bank | Vraj Brig PA, LLC & Penn Hospitality Mgmt., LLC (Penrose) | Renuka Sheth | Defaulted; paid off with commercial loan |
| 12 | 11/01/2018 | Commercial | $3.1 million | BCB Bank | Vraj Brig PA, LLC & Penn Hospitality Mgmt., LLC (Penrose) | Renuka Sheth | Defaulted; paid off with commercial loan |

| 13 | 05/28/2020 | SBA EIDL App. No. 3300362601 Loan No. 9930767410 | Principal: $150,000 Advance: $10,000 Total: $160,000 | SBA | Chateau Resort Mgmt., LLC[5] (Poconos) | Vimal Madhiwala | Defaulted; charged off as a loss |
| 14 | 05/28/2020 | SBA EIDL App. No. 3300304094 Loan No. 9773587410 | Principal: $150,000 Advance: $10,000 Total: $160,000 | SBA | Fortune Holding, LLC (Lincoln Hwy.) | Rohit Sheth | Defaulted |
| 15 | 05/22/2020 | SBA EIDL App. No. 3300310104 Loan No. 9652337409 | Principal: $500,000 Advance: $10,000 Total: $510,000 | SBA | Shri Bhaktinidhi, Inc. (Temple) | Pankaj Sheth | Defaulted; charged off as a loss |
| 16 | 05/22/2020 | SBA EIDL App. No. 3300368684 Loan No. 7842357406 | Principal: $150,000 Advance: $10,000 Total: $160,000 | SBA | Penn Hospitality Mgmt., LLC (Penrose) | Renuka Sheth | Defaulted |
| 17 | 05/28/2020 | SBA EIDL App. No. 3301279861 Loan No. 8017377406 | Principal: $83,500 Advance: $4,000 Total: $87,500 | SBA | Puja Hospitality, LLC (Hershey) | Niranjan Patel | Defaulted |
| 18 | 05/19/2020 | SBA EIDL App. No. 3301295503 Loan No. 8020087403 | Principal: $60,500 Advance: $2,000 Total: $62,500 | SBA | Pusti Mgmt., LLC (Englishtown) | Renuka Sheth | Defaulted |

---

[5] There is no Pennsylvania limited liability company named Chateau Resort Management, LLC. The Sheth entity that owned the Poconos property was Camelback Resort, LLC, and the Sheth entity that managed the Poconos hotel was Chateau Hospitality Management, LLC, doing business as "Chateau Resort."

6

| 19 | 07/06/2020 | SBA EIDL App. No. 3301286565 Loan No. 7295288002 | Principal: $150,000 Advance: $10,000<br><br>Total: $160,000 | SBA | Vraj Brig PA, LLC (Penrose) | Renuka Sheth | Defaulted |
|---|---|---|---|---|---|---|---|
| 20 | 05/06/2020 | SBA PPP No. 3671487210 | $91,400 | Peapack-Gladstone Bank | Chateau Hospitality Mgmt., LLC (Poconos) | Vimal Madhiwala | Forgiven based on fraudulent application |
| 21 | 05/11/2020 | SBA PPP No. 3056887308 | $17,200 | Amboy Bank | Star Hospitality, LLC (Ocean Twp.) | Renuka Sheth | Forgiven based on fraudulent application |
| 22 | 06/02/2020 | SBA PPP No. 5910597401 | $64,667 | Kabbage, Inc. | Penn Hospitality Mgmt., LLC (Penrose) | Renuka Sheth | Forgiven based on fraudulent application |
| 23 | 06/01/2020 | SBA EIDL App. No. 3300344152 Loan No. 2141657406 | Principal: $150,000 Advance: $3,500<br><br>Total: $153,500 | SBA | Star Hospitality, LLC (Ocean Twp.) | Renuka Sheth | Defaulted |
| 24 | 07/08/2020 | SBA EIDL App. No. 3000203943 Loan No. 8224658003 | Principal: $150,000 Advance: $5,000<br><br>Total: $155,000 | SBA | Camelback Resort, LLC (Poconos) | Vimal Madhiwala | Defaulted; charged off as a loss |
| 25 | 08/07/2020 | SBA EIDL App. No. 3000204476 Loan No. 4450708201 | Principal: $112,500 Advance: $5,000<br><br>Total: $117,500 | SBA | Relax Inn (Lebanon) | Renuka Sheth | Currently in Repayment |

| 26 | 11/27/2020 | SBA EIDL App. No. 3300543611 Loan No. 9208108203 | Principal: $150,000 Advance: $10,000<br><br>Total: $160,000 | SBA | Juliustown Mgmt., LLC[6] (Browns Mills) | Renuka Sheth | Currently in Repayment |
| 27 | 05/28/2020 | SBA EIDL App. No. 3301297960 Loan No. 7547688001 | Principal: $150,000 Advance: $10,000<br><br>Total: $160,000 | SBA | CNH Mgmt., LLC (Englishtown) | Renuka Sheth | Defaulted |
| 28 | 07/13/2020 | SBA EIDL App. No. 3306572383 Loan No. 2738688110 | $144,000 | SBA | JBL Holding, LLC (Clearfield) | Rishi Sheth | Defaulted |
| 29 | 03/30/2021 | SBA PPP (2nd draw) No. 1400578709 | $60,493 | Customers Bank | Penn Hospitality Mgmt., LLC (Penrose) | Renuka Sheth | Defaulted |
| 30 | 04/29/2021 | SBA PPP (2nd draw) No. 6652198810 | $23,915 | Amur Equipment Co. | Star Hospitality, LLC (Ocean Twp.) | Renuka Sheth | Defaulted |
| 31 | 04/27/2022 | Commercial | $12 million | BCB Bank | Vraj Brig PA, LLC & 2015 Hospitality Mgmt., LLC (Penrose) | Pankaj & Renuka Sheth | Currently in repayment |
| 32 | 03/17/2023 | Commercial | $2 million | Northfield Bank | Star Hospitality, LLC (Browns Mills) | Renuka Sheth | Currently in repayment |

---

[6] There is no New Jersey limited liability company named Juliustown Management, LLC. The Sheth entity that owned and/or operated the Browns Mills hotel was Julius Management, LLC, and the Browns Mills hotel was located at 13 Juliustown Road.

9.     The Sheth entities were ineligible for most, if not all, of these loans because their beneficial owners had an extensive history of: (a) loan defaults, some of which resulted in losses to the federal government; (b) bankruptcies by affiliated entities; (c) adverse judgments, including judicial findings of fraud; and (d) overwhelming debt.

10.     The Sheth entities nevertheless secured the loans through a fraudulent scheme devised and orchestrated by Pankaj and/or Rajan Sheth, with the assistance of Sheth family members and associates. Generally, the cyclical scheme operated as follows:

a.     Pankaj and/or Rajan manipulated the membership of a Sheth entity—typically, Pennsylvania and New Jersey limited liability companies—by purporting to transfer a hotel's controlling interest, for little or no consideration, to one or more straw owners (*i.e.*, individuals who owned property on behalf of someone else with no intention of exercising ownership rights themselves).

b.     Pankaj and/or Rajan then submitted (or caused to be submitted) a loan application to LENDER A in the name of a Sheth entity that the straw owner(s) purportedly controlled. Among other things, the applications: (i) falsified the straw owners' management experience and personal financial statements; (ii) fraudulently denied any affiliation between the borrowers and other Sheth entities; (iii) fabricated records to support ownership and loan-purpose misrepresentations; and (iv) often forged straw owners' signatures on loan documents.

9

c.      Upon fraudulently inducing a loan from LENDER A—secured by a worthless personal guaranty from the straw owner—Pankaj and/or Rajan promptly diverted the loan proceeds to enrich the Sheth family and/or to pay-off a previously defaulted debt that another Sheth entity owed to LENDER B. This was typically done at a time when LENDER B threatened foreclosure and/or a sheriff's sale on the collateral securing the defaulted debt.

d.      Having diverted loan proceeds from LENDER A to pay-off debt to LENDER B, the borrower on the LENDER A loan typically defaulted and then engaged in delay tactics (including through frivolous litigation positions) while Pankaj and/or Rajan secured a new loan from LENDER C and diverted the new loan proceeds to pay-off the LENDER A debt before foreclosure.

11.     The Sheths repeated this cycle many times, albeit with occasional variation. One such variation occurred when Pankaj and/or Rajan were unable to secure a new loan before earlier debt was foreclosed. On those occasions, they typically caused the defaulted Sheth entity to file for Chapter 11 bankruptcy on the eve of a sheriff's sale, thereby unlawfully availing themselves of the bankruptcy stay and retaining control of the property while they devised a scheme to pay-off the lender on the defaulted debt. That payoff was typically a compromise amount for less than was owed and was made before any conversion of the bankruptcy case to Chapter 7 and the appointment of a trustee.

12.     In 2020, Congress enacted the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), which authorized the SBA, on an expedited basis, to

10

provide certain loans directly, and to provide guarantees on certain other loans, to qualifying individuals and small businesses. The Sheths took full advantage of relaxed underwriting standards during the national COVID-19 emergency, fraudulently inducing at least eighteen (18) CARES Act loans, totaling nearly $2.5 million, plus interest and/or processing fees. Upon receipt of loan proceeds earmarked to cover eligible pandemic-related costs of various Sheth entities—including those associated with hotels that were closed and/or had no payroll—the Sheths promptly diverted the funds to enrich themselves and/or to pay the debts of other Sheth entities. The Sheths did not repay the principal on the CARES Act loans, many of which went into default and/or were charged off as a loss to the federal government.

13.    At base, this Complaint alleges a multi-decade Ponzi scheme in which a primary, unwitting investor was the United States of America ("United States" or "government"). To stop this pernicious cycle and to recover all damages, penalties, and equitable relief to which it is entitled, the United States brings this action under the federal False Claims Act ("FCA"), 31 U.S.C. §§ 3729-33; the Financial Institutions Reform Recovery and Enforcement Act ("FIRREA"), 12 U.S.C. § 1833a; and various federal common law causes of action.

## JURISDICTION & VENUE

14.    The United States brings this civil action under 31 U.S.C. § 3730(a) and 12 U.S.C. § 1833a.

15. Jurisdiction is proper in this Court under 28 U.S.C. §§ 1331, 1345, and 1367.

16. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) and 31 U.S.C. § 3732(a).

## PARTIES

17. The plaintiff is the United States of America.

18. There are three general categories of defendants: (a) the Sheth family, (b) the Sheth entities, and (c) the Sheth associates.

### *The Sheth Family Defendants*

19. Except for Rishi Sheth, who upon information and belief currently resides in Pennsylvania, the Sheths are all New Jersey residents—although several have Pennsylvania driver's licenses falsely reporting the Lincoln Highway property as their home address. Through their control of the Sheth entities, the Sheth family owns and/or operates the Sheth hotels. The Sheth family includes the following seven defendants:

a. **Pankaj Sheth**, who, alone and/or together with his son Rajan, exercised control over, and was the beneficial owner of, all Sheth entities;

b. **Renuka Sheth** ("Renuka"), Pankaj's spouse, who knowingly served as a straw owner of one or more Sheth entities for the purpose of fraudulently inducing loans;

c. **Rohit Sheth** (a.k.a. Rohitkumar or Roy; "Rohit"), the brother of Pankaj and Jayprakash Sheth (collectively, "Sheth brothers"), who knowingly

12

served as a straw owner of one or more Sheth entities for the purpose of fraudulently inducing loans;

d.      **Rajan Sheth** (a.k.a. Raj), Pankaj's son, who, alone and/or with his father, exercised control over, and was a beneficial owner of, all Sheth entities. Rajan also managed various properties and knowingly served as a straw owner of one or more Sheth entities for the purpose of fraudulently inducing loans;

e.      **Khushali Sheth** (a.k.a. Khushi; "Khushali"), Rajan's spouse, who knowingly served as a straw owner of one or more Sheth entities for the purpose of fraudulently inducing loans;

f.      **Lisa Sheth** (a.k.a. Lisa Patel or Kulkarni; "Lisa"), Pankaj's daughter, who knowingly served as a straw owner of one or more Sheth entities for the purpose of fraudulently inducing loans; and

g.      **Rishi Sheth** (a.k.a. Victor; "Rishi"), the son of non-defendant Sheth brother Jayprakash Sheth, who managed various properties and knowingly served as a straw owner of one or more Sheth entities for the purpose of fraudulently inducing loans.

20.      Other Sheth family members not named as defendants but who are nevertheless relevant to aspects of the fraudulent scheme, include:

a.      Jayprakash Sheth (a.k.a. Jay; "Jayprakash"), the brother of Pankaj and Rohit Sheth;

b.      Ravi Sheth ("Ravi"), Rohit's recently deceased son;

c.      Bindu Sheth, Rohit's spouse;

13

d.    Chandrakaben Sheth (a.k.a. Chanda), Jayprakash's spouse; and

e.    Puja Sheth, Rohit's daughter.

21.    As depicted below, each of the Sheth brothers is married and has one married son and two married daughters:



22.    Upon information and belief, the Sheths are adherents of a traditional Indian family structure known as a Hindu Joint Family (a.k.a. Hindu Undivided Family, HUF, or "joint family"). This typically involves multiple generations of extended family members residing together and sharing common business and property interests. At certain times relevant to this Complaint, the Sheth brothers, their spouses, their children, and extended family members all resided together in a single residence in Morganville, New Jersey.

23.    Upon information and belief, a joint family is traditionally led by a senior family member (commonly the oldest male) known as the "Karta," who is responsible for managing economic matters on behalf of the entire family. At all times relevant to this Complaint, Pankaj Sheth was the Karta of the Sheth family. As such, he controlled the family's mini empire of hotels. Rajan Sheth, who is the oldest male of the next generation of Sheths: (a) will assume the Karta role upon the retirement or death of his father, and (b) has in recent years worked closely with Pankaj in preparing for that transition.

### *The Sheth Entity Defendants*

24.    The Sheth entities are the defendant business entities through which the Sheths owned, operated, and/or financed their hotels. These entities were the borrowers, sellers, and/or putative investors associated with the fraudulently induced loans alleged in this Complaint. The Sheth entities include the following 21 defendants:

a.    **501 Hospitality Management, LLC** ("501 Hospitality"), a Pennsylvania limited liability company with a principal place of business in Lancaster, Pennsylvania. At times relevant to this Complaint, 501 Hospitality owned and/or operated the Lincoln Highway hotel, and was a borrower or seller on one or more fraudulently induced loans;

b.    **2015 Hospitality Management, LLC** ("2015 Hospitality"), a Pennsylvania limited liability company with a principal place of business in Philadelphia, Pennsylvania. At times relevant to this Complaint, 2015 Hospitality

owned and/or operated the Penrose hotel, and was a borrower on one or more fraudulently induced loans;

   c. **Camelback Resort, LLC** ("Camelback Resort"), a Pennsylvania limited liability company with a principal place of business in Tannersville, Pennsylvania. At times relevant to this Complaint, Camelback Resort owned and/or operated the Poconos hotel, and was a borrower on one or more fraudulently induced loans;

   d. **Chateau Hospitality Management, LLC** (a.k.a. Chateau Resort Management, LLC; "Chateau Hospitality"), a Pennsylvania limited liability company with a principal place of business in Tannersville, Pennsylvania. At times relevant to this Complaint, Chateau Hospitality owned and/or operated the Poconos hotel, and was a borrower on one or more fraudulently induced loans;

   e. **CNH Management, LLC** ("CNH Management"), a New Jersey limited liability company with a principal place of business in Englishtown, New Jersey. At times relevant to this Complaint, CNH Management owned and/or operated hotels at multiple locations, including the Englishtown hotel, and was a borrower on one or more fraudulently induced loans;

   f. **Fortune Holding, LLC** ("Fortune Holding"), a Pennsylvania limited liability company with a principal place of business in Lancaster, Pennsylvania. At times relevant to this Complaint, Fortune Holding owned and/or operated the Lincoln Highway hotel, and was a borrower on one or more fraudulently induced loans;

16

g.    **JBL Holding, LLC** ("JBL Holding"), a Pennsylvania limited liability company with a principal place of business in Clearfield, Pennsylvania. At times relevant to this Complaint, JBL Holding owned and/or operated the Clearfield hotel, and was a borrower on one or more fraudulently induced loans.

h.    **Julius Management, LLC** (a.k.a. Juliustown Management, LLC; "Julius Management"), a New Jersey limited liability company with a principal place of business in Browns Mills, New Jersey. At times relevant to this Complaint, Julius Management owned and/or operated the Browns Mills hotel, and was a borrower on one or more fraudulently induced loans;

i.    **K&D Associates, LP** ("K&D Associates"), a New Jersey limited partnership with a principal place of business in Ocean Township, New Jersey. At times relevant to this Complaint, K&D Associates owned and/or operated the Ocean Township hotel, and was a borrower on one or more fraudulently induced loans;

j.    **K&D Hospitality, LLC** ("K&D Hospitality"), a New Jersey limited liability company with a principal place of business in Ocean Township, New Jersey. At times relevant to this Complaint, K&D Hospitality owned and/or operated the Ocean Township hotel, and was a borrower on one or more fraudulently induced loans;

k.    **Mount Holly Hospitality, LLC** (a.k.a. Mt. Holly Hospitality, LLC; "Mount Holly"), a New Jersey limited liability company with a principal place of business in Browns Mills, New Jersey. At times relevant to this Complaint,

17

Mount Holly owned and/or operated the Browns Mills hotel, and was a borrower on one or more fraudulently induced loans;

l.    **Penn Hospitality Management, LLC** ("Penn Hospitality"), a Pennsylvania limited liability company with a principal place of business in Philadelphia, Pennsylvania. At times relevant to this Complaint, Penn Hospitality owned and/or operated the Penrose hotel, and was a borrower on one or more fraudulently induced loans;

m.    **Puja Hospitality, LLC** ("Puja Hospitality"), a Pennsylvania limited liability company with a principal place of business in Hershey, Pennsylvania. At times relevant to this Complaint, Puja Hospitality owned and/or operated the Hershey hotel, and was a borrower on one or more fraudulently induced loans;

n.    **Pusti Management, LLC** ("Pusti Management"), a New Jersey limited liability company with a principal place of business in Englishtown, New Jersey. At times relevant to this Complaint, Pusti Management owned and/or operated the Englishtown hotel, and was a borrower on one or more fraudulently induced loans;

o.    **Relax Inn** ("Relax Inn"), a Pennsylvania sole proprietorship with a principal place of business in Lebanon, Pennsylvania. At times relevant to this Complaint, Relax Inn owned and/or operated the Hershey hotel, and was a borrower on one or more fraudulently induced loans;

18

p. **RS Land Investment, LLC** (a.k.a. RS Land Investments, LLC; "RS Land Investment"), a New Jersey limited liability company with a principal place of business in Morganville, New Jersey. At times relevant to this Complaint, RS Land Investment was a real estate investment business that served as a straw investor on one or more fraudulently induced loans;

q. **Shri Bhaktinidhi, Inc.** (a.k.a. Shree Bhaktinidhi, Inc.; "Shri Bhaktinidhi"), a Connecticut corporation with a principal place of business in Parlin, New Jersey. Shri Bhaktinidhi owns and/or operates the Temple, and was a borrower on one or more fraudulently induced loans;

r. **Star Hospitality, LLC** ("Star Hospitality"), a New Jersey limited liability company with a principal place of business in Browns Mills, New Jersey. At times relevant to this Complaint, Star Hospitality owned and/or operated the Browns Mills hotel, and was a borrower and/or straw purchaser on one or more fraudulently induced loans;

s. **Tannersville Beverage, LLC** ("Tannersville Beverage"), a Pennsylvania limited liability company with a principal place of business in Tannersville, Pennsylvania. At times relevant to this Complaint, Tannersville Beverage held a liquor license, owned and/or operated a restaurant at the Poconos hotel, and was a borrower on one or more fraudulently induced loans;

t. **Vraj Brig PA, LLC** ("Vraj Brig"), a Pennsylvania limited liability company with a principal place of business in Philadelphia, Pennsylvania.

19

At times relevant to this Complaint, Vraj Brig owned and/or operated the Penrose hotel, and was the borrower on one or more fraudulently induced loans; and

u.    **Wonder Hospitality, LLC** ("Wonder Hospitality"), a Pennsylvania limited liability company with a principal place of business in Lancaster, Pennsylvania. At times relevant to this Complaint, Wonder Hospitality owned and/or operated the Lincoln Highway hotel, and was the borrower on one or more fraudulently induced loans.

### *The Sheth Associate Defendants*

25.    The Sheth associate defendants are individuals and business entities that knowingly assisted the Sheths in furtherance of the fraudulent scheme alleged in this Complaint. The Sheth associates include the following eight defendants:

a.    **Piyush Bhaidaswala** (a.k.a. Peter Bhai), a Delaware resident who knowingly served as a straw owner of one or more Sheth entities for the purpose of fraudulently inducing one or more loans;

b.    **John Calzaretto**, a New Jersey resident who was the Sheth family's longtime attorney and a principal of the law firm Calzaretto & Bernstein, LLC. At times relevant to this Complaint, Calzaretto assisted the Sheths in forming the Sheth entities; advised the Sheths on fraudulent loan applications; created, reviewed, approved, and/or negotiated fraudulent loan documents; knowingly made false representations to lenders in support of loan applications; and fraudulently certified the Sheths' compliance with loan requirements;

20

c.    **Calzaretto & Bernstein, LLC** ("Calzaretto & Bernstein"), a New Jersey limited liability company with a principal place of business in Maple Shade, New Jersey, was the law firm through which John Calzaretto practiced law and received proceeds of one or more fraudulently induced loans. All allegations in this Complaint related to attorney Calzaretto apply with equal force to Calzaretto & Bernstein insofar as the attorney was acting in his capacity as a principal of the law firm at the time of the alleged conduct;

d.    **Creative Funding, Inc.** ("Creative Funding"), a New Jersey corporation with a principal place of business in Monroe Township, New Jersey, was a mortgage brokerage firm through which Sanjay Patel and Bhavesh Sheth earned commissions on fraudulently induced loans they brokered for the Sheths and the Sheth entities. All allegations in the Complaint related to Sanjay Patel and/or Bhavesh Sheth apply with equal force to Creative Funding insofar as the mortgage brokers were acting in their capacities as principals, employees, or consultants of the brokerage firm at the time of the alleged conduct;

e.    **Vimal Madhiwala** (a.k.a. Vimalkumar Madhiwala), a North Carolina resident who knowingly served as a straw owner of one or more Sheth entities for the purpose of fraudulently inducing loans;

f.    **Niranjan Patel**, a New Jersey resident who knowingly served as a straw owner of one or more Sheth entities for the purpose of fraudulently inducing loans;

21

g.      **Sanjay Patel**, a New Jersey resident and principal of Creative Funding, who earned fees on fraudulently induced loans that he and/or Bhavesh Sheth brokered for the Sheth entities while concurrently serving in an executive capacity for various SBA lenders, including those that funded SBA-guaranteed loans to Sheth entities. All allegations in the Complaint related to Bhavesh Sheth in his capacity as a principal, employee, or consultant with Creative Funding apply with equal force to Sanjay Patel insofar as he served as Creative Funding's principal at the time of the alleged conduct; and

h.      **Bhavesh Sheth** ("Bhavesh"), a New Jersey resident and an officer, employee or consultant of Creative Funding, who earned fees on fraudulently induced loans that he brokered for the Sheth entities while concurrently serving in an executive capacity for various SBA lenders, including those that funded SBA-guaranteed loans to the Sheths.[7]

## LEGAL AND REGULATORY FRAMEWORK

## I.    The False Claims Act

26.    The False Claims Act, 31 U.S.C. § 3729(a)(1), provides that any person who (a) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval, (b) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim, or (c) conspires to commit an FCA violation, shall be liable to the United States for a civil penalty of

---

[7] Upon information and belief, Bhavesh Sheth is not a Sheth family member, though he shares the family surname.

22

not less than $5,500 nor more than $11,000 (as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990), plus three times the amount of damages that the United States sustains because of the person's acts.

27.    Under 31 U.S.C. § 3729(b)(1), the FCA terms "knowing" and "knowingly" mean, with respect to information, that a person (a) actually knows the information, (b) acts in deliberate ignorance of its truth or falsity, or (c) acts in reckless disregard of its truth or falsity. To establish FCA liability, no proof of specific intent to defraud is required.

## II.    The Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA")

28.    Congress enacted FIRREA in 1989 to strengthen civil sanctions and criminal penalties for defrauding or otherwise damaging depository institutions and their depositors, as well as certain government agencies and other covered entities. Pub. L. 101-73, 103 Stat. 183 (1989).

29.    Section 951 of FIRREA, as amended, which is codified at 12 U.S.C. § 1833a, provides that the United States Attorney General may recover civil penalties of up to $1 million per violation against persons who commit specified FIRREA violations as established by a preponderance of the evidence. *See* 28 C.F.R. § 85.5(a) (adjusting to $2,449,575 the maximum civil penalty for violations occurring after November 2, 2015, that are assessed after February 12, 2024).

30.    Alternatively, the Attorney General may recover the amount of any (a) gain to the person committing the violation, or (b) loss to a person (other than

23

the violator) that stems from the FIRREA-violating conduct, up to the amount of the gain or the loss. *Id.*

31.    The predicate violations identified in Section 951 that form the basis of liability under FIRREA include, but are not limited to: (a) knowingly making to the government false, fictitious, or fraudulent claims affecting a federally insured financial institution (18 U.S.C. § 287); (b) knowingly and willfully making or using a writing or document that contains materially false, fictitious, or fraudulent statements (18 U.S.C. §  1001); (c) knowingly making or inviting reliance on a false, forged, or counterfeit statement, document, or thing for the purpose of influencing an FDIC-insured financial institution (18 U.S.C. § 1007); and (d) knowingly making a false statement for the purpose of influencing a decision by the SBA Administrator or to obtain a loan, money, or anything of value under the SBA's 7(a) program, including the Paycheck Protection Program (15 U.S.C. § 645(a)).

## III.    The United States Small Business Administration

32.    The Small Business Administration is an independent agency within the executive branch created by Congress in 1953 for the purpose of encouraging small business development by, among other things, providing guarantees on certain loans (or portions thereof) made by private lenders to eligible small businesses. These guarantees aid eligible small businesses by helping them to obtain long-term financing under terms and conditions that would otherwise not be available through normal commercial channels.

33.    The SBA issues loans and guarantees through various loan programs, including, as relevant to this Complaint, the Section 504 loan program, the Section 7(a) loan program, the Paycheck Protection Program, and the Economic Injury Disaster Loan program.

### A.    The Section 504 Loan Program

34.    The Section 504 loan program provides long-term, fixed-rate financing for small businesses to acquire or renovate fixed assets. Section 504 loans are made through Certified Development Companies ("CDCs"), which are community-based nonprofit corporations certified by the SBA to generate, conduct closing on, and to service Section 504 loans.

35.    Financing on Section 504 loan projects consists of a borrower contribution of at least 10% of the project cost; third-party lender ("TPL") permanent financing of at least 50% of the cost; and interim financing of up to 40% of the project, which a CDC repays in the form of a Section 504 loan in the same amount. The SBA, in turn, provides the CDC a 100% guaranty of the loan amount.

36.    To obtain a Section 504 loan, the borrower submits an application package to a CDC, which in turn applies to the SBA for loan authorization subject to certain conditions. Upon SBA's authorizing the loan and a TPL providing interim financing to the borrower, the CDC closes the Section 504 loan and obtains a second mortgage, which it assigns to the SBA. The loan is then sold to the public through debenture pools, and the sale proceeds are used to fund the 504 loan and repay the interim financing.

37.     If the borrower defaults on a Section 504 loan, the CDC may request that the SBA repurchase the debenture and reclassify the loan to liquidation status. The SBA oversees the liquidation process, which involves the CDC attempting to recover as much of the loan proceeds as possible and submitting a report to the SBA detailing its efforts once all reasonable recovery actions have been taken. Thereafter, the SBA charges-off the remaining loan balance and may refer the debt to the United States Department of Treasury ("U.S. Treasury") for further collection. Subject to certain conditions, the borrower may request an offer in compromise that—if approved by the SBA—would settle the borrower's liability on the SBA loan for payment of less than the full amount due.

38.     When the SBA accepts an offer in compromise, the borrower remains responsible for repayment of the entire loan amount, and the difference between the outstanding balance and the accepted compromise amount constitutes a loss to the federal government.

39.     When a borrower or guarantor on any defaulted SBA loan resulting in a loss to the federal government fails to repay that loss, the borrower or guarantor—and any entity owned (in whole or in part), operated, or controlled by that borrower or guarantor—is ineligible for any future SBA loan, absent a waiver from the SBA.

### B.     The Section 7(a) Loan Program

40.     The Section 7(a) loan program is the SBA's primary loan program and is used to provide financial assistance to eligible, credit-worthy small businesses on

26

reasonable terms not otherwise available to the borrower (known as the "credit elsewhere test"). The program operates through private-sector lenders, called "participants," which provide loans that are, in turn, guaranteed in large portion by the SBA.

41.    Among the different categories of SBA lender participants are those that participate in the SBA's Preferred Lenders Program ("PLP"). PLP lenders have delegated authority to process, close, service, and liquidate SBA-guaranteed loans in accordance with SBA standards. To attain PLP status, lenders must apply to the SBA for certification based on their (a) demonstrating a history of efficient processing and servicing of SBA loans; (b) meeting SBA criteria for performance, processing volume, knowledge of policies, and risk mitigation; and (c) demonstrating good character and reputation in accordance with ethical requirements set forth by regulation.

42.    To obtain a Section 7(a) loan from a PLP lender, a prospective borrower submits to the lender a comprehensive application package, which includes, among other things: a borrower information form; principal résumés; business and principal tax returns; personal financial statements; business debt schedules; bank statements; profit and loss statements; balance sheets; business plans with projections; details regarding the intended purpose of the loan; and a valuation of the loan collateral, such as an appraisal.

43.    In determining eligibility for a Section 7(a) loan, the PLP lender assesses numerous factors, including whether the borrower: (a) is a qualifying small

27

business under the SBA's size standards; (b) is eligible for a loan under a variety of factors set forth in SBA rules; (c) proposes using the loan proceeds for an eligible purpose; and (d) meets other SBA requirements, such as satisfaction of the credit-elsewhere test, compliance with anti-discrimination rules, and demonstrates creditworthiness.

44.     SBA rules require the PLP lender to consider the size of the borrower entity in addition to that of any affiliated entities, which include entities that share commonality of ownership with the borrower. Affiliation also arises when there is an identity of interest between any owner of the borrowing entity and other entities owned, operated, or controlled by close relatives. Under SBA rules, the aggregate amount of the guaranteed portions of all loans to a borrower and its affiliates cannot exceed $3.75 million at any one time, which equates to the maximum percentage guaranteed by the SBA (75%) on the maximum amount of a single Section 7(a) loan ($5 million).

45.     PLP lenders have SBA-delegated authority to approve a loan and guaranty on behalf of the SBA, without prior review or approval by the SBA. Following a determination that a proposed loan is eligible and satisfies credit and underwriting requirements, the PLP lender issues a loan commitment to the borrower. The PLP lender then prepares and executes an SBA Section 7(a) loan guaranty (establishing the SBA's commitment to guarantee a percentage of the loan in the event of default) and an SBA note and authorization (detailing the specific

terms and conditions under which the SBA provides the loan guaranty), before proceeding to closing on the loan.

46. After closing, the PLP lender may sell the SBA-guaranteed portion of a Section 7(a) loan on the secondary-loan market, while retaining the non-guaranteed portion; however, the PLP lender retains responsibilities associated with the loan it originated throughout its lifespan—including servicing, liquidation, and, if necessary, litigation.

47. If the SBA-guaranteed portion of a Section 7(a) loan is sold on the secondary market and the borrower subsequently defaults, the PLP lender may request that the SBA honor its guaranty, at which point the SBA is legally obligated to repurchase the guaranteed portion of the loan in order to make the secondary market investor whole.

48. Thereafter, in addition to liquidating the loan and/or prosecuting litigation against the borrower, the PLP lender must submit to the SBA, for a post-purchase review, all loan documents upon which the PLP lender based its eligibility and credit determinations. If, upon reviewing the post-purchase package, the SBA determines that the PLP lender failed to make, close, service, or liquidate the loan in a prudent manner, or that the lender's improper action or inaction resulted in a loss, the SBA may elect to deny liability on the guaranty in full or in part. In that event, subject to multiple layers of administrative review, the PLP lender must repay the guaranteed portion of the loan to the SBA.

### C.    The Paycheck Protection Program ("PPP")

49.    The PPP is a temporary, emergency-loan program that Congress established in March 2020 under the CARES Act. The program was created under section 7(a) of the Small Business Act—the same law that authorizes the Section 7(a) loan program. The SBA administered the PPP with the intention of supporting small businesses struggling to pay employees and certain other business expenses during the COVID-19 pandemic.

50.    The SBA did not provide PPP loans directly to borrowers. Rather, the SBA provided 100% guaranties on loans that a network of PPP lender institutions issued to borrowers under program rules set by U.S. Treasury and SBA's Office of Capital Access.

51.    To obtain a PPP loan, a qualifying business was required to submit a PPP loan application, signed by an authorized representative of the business, in which the business acknowledged the program rules and made certain affirmative certifications to establish eligibility. Among other things, the small business was required to (a) state its average monthly payroll expenses, (b) state its number of employees, and (c) provide supporting documentation. These figures were then used to calculate the amount the small business was eligible to receive under the PPP.

52.    The applications were processed by PPP lenders to which the SBA delegated approval authority. If approved, the lender funded the PPP loan by using its own funds, which the SBA guaranteed in full. In the course of requesting the SBA's guaranty on the loan, the PPP lender would report to the SBA data from the

30

application, including information about the borrower, the total amount of the loan, and the reported number of employees.

53. A borrower receiving a PPP loan was required to use the proceeds for eligible expenses, including payroll costs, mortgage interest, rent, and utilities. Under the applicable PPP rules and guidance, the interest and principal on the PPP loan were eligible for forgiveness if the borrower was eligible for the loan, spent the loan proceeds on permissible expenses within a designated time period, and used a certain portion of the proceeds for payroll expenses. Borrowers requesting forgiveness would submit an application to the PPP lender, along with documentation showing that they met forgiveness criteria. The PPP lender would then review the forgiveness application and submit a forgiveness amount to the SBA. That amount would include the outstanding principal, interest, and processing fees incurred by the lender. In response, the SBA would remit the forgiveness amount to the PPP lender in accordance with its guaranty.

### D. The Economic Injury Disaster Loan Program ("EIDL")

54. The EIDL program is an SBA program that provides low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters. Another source of relief provided by the CARES Act was an authorization for the SBA to provide EIDL loans of up to $2 million to eligible small businesses experiencing substantial financial disruption resulting from the COVID-19 pandemic.

31

55.     To obtain an EIDL loan for COVID-19 relief, a qualifying business was required to submit an application to the SBA and to provide information about its operations, such as the number of employees, gross revenues, and certain costs.

56.     Unlike other SBA loan programs, EIDL loan applications were submitted directly to the SBA and processed by the agency with support from a government contractor. If the SBA approved the application, the amount of the loan was largely based on the information provided by the applicant. EIDL loan proceeds were issued directly by the SBA through U.S. Treasury, and were required to be used for payroll, sick leave, production costs, and business obligations, such as certain debts, rent, and mortgage payments.

57.     The SBA also offered emergency advances of up to $10,000 under the EIDL program. These funds were intended to serve as an advance on the applicant's COVID-19 EIDL loan. Approval of an EIDL emergency advance was not contingent on the SBA accepting or approving the EIDL loan application, and the SBA did not require EIDL emergency advances to be repaid, even if the underlying EIDL loan application was subsequently rejected.

58.     If an EIDL loan applicant also obtained a loan under the PPP, the EIDL funds could not be used for the same purposes as the PPP loan proceeds. Unlike the PPP, COVID-19 EIDL loans were not eligible for loan forgiveness and had to be repaid in full.

## BACKGROUND

59.     Although the Sheths' fraudulent scheme was ongoing for decades, this Complaint—in its later "Material Allegations" section—focuses on a series of loans starting in or around 2016, including but not limited to numerous SBA loans for which the Sheth entities were ineligible and induced through false representations.

60.     Among the reasons for the Sheth entities' ineligibility for those post-2015 loans were events that occurred before 2016, including: (a) Sheth-affiliated entities' multiple pre-2016 bankruptcies; (b) Sheth-affiliated entities' and guarantors' numerous pre-2016 loan defaults, including defaults that resulted in loss to the government; (c) Sheth-affiliated entities' and individuals' overwhelming pre-2016 debt; and (d) pre-2016 adverse judicial findings (including findings of fraud) against Sheth-affiliated entities or individuals.

61.     The purpose of this background section is to chronicle the pre-2016 facts demonstrating the Sheth entities' ineligibility for the fraudulently induced post-2015 loans upon which liability is based.[8]

## I.     Bankruptcies

62.     The fact that an SBA loan applicant (or any affiliate of an applicant) previously filed for bankruptcy does not, by itself, disqualify the applicant from receiving an SBA loan. But prior bankruptcies, and the circumstances leading to

---

[8] The loans described in this background section include, but are not limited to, those that appear with asterisks in the chart in Paragraph 8, above. Loans in the same chart that appear without asterisks are described in the later "Material Allegations" section, below.

them, are material facts that must be disclosed to lenders considering SBA loan applications and certainly may influence a determination as to a prospective borrower's creditworthiness.

63.    On all SBA loan applications submitted by Sheth entities, the Sheths denied that the would-be borrower had affiliates, or that any affiliated entity had previously filed for bankruptcy.

64.    These were material, false statements or omissions. In truth, all the entities created by, or at the behest of, Pankaj and/or Rajan Sheth for the purpose of owning and/or operating the Sheth family's hotels were affiliated, and at least four of these entities previously filed for bankruptcy.[9] In each case, moreover, the Sheth entity's bankruptcy petition was dismissed, resulting in no debt relief.

### A.    Sheth Brothers, Inc. (2000)

65.    In the early 1980s, the Sheth brothers formed a West Virginia corporation called Sheth Brothers, Inc., through which they purchased, owned, and/or operated one or more hotels in or around Charleston, West Virginia.

66.    On June 16, 2000, Sheth Brothers, Inc., filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Southern District of West Virginia. *See In re Sheth Brothers, Inc.* (S.D. W.Va. Bankr. No. 00-12204).

---

[9] As will be shown, a fifth bankruptcy filed by the Sheth entity Mount Holly Hospitality, LLC, occurred in 2019. Fraudulent representations made by the Sheths in the context of that bankruptcy case serve as a basis of liability in this Complaint.

34

67.     When Sheth Brothers, Inc., failed to file required monthly operating reports, the United States Trustee moved to convert to Chapter 7 or, in the alternative, to dismiss the bankruptcy case.

68.     Following a hearing on that motion, the bankruptcy court dismissed the case on April 20, 2001, providing no debt relief to Sheth Brothers, Inc.

### B.     Relex Hospitality, LLC (2004)

69.     In 2001, Pankaj Sheth formed a Maryland limited liability company called Relex Hospitality, LLC ("Relex"), for the purpose of purchasing a hotel at 1492 Lititz Pike, in Lancaster, Pennsylvania ("Lititz Pike" hotel or property) from a small, family-owned business called MEPA Acquisitions, LLC ("MEPA").

70.     In or around May 2001, the parties entered into a purchase and sale agreement that, among other things, required Relex to assume MEPA's obligations on two outstanding mortgages—a $2.37 million commercial loan from Presidential Bank, and a $1 million SBA 504 loan from Business Loan Center (a.k.a. Business Loan Express; "BLC"). In reliance on various representations made by Pankaj Sheth, MEPA allowed Relex to take possession of the Lititz Pike hotel prior to the scheduled closing on June 29, 2001.

71.     On the closing date, Pankaj announced that Relex would not complete the purchase unless MEPA agreed to two material changes to the parties' agreement:

a.     First, he represented that although Presidential Bank had allowed Relex to assume MEPA's mortgage obligation, BLC had not yet permitted

35

an assumption. According to Pankaj, BLC would only approve Relex's assumption of the mortgage if Relex first secured a national hotel franchise for the property; and

b.      Second, Pankaj represented that Relex had secured a national franchise agreement, but that conversion to the franchise would require substantial renovations to the Lititz Pike hotel. Because Relex would purportedly incur expenses to complete the renovations, Pankaj demanded a reduction of nearly $700,000 to the purchase price.

72.     Pankaj further represented to MEPA that, if it agreed to the reduction in the sale price and transferred title to Relex, then Relex would make all monthly mortgage payments on the Presidential Bank and BLC loans while it completed renovations to the Lititz Pike property and, in turn, established the franchise and assumed the BLC loan, thereby satisfying the conditions to complete the sale.

73.     In reliance on Pankaj's representations, MEPA agreed, relinquishing title to the Lititz Pike hotel pending Relex's anticipated assumption of the BLC mortgage.

74.     In the months that followed, Pankaj and his attorney, John Calzaretto, repeatedly assured MEPA that Relex was on the verge of completing renovations, acquiring a franchise flag, and either assuming the BLC mortgage or obtaining a new loan to pay off the BLC mortgage.

75.     These representations were false. In truth, Relex never applied with BLC to assume MEPA's mortgage obligation; it did not complete renovations to the Lititz Pike property; and it never had a franchise agreement. Moreover, Relex failed

36

to make the promised monthly payments on the Presidential Bank and BLC mortgages, causing both lenders to declare the underlying loans in default.

76. On November 27, 2002, Presidential Bank commenced a mortgage foreclosure action against Relex in the Court of Common Pleas of Lancaster County, ultimately securing a judgment in the amount of $2,639,809.38. *See Presidential Bank, FSB v. Relex Hospitality, LLC* (Lancaster Co. Ct. Comm. Pl. No. 02-10321).

77. Because Relex never assumed MEPA's obligations under the BLC loan, BLC commenced a confessed judgment action against MEPA in the Court of Common Pleas of Lancaster County on June 24, 2003, ultimately securing a judgment in the amount of $1,161,827.10. *See Business Loan Center v. MEPA Acquisitions, LLC* (Lancaster Co. Ct. Comm. Pl. No. 03-05288).

78. On August 4, 2003, BLC separately commenced an action in the Court of Common Pleas of Lancaster County against Relex and Pankaj Sheth, as successors in interest to the Lititz Pike property, ultimately securing a judgment of $381,085.63. *See Business Loan Center, LLC v. Relex Hospitality, LLC, et al.* (Lancaster Co. Ct. Comm. Pl. No. 03-0660).

79. MEPA, in turn, commenced an action in the Circuit Court of Anne Arundel County, Maryland, against Relex and Pankaj Sheth, among others, alleging breach of contract and related claims. *See MEPA Acquisitions, LLC v. Relex Hospitality* (Anne Arundel Co. Cir. Ct. No. 02C03094022). The Maryland trial court ultimately entered a judgment in favor of MEPA, and against the defendants, in the amount of $1,106,278.56.

37

80.    Following the issuance of a writ of execution in the *Presidential Bank v. Relex* litigation, a sheriff's sale of the Lititz Pike hotel was scheduled for January 21, 2004. The day before the sale—January 20, 2004—Relex filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Eastern District of Pennsylvania, signed by Pankaj Sheth as the managing member. *See In re Relex Hospitality, LLC* (E.D. Pa. Bankr. No. 04-20296).

81.    On November 29, 2004, the United States Trustee filed a motion to dismiss or convert to Chapter 7, alleging that the debtor had delayed submission of a reorganization plan and was unable to propose a plan capable of confirmation by the court.

82.    Following a hearing, the bankruptcy court dismissed the case on December 23, 2004, providing no debt relief to Relex.

83.    On June 8, 2005, the Lititz Pike property was sold at a sheriff's sale, and on October 11, 2005, all personal property at the Lititz Pike property was sold at a sheriff's sale.

### C.    Vraj Brig PA, LLC (2011)

84.    The Sheths expanded their business enterprise into Pennsylvania in November 1999, when Pankaj and his brother Rohit formed a Pennsylvania limited liability company called Vraj Brig PA, LLC, through which they purchased the Penrose hotel in South Philadelphia for $3.48 million.

85.    Vraj Brig financed the purchase primarily by assuming various obligations of the seller, Freedom State Realty Co., Inc. ("Freedom State"), including

a $1.975 million mortgage held by Mercury Capital Corp. ("Mercury Capital"), additional liabilities totaling $676,227.37, and by executing a mortgage in favor of Freedom State in exchange for a $148,772.63 short-term loan.

86. Vraj Brig promptly defaulted on the loan from Freedom State, which through its principal Lewis Busconi commenced a confessed judgment action in the Court of Common Pleas of Lancaster County on May 16, 2000. *See Busconi v. Sheth* (Lancaster Co. Ct. Comm. Pl. No. 00-04969). On or about September 10, 2001, a judgment was entered against Vraj Brig and Pankaj and Renuka Sheth in the amount of $131,162.02.

87. Vraj Brig also defaulted on other debts to Freedom State, which commenced additional actions in the Court of Common Pleas of Philadelphia County on April 25, 2003, *see Busconi v. Sheth* (Phila Ct. Comm. Pl. No. 030402713), and on January 23, 2008, *see Busconi v. Sheth* (Phila Ct. Comm. Pl. No. 080102766), resulting in judgments totaling $151,330.48.

88. On July 20, 2001, Vraj Brig secured a $1.3 million SBA 504 loan (SBA Loan No. 451295400) from Commerce Bank, and an associated $2.7 million commercial loan from the Trust Company of New Jersey, using the proceeds to pay off the Mercury Capital loan, among certain other obligations it assumed at the time it purchased the Penrose hotel.

89. Vraj Brig defaulted on the Trust Company of New Jersey loan. On April 30, 2004, Trust Company of New Jersey commenced a confessed judgment action against Vraj Brig in the Court of Common Pleas of Philadelphia County,

39

ultimately obtaining a judgment in the amount of $2,825,834.71. *See Trust Co. of N.J. v. Vraj Brig PA, LLC* (Phila. Co. Ct. Comm. Pl. No. 040408723).

90.     Vraj Brig avoided foreclosure by securing two new loans on December 2, 2004, totaling $4.2 million, from Blue Ball National Bank, using the proceeds to pay off the Trust Company of New Jersey ($2,506,707.01) and Commerce Bank ($1,209,405) loans, among other debts.

91.     Vraj Brig defaulted on both loans from Blue Ball National Bank. On November 4, 2010, Susquehanna Bank, the successor by merger to Blue Ball National Bank, commenced a confessed judgment action against Vraj Brig in the Court of Common Pleas of Philadelphia County, ultimately obtaining a judgment in the amount of $3,672,230.03. *See Susquehanna Bank v. Vraj Brig PA, LLC* (Phila. Co. Ct. Comm. Pl. No. 101100793).

92.     During the same timeframe, the City of Philadelphia obtained a series of judgments against Vraj Brig, Pankaj Sheth, and other Sheth entities associated with the Penrose hotel—including Penrose Management, LLC (the Sheth entity that managed the hotel at that time) and Sheth Brothers Management Co., LLC, (the Sheth entity that operated an attached bar and restaurant and held a liquor license)—due to their failure to pay various municipal taxes and utilities for multiple years. *See, e.g., City of Phila. v. Sheth Bros. Mgmt. Co., LLC* (Phila. Co. Ct. Comm. Pl. Nos. 031003625, 040406092, 090302091); *City of Phila. v. Vraj Brig PA, LLC* (Phila. Co. Ct. Comm. Pl. Nos. 080304398, 090301574, 090400990, 100710005); *City of Phila. Water Revenue Bureau v. Vraj Brig PA, LLC* (Phila. Co. Ct. Comm. Pl.

40

No. 100202833); *City of Phila. v. Penrose Mgmt., LLC* (Phila. Co. Ct. Comm. Pl. No. 090301571).

93.  During the same timeframe, the Commonwealth of Pennsylvania filed a series of liens against Sheth entities associated with the Penrose hotel related to the failure to pay state taxes. *See, e.g., Commonwealth of PA v. Sheth Bros. Mgmt. Co., LLC* (Phila. Co. Ct. Comm. Pl. Nos. 010401251, 0211001020, 031000021, 031101725, 040305761, 040500559, 040901375, 050501437, 050503940, 051000409, 060100795, 060102943, 060502897, 070301594, 070720182, 091004279, 090301569, 090302091, 101100798).

94.  On December 17, 2010, aware that the City of Philadelphia was threatening a sheriff's sale of the Penrose hotel that could compromise its ability to collect on the defaulted loan, Susquehanna Bank filed a petition to appoint a receiver in its ongoing litigation with Vraj Brig, which it alleged was warranted given substantial evidence of mismanagement, such as the failure of Vraj Brig and Skyview Management, LLC ("Skyview")[10]—the Sheths' management entity for the Penrose hotel at that time—to pay real estate taxes from 2007 to 2010 and water and sewer taxes for unspecified years.

---

[10] In a 2011 deposition in a trademark infringement action, Pankaj Sheth testified that Skyview took over management of the Penrose property in or around January 2010. *See Accor Franchising N.A., LLC v. Karma Holdings, LLC* (E.D. Pa. Civ. No. 10-4153), ECF No. 43-1, at 14, 20. There were many Sheth entities that served in that capacity at various times. A non-exhaustive list includes Penrose Management, LLC; Skyview Management, LLC; Skyview Plaza Hotel, LLC; Penn Hospitality Management, LLC; and 2015 Hospitality Management, LLC.

95.     On January 8, 2011, the Philadelphia Court of Common Pleas issued an order in the *Susquehanna Bank* litigation directing Vraj Brig to show cause, by February 16, why a receiver should not be appointed.

96.     On February 2, 2011, the Court of Common Pleas of Philadelphia County, in *City of Phila. v. Vraj Brig* (No. 100710005), ordered that the Penrose hotel be sold at a sheriff's sale on April 20.

97.     On February 15, 2011—the day before the show cause response was due and less than two weeks after the sheriff's sale was ordered—Vraj Brig filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Eastern District of Pennsylvania, signed by Rohit Sheth as its managing member. *See In re Vraj Brig PA, LLC* (E.D. Pa. Bankr. No. 11-11078).

98.     Susquehanna Bank subsequently filed a motion in the bankruptcy case to terminate Vraj Brig's use of cash collateral, alleging that the debtor had failed to comply with its agreement regarding proper expenditures.

99.     On May 11, 2011, following a hearing on that motion, the bankruptcy court dismissed the case, providing no debt relief to Vraj Brig.

### D.     Shan Holding, LP (2011)

100.    While the Sheth Brothers, Inc., bankruptcy was pending in West Virginia, Pankaj and his brother Jayprakash formed a new limited partnership in Pennsylvania called Shan Holding, LP, through which they purchased a hotel at 30 Keller Avenue in Lancaster, Pennsylvania ("Keller Avenue" hotel or property) on or about August 29, 2000.

42

101.   To finance the purchase, Shan Holding obtained a $2.8 million loan from the Trust Company of New Jersey. Pankaj executed the loan documents in his capacity as President of Shan Holding Corp., the general partner of Shan Holding, LP.

102.   On or about September 17, 2003, Shan Holding obtained two additional loans, again from Blue Ball National Bank, totaling $3.5 million. Pankaj and Jayprakash executed personal guarantees in support of Shan Holdings' obligations on the Blue Ball National Bank loans.

103.   On or about April 9, 2007, Shan Holding obtained a $2 million loan from Meadowlake Apartment Company ("Meadowlake"). Pankaj executed a personal guaranty in support of Shan Holding's obligations on the Meadowlake loan.

104.   In March 2010, Shan Holding defaulted on the Blue Ball National Bank and Meadowlake loans. Both lenders commenced confessed judgment actions in the Court of Common Pleas of Lancaster County. *See Burn Ventures, Gen. Partner of Meadowlake Apts. Co. v. Shan Holding Corp.* (Lancaster Co. Ct. Comm. Pl. No. 10-06141); *Burn Ventures v. Sheth* (Lancaster Co. Ct. Comm. Pl. No. 10-06147); *Susquehanna Bank f/k/a Blue Ball Nat'l Bank v. Shan Holdings, LP, et al.* (Lancaster Co. Ct. Comm. Pl. No. 10-10968).

105.   On June 4, 2010, the Court of Common Pleas of Lancaster County entered confessed judgments in the amount of $2,165,100 in favor of Burn Ventures (Meadowlake's general partner) and against Shan Holding and Pankaj Sheth.

43

106.   On September 3, 2010, the Court of Common Pleas of Lancaster County entered a confessed judgment in the amount of $2,940,995.09 in favor of Susquehanna Bank (Blue Ball National Bank's successor by merger) and against Shan Holding, Pankaj Sheth, and Jayprakash Sheth.

107.   On March 28, 2011—on the eve of a sheriff's sale, and while the Vraj Brig bankruptcy was pending in the same court—Shan Holding filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Eastern District of Pennsylvania, signed by Pankaj and Jayprakash Sheth. *See In re Shan Holding, LP* (E.D. Pa. Bankr. No. 11-12273).

108.   On August 31, 2011, Susquehanna Bank moved to dismiss the bankruptcy case related to the debtor's alleged unauthorized use of cash collateral.

109.   On September 13, 2011, following a hearing on the motion, the bankruptcy court dismissed the case, providing no debt relief to Shan Holding.

110.   The Keller Avenue property was sold at a sheriff's sale in November 2011. The hotel was razed the following year.

## II.    The MEPA Litigation

111.   As of May 2006, Pankaj Sheth was among a handful of defendants jointly and severally liable for judgments totaling millions of dollars in litigation related to the Lititz Pike property alone.

112.   To recover its judgment against Relex in Maryland, MEPA petitioned for entry of a "charging order" against Pankaj Sheth's interest in a Maryland entity called S&S Hotel Associates, LLC ("S&S"), the sole asset of which was a Sheth-

44

owned hotel at 69 Old Mill Bottom Rd., in Annapolis, Maryland ("Annapolis" hotel or property).[11]

113.   In opposing that petition, Pankaj denied that he had any interest in S&S, which he represented was solely owned by a woman named Pratima Majmundar.

114.   Following a hearing, the trial court issued the charging order, finding in relevant part that:

a.   Although designated to testify as S&S's corporate designee, Jayprakash Sheth knew "virtually nothing about the operation of the business or its finances," while Pankaj had "intimate knowledge about the business, from the mortgages to the finances";

b.   Ms. Majmundar (a mere "friend of Pankaj Sheth's wife") (i) had "no knowledge of the operation or the finances of the business," (ii) "paid no consideration for her alleged interest in the LLC," and (iii) "served merely as a straw person for Pankaj Sheth, for the purpose of obtaining an SBA minority loan needed to finance the purchase of the hotel";

c.   An "Option Agreement" that Pankaj submitted to the court, purporting to demonstrate Ms. Majmundar's interest in S&S, was "a sham";

---

[11] Under Maryland law, a "charging order" is "the statutory means by which a judgment creditor may reach the partnership interest of a judgment debtor. . . . The purpose of the charging order is to protect the partnership business and prevent the disruption that would result if creditors of a partner executed directly on partnership assets." *Keeler v. Academy of American Franciscan History*, 943 A.2d 630, 633 (Md. App. 2008) (internal marks and citations omitted).

d.    An unfiled, amended 2005 tax return that Pankaj submitted to the court, also purporting to show Ms. Majmundar's interest, was "concocted to obscure [Pankaj's] interest in the LLC and . . . does not reflect the actual state of ownership"; and

e.    Pankaj "personally tried to refinance the [Annapolis] property, but the prospective lender would not lend him money because there was a judgment against him." *See MEPA Acquisitions, LLC v. Relex Hospitality, LLC*, No. 03-094022, 2006 WL 5345188, at *1 (Anne Arundel Co. Cir. Ct. July 3, 2006) (emphasis omitted).

115.    Unknown to MEPA, at around the same time that the charging order issue was being litigated, Pankaj directed attorney Calzaretto to arrange for the Annapolis property to be sold to Shri Krishna Hospitality, LLC ("Shri Krishna"), an entity newly created by Sheth associates Neal and Shilpa Madhiwala.[12]

116.    Pankaj further directed Calzaretto to create—and then transfer the Annapolis-property sale proceeds to—a New Jersey limited liability company, also called S&S Hospitality, LLC. This left the Maryland entity with no assets that could be reached under the charging order.

---

[12] Members of the Madhiwala family were longtime Sheth associates, some of whom resided and worked at the Annapolis hotel, including Dinesh Madhiwala (whom Pankaj represented to MEPA was his uncle), his son Nimish (a.k.a. Neal), and Dinesh's daughter-in-law Shilpa. Upon information and belief, Dinesh's nephew is Defendant Vimal Madhiwala, who later served as a straw owner of Sheth entities on multiple fraudulently induced loans.

46

117.    When MEPA learned of these developments, it commenced a new action against Pankaj and Calzaretto, among others, alleging fraud. *See MEPA Acquisitions, LLC v. Sheth, et al.* (Anne Arundel Co. Cir. Ct. No. C-2008-132870).

118.    At an April 4, 2010, deposition in that action, Pankaj acknowledged that he exercised overarching control of the Sheth entities:

> Q.  So, just in terms of the hierarchy so I understand it, you are basically the guy at the very top who makes the big picture decisions?
>
> A.  Um-hum.
>
> Q.  Yes?
>
> A.  Yes.

119.    Pankaj further acknowledged that the Sheth entities under his control were "interrelated" and "combined properties":

> A.  Over so many years, the past 10 years, hotel A do work for hotel B, B do for A, A do for C, C do for D.
>
> Q.  Meaning you owned a bunch of hotels, they did a lot of interrelated work, right?
>
> A.  Correct.  So, we consider there's legal fees, or maintenance, or outstanding payrolls, outstanding management fees, outstanding pay for furniture, maintenance supplies, et cetera.

47

Q. And, it's your testimony that each of these entities and individuals were willing to wait all the way from 1996 through 2007 to get paid on them?

A. Yes, because they were all combined properties. One property needed the other

property to help the other property out. Even today, we do the same thing as of right now.

Q. And, fully expected to get paid at some point by S&S for this nearly $800,000.00 in unpaid bills and invoices?

A. Either re-fi and pay off the obligation, or sell it and pay the obligation.

120.    Upon information and belief, the MEPA litigation was resolved by settlement in an undisclosed amount in 2010.

## III.    The SEDA-COG Loan

121.    In or around 2003, Pankaj and his brother Jayprakash formed 501 Hospitality Management, LLC, through which they purchased the Lincoln Highway hotel in Lancaster, Pennsylvania, for $4.9 million.

122.    To finance the purchase, 501 Hospitality obtained multiple loans, including a $1.3 million SBA 504 loan (SBA No. 65404045-07) from Susquehanna

Economic Development Association Council of Governments ("SEDA-COG"), an SBA-approved Certified Development Company.

123.    On April 3, 2003, SEDA-COG applied to the SBA for a loan to 501 Hospitality. The application listed the members of 501 Hospitality as Pankaj and Jayprakash Sheth, both of whom served as personal guarantors on the loan, along with Sheth entities Shan Holding, LP, and Shan Holding Corp. as corporate guarantors.

124.    Based on information provided by Pankaj and Jayprakash, SEDA-COG summarized the loan proposal as follows:

> **PROJECT NARRATIVE & ELIGIBILITY**
>
> Jayprakash Sheth and Pankaj Sheth wish to purchase the Ramada Inn located in Lancaster. The project falls under an SBA Public Policy Goal of lending to minorities. Both Jayprakash and Pankaj are of Indian descent. Therefore, the company can access the maximum loan amount through the SBA. In addition, the criteria of one job created or retained per every $35,000 in SBA funds does not apply because SEDA-COG's SBA portfolio has created one job for every $11,725 borrowed. Jayprakash and Pankaj are affiliated with several other hotels. One of the hotels, a Ramada Inn in Dover, DE, has been sold and the proceeds are being used to provide the equity for this project. However, the project is still eligible under the SBA's guidelines because the combined net worth of the affiliates is less than $7.5 million and the average income over the past two years is less than $2.5 million.

125.    Upon information and belief, the representations made by Pankaj and Jayprakash to SEDA-COG were materially false. Specifically, they never owned a hotel in Delaware—although, as will be shown, multiple Sheth associates did—and the combined net worth of all Sheth affiliates exceeded SBA's 2003 alternative size standard of $7.5 million. *See* 13 C.F.R. § 121.301(b)(2) (2003). Nevertheless, SEDA-COG relied on these misrepresentations in seeking and obtaining SBA approval, and SEDA-COG funded the loan on December 17, 2003.

49

126.    501 Hospitality defaulted on the SEDA-COG loan in 2009. After extensive catch-up negotiations were unsuccessful, the SBA (a) repurchased the loan on October 25, 2011, (b) approved charge-off of the remaining balance, and (c) referred the borrowers and guarantors—501 Hospitality, Pankaj and Jayprakash Sheth, Shan Holding, LP, and Shan Holding Corp.—to the U.S. Department of the Treasury for collection of the outstanding debt.

127.    On or about June 5, 2012, the SBA charged off principal in the amount of $1,015,155.38 and interest in the amount of $37,694.92 on the SEDA-COG loan.

128.    Thereafter, the SBA and 501 Hospitality engaged in negotiations regarding a workout plan in lieu of further collection efforts. According to the SBA's internal records, on or about August 16, 2013, the SBA proposed a compromise of $300,000 "to release all obligors from liability on the loan," reasoning that this would "provide a recovery of 30% of outstanding principal" and was "the best source of recovery on the loan" given the "outstanding judgments [totaling] $2,712,992" against Pankaj and Jayprakash Sheth.

129.    501 Hospitality accepted the SBA's offer and (using the proceeds of another SBA loan) paid the compromise amount on or about March 6, 2014. But the SBA incurred a principal net loss of $715,155 on the SEDA-COG loan.

130.    Because the SEDA-COG loan resulted in a loss to the federal government, unless or until that loss was repaid, Pankaj, Jayprakash, 501 Hospitality, Shan Holding Corp., and Shan Holding, LP, were ineligible to receive

50

any future SBA loan, as was any business entity that any of them controlled or in which they held an ownership interest. *See* 13 C.F.R. § 120.110(q).

131.   But the loss was never repaid, as the Sheths' loan broker Sanjay Patel learned in October 2018 when the SBA rejected a loan application he submitted for another Sheth entity in which Jayprakash Sheth reportedly held a minority interest:



**SBA**

U.S. Small Business
Administration

7aLoanProgram@sba.gov  | (877) 475-2435 | www.sba.gov/CitrusHeightsLGPC
7(a) Loan Guaranty Processing Center  |  6501 Sylvan Road | Citrus Heights, CA 95610

October 4, 2018

Sanjay Patel                                          *See Comment*
Dime Community Bank
60 East 42nd Street
New York City, NY 10165

RE: BM Hospitality LLC (located in Browns Mills, NJ)
    SBA Control #88894

Dear Sanjay Patel:

We have reviewed the above referenced loan guarantee request, however we are
unable to approve the request for the following reason(s):

51

> **Prior loss to the government or Delinquent Federal Debt**
> Per SOP 50-10-5(J), Chapter 2, Ineligible Types of Businesses, unless waived by SBA for good cause, SBA cannot provide assistance to a business that either has a delinquent Federal loan or has previously defaulted on a Federal loan or Federally assisted financing, resulting in a loss to the Federal government; or a business that is owned or controlled by a business or any of its associates which previously owned, operated, or controlled a business which defaulted on a Federal loan (or guaranteed a loan which defaulted) and caused the Federal government to sustain a loss (13 CFR 120.110(q)) or has a delinquent Federal loan.
>
> A review of our internal records revealed that Jayprakash Sheth, 9% member of Pemberton Hospitality and BM Hospitality is in default or is delinquent on SBA 504 loan (65404045-07) for 501 Hospitality Management LLC dba Ramada Inn Lancaster PA in the amount of $715,155. As such, the applicant is ineligible for SBA loan assistance.

132.    Thus, absent a waiver by the government, Pankaj, Jayprakash, 501 Hospitality, Shan Holding, LP, and Shan Holding Corp.—and any business entity owned or controlled by any of them—were ineligible to receive any future SBA loan after approximately June 5, 2012.

133.    Because Pankaj Sheth exercised control over all Sheth entities, those entities were likewise ineligible for further SBA loans after that date, at the latest.[13]

---

[13] There were likely earlier defaults resulting in government loss that precluded Pankaj and the Sheth entities he controlled from receiving future SBA loans. As noted above, the Maryland trial court found in the MEPA litigation in 2006 that Pratima Majmundar "served merely as a straw person for Pankaj Sheth, for the purpose of obtaining an SBA minority loan needed to finance the purchase of the hotel." *See MEPA Acquisitions,* 2006 WL 5345188, at *1. Moreover, in or around 2003, Pankaj was among the defendants found liable for a judgment on the defaulted SBA 504 loan from BLC, with associated loss. *See Business Loan Center, LLC v. Relex Hospitality, LLC, et al.* (Lancaster Co. Ct. Comm. Pl. No. 03-0660).

## IV.    The Noah Bank Loans

134.    Despite this ineligibility, the Sheths, in 2013 and 2014, obtained three new SBA 7(a) loans and a fourth commercial loan—totaling nearly $11 million—from Noah Bank, a participant in SBA's Preferred Lender Program.

135.    During that timeframe, Sanjay Patel and Bhavesh Sheth served, respectively, as the President and Executive Vice President of SBA Lending at Noah Bank, in which capacities they earned commissions on the SBA loans they closed for the bank.

136.    At the same time, Sanjay Patel also served as a principal of Creative Funding, Inc., a mortgage brokerage firm for which Bhavesh Sheth worked as a broker. In their capacities as principals and/or mortgage brokers at Creative Funding, Patel and Bhavesh earned fees on the SBA loans they closed for their clients. Insofar as they served in dual capacities as loan officers (for the lender) and mortgage brokers (typically for the borrower) on the same loans, this presented conflicts of interest prohibited under SBA rules.

137.    At the same time, Noah Bank was under investigation related to allegations of SBA loan fraud. *See, e.g., United States ex. rel. Lee v. Noah Bank* (D. N.J. Civ. No. 13-2786). Noah Bank Chief Executive Officer Edward Shin was later convicted of (a) taking bribes in connection with the bank's issuance of SBA-backed loans, and (b) causing the bank to issue SBA loans to businesses in which he or his close family members secretly held a financial interest. *See United States v. Shin* (S.D.N.Y. Crim. No. 19-0552).

53

### A.    $5 Million SBA 7(a) Loan to Vraj Brig/Skyview

138.    Following the May 2011 dismissal of Vraj Brig's bankruptcy case—in which the Pankaj-and-Rohit formed entity received no relief from overwhelming debt—the City of Philadelphia renewed its efforts to sell the Penrose property at a sheriff's sale to recover amounts of more than $1 million for unpaid taxes and utilities.

139.    Susquehanna Bank, in turn, renewed its petition for appointment of a receiver by filing a supplemental memorandum in which the bank posited additional evidence supporting its request for relief, including:

(a)    Guest reports of unsanitary conditions at the hotel, such as "bloody handprints on the wall," "broken elevators," "no hot water," "no heat," "cabinets falling off the wall," "bed bugs," "feces in the toilet upon arrival," "beer cans . . . strewn around the room upon arrival," and "holes drilled into the guest room door as a make-shift peephole";

(b)    The certification of a local neighborhood association, attesting to "unsavory and criminal activity" at the hotel; and

(c)    The certification of a Certified Public Accountant and Certified Fraud Examiner, attesting to his findings upon review of sparse business records that (i) Vraj Brig "did not record [its] business activity in the normal course of business in any manner"; (ii) its "[c]ash receipts and disbursements from the bank statements provided could not be agreed back to any supporting schedules

54

provided"; and (iii) its "business practices . . . fail[ed] to meet the expected standard accounting practices for the operation of a business type operated by the Company."

140.    On July 27, 2011, upon consultation with Pankaj Sheth, attorney John Calzaretto formed a New Jersey limited liability company called Sheth Recovery, LLC ("Sheth Recovery"). Pursuant to an operating agreement drafted by Calzaretto, the members of Sheth Recovery were Rajan Sheth (55%), Ravi Sheth (28%), and Rishi Sheth (17%).

141.    The following day, July 28, Sheth Recovery and Vraj Brig executed a Mortgage and Security Agreement, pursuant to which Vraj Brig purportedly received a $3.6 million loan from Sheth Recovery in exchange for a mortgage interest in the Penrose property.

142.    Upon information and belief, the purported Sheth Recovery loan was a sham. Sheth Recovery was a shell company through which other Sheth entities and/or associates associated funneled money to Vraj Brig. Pankaj directed that the mortgage agreement between Vraj Brig and Sheth Recovery be recorded solely for the purpose of establishing a basis for later refinancing the debt under a new SBA loan. Because he controlled the Sheth entities on both sides of the purported transaction, it was not an arm's length transaction. *See, e.g., U.S. Bank N.A. v. Village at Lakeridge, LLC*, 583 U.S. 387, 397 (2018) (describing the "widely . . . understood definition of an arm's length transaction" as "a transaction conducted as though the two parties were strangers"); *Slamon v. Carrizo (Marcellus) L.L.C.*, No. 23-1394, 2024 WL 4602673, at *6 (3d Cir. Oct. 29, 2024) (defining an arm's length

55

transaction as "the situation in which two or more parties, acting independently and in their own economic interests, agree to do business with one another").

143. On or about August 25, 2011, Vraj Brig utilized the purported Sheth Recovery loan proceeds to satisfy the outstanding judgments of Susquehanna Bank and Freedom State, thus concluding the litigation in those cases.

144. On October 15, 2011, Pankaj Sheth and John Calzaretto negotiated a $1.26 million short-term, high-interest loan from private lender Singer Financial Corporation ("Singer Financial"), and used the proceeds to pay off Vraj Brig's debt to the City of Philadelphia and a remaining Freedom State judgment, thereby averting a sheriff's sale of the Penrose property.

145. As a condition of the Singer Financial loan, Sheth Recovery agreed (for no consideration) to subordinate its purported $3.6 million mortgage on the Penrose property to the mortgage interest of Singer Financial. That agreement was executed at closing on the Singer Financial loan, with Pankaj and Renuka Sheth signing for Vraj Brig and their son, Rajan Sheth, signing for Sheth Recovery.

146. At around the same time, Pankaj and Calzaretto were in negotiations with another private lender, Rosdev Capital Funding, LP ("Rosdev"), for a $1.4 million loan to Vraj Brig. In response to an inquiry by Rosdev's counsel as to whether Vraj Brig would use the loan proceeds to pay off the purported Sheth Recovery loan, attorney Calzaretto advised that Vraj Brig would reduce use the proceeds to pay down the balance on the Sheth Recovery loan to $2.2 million, and then refinance that debt—along with the $1.4 million Singer Financial loan and the

56

$1.4 million Rosdev loan—by "obtain[ing] permanent, conventional financing . . . in the amount of $5 million."

147.    At the October 23, 2012, closing on the $1.4 million Rosdev loan, however, none of the proceeds were disbursed to Sheth Recovery. Rather, the vast majority of the funds, totaling $1,250,517.18, were disbursed to Vraj Brig.

148.    Nevertheless, Pankaj directed attorney Calzaretto to draft and record a new "Mortgage and Security Agreement," dated December 11, 2012, purporting to evince a loan of $2.2 million from Sheth Recovery to Vraj Brig.

149.    During the same timeframe, Pankaj directed Calzaretto to create a series of corporate documents purporting to demonstrate the transfer of membership interests in Vraj Brig (the Sheth entity that owned the Penrose hotel) and Skyview (the Sheth entity that managed the Penrose hotel) from Pankaj to other Sheth family members. Upon information and belief, the purpose of these purported transfers was to create the appearance that Pankaj—who was not eligible for an SBA loan—was no longer associated with the entities that would be the borrowers on a new SBA loan.

150.    In October 2012, for example, Calzaretto prepared corporate resolutions purporting to transfer, for one dollar, Pankaj's 90% interest in Vraj Brig to Pankaj's spouse Renuka, and Rohit's 10% interest to Rajan and Ravi (5% each). Though dated October 23, 2012, those documents stated that they were effective as of January 1, 2007 (for the transfer to Renuka) and January 1, 2011 (for the transfer to Rajan and Ravi). Calzaretto then prepared an amended operating

agreement, backdated to January 1, 2011, showing Renuka with a 90% interest and Rajan and Ravi each with a 5% interest in Vraj Brig.

151.    By mid-2013, after further membership-interest manipulation, corporate records reflected that Ravi Sheth was the sole member of Vraj Brig and Skyview. At around the same time, Pankaj directed his accountant to create amended tax returns for both entities, purporting to show Ravi's acquisition of sole membership interests.

152.    On or about July 9, 2013, Pankaj submitted or caused to be submitted, an application to Noah Bank for a $5 million SBA 7(a) loan to Vraj Brig and Skyview that Ravi Sheth (the straw owner of both entities) personally guaranteed.

153.    At that time, Ravi Sheth was 24 years old and newly graduated from college. According to the management résumé submitted with the loan application, his professional experience consisted of fewer than four years working (presumably part-time during college) as a "front desk clerk" at the Keller Avenue hotel and as a "manager" at the Penrose hotel. His personal financial statement reflected no significant assets aside from the Penrose hotel itself, which was reportedly valued at over $9 million.

154.    Noah Bank, through its officers Sanjay Patel and Bhavesh Sheth, issued a loan commitment letter on June 24, 2013—fifteen days before the date on the borrowers' SBA application.

155.    Thereafter, based on Noah Bank's representations, the SBA submitted an authorization and a guaranty (SBA Loan No. GP 63937150-00).[14] A promissory note, issued on September 16, was executed by Ravi Sheth (for Vraj Brig and Skyview) and Bhavesh Sheth (for Noah Bank). The loan closed on the same date.

156.    On September 16, 2013, Noah Bank disbursed the loan proceeds to an individual named Pushpinder Cheema, from whom Vraj Brig purportedly received interim financing ($550,000); Singer Financial ($1,434,062); Rosdev ($1.4 million), and Sheth Recovery ($1.45 million).

157.    Despite that Vraj Brig purportedly owed $2.2 million on the Sheth Recovery loan, with only $1.45 million having been disbursed at closing, Sheth Recovery executed a "Mortgage Satisfaction Piece" attesting that the underlying debt had been paid in full. That document was signed by Pankaj Sheth for Sheth Recovery.

158.    In 2016, Vraj Brig and Skyview defaulted on the Noah Bank loan, and Noah Bank commenced a foreclosure action in the Court of Common Pleas of Philadelphia County. *See Noah Bank v. Vraj Brig PA, LLC, et al.* (Phila. Co. Ct. Comm Pl. No. 160502820).

---

[14] The designation "GP" in the SBA loan number indicates that the loan application was submitted directly to the SBA under its General Program. Upon information and belief, Noah Bank was, at that time, in the process of gaining approval as an SBA Preferred Lender. As will be shown, two subsequent Noah Bank SBA loans following in close succession were PLP loans, suggesting Noah Bank gained SBA PLP status shortly after this loan closed.

159.    Prior to foreclosure, Vraj Brig paid off the debt with a lump sum payment of $4,781,476.43 on September 23, 2016. The primary source of the Noah Bank payoff was a new loan—specifically, a $4.25 million loan from Rosdev to Vraj Brig on September 22, 2016. Pankaj, purportedly joined by his spouse Renuka, executed the Rosdev loan documents on behalf of Vraj Brig.

### B.    $1.5 Million SBA 7(a) Loan to JBL Holding/Madhu

160.    Emboldened by the relative ease with which he secured the Vraj Brig loan, Pankaj submitted additional SBA loan proposals to Noah Bank on behalf of other Sheth entities, including JBL Holding, LLC, and Madhu, LLC ("Madhu"), which owned and operated the Sheths' hotel in Clearfield, Pennsylvania.

161.    Pankaj again directed attorney Calzaretto to prepare corporate documents purporting to evince a transfer of membership interests—this time establishing the sole owner as Lisa Sheth, Pankaj's daughter. Again, Pankaj directed his accountant to create amended tax returns supporting the fiction that Lisa Sheth was the sole owner of JBL Holding and Madhu.

162.    In or around September 2013, Pankaj submitted, or caused to be submitted, an application to Noah Bank for a $1.5 million SBA 7(a) loan to JBL and Madhu, supported by the personal guaranty of Lisa Sheth—who had no hotel management experience—as well as corporate guarantees by Sheth entities Hotel Heights Beverage Co., LLC ("Hotel Heights"), Kingston PA, LLC ("Kingston"), and

Karma Holdings, LLC ("Karma").[15] The ostensible purpose of the loan was to pay off a prior SBA loan from Mercury Capital, as well as a purported loan from another Sheth entity, K&D Associates.

163. Upon information and belief, the purported K&D Associates loan was a sham. Pankaj Sheth fabricated the loan solely for the purpose of later refinancing with an SBA loan and using the proceeds to enrich the Sheth family and/or to pay the debts of other Sheth entities.

164. Having achieved SBA preferred lender status, Noah Bank approved the loan and, on behalf of the SBA, issued an authorization on September 30, 2013 (SBA Loan No. PLP 64836850-06) and note on November 8, 2013. The SBA Note was executed by Lisa Sheth (for Madhu and JBL Holding) and Bhavesh Sheth (for Noah Bank).

165. The loan closed on the same date, with disbursements of $1,118,393.38 to Mercury Capital and $383,250 to the Sheth family, through K&D Associates.

166. On or about May 1, 2016, JBL and Madhu defaulted on the loan, and on August 12, 2016, Noah Bank commenced a confessed judgment action in the Court of Common Pleas of Clearfield County against JBL Holding, Madhu, Hotel Heights, Kingston, Karma Holdings, and Lisa Sheth, ultimately securing a

---

[15] At that time, Sheth entities Hotel Heights, Kingston, and Karma owned and/or operated an adjacent hotel at 150 Hotel Heights, in Clearfield, PA. That property was seized and sold at public auction related to unpaid taxes in 2018. It was subsequently razed.

judgment in the amount of $1,515,866.50. *See Noah Bank v. JBL Holding, LLC, et al.* (Clearfield Co. Ct. Comm Pl. No. 2016-1301-CD).

167.    Prior to foreclosure, the Sheths satisfied the confessed judgment with a lump sum payment of $1,544,025.92 on August 16, 2016. The source of the payoff was a new SBA loan—specifically, a $2,104,100 loan from Bank United to JBL Holding and Rishi Sheth (Lisa's cousin), on August 15, 2016.

### C.    $3.95 Million SBA 7(a) Loan to 501 Hospitality/IVS

168.    Following its 2013 default on the SEDA-COG loan, Sheth entity 501 Hospitality was ineligible to participate in future SBA lending but was deeply in debt and threatened with foreclosure on the Lincoln Highway property.

169.    On November 18, 2013, Pankaj secured a short-term, high-interest loan from private lender Rosdev to 501 Hospitality in the amount of $2.7 million, using the proceeds to pay off pressing debt obligations, including a $2.2 million loan from Metro Bank, and the $300,000 compromise payment to the SBA on the SEDA-COG loan. Pankaj Sheth, purportedly joined by his spouse Renuka, executed the Rosdev loan documents for 501 Hospitality.

170.    This was the second in an extended series of short-term, high-interest loans issued by Rosdev to various Sheth entities. From October 2012 to May 2022, Rosdev funded at least ten loans to various Sheth entities, totaling nearly $18 million. The ready availability of loans from such private lenders was essential to the fraudulent scheme devised and implemented by Pankaj. SBA rules prohibit using the proceeds of an SBA loan to pay off the outstanding balance of a prior SBA

loan to the same borrower. Pankaj often circumvented those rules by first paying off outstanding SBA loans with the proceeds of a private loan and then refinancing the private loan through a new SBA loan. Moreover, because Rosdev was at times willing to refrain from publicly recording its security interests in Sheth properties, some of the Sheth entities' debts to Rosdev did not show up in title searches.

171.    Although Renuka Sheth (as a straw owner of various Sheth entities) at times executed documents associated with Rosdev loans, Rosdev principal Alex Hartstein testified at an August 20, 2024, deposition that Pankaj exclusively negotiated all Rosdev loans to Sheth entities:

Q.    Tell me what this is.
A.    So now it confirms what I thought before.  So, he had a first mortgage.
Q.    "He" is who?
A.    Pankaj.  The Philly hotel had a first mortgage.

Q.    Right.
A.    We typically don't do second mortgages.
Q.    Let me stop you for a second.
        You are talking about what Pankaj has, but you see here that the name on this is not Pankaj, it's Renuka, right?

63

A.    To me it's all Pankaj.  For you it's all Sheth entities.  For me it's all Pankaj.

Q.    It makes no difference to you the fact that they are using someone else's name, right?

A.    That he's using his wife's name?

Q.    Right.

A.    No.

Q.    Was it your experience that even when Pankaj would use someone else's name like Renuka, it was still Pankaj who was running the show?

A.    It was all Pankaj always, and still is.

172.    In or around early 2014, Pankaj sought to refinance 501 Hospitality's debt through another SBA loan from Noah Bank. At his direction, attorney Calzaretto and the Sheths' accountant again created a paper trail of organizational documents and amended tax returns showing Pankaj's son (Rajan) and spouse (Renuka) as sharing membership interests in 501 Hospitality and IVS, LLC ("IVS"), the Sheth entity that managed the Lincoln Highway property at that time.

173.    On February 28, 2014, Pankaj submitted, or caused to be submitted, an application to Noah Bank for a $3.95 million SBA 7(a) loan to 501 Hospitality

64

and IVS. The application represented that the loan proceeds would be used by Rajan to purchase Renuka's membership interest in 501 Hospitality and to pay off the Rosdev loan. As with the Noah Bank loans to Vraj Brig/Skyview and JBL Holding/Madhu, the 501 Hospitality/IVS loan designated loan proceeds for payment to the Sheth family, this time in the form of a son buying out his mother's ownership interest.

174.    Rajan provided a personal guaranty as further support of the Sheth entities' debt obligations. Noah Bank approved the loan with an SBA guaranty, submitting a request for an SBA Loan Number on May 5, 2014, signed and certified by Bhavesh Sheth and Sanjay Patel, both of whom had previously closed (within the prior seven months) two SBA loans to Sheth entities from Noah Bank, totaling $6.5 million.

175.    The SBA issued a loan number on the same date (SBA Loan No. PLP 68130150-10), and Noah Bank issued a promissory note four days later. The note was executed by Rajan Sheth (for 501 Hospitality and IVS) and Bhavesh Sheth (for Noah Bank).

176.    Following closing on May 9, 2014, disbursements were made to private lender Rosdev ($2,763,325) and to Renuka Sheth ($980,000) as the beneficiary of the purported buyout by her son, Rajan.

177.    Although loan records show regular missed or late monthly payments through mid-2016, Noah Bank did not declare a default.

178.    In February 2016, Pankaj (a) negotiated a $1.5 million sale of an easement on the Lincoln Highway property to Tanger Outlets, the hotel's next-door neighbor, and (b) used the proceeds to pay down the 501 Hospitality/IVS loan to Noah Bank.

179.    The remaining balance was paid off on September 18, 2017, in a lump sum payment of $2,686,239.67. The source of those funds was a $5 million SBA 7(a) loan from First Bank.

### D.    $500,000 Commercial Loan to Vraj Brig/Skyview

180.    Having fallen behind in monthly loan payments on the SBA loan from Noah Bank, and already in arrears on unpaid taxes and utilities on the Penrose property, Pankaj negotiated a separate $500,000 commercial loan from Noah Bank to Vraj Brig, Skyview, and Ravi Sheth.

181.    The commercial loan closed on November 25, 2014, with Ravi Sheth again providing a personal guaranty supporting the entities' obligations. Bhavesh Sheth approved the loan for Noah Bank despite borrower Vraj Brig having a recent bankruptcy and being in technical default on a $5 million SBA loan from the same lender.

182.    Over $50,000 of the commercial loan proceeds were disbursed to the City of Philadelphia Department of Revenue, the Philadelphia Water Revenue Bureau, and to pay an outstanding judgment in favor of a creditor against Vraj Brig. *See The Sherwin Williams Company v. Vraj Brig PA, LLC* (Phila. Co. Ct. Comm. Pl. No. 1406M0001). The remainder was disbursed to Vraj Brig.

183.    Vraj Brig promptly defaulted on the commercial loan, and Noah Bank commenced a confessed judgment action in the Court of Common Pleas of Philadelphia County on or about February 3, 2016. *See Noah Bank v. Vraj Brig PA, LLC, et al.* (Phila. Ct. Comm. Pl. No. 160200627).

184.    The Sheths satisfied the judgment on or about October 6, 2016. The source of the payoff was a $4.25 million loan from Rosdev on or about September 22, 2016. Although Pankaj negotiated the Rosdev loan, his spouse Renuka purportedly executed the Rosdev loan documents for Vraj Brig.

## MATERIAL ALLEGATIONS

185.    As discussed in footnote 4, the chart in Paragraph 8, and Paragraph 59 above, the preceding section discussed pre-2016 background conduct that made the Sheths ineligible for subsequent loans. The allegations contained in this Material Allegations section of the Complaint concern post-2015 conduct and set forth the bases of liability against the defendants.

186.    At all times relevant to this Complaint, Sheth family members and Bhavesh Sheth exclusively used specific email addresses known to the government, which are identified for purposes of this Complaint as follows:

| Name | Associated Email Addresses |
|---|---|
| Pankaj Sheth | ***143@gmail.com |
| Rohit Sheth | ***57@gmail.com |
| Rajan Sheth | ***85@gmail.com<br>raj@***markh.com |
| Ravi Sheth | ***87@gmail.com<br>ravi@***markh.com |
| Rishi Sheth | ***89@gmail.com<br>rishi@***markh.com |
| Bhavesh Sheth | bhav***@hotmail.com<br>br***@gmail.com |

187. After closing four Noah Bank loans to Sheth entities in 2013 and 2014—on three of which the Sheths defaulted, resulting in litigation—Bhavesh Sheth and Sanjay Patel, through Creative Funding, continued to serve as mortgage brokers for Pankaj and Rajan Sheth on a series of loans to Sheth entities from 2016 through 2018, totaling around $23 million, concerning the same properties that served as collateral on the loans they had just closed for Noah Bank.

188. Bhavesh Sheth and Sanjay Patel (a) were both experienced, sophisticated SBA lenders; (b) used as their exclusive contacts on all loan applications for Sheth entities Pankaj and Rajan Sheth; (c) knew that the Sheth entities were affiliated and ineligible for additional SBA loans for numerous reasons, including prior defaults resulting in loss to the federal government and loans to affiliates exceeding the aggregate threshold amount; but (d) nevertheless deliberately withheld this material information from lenders and the SBA, in

68

violation of 13 C.F.R. § 120.140(b), (e), and (l). These violations were independent grounds for releasing the SBA from liability on any loan guaranty in which they were involved. *See* 13 C.F.R. § 120.524.

189.    In or around 2016, Pankaj directed Bhavesh Sheth and Sanjay Patel to shop for new loans to Sheth entities related to at least four different Sheth-owned hotels: (a) the Clearfield property, (b) the Lincoln Highway property, (c) the Poconos property, and (d) the Penrose property.

190.    At around the same time, Rajan Sheth (assisted by his cousins Ravi and Rishi) assumed increased responsibilities with respect to both securing financing and controlling management of the same hotels. Among those responsibilities was providing requested loan documents, including fabricated and forged documents purporting to satisfy conditions with respect to loan applications.

191.    The loans themselves were negotiated by Pankaj and/or Rajan, through Bhavesh Sheth and with the assistance of John Calzaretto. For each of the loans, Pankaj and/or Rajan submitted, or caused to be submitted, applications in the names of straw owners, consisting of Sheth family members or Sheth associates, for the purpose of concealing their beneficial ownership of all Sheth entities and the borrowing entities' ineligibility to participate in SBA lending.

192.    Pankaj consulted with his mortgage brokers regarding the assignment of straw membership interests in a manner designed to avoid lender scrutiny. On October 5, 2016, for example, Pankaj asked Bhavesh and Patel to approve a

membership configuration on a loan application that would not require a personal guaranty by the purported members:



193.    Another example occurred on December 15, 2016, when Pankaj sought verification that Bhavesh would name Pankaj's spouse Renuka as the straw owner on an SBA loan application for Vraj Brig (the Sheth entity that owned the Penrose hotel) and his brother Rohit as the straw owner on an SBA loan application for 501 Hospitality (the Sheth entity that owned the Lincoln Highway hotel):



**Re: Vraj Brig**

| | |
|---|---|
| From: | Pankaj Sheth ███143@gmail.com> |
| To: | Bhavesh Sheth <bhav███@hotmail.com> |
| Date: | Thu, 15 Dec 2016 17:15:44 -0500 |

so you are going with Renuka sheth.V.B.PA for $ 7.250 correct and Rohit for 501

194.    After confirming with Bhavesh that he would identify Rohit as the straw owner for the purpose of an SBA loan application for 501 Hospitality, Pankaj began forwarding loan documents to his broker, including an SBA Borrower Information Form:

**501 SBA Form**

| | |
|---|---|
| From: | Pankaj Sheth ███143@gmail.com> |
| To: | bhavesh Sheth <bhav███@hotmail.com> |
| Date: | Tue, 20 Dec 2016 08:13:05 -0500 |
| Attachments: | rohit sheth info form_161215210108_0001 copy.pdf (390.57 kB) |

NAME OF BUSINESS APPLYING FOR LOAN ("APPLICANT"): 501 HOSPITALITY MANAGEMENT LLC

YOUR NAME: ROHIT SHETH    TITLE: MEMBER

SOCIAL SECURITY NUMBER: ███████    DATE OF BIRTH: ███████

PLACE OF BIRTH (City & State or Foreign Country): RAJPIPLA INDIA

| Veteran** | 1=Non-Veteran; 2=Veteran-Other; 3=Service-Disabled Veteran; 4=Not Disclosed. | | | | | |
| Gender** | M=Male; F=Female; N=Not Disclosed | | | | | |
| Race** | 1=American Indian or Alaska Native; 2=Asian; 3=Black or African-American; 4=Native Hawaiian or Pacific Islander; 5=White; X=Not Disclosed | | | | | |
| Ethnicity** | H=Hispanic or Latino; N=Not Hispanic or Latino; Y=Not Disclosed | | | | | |
| Owner | % Owned | Veteran | Gender | Race | Ethnicity | List proprietors, partners, officers, directors, all holders of outstanding stock. 100% of ownership must be shown. Use separate sheet if necessary. Please reference the above codes to complete this table for each owner of the applicant business. More than one race may be selected. |
| ROHIT SHETH | 67.00 | 1 | M | 2 | N | |
| CHANDA SHETH | 18.00 | 1 | F | 2 | N | |
| Ravi Sheth | 15.00 | 1 | M | 2 | N | |
| | | | | | | |
| | | | | | | |

** The gender/race/ethnicity/veteran data is collected for program reporting purposes only. Disclosure is voluntary and has no bearing on the credit decision.

195. When Bhavesh objected to Pankaj's suggestion that they would report Chanda Sheth (the spouse of Jayprakash) as holding an 18% interest in 501 Hospitality, Pankaj promptly rectified the error, submitting to Bhavesh a revised Borrower Information Form on the same date—this time showing Rohit with an 82% interest in 501 Hospitality and Ravi with an 18% interest:

## borrower info

| From: | Pankaj Sheth ███143@gmail.com> |
| To: | bhavesh Sheth <bhav███@hotmail.com> |
| Date: | Tue, 20 Dec 2016 16:10:45 -0500 |
| Attachments: | 161220181124_0001.pdf (219.45 kB) |

72

For clarification regarding any of the questions, you should contact the SBA Participating Lender that will be processing the loan request.

NAME OF BUSINESS APPLYING FOR LOAN ("APPLICANT"): 501 HOSPITALITY MANAGEMENT LLC

YOUR NAME: ROHIT SHETH                                          TITLE: MEMBER

SOCIAL SECURITY NUMBER [REDACTED]                     DATE OF BIRTH: [REDACTED]

PLACE OF BIRTH (City & State or Foreign Country): RAJPIPLA INDIA

| Veteran** | 1=Non-Veteran; 2=Veteran-Other; 3=Service-Disabled Veteran; 4=Not Disclosed. | | | | | |
|---|---|---|---|---|---|---|
| Gender** | M=Male; F=Female; N=Not Disclosed | | | | | |
| Race** | 1=American Indian or Alaska Native; 2=Asian; 3=Black or African-American; 4=Native Hawaiian or Pacific Islander; 5=White; X=Not Disclosed | | | | | |
| Ethnicity** | H=Hispanic or Latino; N=Not Hispanic or Latino; Y=Not Disclosed | | | | | |
| Owner | % Owned | Veteran | Gender | Race | Ethnicity | List proprietors, partners, officers, directors, all holders of outstanding stock. 100% of ownership must be shown. Use separate sheet if necessary. Please reference the above codes to complete this table for each owner of the applicant business. More than one race may be selected. |
| ROHIT SHETH | 82.00 | 1 | M | 2 | N | |
| Ravi Sheth | 18.00 (18) | 1 | M | 2 | N | |
| | | | | | | |
| | | | | | | |

196.    These documents, and many others like them, demonstrate how Pankaj and Bhavesh Sheth, working in concert, invented from whole cloth the straw ownership of Sheth entities for the purpose of fraudulently inducing SBA loans.

## I.    The Bank United SBA 7(a) Loan

197.    On the verge of defaulting on the November 2013 SBA 7(a) loan from Noah Bank to JBL Holding, Madhu, and Lisa Sheth, Pankaj directed his mortgage broker—Creative Funding, through Sanjay Patel and Bhavesh Sheth—to find a new lender for the purpose of refinancing the debt on the Clearfield property.

198.    Bhavesh subsequently identified Bank United, an SBA preferred lender, as the target. Pankaj and Bhavesh structured a loan proposal as a purchase of membership interests by one Sheth family member from another. Because they

knew this was not an arm's length transaction permissible under SBA rules, they concealed the relationship between the parties for the purpose of fraudulently inducing the loan.

199.   Pankaj directed attorney Calzaretto to create organizational documents purporting to show a series of membership transfers from Lisa Sheth (the straw owner on the 2013 Noah Bank loan, who at that time was married and known as Lisa Patel[16]) to Sheth associates—namely, Jagdish Patel (Lisa's father-in-law) and Vimal Madhiwala—and from Lisa and the Sheth associates to Renuka Sheth (Lisa's mother).

200.   Each of the purported transfers was backdated to January 1, 2014, and none of the transfers was supported by consideration. For example:

Assignment of Membership Interest.

For Value Received

Lisa Patel

Hereby assign and transfer unto Renuka Sheth

70 % (seventy percent) Interest in

JBL HOLDING LLC
14451 Clearfield Shawville Hwy
Clearfield, PA 16830

Standing in the name of the undersigned on Lisa Patel for 99% ownership interest.

Date: 1/1/2014

In the presence of

Lisa Patel

---

[16] Upon information and belief, Lisa subsequently divorced and remarried; her current husband is Akshay Kulkarni.

74

201.   The fraudulent assignment of the membership interest above was purportedly witnessed by "Jay Smith." Upon information and belief, Jay Smith was an alias for an itinerant individual named Steven Zurkowski, who sporadically resided at various Sheth-owned hotels and managed hotel-adjacent bars and restaurants from the mid-2000s until his death at Deborah Heart and Lung Center in Pemberton Township, New Jersey, on July 16, 2018. Smith's death certificate reported a fictitious social security number and a residence address at the Sheths' Browns Mills hotel in New Jersey. The informant identified on the death certificate as the source of all information contained therein was Rajan Sheth.

202.   The Sheths used the "Jay Smith" signature on various loan documents for the purpose of disguising their interests in certain entities and fraudulently inducing loans. As will be shown, the Smith signature continued to appear on loan documents associated with Sheth entities even after Smith's death. Insofar as his posthumous signature is consistent in appearance with the signatures on various loan documents during his life, this suggests that Pankaj and/or Rajan either forged or copied and pasted Smith's signature on loan documents.

203.   Following the purported transfer of membership interests in JBL Holding to Renuka Sheth, Pankaj submitted, or caused to be submitted, an application to Bank United for a $2 million SBA 7(a) loan (the amount later grew to $2,104,100) to JBL Holding and Rishi Sheth (Pankaj's nephew), for the purported purpose of financing Rishi's purchase of Renuka's membership interests in JBL Holding—the sole asset of which was the Clearfield hotel.

75

204.    On or about April 1, 2016, Pankaj submitted to Bhavesh—who, in turn, submitted to Bank United—an SBA Borrower Information Form identifying JBL Holding as the borrower and 27-year-old Rishi Sheth as its sole owner.

205.    Among the numerous false representations on the SBA Borrower Information Form were that neither JBL Holding nor any affiliate (a) was excluded from participating in the transaction by any federal department or agency, or (b) had previously obtained direct or guaranteed loans from the SBA. The form also falsely represented that JBL Holding had no affiliates. In truth, JBL Holding was ineligible to receive SBA loans by virtue of its affiliation with Pankaj Sheth and Sheth entities with earlier defaults that resulted in loss to the federal government, including entities that were, at the same time, in default on other SBA loans. Indeed, JBL Holding had obtained an SBA loan from Noah Bank fewer than three years earlier and was actively in default on that loan before the Bank United loan closed. Moreover, affiliated Sheth entities had outstanding loans in amounts far exceeding the permissible guaranty threshold of $3.75 million—the three SBA loans from Noah Bank alone totaled well over $10 million, and the SBA-guaranteed portion was over $7.5 million.

206.    The final version of the SBA Borrower Information Form, obtained from the title company's loan file, showed two signatures for Rishi Sheth, signed on separate dates. Upon information and belief, the first signature, signed on April 1, 2016, was Pankaj's forgery of Rishi's signature. The second signature, signed at closing on August 15, 2016, was Rishi's actual signature. Both signatures certified

76

the accuracy of the representations contained in the form, after the form specifically

advised the certifying individual of the criminal and civil penalties for false

certifications to a federally insured financial institution, such as Bank United:

> **By Signing Below, You Make the Following Representations, Authorizations and Certifications**
>
> **REPRESENTATIONS AND AUTHORIZATIONS:** I represent that I have read the items above and I understand them. I represent that I will comply, whenever applicable, with the hazard insurance, lead-based paint, civil rights or other limitations in this notice. .I further represent that all SBA loan proceeds will be used only for business related purposes as specified in the loan application and, to the extent feasible, to purchase only American-made equipment and products. I authorize the SBA Office of Inspector General to request criminal record information about me from criminal justice agencies for the purpose of determining my eligibility for programs authorized by the Small Business Act, as amended.
>
> **CERTIFICATION AS TO ACCURACY:** I certify that the information provided in this application and the information that I have provided in all supporting documents and forms is true and accurate. I realize that the penalty for knowingly making a false statement to obtain a guaranteed loan from SBA is that I may be fined up to $250,000 and/or be put in jail for up to 5 years under 18 USC § 1001 and if false statements are submitted to a Federally insured institution, I may be fined up to $1,000,000 and/or be put in jail for up to 30 years under 18 USC § 1014.
>
> Signature            4/1/2016      8/15/16
>                      Date
>
> Print Name

207.    An SBA Personal Financial Statement submitted by Pankaj and

Bhavesh for Rishi Sheth contained numerous false representations regarding,

among other things, Rishi's assets and liabilities. Again, the final version of the

Personal Financial Statement, obtained from the title company's loan file, showed

two signatures on two dates. Upon information and belief, the first signature, dated

March 18, 2016, was Pankaj's forgery of Rishi's signature. The second signature,

dated August 15, 2016, was Rishi's actual signature at closing. Both signatures

expressly certified the accuracy of the representations contained in the Personal

Financial Statement, after the Statement specifically advised of the criminal and

77

civil penalties for making false certifications to a federally insured financial institution, such as Bank United:

I authorize SBA/Lender/Surety Company to make inquiries as necessary to verify the accuracy of the statements made and to determine my creditworthiness.
CERTIFICATION: (to be completed by each person submitting the information requested on this form)

By signing this form, I certify under penalty of criminal prosecution that all information on this form and any additional supporting information submitted with this form is true and complete to the best of my knowledge. I understand that SBA or its participating Lenders, or Certified Development Companies or Surety Companies will rely on this information when making decisions regarding an application for a loan or a surety bond. I further certify that I have read the attached statements required by law and executive order.

Signature: _____   Date: 8/15/16   3/18/16

Print Name: Rishi Sheth   Social Security No: ███████

Signature: _____   Date: _____

Print Name: _____   Social Security No: _____

NOTICE TO LOAN AND SURETY BOND APPLICANTS: CRIMINAL PENALTIES AND ADMINISTRATIVE REMEDIES FOR FALSE STATEMENTS:

Knowingly making a false statement on this form is a violation of Federal law and could result in criminal prosecution, significant civil penalties, and a denial of your loan or surety bond application. A false statement is punishable under 18 U.S.C. §§ 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. § 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a Federally insured institution, a false statement is punishable under 18 U.S.C. § 1014 by imprisonment of not more than 30 years and/or a fine of not more than $1,000,000. Additionally, false statements can lead to treble damages and civil penalties under the False Claims Act, 31 U.S.C. § 3729, and other administrative remedies including suspension and debarment.

208. After Bank United issued a letter of intent to fund the loan, Pankaj and Bhavesh participated in negotiations with the lender to satisfy various loan conditions. The straw borrower, Rishi Sheth, was never involved in the negotiations; instead, Pankaj fraudulently assumed Rishi's identity, as was his pattern in loan negotiations throughout the fraudulent scheme alleged in this Complaint. For example, in the email below (one of many like it in the title company's loan file), Bank United's loan closer unwittingly addressed to Pankaj—with copies to Bhavesh, Bank United representatives, and a title company employee—certain underwriting issues intended for the purported borrower, Rishi Sheth:

> **From:** Karen Moore
> **Sent:** Tuesday, August 16, 2016 9:00 AM
> **To:** 'Pankaj Sheth'
> **Cc:** 'Bhavesh Sheth'; Scott Gilman; Jackie Bogdan; 'Melora Simmons'
> **Subject:** RE: JBL Holding - Insurance
>
> HI Rishi,
>
> Per our conversation yesterday, you were going to provide me with the workers compensation insurance. I know you were also going out of town yesterday so I'm sending you a reminder as you were going to email this to me last night or this morning.
>
> I should have the missing auto debit and other signed documents from Mel today but I do need all of it before I can release funds.
>
> Let me know if you have any questions.
>
> Thanks.
>
> **Karen Moore**
> *AVP, SBA Loan Closer*

209.    In reliance on these and other false representations, Bank United approved a $2,104,100 SBA 7(a) loan to JBL Holding and Rishi Sheth. On August 15, 2016, Bank United issued an Unconditional Guarantee and SBA Note (SBA Loan No. 83895650-10).

210.    The loan closed on the same date, at which time Renuka Sheth executed documents prepared by attorney Calzaretto—including one styled as an "Agreement to Amend the Operating Agreement of JBL Holding LLC"—that purported to transfer her membership interests in JBL Holding to Rishi Sheth, her nephew:

79

## AGREEMENT TO AMEND THE OPERATING AGREEMENT OF

## JBL HOLDING LLC

By this amendment, dated as of 8/15/16, the undersigned parties amend that certain agreement (the "Agreement") entitled "Operating Agreement" of JBL HOLDING LLC, a Pennsylvania Limited Liability Company, dated as of January 1, 2012, as follows:

### RESIGNATION OF A MEMBER

Renuka Sheth has submitted her resignation as a member of JBL HOLDING LLC and has relinquished her one hundred percent interest to Rishi Sheth by mutual agreement.

### AMENDMENT OF INITIAL MEMBER INFORMATION

The initial Member information set forth in the operating agreement shall be amended to provide for the transfer of the one hundred percent interest by Renuka Sheth to Rishi Sheth as a result of the resignation of said member. The member certificate currently held by Renuka Sheth shall be cancelled and a new certificate for one hundred percent shall be issued to Rishi Sheth.

### NO OTHER AMENDMENTS

Except as amended by this Agreement, all provisions of the original Agreement shall remain in full force and effect.

By  Renuka Sheth

211.    Insofar as the agreement to amend the JBL Holding operating agreement purported to modify an earlier agreement dated January 1, 2012, it is at odds with similar documents submitted to Noah Bank in 2013 that identified Lisa Sheth (Renuka's daughter), rather than Renuka, as the sole member at that time.

212.    Upon information and belief, Bhavesh Sheth and Sanjay Patel, through Creative Funding, earned a broker's fee for closing the Bank United loan.

213.    At closing, disbursements were made (a) to Noah Bank in the amount of $1,544,025.92 (payment in full of the 2013 SBA loan funded by Noah Bank to JBL Holding, Madhu, and Lisa Sheth), (b) to Renuka Sheth in the amount of

80

$356,916.26, and (c) to JBL Holding in the amount of $16,559.28. Thus, through the concerted, fraudulent acts and omissions of Pankaj, Bhavesh, Lisa, Renuka and Rishi Sheth, JBL Holding, Creative Funding, Sanjay Patel, John Calzaretto, and Calzaretto & Bernstein, the Sheth family paid off the defaulted Noah Bank SBA loan and received additional payments totaling at least $373,475.54.

214.   JBL Holding made monthly payments on the Bank United loan through 2018 but began missing or making late payments in 2019. Prior to a declaration of default, JBL Holding repaid the loan, in full, on August 6, 2019, with a lump sum payment in the amount of $2,048,332.97. The source of the payoff to Bank United was a $2.5 million loan from private lender Rosdev to the Sheths' Vraj Brig entity on July 31, 2019. Pankaj and Renuka Sheth executed the Rosdev loan documents for Vraj Brig.

## II.   The First Bank SBA 7(a) Loan

215.   In or around 2016, amid an ongoing federal investigation of Noah Bank's SBA lending practices, Sanjay Patel and Bhavesh Sheth separated from Noah Bank and began working as loan officers for a series of SBA lenders while continuing their work as mortgage brokers through Creative Funding.

216.   During the same timeframe, Sanjay Patel and Bhavesh Sheth, in their capacities as principals, employees, and/or consultants of Creative Funding, actively assisted Pankaj in shopping for new loans for various Sheth entities and properties, including the Lincoln Highway hotel.

81

217.    Initially, they planned to submit a loan application identifying Renuka Sheth as the straw owner of 501 Hospitality (the Sheth entity that owned the Lincoln Highway hotel). Pankaj directed attorney Calzaretto and his accountant to create corporate documents and tax returns supporting this fiction.

218.    In late 2016, Sanjay Patel and Bhavesh Sheth served, respectively, as Senior Vice President and Vice President for Commercial Lending at Freedom Small Business, BIDCO, Inc. ("BIDCO"), an authorized SBA lender. On November 30, 2016, having received from Pankaj documents in support of a loan application, Bhavesh submitted them to BIDCO, his employer at the time, as a proposed SBA 7(a) loan package to 501 Hospitality and Renuka Sheth:



**FW: 501 HOSPITALITY TAX RETURN**

| | |
|---|---|
| From: | Bhavesh Sheth <bhav█████████████ |
| To: | ███████@freedommortgage.com |
| Date: | Wed, 30 Nov 2016 15:09:30 -0500 |
| Attachments: | US Amended Tax Return - EFILE.pdf (269.82 kB); US Amended Tax Return - postal mail.pdf (230.99 kB); US Amended Tax Return.pdf (147.34 kB); US Amended Tax Return.pdf (173.77 kB); Renuka Resume.pdf.pdf (103.86 kB); 2013 Renuka.pdf (259.39 kB); 2014 US Tax Return - Final.pdf (277.48 kB); 161122083940_0001.pdf (43.28 kB); Microsoft Word - 501 Sale Agreement.doc copy.pdf (288.16 kB); SBA_4506-T_.pdf.pdf (92.76 kB); SBA Form 1919-4.pdf.pdf (225.9 kB); Renuka Resume.pdf.pdf (103.86 kB); 161122081719_0001.pdf (17.54 kB) |

219.    Among the attached documents was a purported management résumé for Renuka, which listed contact information for her husband Pankaj:

## RENUKA SHETH

███████████████████████████                    143@gmail.com

### PROFESSIONAL OBJECTIVE

Looking to excel in a hospitality company that can put my leadership, organizational, writing, business and entrepreneurial experience to profitable use.

220.    Also attached was a "Purchase and Sale Agreement," dated August 1, 2016, purporting to evince Renuka's agreement to purchase the membership interests of 501 Hospitality (though misspelling the entity's name):

### PURCHASE AND SALE AGREEMENT

**THIS PURCHASE AND SALE AGREEMENT** (this "**Agreement**") is made and entered into as of this 1ST day of AUGUST  2016 (the "**Effective Date**") by and between 501 HOSPITALIY MANAGEMENT LLC, a PA LLC  ("**Seller**"), and RENUKA SHETH OR ASSINGNEE ("**Purchaser**"). (Seller and Purchaser are sometimes referred to] herein individually as a "**Party**", and collectively as the "**Parties**").

Recitals

**WHEREAS,** Seller is the owner of the Property (as defined herein) relating to the hotel facility located at 2250 LINCOLN HWY LANCASTER PA 17602, and commonly known as [LANCASTER RESORT (the "**Hotel**").

**WHEREAS,** Seller desires to sell the Property to Purchaser, and Purchaser desires to purchase the Property from Seller, on the terms set forth in this Agreement.

IN WITNESS WHEREOF, Seller and Purchaser each have caused this Agreement to be executed and delivered in their names by their respective duly authorized officers or representatives.

SELLER:

501 HOSPITALITY MANAGEMENT LLC

Signature: _Jay Smith_
Print Name:   Jay Smith
Title:   Authorized Representative

PURCHASER:

RENUKA SHETH OR ASSIGNEE

Signature: _R. P. Sheth_
Print Name:   Renuka Sheth
Title:   Member

221.    Again, Pankaj used the signature of Jay Smith, purportedly as an "authorized representative" of 501 Hospitality. In truth, Jay Smith had no authority to effect the sale of 501 Hospitality and, upon information and belief, Pankaj or Rajan Sheth either forged or copied and pasted Smith's signature on the document for the purpose of concealing that the purported sale was not an arm's-length transaction. Moreover, Renuka's signatures on numerous documents attached to the email appear to be identical, suggesting Pankaj or Rajan either forged or copied and pasted her signatures as well.

222.    As noted previously, Bhavesh and Pankaj reversed course on or about December 15, 2016, deciding that Rohit (rather than Renuka) would serve as the straw owner of 501 Hospitality on the loan application related to the Lincoln Highway hotel, and that Renuka (rather than Rohit) would serve as the straw owner of Vraj Brig on a loan application related to the Penrose hotel. Thus, Pankaj

84

began forwarding new documents to Bhavesh, essentially swapping out Rohit's name for that of Renuka:

**ROHIT SHETH**

_____

143@gmail.com

**PROFESSIONAL OBJECTIVE**

Looking to excel in a hospitality company that can put my leadership, organizational, writing, business, and entrepreneurial experience to profitable use.

**PROFESSIONAL SKILLS AND KNOWLEDGE**

**PURCHASE AND SALE AGREEMENT**

**THIS PURCHASE AND SALE AGREEMENT** (this "**Agreement**") is made and entered into as of this 1St day of December 2016 (the "**Effective Date**") by and between 501 HOSPITALIY MANAGEMENT LLC, a PA LLC  ("**Seller**"), and ROHIT SHETH OR ASSINGNEE ("**Purchaser**"). (Seller and Purchaser are sometimes referred to] herein individually as a "**Party**", and collectively as the "**Parties**").

223.    At around the same time, Pankaj directed attorney Calzaretto and his accountant to create corporate documents and amended tax returns purporting to demonstrate the transfer of controlling membership interests in 501 Hospitality and other Sheth entities associated with the Lincoln Highway property to a straw owner named Piyush Bhaidaswala, a Sheth family associate. Upon information and belief, the purpose of these transfers was to conceal that the purported sale was not an arm's-length transaction.

224.    In the course of the investigation underlying this Complaint, the government learned that Bhaidaswala separately owned numerous hotels in the

85

Mid-Atlantic region, including in Delaware, and had a longstanding relationship with Pankaj through his attendance at religious events at the Temple. He was also reportedly a distant relative of the Sheth family, as his nephew was the husband of Rupa Sheth, Jayprakash's daughter. Upon information and belief, Bhaidaswala knowingly consented to serve as the straw owner of 501 Hospitality for the purpose of fraudulently inducing an SBA loan.

225.    The structure of the loan proposal that Pankaj and Bhavesh devised in or around late 2016 included that a portion of the proceeds would be designated for renovations necessary to obtain a Radisson franchise at the Lincoln Highway property. The Sheths knew appraisers viewed Radisson as a reputable hotel brand, promising a consistent quality standard at all locations; thus, a proposed Radisson franchise represented a significant upgrade in the quality and appraised value of the Lincoln Highway hotel. This, in turn, made the project more attractive to potential lenders.

226.    Where renovations are necessary for conversion to a hotel-franchise brand, those improvements are typically described on a document called a Property Improvement Plan, or "PIP." Having worked with various franchises during his many years as a hotel owner—indeed, he was a party to multiple trademark infringement actions associated with breaches of franchise agreements, *see, e.g.*, *Accor Franchising N.A., LLC, et al. v. Karma Holdings, LLC, et al.* (E.D. Pa. Civ. No. 10-4153); *Howard Johnson Int'l v. Vraj Brig, LLC, et al.* (D. N.J. Civ. No. 08-

86

1466)—Pankaj had access to a variety of PIPs and related documents, which he fraudulently repurposed to justify loans for Sheth-owned hotels.

227.    For example, on April 26, 2017, Pankaj produced to Bhavesh a purported Radisson PIP related to the Lincoln Highway property. Upon information and belief, this document was fabricated by Pankaj for the purpose of supporting the fiction that Radisson had agreed to a franchise at the Lincoln Highway hotel pending the completion of enumerated renovations:



228.    In fact, Pankaj possessed a blank Radisson PIP form, a copy of which he sent to Bhavesh by email on the same date, inviting his broker to fabricate his own version of the document according to what he believed was likely to induce an SBA loan for renovations.

229.    In March 2017, as Pankaj and Bhavesh continued to shop for a lender for the Lincoln Highway property, East Lampeter Township, the municipality in which the Lincoln Highway hotel was located, shut down the hotel based on a finding of numerous municipal-code violations:

87

## EAST LAMPETER TOWNSHIP

2250 Old Philadelphia Pike
Lancaster, PA 17602

**NOTICE OF VIOLATION OF PROPERTY MAINTENANCE CODES: OPERATOR OF THIS BUSINESS SHALL WITHIN 24 HOURS OF RECEIPT OF THIS NOTICE SHALL CEASE AND DESIST ALL BUSINESS OPERATIONS UNTIL NOTED VIOLATIONS HAVE BEEN ABATED**

**March 7, 2017**

To:    Lancaster Family Resort
       (Name of Owner)
       2250 Lincoln Highway East   Lancaster, PA
       (Address of Owner)

230.    In response, the Sheths, represented by attorney Calzaretto, commenced litigation in the Court of Common Pleas of Lancaster County, seeking to enjoin enforcement and reopen the hotel. *See 501 Hospitality Management, LLC v. East Lampeter Township* (Lanc. Co. Ct. Comm. Pl. No. CI-17-02285).

231.    Upon information and belief, the Sheths' Lincoln Highway property never reopened; it has been closed for business since on or about March 7, 2017.

232.    Nevertheless, Pankaj and Bhavesh persisted in their search for an SBA loan for the property and, in April 2017, found a prospective lender in North Carolina-based First Bank, an SBA preferred lender.

233.    On April 17, 2017, Bhavesh sent a loan package to a First Bank loan officer, representing that he had previously presented the same package to BIDCO, which was "unable to do this loan" because it "does not currently hav[e] [an] SBA license."

234.    Upon information and belief, these representations were false. BIDCO had been an authorized SBA lender since August 2015, without interruption, a fact

88

of which Bhavesh was likely aware insofar as he was a BIDCO vice president. Moreover, the loan package Bhavesh proposed to BIDCO concerned an SBA loan for the Lincoln Highway property to entities purportedly owned by Renuka Sheth, not Rohit (Renuka's brother-in-law). Upon information and belief, Bhavesh's false representations to First Bank regarding BIDCO's prior involvement were designed to encourage First Bank to rely on purported due diligence already completed on the proposed loan package, such as an appraisal of the Lincoln Highway hotel. Bhavesh also falsely represented to First Bank that the proposed borrower, Rohit Sheth, was his client. Rather, in his capacity as a mortgage broker for Creative Funding and its principal Sanjay Patel, Bhavesh worked exclusively for Pankaj and Rajan Sheth, the parties in interest on both sides of the proposed transaction with First Bank.

235. On April 18, 2017, First Bank sent a proposal outlining the framework of a contemplated $5 million SBA 7(a) loan to 501 Hospitality and Rohit Sheth. Under that framework: (a) $3.8 million would be designated for Rohit's purchase of 501 Hospitality "stock," purportedly held by Bhaidaswala (99%) and Rajan Sheth (1%); and (b) $1 million would be designated for "[r]enovations for [c]onversion to [a] Radisson [f]ranchised hotel." The proposal requested Rohit's signature, evincing his approval of the terms.

236. By email to Bhavesh on April 19, 2017, Pankaj sent a signed copy of the letter of intent on which Pankaj forged his brother's signature. Bhavesh, in turn, emailed the signed agreement to First Bank:

89

# FIRST BANK

April 18, 2017

501 Hospitality Management, LLC
Mr. Rohit Sheth
2250 Lincoln Highway East
Lancaster, PA  17601

Dear Mr. Sheth,

First Bank is pleased to have the opportunity to respond to your request for financing for the acquisition of the Lancaster Family Resort and convert to a Radisson Hotel in Lancaster, PA.  The following is only a letter of proposal and is not intended as, nor should it be construed to be, a commitment.  We anticipate utilizing the United States Small Business Administration ("SBA") loan programs for a portion of the proposed loan amount.

Guarantors/Borrowers:        Mr. Rohit Sheth

Use of Proceeds:

| Purpose | SBA Loan | Borrower Equity | Seller Financing | TOTAL |
|---|---|---|---|---|
| Purchase Stock | $ 3,800,000 | $ 600,000 | $ 600,000 | $ 5,000,000 |
| Renovations for Conversion to Radisson Franchised hotel | $ 1,000,000 | | | $ 1,000,000 |
| Closing Costs | $ 200,000 | $ 10,000 | $ | $ 210,000 |
| TOTAL: | $ 5,000,000 | $ 610,000 | $ 600,000 | $ 6,210,000 |

Total Credit Exposure:                                    $   5,000,000
Credit Exposure with SBA Guaranty:              $   1,250,000
SBA Guaranty Fee:                                           $      138,125


Total Loan Amount:        $5,000,000

Loan Type:                    7(a) SBA Loan

financing needs of your company.  We value our relationship with you and look forward to the success of your business.

Sincerely,


Stephanie C. Dunn
Senior Vice President/ SBA Division National Sales Manager
First Bank

ACCEPTED:

Mr. Rohit Sheth
Date:

237.    On or about April 27, 2017, First Bank's underwriter learned of the

Lincoln Highway hotel's closure due to municipal code violations—material facts

that Pankaj and Bhavesh had withheld—and advised First Bank's loan officer. The loan officer, in turn, raised this issue with Bhavesh, who responded that "Seller expects [the] hotel to be opened next Friday," despite its elevator not being "functional" for "3 to 4 weeks."

238.    This explanation was apparently sufficient for the underwriter, who submitted a credit memorandum to First Bank's loan committee less than one week later. In recommending approval of the loan proposal to fund Rohit's purported purchase of 501 Hospitality, the underwriter relied on numerous material misrepresentations by Pankaj and Bhavesh, including that:

    a.    "Radisson has proposed a license agreement with the borrower and PIP requirements to standardize the hotel would be funded in the loan project";

    b.    "the current selling ownership group includes Rajan Sheth, who has 1% interest as a seller and shares the same last name as the borrower[,] . . . [but] [t]hey are [ ] not blood relatives and thus the transaction appears to be at arm's length";

    c.    501 Hospitality would "remain open during renovations, as interior/exterior work is primarily cosmetic";

    d.    Rohit would provide an equity injection of $600,000 from his "[s]ale of previous interest in a hotel property"; and

    e.    Rohit had no "affiliates according to SBA policy."

239.    On May 4, 2017, First Bank's credit committee issued a commitment letter to Rohit Sheth. Thereafter, SBA Complete ("SBAC"), First Bank's SBA

91

contractor, began working with the borrower to satisfy the conditions in the credit memorandum.

240.    As he did in the Bank United negotiations, Pankaj assumed the identity of the straw borrower during the loan negotiations with First Bank and SBAC—a tactic he facilitated by providing his own email address on Rohit's purported management résumé and loan application papers. The result was that the lender unwittingly communicated exclusively with Pankaj, believing it was communicating with Rohit, the straw borrower:



241.    Pankaj's direct involvement in loan negotiations was essential to the continued success of the fraudulent scheme because he was uniquely positioned to avoid disclosure of records that conflicted with false representations made to First Bank. For example, when SBAC requested that Rohit provide "IRS Stamped Tax Returns for IVS, LLC"—the Sheth entity that operated the Lincoln Highway property, was a co-borrower on the 2014 Noah Bank loan, and had incurred numerous liens for unpaid taxes—Pankaj (posing as Rohit) objected: "we are only purchasing stock from 501 Hospitality LLC not from IVS[.] [W]e have nothing to do

with these liens and any UCC will be termineated [*sic*] by the mortgage holder bank when we pay off [the] mortgage." These were materially false statements, as Pankaj was at all times the beneficial owner of both IVS and 501 Hospitality; as such, he was responsible for all liens associated with the Lincoln Highway property.

242. To further dissuade SBAC from reviewing IVS's tax returns—which likely were inconsistent with fraudulent, amended tax records purporting to show transfers of interest to Bhaidaswala—Pankaj fabricated a letter, purportedly signed by Jay Smith, which he sent to Bhavesh, who in turn submitted it to First Bank:

> IVS LLC                                    12/15/16
> 2250 Lincoln Hwy
> Lancaster Pa 17602
>
> To whom it May concern:
>
> IVS LLC is no longer active and operate since Jan 1, 2016, All Sales is reported under 501 Hospitality Management LLC. If you have any question please contact us.
>
> Jay Smith
> Jay Smith

243. Remarkably, this gambit succeeded in persuading First Bank and SBAC to waive the requirement in the credit memorandum that IVS produce filed tax returns.

244. Other misrepresentations that Pankaj and Bhavesh made to induce the loan were considerably more challenging to navigate. For example, the proposed loan was premised on 501 Hospitality securing a Radisson franchise agreement that it never had. Shortly after obtaining a loan commitment based on a Radisson

93

franchise at the Lincoln Highway property, Bhavesh asked SBAC and First Bank to "close the loan without [a] franchise agreement from Radisson," citing delays by Radisson, and to accept instead the borrower's "assurance" that a Radisson franchise would ultimately "be in place." In response, First Bank asked Bhavesh to produce an unsigned "copy of the Franchise Agreement so [the Chief of Credit] can see the agreement and we can ask for the execution of it to be a post clos[ing] item." To this Bhavesh did not respond—indeed, he could not because there was no franchise agreement.

245.  In mid-June, upon SBAC's request, Bhavesh forwarded a promissory note associated with Noah Bank's $3.95 million SBA loan to 501 Hospitality/IVS, for which he and Sanjay Patel had previously served as loan officers. In response, SBAC advised that "a new SBA transaction cannot be obtained for 501 Hospitality Management LLC" because it was a borrower on an outstanding SBA loan. In conducting further research of SBA loans associated with 501 Hospitality, SBAC identified additional concerns:

```
From: Kathleen Klima          @sbacomplete.com>
Sent: Thursday, June 15, 2017 11:03 AM
Subject: RE: 501 hosp. - Note
To: Bhavesh Sheth <bhav          @hotmail.com>
Cc: Dunn, Stephanie          @firstbanksba.com>


Bhavesh,

The system indicates the below loans for the Seller. Please provide additional
information regarding the SBA loan #172010500 and a copy of the Note. Will
this transaction be paid off as well? There is an indication it is delinquent.
```

94

246. In response, Bhavesh represented that "[t]he delinquent note was of [a] previous owner" and, in any event, that "a new sba 7(a) loan" (*i.e.*, the 2014 Noah Bank loan) was subsequently funded, suggesting that the delinquent loan was not "an issue" for SBA lending purposes because, if it were, 501 Hospitality could not have obtained the SBA loan from Noah Bank in 2014.

247. These were material, false representations. The "owner" of 501 Hospitality at the time the delinquent loan was made was Pankaj Sheth, the same beneficial owner of the entity at the time of these representations. Moreover, Bhavesh did not disclose—and SBAC apparently failed to observe—that he was the loan officer for Noah Bank on the 2014 SBA loan, in which capacity he either overlooked or was willfully blind to evidence of 501 Hospitality's ineligibility.

248. In late June 2017, SBAC requested evidence of the source of a required $600,000 equity injection by Rohit Sheth. Bhavesh responded immediately, providing assurances as to the provenance of the equity injection:

## RE: 501 Hospitality

From: Bhavesh Sheth <bhav███████@hotmail.com>
To: Kathleen Klima ████████@sbacomplete.com>, Bhavesh Sheth ████████████
Date: Thu, 29 Jun 2017 14:11:05 -0400

501 Hosp. is a stock transfer. Hence the money paid to 501 Hospitality, is already received by the seller, as currently seller owns 501 Hospitality.

Its already used.

This $600,000 came from selling the ownership of Rohit Sheth in Mount Holly Hospitality. Rohit shah then wrote check to Seller – 501 Hospitality LLC

Best regards,
Bhavesh Sheth
Cell :████████

249.    These were material, false representations. Relevant bank records demonstrate that the source of the equity injection was Pankaj Sheth, and that a substantial portion of the money purportedly paid to 501 Hospitality was drawn from a 501 Hospitality bank account. Specifically:

a.    On December 16, 2016, Pankaj wrote a $480,000 check from an Amboy Bank account in the name of Pusti Management, LLC (associated with the Sheths' Englishtown hotel) to Mount Holly Hospitality, LLC (associated with the Sheths' Browns Mills hotel);

b.    On December 19, Pankaj withdrew $120,000 from an Amboy Bank account in the name of 501 Hospitality;

c.    On the same date, Pankaj deposited both the Pusti Management check and the 501 Hospitality withdrawal (totaling $600,000) into the Amboy Bank account of Mount Holly;

d.    Pankaj then wrote a $600,000 check from the Mount Holly Amboy Bank account to Rohit Sheth, with a memo line reading "Payment for Membership Interest";

e.    Rohit, in turn, deposited that check into his personal Amboy Bank account on December 20, and wrote a $600,000 check to 501 Hospitality, backdated to December 15, with a memo line reading "501 Membership Interest Purchase Deposit"; and

f.        501 Hospitality deposited that check into its Amboy Bank account—the same one from which Pankaj withdrew $120,000 the day before—on December 20, 2016.

250.    Thus, Bhavesh Sheth's representations to First Bank regarding the source of the equity injection were demonstrably false, as was the production of various "Purchase and Sell [*sic*]" Agreements—containing forged signatures for Rohit, purportedly witnessed by Sheth utilityman Jay Smith, and provided to First Bank by Pankaj and Bhavesh—purporting to demonstrate Rohit's sale of interests in other Sheth entities to account for the equity injection:

## PURCHASE AND SELL AGREEMENT

THIS AGREEMENT made and entered into this 16th day of December 2016, by and between Mt, Holly Hospitality, LLC Organized and existing under the laws of the NJ, having its principle place of business at 13 Julius Town Rd, Browns Mills NJ (hereinafter referred to as "Seller"), and Rohit Sheth, or assignee, having an address of 143 Valesi Dr. Morganville, NJ 07751 or its assignee(s) and/or nominees (hereinafter referred to as "Seller")

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed the day and year first above written.

WITNESS *Jay Smith*

DATE 12-16-16

WITNESS

DATE 12/16/16

SELLER:
MT, Holly Hospitality, LLC

*Rohit Sheth*
Rohit Sheth

TITLE_____

BUYER:
Yashwant Patel

*Y. P. Patel*
*Ishwar Patel*
Ishwar Patel

97

251. In early July 2017, SBAC advised Bhavesh and Pankaj that 501 Hospitality would be required to pay off nearly $4.1 million in outstanding debt to proceed as a co-borrower on the contemplated First Bank loan. Given these issues, SBAC suggested restructuring the loan as a purchase of the Lincoln Highway property by new entities established by Rohit Sheth, rather than as Rohit's purchase of 501 Hospitality's "stock."

252. Less than two weeks later, Pankaj and/or Rajan: (a) directed the formation of two new Pennsylvania entities, Fortune Holding, LLC, and Wonder Hospitality, LLC; and (b) identified Rohit Sheth as the sole member of each; but (c) provided as a contact email address ***85@gmail.com, which was used exclusively by Rajan Sheth.

253. In a document backdated to May 8, 2017, Pankaj and Bhavesh Sheth submitted to First Bank an SBA Borrower Information Form for a $5 million SBA 7(a) loan to Fortune Holding and Wonder Hospitality, both solely owned by Rohit Sheth. Among numerous false representations on the form were that Fortune Holding and Wonder Hospitality had no affiliates, that no affiliate had previously obtained an SBA loan, and that no affiliate had ever defaulted on an SBA loan resulting in loss to the government. Rohit's signature—which, upon information and belief, was forged by Pankaj or Rajan—certified the accuracy of representations contained in the Borrower Information Form after having been specifically advised of the criminal and civil penalties for certifying false statements to a federally insured financial institution, such as First Bank:

**By Signing Below, You Make the Following Representations, Authorizations and Certifications**

**REPRESENTATIONS AND AUTHORIZATIONS:** I represent that I have read the items above and I understand them. I represent that I will comply, whenever applicable, with the hazard insurance, lead-based paint, civil rights or other limitations in this notice. I further represent that all SBA loan proceeds will be used only for business related purposes as specified in the loan application and, to the extent feasible, to purchase only American-made equipment and products. I authorize the SBA Office of Inspector General to request criminal record information about me from criminal justice agencies for the purpose of determining my eligibility for programs authorized by the Small Business Act, as amended.

**CERTIFICATION AS TO ACCURACY:** I certify that the information provided in this application and the information that I have provided in all supporting documents and forms is true and accurate. I realize that the penalty for knowingly making a false statement to obtain a guaranteed loan from SBA is that I may be fined up to $250,000 and/or be put in jail for up to 5 years under 18 USC § 1001 and if false statements are submitted to a Federally insured institution, I may be fined up to $1,000,000 and/or be put in jail for up to 30 years under 18 USC § 1014.

05/08/2017

Signature                                           Date

Rohit Sheth

Print Name

254. The restructured First Bank loan required Rohit to provide a personal guaranty of the debt obligations of Fortune Holding and Wonder Hospitality. His ability to repay the loan was supported by an SBA Personal Financial Statement, executed July 11, 2017, which erroneously identified 501 Hospitality (rather than the newly created Sheth entities) as the borrower and falsely represented Rohit's assets and liabilities.

255. Upon information and belief, Pankaj or Rajan Sheth forged the signatures of Rohit and his spouse Bindu Sheth on the Personal Financial Statement. In any event, those signatures expressly certified the accuracy of the representations contained in the Personal Financial Statement after having been

specifically advised of the criminal and civil penalties for certifying false statements

to a federally insured financial institution, such as First Bank:

CERTIFICATION: (to be completed by each person submitting the information requested on this form)

By signing this form, I certify under penalty of criminal prosecution that all information on this form and any additional supporting information submitted with this form is true and complete to the best of my knowledge. I understand that SBA or its participating Lenders or Certified Development Companies or Surety Companies will rely on this information when making decisions regarding an application for a loan or a surety bond. I further certify that I have read the attached statements required by law and executive order.

Signature _____  Date 07/11/2017

Print Name  Rohit Sheth  Social Security No. ███████

Signature _____  Date 07/11/2017

Print Name  Bindu Sheth  Social Security No. ███████

NOTICE TO LOAN AND SURETY BOND APPLICANTS: CRIMINAL PENALITIES AND ADMINISTRATIVE REMEDIES FOR FALSE STATEMENTS:

Knowingly making a false statement on this form is a violation of Federal law and could result in criminal prosecution, significant civil penalties, and a denial of your loan or surety bond application. A false statement is punishable under 18 U.S.C. §§ 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. § 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a Federally-insured institution, a false statement is punishable under 18 U.S.C. § 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000. Additionally, false statements can lead to treble damages and civil penalties under the False Claims Act, 31 U.S.C. § 3729, and other administrative remedies including suspension and debarment.

256. Under First Bank's credit memorandum, the completion of renovations

at the Lincoln Highway hotel and an executed Radisson franchise agreement were

conditions precedent to closing. Upon information and belief, Pankaj and Rajan

Sheth never intended to complete the renovations; rather, they arranged for a straw

contractor—an individual named Mikhail ("Mike") Begoulov, doing business as JAD

Logistics, LLC—to fabricate invoices purporting to show work that, in truth, was

never done.

257. In response to an inquiry from SBAC regarding JAD Logistics and the

renovations to be completed, Pankaj and/or Rajan fabricated a letter, forging

Begoulov's signature, which Pankaj sent directly to SBAC:

August 1, 2017

JAD LOGISTICS LLC

561 DuPont Hwy, Dover, DE 19901

To whom it may concern.


As per the attached contract, all the work items are of cosmetic nature, and primarily involves, supply of furniture and fixtures, installation of carpet, new paint, installation of fixtures, assembly of furniture and it placement.

We are not altering and modifying any building structure, also we are not doing any new plumbing or electrical work.

 permits are not required for the attached contract pertaining to renovation of the hotel located at 2250 Lincoln Hwy, Lancaster PA.


Sincerely,

*Mike Bob* — 8|2|17

258.    Notably, the fraudulent address provided for JAD Logistics on this document—561 Dupont Hwy., Dover, DE 19901—was for a hotel owned and/or operated by a Delaware entity called Shri Sai Dover, LLC (a.k.a. Nazar Dover, LLC). The sole member of that entity was Mehul ("Burt") Khatiwala, who in 2021 was convicted of federal crimes related to his role in a fraudulent scheme similar to that alleged herein. *See United States v. Khatiwala* (D. Md. Crim. No. 19-0145). In 2025, Khatiwala was again convicted of federal crimes, in the same court, related to his role in another similar fraudulent scheme. *See United States v. Khatiwala, et al.* (D. Md. Crim. No. 23-0390). Among Khatiwala's codefendants in the most recent case were multiple leaders of the Temple, in Parlin, New Jersey, where Pankaj Sheth served as the longtime chair of the board of trustees.

101

259. First Bank's credit memorandum called for Tetra Tech, a third-party contractor, to monitor construction draws and verify progress on the renovations to the Lincoln Highway property, a point initially overlooked by Pankaj, Rajan, and Bhavesh. Upon information and belief, Pankaj and/or Rajan planned to produce fraudulent invoices from JAD Logistics and to misappropriate the funds released for construction draws, a goal that was threatened by the assignment of Tetra Tech.

260. When SBAC asked Pankaj (pretending to be Rohit), "who will be the contact for Tetra Tech[?]" Pankaj responded, "who is Tetra Tech and for what[?]" After SBAC explained Tetra Tech's role, Pankaj responded, briefly forgetting his assumed role as Rohit: "once the loan is closed I am out unless they hire me for [the] project[;] at this time they should contact Rohit [S]heth[.]" The SBAC loan processor—who had been led to believe the person writing those words *was* Rohit Sheth—responded, "What is Rohit's email?" adding, "I have not had communication with him [*i.e.*, the borrower and guarantor on a $5 million SBA loan]." In reply, Pankaj provided the email address ***87@gmail.com, which was used exclusively by Ravi Sheth, Rohit's son.

261. When First Bank's loan officer inquired of the credit committee whether the renovations could be monitored "in-house," rather than by Tetra Tech, the underwriter reminded the committee that this would not be permissible under SBA rules. On the same date, the underwriter separately cautioned First Bank that SBA rules required the borrower to produce an executed franchise agreement prior to closing.

262.    When First Bank relayed this information to Bhavesh, he promptly advised that a problem had arisen with respect to the proposed Radisson franchise and requested to substitute a Passport Inn franchise instead.

263.    Passport Inn was one of numerous brands owned by Hospitality International, Inc. Upon information and belief, these franchises were relatively inexpensive and easily obtained upon paying a franchise fee. Pankaj franchised numerous properties under various Hospitality International brands over the years, and despite occasional litigation related to his breach of franchise agreements—*see, e.g., Hospitality Int'l, Inc. v. Mt. Holly Hospitality, LLC, et al.* (Ga. Sup. Ct. Civ. No. 17-4670); *Hospitality Int'l, Inc. v. Skyview Management, LLC, et al.* (Ga. Sup. Ct. Civ. No. 17-3624)—Hospitality International continued to do business with the Sheth family.

264.    First Bank approved the proposed change of franchise and ordered an updated appraisal to assess the value of the property as a Passport Inn. Pankaj and Bhavesh produced a fabricated PIP estimate for renovations necessary for conversion to Passport Inn, totaling $209,900—significantly less than the purported $1 million in renovations needed for conversion to Radisson.

265.    On September 7, 2017, the underwriter submitted an amended credit memorandum outlining a $5 million SBA 7(a) loan to Fortune Holding and Wonder Hospitality (both purportedly 100% owned by Rohit Sheth, the personal guarantor) for the purchase of the Lincoln Highway property from 501 Hospitality, which was purportedly owned by Piyush Bhaidaswala (99%) and Rajan Sheth (1%). Due to the

103

significant reduction in the cost of renovations, the underwriter advised that a third-party monitor (*i.e.*, the role Tetra Tech was to provide) would not be required to oversee renovations, which could be completed after closing.

266. First Bank's loan committee approved the amended credit memorandum on the same date. But the SBA 7(a) authorization for the loan to Fortune Holding and Wonder Hospitality (SBA Loan No. PLP 96198850-02) predated the amended credit memorandum and the franchise change, meaning the loan authorized on behalf of the SBA was materially different from the loan First Bank agreed to fund. Nevertheless, closing was scheduled for September 14, 2017.

267. On September 8, Bhavesh advised the title company—but not the lender—that "Piyush Bhaidaswala will not be attending closing" and would "get doc[uments] notarized and signed upfront and give to another partner [*i.e.*, Rajan Sheth]," who would appear at the closing. Upon information and belief, the purpose of this maneuver was to facilitate the forgery of Bhaidaswala's signature by Pankaj and/or Rajan Sheth on loan documents before closing and to use as a notary public Puja Sheth, Rohit's daughter, unlawfully to attest to the forged signatures.

268. Days before the scheduled closing, an SBAC Processing Manager prepared closing documents for the parties, the title company, and First Bank, including an Affidavit of Arm's Length Transaction that, among other things, required Rohit and Rajan formally to certify their prior misrepresentations that they were not related.

104

269. The evening before the scheduled closing, Pankaj forwarded an email from Bhavesh to his attorney, John Calzaretto, requesting a return call. Upon information and belief, the call concerned how to address the Affidavit of Arm's Length Transaction requirement, given the prior misrepresentations that Rohit and Rajan Sheth were not related.

270. In response, Calzaretto suggested an amendment to the affidavit that would provide for an "exception" to the arm's length requirement:



271. Pankaj promptly forwarded Calzaretto's suggested language to Bhavesh, who in turn forwarded it to First Bank and SBAC. On the morning of the closing, SBAC advised that "this would not be SBA eligible" because "[i]n no way can a seller have any ownership in our borrowing entity." Bhavesh replied, "the seller member is not going to be a part of [the] new entity."

272. This was a material, false statement. Pankaj and Rajan were the beneficial owners of the Sheth entities that owned and operated the Lincoln Highway property both before and after the First Bank transaction. The straw

owner, Rohit Sheth, was never involved with the property or negotiation of the loan. His role was limited merely to appearing and executing documents at closing.

273. Nevertheless, in reliance on Bhavesh's false representation, SBAC provided an approved, amended affidavit hours later. Soon thereafter, Pankaj forwarded to the title company a fully executed and notarized copy of the amended Affidavit of Arm's Length Transaction:

**AFFIDAVIT OF "ARMS LENGTH TRANSACTION"**



~~COMMONWEALTH OF PENNSYLVANIA~~ State of NEW JERSEY   §
§
COUNTY OF ___Monmouth___   §

BEFORE ME, the undersigned authority, on this day personally appeared **Piyush Bhaidaswala and Rajan Sheth**, as Members of **501 HOSPITALITY MANAGEMENT LLC**, a Pennsylvania limited liability company (the "Seller"), and **Rohit Sheth**, as Member of **FORTUNE HOLDING LIMITED LIABILITY COMPANY**, a Pennsylvania limited liability company, and as Member of **WONDER HOSPITALITY LLC**, a Pennsylvania limited liability company (collectively, the "Borrower"), who, being by me duly sworn on oath, stated as follows:

1. Our names are **Piyush Bhaidaswala, Rajan Sheth, and Rohit Sheth.** We are over twenty-one (21) years of age, and competent to testify to the matters stated in this Affidavit, all of which are true and correct within our personal knowledge.

2. Pursuant to a Purchase and Sale Agreement, as amended (the "Contract") between the Seller and the Borrower, the Seller and Borrower are involved in a sale and purchase transaction whereby the Seller has agreed to sell to the Borrower certain real property and improvements and personal property located in Lancaster County, Pennsylvania, as is more particularly described in the Contract (the "Property").

3. As a material inducement to First Bank and the United States Small Business Administration to extend the Borrower an SBA guaranteed loan in the original principal amount of $5,000,000.00, we represent, affirm, and state the following:

   a. The purchase and sale transaction reflected in the Contract is an "Arms Length Transaction," meaning that the transaction has been negotiated by unrelated parties, except as disclosed herein, each of whom is acting in his or her own self-interest, and that the sales price is based upon, among other factors, the fair market value of the Property.

   b. Except for Rajan Sheth, who is related to Rohit Sheth, no other members of the Seller is related as a family member or business associate of any affiliate entities owned by Rohit Sheth.

   c. Except for Rajan Sheth, Rohit Sheth is not related as a family member or a business associate in any affiliated entities of any members of the Seller.

106

d.      There are no hidden terms or agreements or special understandings between the Seller and the Borrower or any of their affiliated entities.

e.      There is no agreement, either oral, written, or implied, between the Seller and the Borrower.

f.      Each signatory to this Affidavit expressly acknowledges that any misrepresentation made by them may subject them to civil and criminal liability.

The undersigned hereby declare under penalty of perjury under the laws of the Commonwealth of Pennsylvania that all statements made in this Affidavit are true and correct.

The undersigned further understand that it is a federal crime punishable by fine or imprisonment, or both, to knowingly and willfully make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, *et seq.*

_____
Piyush Bhaidaswala

_____
Rajan Sheth

_____
Rohit Sheth

274.    Aside from the inherent contradiction of attesting that "the transaction has been negotiated by unrelated parties" while concomitantly acknowledging a familial relationship between the buyer and seller, this document contains numerous, material misrepresentations, including that: (a) the parties negotiated in their own "self-interest"; (b) there was no affiliation between entities owned or controlled by the seller and buyer; and (c) there were no "hidden terms," "special understandings," or implied agreements between the parties.

107

275.    Upon information and belief: (a) the signatures of Piyush Bhaidaswala and Rohit Sheth on this document are forgeries; and (b) only Rajan Sheth, who was in truth a beneficial owner of both the selling and borrowing Sheth entities, signed for himself. Moreover, the signatures, executed under penalty of perjury with specific acknowledgement of the civil and criminal consequences of false certification, were unlawfully notarized by Puja Sheth, Rohit's daughter.

276.    Rohit Sheth's only involvement in this $5 million loan transaction to entities purportedly owned by him was to appear and sign documents at closing. Among the documents he signed was a fraudulent certification that he paid the required equity injection (as noted previously, he did not):[17]

---

**BORROWER'S CERTIFICATION OF EQUITY INJECTION**
Loan #3000001715
SBA Loan # PLP96198850-02
**Borrower: Fortune Holding LLC and Wonder Hospitality LLC**

PRE-PAID INJECTION TO SELLER:

$600,000.00 paid to 501 Hospitality Management LLC on 12/15/16 for deposit toward purchase of Radisson hotel.

TOTAL AMOUNT VERIFIED: $600,000.00.

TOTAL AMOUNT NEEDED FOR INJECTION PER LOAN REPORT $600,000.00.

By signing this statement below I am legally certifying that the aforementioned information is true and correct.

Rohit Sheth

---

[17] Based on the government's review of dozens of signature exemplars under circumstances suggesting authenticity, Rohit's notarized signature on this certification is authentic. He consistently signed his name "Sheth R.I." a convention that Pankaj and/or Rajan failed to emulate in forging Rohit's signature.

108

277. Following the closing, the loan proceeds were disbursed to Noah Bank in the amount of $2,690,831.88 (pay-off of the 501 Hospitality/IVS SBA loan) and to 501 Hospitality in the amount of $1,566,804.12 (the purported sale price after certain deductions). Thus, through the concerted, fraudulent acts and omissions of Pankaj, Rohit, Rajan, and Bhavesh Sheth, Sanjay Patel, Creative Funding, John Calzaretto, Calzaretto & Bernstein, 501 Hospitality, Piyush Bhaidaswala, Fortune Holding, and Wonder Hospitality, the Sheth family paid off the Noah Bank loan and received additional proceeds totaling at least $1,566,804.12 in the First Bank transaction.

278. Soon after closing, First Bank sold the 75% SBA-guaranteed portion of the loan on the secondary market.

279. Upon submission of an invoice, First Bank paid Creative Funding a broker's fee of $75,000 for work done by Bhavesh Sheth on the First Bank loan.

280. On or about November 5, 2018, Fortune Holding and Wonder Hospitality defaulted on the First Bank loan. First Bank commenced a foreclosure action in the Court of Common Pleas of Lancaster County, *see First Bank v. Fortune Holding, LLC* (Lanc. Co. Ct. Comm. Pl. No. CI-19-02097), as well as a separate action against Rohit Sheth in the United States District Court for the District of New Jersey, alleging breach of his personal guaranty, *see First Bank v. Sheth* (D. N.J. Civ. No. 19-9209).

281.    On January 4, 2019, First Bank submitted a request for the SBA to honor its guaranty, and on March 11, 2019, the SBA repurchased the 75% guaranteed portion of the First Bank loan from the secondary market.

282.    On March 14, 2022, while the SBA was awaiting First Bank's delayed submission of a post-purchase review package—at a time when First Bank was aware of the government's investigation underlying this Complaint—a First Bank representative proposed voluntarily repaying the SBA-guaranteed portion of the loan in full and requested a payoff amount from the SBA.

283.    On March 22, 2022, the SBA advised First Bank that the payoff amount was $3,646,529.34.

284.    On May 17, 2022, Pankaj arranged for private lender Rosdev to purchase the promissory note associated with the loan from First Bank for $5 million. Upon information and belief, First Bank used the proceeds of that transaction to pay off the SBA, in full, without ever submitting its post-purchase package for review.

285.    As a result of the 2022 Rosdev transaction, Rosdev now owns the long-shuttered Lincoln Highway property. Upon information and belief, the Sheths hold an option to repurchase.

## III.    The Poconos Loans

286.    In or around fall 2016, Pankaj and/or Rajan Sheth learned of an opportunity to purchase a hotel in the Pocono Mountains at 475 Camelback Road, in Tannersville, PA.

287.   Pankaj and/or Rajan sought to fund the purchase through a new SBA loan, to a new Sheth entity, for which they planned to assign a controlling interest to a straw owner, Vimal Madhiwala. As noted, members of the Madhiwala family—including Dinesh, Nimish, Shilpa, and Vimal Madhiwala—were longtime Sheth family associates, at times residing and working at various Sheth-owned hotels, including the Annapolis and Lititz Pike properties.

288.   Vimal Madhiwala resided in Charlotte, North Carolina, where he owned and operated one or more convenience stores. Upon information and belief, he had no experience as a hotel owner or manager. Nor did Pankaj or Rajan intend for him to be involved in the ownership or management of the Poconos property. Rather, his purpose was to serve merely as a straw owner on an SBA loan for which the Sheths were otherwise ineligible.

289.   Pankaj consulted with Bhavesh regarding the straw ownership of a new business entity through which the Sheths would purchase the Poconos property. By email to Bhavesh on October 5, 2016, for example, Pankaj inquired whether membership consisting of Madhiwala at 64%, Jayprakash Sheth at 18%, and Rohit Sheth at 18% would be acceptable to lenders, without the necessity of minority interest holders providing personal guarantees. Two days later, he asked Bhavesh whether an alternative ownership configuration would evade scrutiny of tax returns and credit reports.

290.   When Bhavesh responded to these questions in the affirmative, Pankaj immediately began forwarding SBA application materials for a loan to an as-yet

111

unformed entity that would be controlled by Madhiwala. Upon information and belief, Pankaj fabricated these documents without consultation with, or permission from, the would-be straw owner, forging the signatures of Vimal Madhiwala and his spouse Tejal Madhiwala on each.

### A. The Parke Bank Commercial Loan

291. On November 10, 2016, Pankaj executed a Purchase and Sale Agreement by which he, individually, agreed to purchase the Poconos property for $4.275 million.

292. The agreement required payment of a $105,000 deposit. Pankaj paid the deposit by purportedly authorizing the wire transfer of a "distribution" to himself from 501 Hospitality, as later explained in an affidavit prepared by attorney Calzaretto:

112

**JOHN A. CALZARETTO, ESQ.**
**CALZARETTO & BERNSTEIN, LLC**
459 Route 38 West
Maple Shade, New Jersey 08052
(856) 667-0400 Telephone
(856) 667-1477 Facsimile

**AFFIDAVIT OF PANKAJ SHETH**

1. I, PANKAJ SHETH, am an adult individual. I reside at ▮▮▮▮▮▮▮ Morganville, New Jersey 07751.

2. I recently authorized a transfer of funds from 501 Hospitality Management LLC, in the aggregate amount of ONE HUNDRED AND FIVE THOUSAND AND 00/100 DOLLARS ($105,000.00) to Diversified Settlement Services, Inc., 1200 veterans Highway, Suite C-7, Bristol, PA 19007, hereinafter the "Transferred Funds".

3. The Transferred Funds constitute a distribution from 501 Hospitality Management LLC to myself and do not constitute loan proceeds.

WHEREFORE, the undersigned certifies that the above statements are true and if same are willfully false, that I am subject to punishment.

PANKAJ SHETH

Dated: June 06, ___, 2017

113

293. At the same time that Pankaj Sheth represented to Parke Bank that he "authorized" a "distribution" to himself from 501 Hospitality, he separately represented to First Bank—and before that, to Noah Bank—that he had no ownership interest in the same entity, and thus no authority to make any such distribution.

294. In need of financing before the closing date, Pankaj and Rajan, in consultation with Bhavesh and attorney Calzaretto, planned to form a new entity—Camelback Resort, LLC—in which Vimal Madhiwala was a member, and then to secure a loan for the entity, to which they would assign Pankaj's interest in the Purchase and Sale Agreement.

295. To that end, Pankaj directed Calzaretto to prepare documents purporting to effect an assignment from himself to Camelback Resort, LLC, and Madhiwala. On November 16, 2016, Calzaretto sent Pankaj a document entitled "Assignment and Assumption of Interests," advising him to "have the same fully executed upon the formation of Camelback Resort, LLC."

296. On November 22, 2016, Pankaj and/or Rajan caused the formation of three new Pennsylvania limited liability companies: Camelback Resort, LLC (the ownership entity); Chateau Hospitality Management, LLC (the management entity); and Tannersville Beverage, LLC (the manager of an attached bar and restaurant and holder of a liquor license). Organizational documents filed with the Pennsylvania Department of State reported Vimal Madhiwala as the sole member

of Camelback Resort, Jayprakash Sheth as the sole member of Chateau Hospitality, and Ravi Sheth as the sole member of Tannersville Beverage; however, contact information reported on all the organizational filings was for Rajan Sheth at an address for the Sheths' Ocean Township hotel in New Jersey.

297.   Over the ensuing months, Bhavesh Sheth and Sanjay Patel presented loan proposals to various SBA lenders. Several of those negotiations resulted in the lenders providing letters of intent, indicating their agreement to fund the proposed loans on specified terms. Those letters required execution by the prospective borrower, reflecting acceptance of the terms set forth. On each such letter, Pankaj or Rajan Sheth forged the signature of Vimal Madhiwala.

298.   By early summer 2017—with the seller of the Poconos property pressing to close on the Purchase and Sale Agreement, and with negotiations involving various SBA lenders ongoing—Pankaj and/or Rajan elected to finance the purchase through a short-term commercial loan from Parke Bank, a federally insured financial institution based in New Jersey.

299.   At the direction of Pankaj, attorney Calzaretto drafted various assignments and amended corporate documents purporting to show Pankaj and Vimal Madhiwala as joint owners of Camelback Resort, Chateau Hospitality, and Tannersville Beverage. These documents contained material misrepresentations insofar as, among other things, they reported Vimal Madhiwala as an owner of the entities when the true beneficial owners were Pankaj and Rajan Sheth.

115

300.    In reliance on these documents, Parke Bank agreed to fund a $3.675 million bridge loan to Camelback Resort, secured by the corporate guarantees of Tannersville Beverage and two other Sheth entities associated with the Ocean Township property—K&D Associates, LP, and Star Hospitality, LLC—as well as the personal guarantees of Pankaj Sheth and Vimal Madhiwala, the purported members of Camelback Resort.

301.    Closing on the sale of the Poconos property occurred on June 2, 2017, with Camelback Resort purchasing the property from the seller for $4.275 million. The purchase funds consisted of wire payments of $155,000 from 501 Hospitality (the Sheth entity that owned the Lincoln Highway property); $450,000 from Vimal Madhiwala; and $3,646,488.50 from Parke Bank.

302.    In advance of closing, Pankaj Sheth directed payments to Madhiwala from various Sheth entities, which constituted Madhiwala's $450,000 wire payment. Thus, like Pankaj's manipulation of payments to his brother Rohit in support of the First Bank transaction, he similarly manipulated payments to Madhiwala for the purpose of giving rise to the appearance that Madhiwala had a stake in the borrowing entity that he, in truth, did not have.

303.    Upon information and belief, Rajan Sheth appeared at closing for the borrowers and signed the HUD-1 settlement statement for Pankaj:

116

## A. Settlement Statement (HUD-1)

OMB Approval No. 2502-0265

**B. Type of Loan**

| 1. ☐ FHA  2. ☐ RHS  3. ☒ Conv. Unins.  4. ☐ VA  5. ☐ Conv. Ins. | 6. File Number: DSS-44273 | 7. Loan Number: | 8. Mortgage Insurance Case Number: |
|---|---|---|---|

**C. Note:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agents are shown. Items marked "(p.o.c)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. Name & Address of Borrower: CAMELBACK RESORT LLC 143 Valencia Drive, Morganville, NJ 07751 | E. Name & Address of Seller: HOSPITALITY ASSOCIATES OF TANNERSVILLE, L.P. 729 E. Pratt Street, Suite 800, Baltimore, MD 21202 | F. Name & Address of Lender: PARKE BANK P.O. BOX 40, 601 DELSEA DRIVE, SEWELL, NJ 08080 |
|---|---|---|
| G. Property Location: 475 Camelback Road Tannersville, PA 18372 Pocono Township | H. Settlement Agent: Diversified Settlement Services, Inc. 1200 Veterans Highway, Suite C-7, Bristol, PA 19007 | I. Settlement Date: 06/02/2017 Disbursement Date: 06/08/2017 |

**Signature Page**

### HUD CERTIFICATION OF BUYER AND SELLER

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

**Buyers**

CAMELBACK RESORT LLC

_____
PANKAJ SHETH, MANAGING MEMBER

304.    In advance of the closing date, Pankaj signed for himself, and forged the signature of his spouse Renuka, on the corporate guarantees of K&D Associates and Star Hospitality.

305.    In sum—through the concerted fraudulent acts and omissions of Pankaj and Rajan Sheth, Vimal Madhiwala, John Calzaretto, Calzaretto & Bernstein, Camelback Resort, Tannersville Beverage, K&D Associates, and Star Hospitality—Parke Bank, a federally insured financial institution, was fraudulently

117

induced to fund a $3.675 million loan to Camelback Resort, which the Sheths used to purchase the Poconos property.

### B.     The Peapack-Gladstone Bank SBA 7(a) Loan

306.   By the terms of the Parke Bank loan, all payments of principal and interest were required to be repaid by September 2, 2017, though the parties later agreed to extend the maturity date to January 1, 2018.

307.   Upon receiving no payments of principal or interest by the extended maturity date, Parke Bank declared a default on February 12, 2018. In response, Pankaj and Rajan contacted attorney Calzaretto, who urged forbearance from Parke Bank's attorneys, promising that his clients were on the brink of refinancing the loan. Meanwhile, Pankaj, Rajan, and their brokers continued negotiations with SBA lenders.

308.   On March 2, 2018, Bhavesh Sheth presented a proposal to SBA-preferred lender Peapack-Gladstone Bank ("PGB") for a $4 million SBA 7(a) loan to Camelback Resort. The proposal identified the Camelback Resort owners as Vimal Madhiwala (85%) and (for the first time) Rajan's spouse, Khushali Sheth (15%). Bhavesh summarized the proposal in a "Credit Memo" as follows:

118

## Credit Memo

**Borrower:**
Camelback Resort, LLC dba Chateau Resort
475 Camelback Road
Tannersville, PA, 18372

**(Brief Summary):** The borrower is requesting a $4,000,000 SBA 7(a) to refinance existing debt the subject property known as Chateau Resort dba 475 Camelback Road, Tannersville, PA, 18372.

**Use of Proceeds:**

| Purpose | SBA Loan | TOTAL | | | |
|---|---|---|---|---|---|
| Refinance Existing debt | $3,675,000 | $3,675,000 | | | |
| renovations | $ 140,000 | $ 140,000 | | | |
| Guaranty Fee | $ 110,000 | $ 110,000 | | | |
| Closing Cost/Working Capital | $ 75,000 | $ 75,000 | | | |
| TOTAL: | $4,000,000 | $4,000,000 | | | |

### Management/Ownership:

| Principal | Ownership |
|---|---|
| VImal Madiwala | 85% |
| Khushi Sheth | 15% |

**Vimal Madiwala** has been managing and operating subject hotel since acquisition.  He has owned several businesses since 1996. He currently owns several convenience stores located in North Carolina.. Mr. Madhiwala also has experience in the hotel industry. He managed Days Inn from 2009 to 2011. He was the marketing and activity director, and was responsible for the operations management. Mr. Madiwala also managed Ramada Inn, he took care of the overall management including the marketing and human resource management.

309.    These were material, false statements designed to induce PGB to fund the proposed loan. In truth, neither Vimal Madhiwala nor Khushali Sheth was ever involved with "managing and operating" the Poconos hotel. Nor were they beneficial owners of Camelback Resort or Chateau Hospitality. Rather, they were merely straw owners nominated by Pankaj, Rajan, and Bhavesh Sheth for the purpose of fraudulently inducing an SBA loan for which the Sheths were otherwise ineligible.

310.    On March 26, 2018, PGB issued a letter of intent to fund a $4 million SBA 7(a) loan to Camelback Resort and Chateau Hospitality, as co-borrowers, secured by the corporate guaranty of Tannersville Beverage and the personal

119

guaranty of Vimal Madhiwala. According to its terms, the purpose of the loan was to repay the defaulted Parke Bank loan ($3.675 million) and to pay for renovations to the Poconos property ($140,000) necessary for conversion to a national hotel franchise.

311.   Pankaj or Rajan Sheth electronically signed Madhiwala's signature on the letter of intent, purporting to certify his approval and acceptance of the loan terms, and Bhavesh submitted the signed letter to PGB on or about the same date.

312.   Although Pankaj, Rajan, and Bhavesh initially reported to PGB that Madhiwala and Khushali Sheth respectively held 85% and 15% interests in the borrowing entities, they reported a different membership configuration on application materials. On or about May 6, 2018, for example, Bhavesh submitted an SBA application (reporting contact information for Rajan Sheth) that showed Madhiwala with a 91% interest and Khushali with a 9% interest. Pankaj and/or Rajan forged signatures of Vimal Madhiwala and Khushali Sheth after having been specifically advised of the criminal and civil penalties for making false certifications to a federally insured financial institution, such as PGB:

120

## SBA APPLICATION

You are authorized to make all inquiries you deem necessary to verify the accuracy of the information submitted for this loan request and to determine the credit-worthiness of the undersigned. The undersigned authorizes any person or consumer reporting agency, etc. to give you any information it may have on the undersigned. Each of the undersigned authorizes you to answer questions about your credit experience with the undersigned. As long as any obligations or guarantee of the undersigned to you is outstanding, the undersigned shall supply annually an updated financial and income statement. Any financial or other information that the undersigned gives you shall be your property.

| | |
|---|---|
| _CamelBrick Resort LLC_ | _05/04/18_ |
| Name of Borrower | Date |
| _Vimal Madhiwala_ | |
| Owner, Partner, Officer | Owner, Partner, Officer |
| _Khushali Sheth_ | |
| Owner, Partner, Officer | Owner, Partner, Officer |

313.   By email dated May 11, 2018, Rajan sent Bhavesh the purported SBA Personal Financial Statement of Vimal Madhiwala. Upon information and belief, this document was fabricated by Pankaj and/or Rajan Sheth, who forged the signatures of Vimal and Tejal Madhiwala while certifying the accuracy of the document's content and acknowledging the civil and criminal consequences of false certification to a federally insured financial institution such as PGB:

OMB APPROVAL NO.: 3245-0188
EXPIRATION DATE: 01/31/2018

**PERSONAL FINANCIAL STATEMENT**
**7(a) / 504 LOANS AND SURETY BONDS**

**U.S. SMALL BUSINESS ADMINISTRATION**          As of 02/21/2018

SBA uses the information required by this Form 413 as one of a number of data sources in analyzing the repayment ability and creditworthiness of an application for an SBA guaranteed 7(a) or 504 loan or a guaranteed surety.

Complete this form for: (1) each proprietor; (2) general partner; (3) managing member of a limited liability company (LLC); (4) each owner of 20% or more of the equity of the Applicant (including the assets of the owner's spouse and any minor children); and (5) any person providing a guaranty on the loan

Return completed form to:
For 7(a) loans:  the lender processing the application for SBA guaranty
For 504 loans:  the Certified Development Company (CDC) processing the application for SBA guaranty
For Surety Bonds:  the Surety Company or Agent processing the application for surety bond guaranty

| | | | |
|---|---|---|---|
| **Name** Vimal Madhiwala | | **Business Phon** ███ | |
| **Home Addres** ███ | | **Home Phone** | |
| **City, State, & Zip Code** Charlotte NC 28269 | | | |
| **Business Name of Applicant** Camelback Resort LLC | | | |
| **ASSETS** (Omit Cents) | | **LIABILITIES** (Omit Cents) | |

I authorize the SBA/Lender/Surety Company to make inquiries as necessary to verify the accuracy of the statements made and to determine my creditworthiness.
**CERTIFICATION:** (to be completed by each person submitting the information requested on this form)

By signing this form, I certify under penalty of criminal prosecution that all information on this form and any additional supporting information submitted with this form is true and complete to the best of my knowledge. I understand that SBA or its participating Lenders or Certified Development Companies or Surety Companies will rely on this information when making decisions regarding an application for a loan or a surety bond. I further certify that I have read the attached statements required by law and executive order.

| | | |
|---|---|---|
| Signature *Vimal madhiwala* | Date | 05 11 2018 |
| Print Name Vimal madhiwala | Social Security No. ███ | |
| Signature J.r. madhiwala | Date | 05/11/2018 |
| Print Name Trijac madhiwala | Social Security No. ███ | |

**NOTICE TO LOAN AND SURETY BOND APPLICANTS:** CRIMINAL PENALITIES AND ADMINISTRATIVE REMEDIES FOR FALSE STATEMENTS:

Knowingly making a false statement on this form is a violation of Federal law and could result in criminal prosecution, significant civil penalties, and a denial of your loan or surety bond application. A false statement is punishable under 18 U.S.C. §§ 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. § 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a Federally-insured institution, a false statement is punishable under 18 U.S.C. § 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000. Additionally, false statements can lead to treble damages and civil penalties under the False Claims Act, 31 U.S.C. § 3729, and other administrative remedies including suspension and debarment.

314.   On May 18, Bhavesh submitted this document to PGB. Like numerous other loan produced by the Sheths, the Personal Financial Statement contained

122

material, false statements designed to induce PGB to fund an SBA loan for which the beneficial owners of the borrowing entities were ineligible.

315.   As in earlier SBA loan negotiations, a true beneficial owner of the borrowing entities—this time, Rajan Sheth—assumed the identity of the straw owner for purposes of loan negotiations with PGB, leading to confusion by the lender as to the identity of the borrower's principal. This deception was facilitated by reporting an email address and phone number belonging to Rajan Sheth as the contact information for Vimal Madhiwala.

316.   At around the same time, Pankaj and/or Rajan directed: (a) attorney Calzaretto to prepare a series of back-dated corporate documents purporting to demonstrate assignments of membership interests to Madhiwala and Khushali Sheth; and (b) an accountant to create amended tax returns purporting to show the interests of Madhiwala and Khushali in the borrowing entities at relevant times. Upon information and belief, Pankaj and/or Rajan Sheth forged the signatures on these documents and submitted them to Bhavesh who, in turn, submitted them to PGB for the purpose of satisfying various loan conditions.

317.   For example, on June 21, 2018, Bhavesh emailed PGB's loan officer a series of documents purporting to assign the membership interests of Ravi Sheth in Tannersville Beverage to Madhiwala and Khushali for no consideration. Upon information and belief, the signatures on these documents were forged by Pankaj or Rajan, including that of the Sheths' ubiquitous witness, Jay Smith:

**Assignment of Membership Interests**

*For Value Received*

**RAVI SHETH**

Hereby sell, assign, and transfer unto Vimal Madhiwala

All of the Membership Interest in

Tannersville Beverage, **LLC**
A Limited Liability Company of PA

Standing in the name of the undersigned on the books of said limited liability company for (**91.00%**) **Ninety-one present** ownership interest.

Dated:

Witness:

_____          _____
                                              Ravi Sheth

6/1/17                                      6/1/17

318.    Having initially represented that renovations to the Poconos property were necessary for conversion to a Motel 6 franchise, Bhavesh once again arranged with the lender to substitute a Hospitality International franchise, Red Carpet Inn, following PGB's initial approval of the loan under a different franchise flag.

319.    Under the contemplated loan terms, $140,000 was designated for renovation costs. Upon information and belief, Pankaj and Rajan never intended to complete renovations; instead, they resolved to fabricate invoices purporting to

124

demonstrate that renovations had been completed in an effort to induce PGB to release the designated funds from escrow.

320.    To this end, Rajan Sheth began forwarding a series of fraudulent invoices to Bhavesh on June 26, 2018. Among these was an invoice dated December 12, 2018—*i.e.*, approximately six months in the future—purportedly from Hotel Depot, Inc., attesting to $130,000 in expenses and stamped "Paid":

Hotel Depot Inc

**Invoice**

400- H Corporate Ct,
South Plainfield, NJ 07080
Ph:- 908-222-9383
Fax :- 908-222-9386

| Date | Estimate # |
|------|-----------|
| 12/12/2018 | 15446 |

| Name / Address | Ship To |
|----------------|---------|
| Chateau Resort<br>475 Camelback Resort<br>Tannersville, PA 18372 | |

**Paid**

| All  Applicable Taxes & Freight if any will be paid by the customer or the owner to the appropriate authority. | | |
|---|---|---|
| | Subtotal | $130,000.00 |
| **Please Verify and Sign :-**<br>X-------------------- | Sales Tax  (0.0%) | $0.00 |
| | Total | $130,000.00 |

321.   Upon learning of his error with respect to the date of the invoice, Rajan

sent Pankaj and Bhavesh a modified version, listing the same materials under a

new invoice number, indicating a date of December 15, 2017:



322.   In reliance on numerous fraudulent misrepresentations and fabricated

documents, PGB approved the loan and submitted a guaranty application to the

SBA, issuing an SBA Loan Number on June 20, 2018 (SBA Loan No. PLP

26861370-01). PGB then issued a Note on June 28, 2018, the scheduled closing date.

126

323.    At closing, the Sheths' attorney, John Calzaretto, provided PGB with a "legal opinion letter," attesting to, among other things, the authenticity of loan documents, the accuracy of representations made by the borrowers and guarantors, and the legality of their conduct.

324.    The legal opinion letter contained numerous representations that Calzaretto knew or should have known were false, including that (a) the "Loan Documents have each been duly authorized, executed and delivered by the Borrower(s) and Guarantor(s)"; (b) they "create valid priority security interests"; (c) they do not "contravene any provision of existing law or regulation"; and (d) "[t]he Borrower(s) and Guarantor(s) have complied with all applicable provisions of law requiring any designation, declaration, filing, registration and/or qualification with any governmental authority in connection with such execution, delivery, and performance."

325.    Upon information and belief, Vimal Madhiwala personally appeared at closing and signed numerous documents, fraudulently attesting to his interest in the borrowing entities, including but not limited to falsely certifying that he was a beneficial owner:

127

## Certification of Beneficial Owner(s)

Persons opening an account on behalf of a legal entity must provide the following information:

Note: FinCEN proposes to define legal entity customers to include corporations, limited liability companies, partnerships or other similar business entities (whether formed under the laws of a state or of the United States or a foreign jurisdiction). This includes all entities that are formed by a filing with the Secretary of State (or similar office), as well as general partnerships and unincorporated associations. It does not include trusts, other than those that might be created through a filing with a state (E.G. statutory business trusts).

a. *Name of Person Opening Account:* VIMALKUMAR MADHIWALA

b. *Name of Legal Entity for Which the Account is Being Opened:*
CAMELBACK RESORT LLC

d. The following information for one individual with significant responsibility for managing the legal entity listed above, such as:
- An executive officer or senior manager (e.g., Chief Executive Officer, Chief Financial Officer, Chief Operating Officer, Managing Member, General Partner, President, Vice President, Treasurer); or
- Any other individual who regularly performs similar functions.

(If appropriate, an individual listed under section (c) above may also be listed in this section (d).)

| Name | Date of Birth | Address (Physical Home Address – No PO Boxes) | For U.S. Persons: Social Security Number | For Foreign Persons: Passport Number and Country of Issuance, or other similar identification number[1] |
|---|---|---|---|---|
| VIMALKUMAR MADHIWALA | ███████ | ███████ | | |

I, VIMALKUMAR MADHIWALA _____ (name of person opening account), hereby certify, to the best of my knowledge, that the information provided above is complete and correct.

X Signature: _____    X Date: 6·28·18

326.    In truth, at all relevant times, Pankaj and Rajan Sheth were the beneficial owners of all Sheth entities associated with the Poconos property, as demonstrated by PGB's Customer Profile, completed on the same date, reporting a phone number and email address for Rajan Sheth.

327.    On or about June 30, 2018, Bhavesh Sheth submitted to PGB an invoice on behalf of Creative Funding for payment of a broker's fee in the amount of $80,000. PGB paid the invoice on or about July 11.

128

328.    At around the same time, Pankaj requested that PGB release from escrow the $140,000 held back pending proof of renovation expenditures. In response, PGB advised that it required, among other things, proof that Chateau Hospitality had repaid Fortune Holding (the Sheth entity that purchased the Lincoln Highway hotel in the September 2017 First Bank transaction) for a purported payment that entity made to Hotel Depot on behalf of Chateau Hospitality. PGB required Chateau Hospitality to include proof of a wire transfer of the funds, as well as a signed invoice from Hotel Depot.

329.    At the direction of Pankaj, Rajan emailed him a July 2018 bank statement from a Citizen's Bank account in the name of Chateau Hospitality, showing, among other activity, an incoming wire in the amount of $101,221 on July 19, 2018, and an outgoing wire in the same amount the very next day. Bank records in possession of the government confirm that Fortune Holding wired the funds to Chateau Hospitality on July 19 and that Chateau Hospitality then wired the same amount back to Fortune Holding on July 20.

330.    On August 7, Pankaj emailed PGB's loan officer, attaching the portion of the Chateau Hospitality bank statement listing the debits (*i.e.*, the outgoing payments), but omitting the credits (*i.e.*, the incoming payments), thereby giving rise to the appearance that Chateau Hospitality repaid the Fortune Holding debt in full. To the contrary, Pankaj and Rajan Sheth simply manipulated wire transactions among bank accounts they controlled for affiliated Sheth entities for the purpose of fraudulently inducing PGB to release the funds from escrow.

129

331.    This gambit worked. Upon receipt of the partial Chateau Hospitality bank statement from Pankaj, PGB's loan officer advised that the statement "looks good," adding "[j]ust need a paid invoice from Hotel Depot" to release the funds from escrow.

332.    On August 7, Pankaj sent PGB another fabricated Hotel Depot invoice, purporting to attest to payment by "Chateau Resort" of $101,221 on January 8, 2018. Upon information and belief, Pankaj or Rajan forged the signature of Vimal Madhiwala:

Hotel Depot Inc

400- H Corporate Ct,
South Plainfield, NJ 07080
Ph:- 908-222-9383
Fax :- 908-222-9386

**Invoice**

| Date | Estimate # |
|---|---|
| 1/8/2018 | 15426 |

| Name / Address | Ship To |
|---|---|
| Chateau Resort<br>475 Camelback Resort<br>Tannersville, PA 18372 | |

**PAID**

All  Applicable Taxes & Freight if any will be paid by the customer or the owner to the appropriate authority.

Please Verify and Sign :-
X--*Vimal madhiwala*

| | |
|---|---|
| Subtotal | $101,221.00 |
| Sales Tax  (0.0%) | $0.00 |
| Total | $101,221.00 |

130

333. In reliance on the fraudulent bank statement and invoice, PGB released the funds held in escrow on or about August 8, delivering a check to Pankaj Sheth.

334. On or about August 1, 2018, PGB sold the 75% SBA-guaranteed portion of the loan on the secondary market.

335. To date, despite repeated missed or late payments by Camelback Resort and Chateau Hospitality, PGB has not declared a default. Upon information and belief, the Sheths' ability to stave off default and foreclosure was substantially aided by forbearance agreements during the COVID-19 pandemic and the Sheths' fraudulent inducement of at least three (3) CARES Act loans for entities related to the Poconos property, as discussed below.

336. In sum, through the concerted fraudulent acts and omissions of Pankaj, Rajan, Khushali, and Bhavesh Sheth, Vimal Madhiwala, Sanjay Patel, Creative Funding, John Calzaretto, Calzaretto & Bernstein, Camelback Resort, Chateau Hospitality, and Tannersville Beverage, Peapack-Gladstone Bank, a federally insured financial institution, was fraudulently induced to fund a $4 million SBA 7(a) loan to Camelback Resort and Chateau Hospitality, which the Sheths used to pay-off the defaulted Parke Bank loan and enrich themselves in the amount of at least $140,000.

## IV. The BCB Bank Loans

337. As of 2016—following Vraj Brig's 2011 bankruptcy and defaults on the 2013 and 2014 Noah Bank loans, which were at that time in active litigation—the

Sheth entity that owned the Penrose hotel was sorely in need of financing, and the Sheths resorted to emergency measures to secure funding.

338. In or around September 2016, Vraj Brig, through Pankaj Sheth and John Calzaretto, renewed agreements with various entities that leased the rooftop of the Penrose hotel—a seventeen-story tower nearby the Philadelphia airport and South Philadelphia sports complex—associated with the operation of a telecommunications facility, netting over $1.4 million at the time of execution. Upon information and belief, the telecommunications facility continues to provide substantial revenue for the Sheth family.

339. At around the same time, the Sheths—primarily, Rishi Sheth—started a long-term airport parking business at the Penrose property, negotiating with various online vendors to establish reservation and referral systems. Upon information and belief, the airport parking business has been in operation ever since, further providing a continuing source of revenue for the Sheth family.

340. Also in September 2016, Pankaj secured a short-term, high-interest loan from private lender Rosdev to Vraj Brig in the amount of $4.25 million. Pankaj used the Rosdev loan proceeds to pay off the defaulted Noah Bank loans, bringing an end to the ongoing foreclosure and confessed judgment litigation. Pankaj exclusively negotiated the Rosdev loan, and, upon information and belief, forged the signature of his spouse, Renuka, on the loan documents.

341. At around the same time, Pankaj and Rajan sought new SBA and/or commercial loans for the Penrose property. They directed their brokers, Bhavesh

Sheth and Sanjay Patel, to pitch loan proposals to potential lenders—including many of the same lenders with which the brokers were concomitantly negotiating loans for the Clearfield, Lincoln Highway, and Poconos properties.

342. The Sheths, through their brokers, proposed loans from lenders for the purposes of: (a) paying-off short term debt (primarily, the 2016 Rosdev loan); (b) generating short term revenue (by fabricating documents purporting to evince a debt requiring payoff to an entity secretly controlled by the Sheths); and (c) financing extensive renovations to the Penrose hotel that were purportedly necessary to establish a Radisson franchise.

343. Bhavesh and Patel aggressively shopped loan proposals among various lenders that were often at odds in critical respects, including the identity of the owners and operators of relevant Sheth entities. For example, Pankaj directed his accountant to prepare drafts of amended tax returns for Vraj Brig and Skyview for certain years, including 2013 and 2014, showing himself with a 99% interest and Ravi Sheth with a 1% interest in both entities. On October 21, 2016, Pankaj forwarded those amended returns to Bhavesh for the purpose of submission to certain lenders who were at that time considering loan proposals.

344. Because Bhavesh served as a Noah Bank loan officer on the 2013 and 2014 loans, he was aware that Ravi Sheth personally guaranteed both Noah Bank loans as the sole member of the same entities during that timeframe. Thus, Bhavesh knew that amended tax returns reporting Pankaj with 99% interest in

133

2013 and 2014 were false. Nevertheless, he submitted them to various lenders for the purpose of fraudulently inducing loans to Vraj Brig.

345.    The reported Vraj Brig ownership percentages also changed on various loan proposals. On December 23, 2016, for example, Pankaj sent Bhavesh an SBA Borrower Information Form showing Renuka with an 82% interest in Vraj Brig and Rishi with an 18% interest. But, in a loan proposal sent to a different lender on February 8, 2017, Bhavesh reported that Renuka was the sole owner of Vraj Brig ever since a "stock purchase in [the] first quarter of 2016."

346.    The Sheths' various loan proposals also differed in terms of the sham debt to be refinanced. On December 23, 2016, Pankaj sent Bhavesh a Business Debt Schedule reporting a $1.5 million loan to Vraj Brig from the Sheth entity K&D Hospitality, LLC. Three days later, however, he sent a revised Business Debt Schedule showing a loan to Vraj Brig in the same amount, but from a different Sheth entity: RS Land Investment, LLC. Moreover, the amount of debt reportedly owed to Sheth entity lenders on various business debt schedules varied considerably—from $1.3 million (in July 2017) to $2.6 million (in November 2017).

347.    There was also substantial discrepancy in the renovation costs the Sheths reported were necessary to convert the Penrose hotel to a Radisson franchise. On various dates, Pankaj, Rajan, and/or Ravi Sheth submitted fabricated documents to their loan brokers—including purported Radisson PIPs and estimates from straw contractors—showing renovation costs ranging, at various times, from just over $1.5 million to over $2 million.

134

348.    Ultimately, Pankaj, Rajan, and Bhavesh resolved to report Renuka Sheth as the sole member of both Vraj Brig and a new management entity at the Penrose property, Penn Hospitality Management, LLC, for purposes of seeking a new SBA 7(a) loan.

349.    At the direction of Pankaj and/or Rajan Sheth, attorney Calzaretto filed a Pennsylvania Certificate of Organization forming Penn Hospitality on September 13, 2016, reporting Rishi Sheth as the organizer and sole member. He then directed the filing, on or about August 1, 2017, of a Certificate of Amendment, identifying Renuka Sheth as the sole member of the Sheth entity.

350.    Aware that lenders would be unlikely to fund an SBA 7(a) loan to the same entity that defaulted on the Noah Bank loans just a few years earlier, Pankaj and Rajan, assisted by Bhavesh and Calzaretto, concocted a fictional narrative blaming Ravi Sheth's mismanagement for Vraj Brig's prior defaults. According to this narrative, any risk associated with the prior owner (Ravi) was mitigated by Renuka's purported purchase of Vraj Brig on September 22, 2016—the date of the $4.25 million Rosdev loan transaction.

351.    To support this fiction, Pankaj and/or Rajan directed Calzaretto to draft a "Settlement Agreement an [*sic*] Mutual Release," backdated to September 2016, purporting to show Ravi transferring his interest in Vraj Brig to Renuka, his aunt.

352.    This document contained numerous false statements. Insofar as Ravi Sheth served as the straw owner of Vraj Brig for purposes of fraudulently inducing

135

loans from Noah Bank in 2013 and 2014, there could not have been a transfer from Renuka to Ravi on September 16, 2013, as the agreement stated. Moreover, the September 2016 Rosdev loan to Vraj Brig—negotiated exclusively by Pankaj Sheth, a beneficial owner of the entity—was not related to any transfer of ownership.

### A.    The 2018 BCB Bank SBA 7(a) Loan and Commercial Loan

353.    After engaging in extensive loan negotiations with around a dozen prospective lenders, Bhavesh Sheth approached New Jersey-based BCB Bank ("BCB"), an SBA preferred lender, with a modified loan proposal in March 2018:

> **Borrower : Vraj Brig PA LLC – Real Estate Holding Company**
>
> **Penn Hospitality Management LLC**
>
> **Property : 2033 Penrose Ave, Philadelphia PA.**
>
> The property consists of a 17-story hotel facility with 223-guestrooms. The improvements are situated on a 3.61-acre parcel of land that is located within The City of Philadelphia, Philadelphia County, PA.
>
> **Principal / Guarantor : Renuka Sheth – 100%**
>
> Borrower has decided to convert the hotel in to a franchised hotel. Subject property is approved for **Radisson** Franchise.
>
> **Note :**
>
> Current Principal manages the property since beginning of year 2016 and owns since 9/2016 Skyview Management LLC is a operating company which operated hotel until 2016 and was closed in end of 2016
>
> From Jan 2017 and the operations were transferred to Penn Hospitality Management LLC

354.    Thereafter, Pankaj and Rajan forwarded loan documents to Bhavesh in support of a $5 million SBA 7(a) loan and a concomitant $3.1 million commercial loan from BCB to Vraj Brig and Penn Hospitality, to be personally guaranteed by Renuka Sheth as the sole owner of both entities. Among these documents was a management résumé, providing contact information for Pankaj Sheth.

355.    Pankaj and/or Rajan also submitted an SBA Borrower Information Form for Renuka. This form misrepresented, among other things, that Vraj Brig was eligible for the loan, had no affiliates, no prior bankruptcies by the borrower or affiliates, no current delinquency, no pending legal actions involving the borrower or affiliates, and no prior SBA loan default by the borrower or its affiliates.

356.    By an electronic signature—which, upon information and belief, was applied by Pankaj and/or Rajan Sheth—Renuka expressly certified the accuracy of the representations contained in the Borrower Information Form after having been specifically advised of the criminal and civil penalties for making false certifications to a federally insured financial institution, such as BCB:

ACCURACY CERTIFICATION

I certify that the information provided in this application and the information that I have provided in all supporting documents and forms is true and accurate. I realize that the penalty for knowingly making a false statement to obtain a guaranteed loan from SBA is that I may be fined up to $250,000 and/or be put in jail for up to 5 years under 18 USC § 1001 and if false statements are submitted to a Federally insured institution, I may be fined up to $1,000,000 and/or be put in jail for up to 30 years under 18 USC § 1014.

_RP Sheth_    03/18/2018
Signature of Authorized Representative of Applicant Business    Date
RENUKA SHETH    OWNER
Print Name    Title

357.    On the same date, Pankaj and/or Rajan submitted an SBA Personal Financial Statement for Renuka Sheth, falsely reporting her assets and liabilities. Again, by electronic signature, Renuka Sheth expressly certified the accuracy of the representations contained in the Personal Financial Statement after having been

137

specifically advised of the criminal and civil penalties for making false certifications

to a federally insured financial institution, such as BCB:

I authorize the SBA/Lender/Surety Company to make inquiries as necessary to verify the accuracy of the statements made and to determine my creditworthiness.
**CERTIFICATION**: (to be completed by each person submitting the information requested on this form)

By signing this form, I certify under penalty of criminal prosecution that all information on this form and any additional supporting information submitted with this form is true and complete to the best of my knowledge. I understand that SBA or its participating Lenders or Certified Development Companies or Surety Companies will rely on this information when making decisions regarding an application for a loan or a surety bond. I further certify that I have read the attached statements required by law and executive order.

Signature _R.P Sheth_                   Date          3/17/2018

Print Name   RENUKA SHETH               Social Security No.  ███████

Signature _____       Date          _____

Print Name _____      Social Security No.  _____

**NOTICE TO LOAN AND SURETY BOND APPLICANTS**:  **CRIMINAL PENALITIES AND ADMINISTRATIVE REMEDIES FOR FALSE STATEMENTS**:

Knowingly making a false statement on this form is a violation of Federal law and could result in criminal prosecution, significant civil penalties, and a denial of your loan or surety bond application. A false statement is punishable under 18 U.S.C. §§ 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. § 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a Federally-insured institution, a false statement is punishable under 18 U.S.C. § 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000. Additionally, false statements can lead to treble damages and civil penalties under the False Claims Act, 31 U.S.C. § 3729, and other administrative remedies including suspension and debarment.

358.    In reliance on these and other misrepresentations, BCB separately issued letters of intent, on March 14, 2018, to fund SBA 7(a) and commercial loans totaling $8.1 million to Vraj Brig and Penn Hospitality. The stated purpose of the loans was to pay-off the Rosdev loan ($4.25 million), to pay-off a fabricated loan from Sheth entity RS Land Investment ($1.35 million), and to finance $1.8 million in renovations as set forth on a purported "Radisson PIP."

359.    Despite that Vraj Brig denied any prior bankruptcies on its loan application, underwriters learned of the entity's 2011 bankruptcy and required an explanation of the circumstances leading to it. In response, Pankaj reported to BCB

138

that the bankruptcy was necessitated by the City of Philadelphia, which

unreasonably threatened to close the Penrose hotel (in 2011) due to unpaid taxes

incurred under prior ownership (before 1999). Unsatisfied with this account, BCB

requested a letter of explanation from an attorney.

360.　On June 6, 2018, Sheth attorney John Calzaretto provided a letter of

explanation, which Bhavesh promptly forwarded to BCB:

---

### CALZARETTO & BERNSTEIN, LLC
*Attorneys at Law*
459 Route 38 West
Maple Shade, New Jersey 08052

Members of the Bar　　　　　　　　　　　　　　　　　　　　Tel. (856) 667-0400
New Jersey & Pennsylvania　　　　　　　　　　　　　　　　　Fax. (856) 667-1477

John A. Calzaretto, Esquire(CPA
john.calzaretto@gmail.com
Daniel P. Bernstein, Esquire

June 6, 2018

BCB Bank

RE:　　Vraj Brig PA LLC - 2033 Penrose Ave Phila PA

To Whom It May Concern:

Based on my recollection, the February 15, 2011 Bankruptcy filing emanated out of a dispute with the City of Philadelphia related to various City tax assessments (Hotel Room Rental Tax, Wage Tax, Business Income and Receipts Tax and Net Profits Tax).

It could have been that some of these taxes emanated out of pre-ownership periods, but never appeared on the title report since the City of Philadelphia had not filed liens for any of the periods assessed.

In any case, the tax assessments were disputed (see a copy of the LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS attached hereto).

---

139

> However, the City of Philadelphia attempted to revoke the business privilege license of the property owner giving Vraj Brig PA LLC no choice but to seek bankruptcy protection in order to continue the hotel operations.
>
> The dispute was resolved shortly after the February 15, 2011 filing and the bankruptcy was dismissed on May 11, 2011, less than three months from the filing date.

361. This letter contained material, false representations designed to induce BCB to fund the contemplated loans. As noted, it is true that the Sheth family owed the City of Philadelphia approximately $750,000 in unpaid taxes and utility liens at the time of the Vraj Brig bankruptcy, some of which the Sheths assumed in financing agreements at the time of purchase, while others accrued well after the Sheths purchased the Penrose property. More importantly, Calzaretto omitted any reference to the series of loan defaults by Vraj Brig that precipitated the bankruptcy filing, including the Susquehanna Bank loans. And his suggestion that the dismissal of the bankruptcy case somehow signaled a favorable resolution of the underlying debt issues was a gross mischaracterization of the bankruptcy record. Nevertheless, BCB deemed Calzaretto's letter sufficient to allay concerns regarding Vraj Brig's 2011 bankruptcy.

362. BCB also required Vraj Brig to provide evidence of the debt it sought to refinance—specifically, the September 2016 $4.25 million loan from Rosdev, and the fictional September 2016 $1.35 million loan from RS Land Investment.

363. On July 17, 2018, Rajan Sheth sent directly to SBAC, BCB's third-party loan processor, purported HUD-1 settlement statements of the transaction

140

with private lender Rosdev and the fabricated transaction with RS Land

Investment:

**Fwd: HUD STATEMENTS**

| | |
|---|---|
| From: | Rajan Sheth ▮▮▮85@gmail.com> |
| To: | Bhavesh Sheth <bhav▮▮▮@hotmail.com> |
| Date: | Tue, 17 Jul 2018 11:41:39 -0400 |
| Attachments: | Scan180717102349-0001.pdf (2.19 MB) |

Begin forwarded message:

From: Rajan Sheth <▮▮▮85@gmail.com>
Subject: HUD STATEMENTS
Date: July 17, 2018 at 11:33:22 AM EDT
To: ▮▮▮@sbacomplete.com

Please see attached the hud statements which i have.

364.    The attached HUD-1 settlement statements were forgeries. Below are

the front and signature pages of the authentic HUD-1 settlement statement for

Rosdev's $4.25 million loan to Vraj Brig on September 22, 2016, obtained from the

lender's file:

141

## A. Settlement Statement (HUD-1)

OMB Approval No. 2502-0265

FINAL

**B. Type of Loan**

| 1. ☐ FHA  2. ☐ RHS  3. ☒ Conv. Unins.  4. ☐ VA  5. ☐ Conv. Ins. | 6. File Number: DSS-37929D | 7. Loan Number: | 8. Mortgage Insurance Case Number: |
|---|---|---|---|

**C. Note:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agents are shown. Items marked "(p.o.c)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. Name & Address of Borrower: VRAJ BRIG PA, LLC 2015-2033 Penrose Avenue, Philadelphia, PA 19145 | E. Name & Address of Seller: | F. Name & Address of Lender: ROSDEV CAPITAL FUNDING LP 418 CLIFTON AVENUE, SUITE 200, LAKEWOOD, NJ 08701 |
|---|---|---|
| G. Property Location: 2015-2033 Penrose Avenue Philadelphia, PA 19145 Philadelphia City | H. Settlement Agent: Diversified Settlement Services, Inc. 1200 Veterans Highway, Suite C-7, Bristol, PA 19007 Phone: 215-781-1900 Fax: 215-781-6340 | I. Settlement Date: 09/22/2016 Disbursement Date: 09/22/2016 |
|  | Place of Settlement: 1802 Oak Tree Road, Suite 202, Edison, NJ 08820 | TitleExpress Printed 09/22/2016 at 12:53 pm by MPS |

**Signature Page**

### HUD CERTIFICATION OF BUYER AND SELLER

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

**Buyers**

VRAJ BRIG PA, LLC

_R P Sheth_
RENUKA P. SHETH, MEMBER

**Settlement Agent**

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

_[signature]_                                          9/22/16

SETTLEMENT AGENT                          DATE

365.    A closer view of the purported signature of Renuka Sheth on the

original document shows unique markings:

142



366. The purported Rosdev HUD-1 statement produced by Rajan to SBAC on July 17, 2018, was altered in several ways. First, it identified Ravi Sheth as the "Seller," which was designed to support the Sheths' fictional narrative that the transaction involved Renuka's purchase of Vraj Brig from Ravi. Additionally, the forgery altered the type of loan, file number, the (misspelled) name and address of the lender, the disbursement date, and omitted contact information for the settlement agent:



367. The signature pages of the forged HUD-1 for the Rosdev transaction, however, were cut and pasted from the original document, as evinced by the same unique markings on Renuka's signature line:



368. The forged HUD-1 settlement statement purportedly evincing the RS Land Investment loan to Vraj Brig—with closing and disbursement conspicuously occurring on the same date as the Rosdev loan—was substantially similar to the forged Rosdev HUD-1, but removed the file number and changed the name and address of the lender to RS Land Investment, LLC, providing an address of a property owned by the Temple:

144

369.    Here, too, Rajan cut and pasted the signature lines from the original

Rosdev document:

145



370.    In reliance on these falsehoods, BCB internally approved the proposed loans and submitted a guaranty application to the SBA. BCB issued an SBA Loan Number on September 28, 2018 (SBA Loan No. PLP 29916470-08), and a note and guaranty agreement on the date of closing, November 1, 2018.

371.    In preparation for closing, BCB requested pay-off amounts for the Rosdev and RS Land Investment loans. By email dated September 10, 2018, Pankaj sent Bhavesh a letter from RS Land Investment, setting forth a total pay-off amount of $1,363,500 as of the same date. The letter was purportedly executed by Jay Smith—who had died approximately two months earlier. Bhavesh promptly forwarded the letter to BCB.

372.    The BCB loan closed on November 1, 2018, with Renuka executing loan documents as the sole member of Vraj Brig and Penn Hospitality, as well as in her individual capacity as personal guarantor.

373.    Each of the closing documents was witnessed by Calzaretto, who issued, on the same date, an attorney opinion letter with respect to the $5 million

146

SBA 7(a) loan and $3.1 million commercial loan, fraudulently attesting to the authenticity of loan documents and the borrower's compliance with relevant law.

374.   At closing, disbursements were made to Rosdev in the amount of $4,584,258.33 (pay-off of the September 2016 loan), to RS Land Investment in the amount of $1,363,500 (pay-off of the fictional September 2016 loan), and to Vraj Brig in the amount of $1,819,429.25 (renovations purportedly necessary for conversion to a Radisson franchise).

375.   BCB sold the 75% SBA-guaranteed portion of the 7(a) loan on the secondary market.

376.   Upon Bhavesh's submission of invoices, BCB paid Creative Funding a broker's fee in the aggregate amount of $103,000 ($87,500 on the SBA loan and $15,500 on the commercial loan).

377.   Approximately six months later, a BCB loan officer conducted a site visit of the Penrose property to evaluate the progress of renovations, which were scheduled to be completed by October 2019. He recorded his findings on an "SBA Site Visit Report," dated May 30, 2019:

## BCB Community Bank
### SBA Site Visit Report

| | |
|---|---|
| **Site Visit Date:** | 30-May-19 |
| **Loan Number:** | 1516000129 |
| **Borrower Name:** | Vraj Brig PA, LLC |
| **Original Amount:** | $5,000,000    Outstanding Balance: $4,981,339.86 |
| **Principal Name(s):** | Renuka Sheth |
| **Address:** | 2033 Penrose Ave., Philadelphia, Pa. 19145 |
| | Address          City          State          Zip |

147

**Business Collateral and Contents: (Description, Overall Condition, Inventory Levels)**

The hotel appears to be more rundown since the prior visit of 5/11/2018, with many utilities not working, shabby& dirty furniture in lobby, and the lack of any visible construction permits or on-going construction as contemplated by the financing. Parking lot (250+) spots was absolutely full with one spot for my personal vehicle. The writer was advised by the front desk the parking lot was being used for long term airport parking at $6/day (maybe main revenue source?).

**Discussion with Business Owner/Manager:**

Spoke to "Rishi" (Manager) and he indicated the hotel was at full capacity during the Memorial Day weekend. This is hard to believe , as guest elevators are not working and customers would have to climb 10+ flights of stairs. When I asked if construction was going on, he stated at the upper floors (I didn't see permits)(which I went to by an unsafe utility elevator deriving power from a long cable). He also advised that I would have to ask the accounting dept. about how much PIP funds remain.
**Requested Information to be provided by Borrower:**

Request a meeting As Soon As Possible. Need to confirm use of PIP funds and progress on Radisson requirements to be branded.

378.    Thus, over six months after receiving $1,819,429.25 in loan proceeds for renovations, there was little evidence, if any, that renovations were underway or that the Penrose hotel, apparently lacking basic amenities, was even operational. Rather, it appeared that a thriving airport parking business was the sole source of income associated with the Penrose property.

148

379.    On July 30, 2019—approximately nine months after securing BCB loans to Vraj Brig totaling $8.1 million—Vraj Brig obtained a short-term, high-interest loan from private lender Rosdev in the amount of $2.5 million. Pankaj exclusively negotiated the Rosdev loan, and, upon information and belief, forged the signature of his spouse, Renuka, on the loan documents.

380.    Shortly after the COVID-19 pandemic began, in or around March 2020, the Sheth family promptly closed the Penrose hotel.

381.    On or about December 1, 2020, Vraj Brig and Penn Hospitality defaulted on both 2018 BCB loans. On May 7, 2021, BCB submitted a request for the SBA to honor its guaranty on the 7(a) loan, and the SBA repurchased the 75% guaranteed portion of that loan on May 11, 2021.

382.    Upon consideration of BCB's post-purchase review package, the SBA issued a full denial on or about May 30, 2022, finding BCB was not compliant with SBA rules and required the bank to repay the SBA guaranteed portion of the loan.

383.    As discussed below, despite the Sheths' defaults, BCB later refinanced the loan by way of a $12 million commercial loan to Vraj Brig, and upon information and belief repaid the guaranteed portion of the defaulted 2018 7(a) loan to the SBA.

384.    In sum, through the concerted, fraudulent acts and omissions of Pankaj, Rajan, Renuka, and Bhavesh Sheth, Sanjay Patel, Vraj Brig, Penn Hospitality, Creative Funding, John Calzaretto, and Calzaretto & Bernstein, the Sheths secured loan proceeds totaling $8.1 million from BCB Bank—*i.e.*, a $5 million SBA 7(a) loan and a $3.1 million commercial loan—which they used to pay-

off the 2016 Rosdev loan (over $4.5 million) and the fabricated RS Land Investment loan (over $1.36 million), and received $1,819,429.25 for renovations, which they diverted to enrich themselves and/or to pay the debts of affiliated Sheth entities.

### B.    The 2022 BCB Commercial Loan

385.    In or around 2022, the Sheths were again threatened with foreclosure on the Penrose hotel related to their defaults on the 2018 BCB loans. In response, Pankaj resolved to induce yet another loan in an effort to retain ownership of the property.

386.    On March 22, 2022, Pankaj filed, or caused to be filed, a Certificate of Organization with the Pennsylvania Department of State, forming a new operational Sheth entity at the Penrose property called 2015 Hospitality Management, LLC. On the same date, he directed Calzaretto to prepare an Operating Agreement for 2015 Hospitality identifying Renuka (99%) and Pankaj (1%) as the joint owners of the new entity.

387.    The following month, Pankaj applied to BCB Bank for a new commercial loan to Vraj Brig and 2015 Hospitality, falsely representing Renuka Sheth as the sole member of Vraj Brig and the majority owner of 2015 Hospitality.

388.    Seeking to recoup its losses on the defaulted 2018 loans, and aware of the SBA's demand for repayment of its guaranty on the SBA 7(a) loan, BCB issued a commitment letter on April 27, 2022, approving a $12 million commercial loan to Vraj Brig and 2015 Hospitality, supported by the personal guarantees of Pankaj and Renuka Sheth. According to the commitment letter, the purpose of the loan was

150

to pay-off the defaulted 2018 BCB loan balances, which had ballooned to a total of $8,247,069.95; the 2019 Rosdev loan, which then totaled $2,646,751.67; and numerous other debts—including nearly $50,000 to an elevator repair company; utility liens and a municipal judgment totaling over $60,000; and $605,000 to exercise an "Equity Purchase Option" in connection with the 2019 Rosdev loan.

389.    At closing on April 27, 2022, Renuka Sheth, the straw owner of Vraj Brig and 2015 Hospitality, purportedly executed loan documents as a member of the borrowing entities. Upon information and belief, Pankaj forged his wife's signature on the HUD-1 settlement statement.

390.    In support of the loan, attorney Calzaretto submitted to BCB Bank's attorneys an opinion letter falsely certifying, among other things, that "[t]he execution and delivery of the Loan Documents do not and the performance and observance of the terms thereof will not contravene any provision of existing law or regulation[.]"

391.    In sum, through the concerted, fraudulent acts and omissions of Pankaj and Renuka Sheth, Vraj Brig, 2015 Hospitality, John Calzaretto, and Calzaretto & Bernstein, the Sheths secured loan proceeds totaling $12 million from BCB Bank, which they used to pay-off the 2018 BCB loans, the 2019 Rosdev loan, and other debts, permitting them to retain ownership of the Penrose property.

151

## V.    The Mount Holly Hospitality Bankruptcy

392.    Sheth entity Mount Holly Hospitality, LLC, purchased the Browns Mills hotel on or about June 4, 2003, using the proceeds of a $1.2 million SBA 7(a) loan from Commerce Bank. Although Pankaj Sheth was at all times the beneficial owner of Mount Holly, Sheth associate Ishwar Patel, a member of the Temple's board of trustees, served as the straw owner and personal guarantor for purposes of the Commerce Bank loan. The promissory note associated with the mortgage was notarized by attorney John Calzaretto.

393.    Commerce Bank sold the 75% SBA guaranteed portion of the loan on the secondary loan market.

394.    In or around 2008, TD Bank acquired Commerce Bank and became the lender of record on the SBA 7(a) loan to Mount Holly (hereinafter "TD Bank loan").

395.    On February 16, 2010, Pankaj or Rohit Sheth filed, or caused to be filed, a Registration of Alternative Name in the State of New Jersey, identifying Rohit as a member of Mount Holly and recording an alternate name of "Red Carpet Inn," a Hospitality International franchise brand.

396.    Mount Holly defaulted on the TD Bank loan in or around 2014, and the SBA repurchased its guaranty, at which time the loan went into liquidation status.

397.    In or around September 2015, Mount Holly opened a business checking account with Amboy Bank. The account's signature card listed as signatories the "members" of Mount Holly: Pankaj, Rohit, and Ravi Sheth.

398.    In 2017, TD Bank commenced foreclosure and breach of contract actions against Mount Holly in the Superior Court of New Jersey. *See TD Bank v. Mount Holly Hospitality, LLC* (N.J. Sup. Ct. Nos. L00069617, L00475213). TD Bank ultimately secured a judgment against Mount Holly in the amount of $861,184.53.

399.    Seeking to pay off the debt prior to foreclosure, Pankaj consulted with attorney Calzaretto regarding the creation of new business entities and an agreement by which the new entities would purportedly purchase the Browns Mills hotel from Mount Holly.

400.    Soon thereafter, Pankaj directed the formation of two new Sheth entities—BM Hospitality, LLC, and Pemberton Hospitality, LLC—for which he reported various Sheth family members, including Jayprakash Sheth, as the straw owners. After Calzaretto provided a sales contract by which the new Sheth entities agreed to purchase the Browns Mills hotel from Mount Holly, Pankaj applied for an SBA 7(a) loan in the name of the new entities through Dime Bank, a financial institution for which Sanjay Patel then served as the Vice President of Business Development.

401.    Because Dime Bank was not, at that time, an SBA preferred lender, its loan application was reviewed directly by the SBA, which denied the application based on a finding that Jayprakash Sheth was ineligible to receive SBA financial assistance due to his prior default on the SEDA-COG loan, which the SBA charged-off as a loss in 2012. As noted previously, Pankaj Sheth and all the Sheth entities

under his control were ineligible to receive SBA financial assistance for the same reason, among others.

402.    Unable to secure refinancing in advance of a scheduled sheriff's sale of the Browns Mills property, on December 6, 2018, Mount Holly filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the District of New Jersey. *See In re Mount Holly Hospitality, LLC* (D. N.J. Bankr. No. 18-34029). The bankruptcy petition, signed by Rishi Sheth as a "member" of Mount Holly, reported debts totaling over $1 million, including the TD Bank judgment.

403.    Despite reportedly being a member of Mount Holly at this time, Rishi Sheth was not an authorized signatory on Mount Holly bank records in possession of the government, nor was the existence of those bank accounts disclosed in bankruptcy schedules filed with the court.

404.    Although Calzaretto did not represent Mount Holly in the bankruptcy case, the mailing address that Mount Holly identified on its bankruptcy petition was that of his law firm, Calzaretto & Bernstein.

405.    On February 18, 2019, Mount Holly filed in the bankruptcy case a motion seeking authorization to sell the Browns Mills property. The motion was supported by the certification of "Rishi Shah"—upon information and belief, a pseudonym used by Rishi Sheth—asserting that:

    a.    He was the "managing member" of Mount Holly;

    b.    "On February 5, 2019," Mount Holly "entered into a Contract of Sale with Star Hospitality, LLC . . . to sell the [Browns Mills property]";

c.    "The Debtor and the members of the Debtor are neither related to nor have any affiliation whatsoever with the Buyer or its members"; and

iv.    "After negotiations with the secured creditor, TD Bank has agreed to accept the sum of $700,000 from the sale of the property and will discharge its mortgage," with the "remaining proceeds . . . be[ing] paid to any subordinate lienholders."

406.    Attached to the motion was a "Purchase and Sale Agreement," dated February 15, 2019, between Mount Holly and Star Hospitality, LLC, by which Star Hospitality agreed to purchase the Browns Mills property for $725,000—considerably less than the purchase price sixteen years earlier. The agreement was signed by Rishi Sheth for Mount Holly and, purportedly, by Sheth associate Trupti Shah as "managing member" of Star Hospitality.

407.    In the course of the investigation underlying this Complaint, the government learned that Trupti Shah was a religious practitioner at the Temple where Pankaj Sheth served as chair of the board of trustees. She resided at a property owned by the Temple—the same property that, months earlier, the Sheths reported as the business address of RS Land Investment in the BCB Bank transaction—and worked as a cashier at a nearby Dunkin Donuts. Trupti Shah was also related by marriage to the Sheth family, as her husband, who died in 2016, was a cousin of the Sheth brothers. Upon information and belief, in the years after her husband's death, the Sheth family assisted Trupti Shah with financial support.

155

408.  The "Rishi Shah" certification contained material, false statements. Like Mount Holly, Star Hospitality was, in truth, a Sheth entity controlled by Pankaj and/or Rajan Sheth. Specifically, Pankaj formed Star Hospitality on or about December 30, 2014, by filing a Certificate of Formation with the New Jersey Department of the Treasury. The organizational certificate identified the Sheths' Englishtown property as Star Hospitality's business address and reported Pankaj as its registered agent, sole member, and authorized representative. Moreover, Star Hospitality was a corporate guarantor on the $3.675 million bridge loan from Parke Bank to Camelback Resort and Tannersville Beverage in 2017; in fact, Pankaj Sheth signed the Parke Bank guaranty as the "Managing Member" of Star Hospitality.

409.  Following further litigation, the bankruptcy court issued an order authorizing the sale on June 11, 2019, specifically directing that TD Bank be paid the sum of $550,000 in full satisfaction of the SBA 7(a) loan—a substantial compromise of the amount Mount Holly owed.

410.  The order further required Star Hospitality, the purported new owner of the Browns Mills hotel, to remediate more than thirty outstanding "Life Safety Violations" issued by the New Jersey Bureau of Housing Inspection and Division of Fire Safety.

411.  The court attached to the order a "Third Addendum to Contract of Sale" between Mount Holly and Star Hospitality, dated May 29, 2019. Upon information and belief, Pankaj and/or Rajan Sheth forged the signatures of Rishi

156

Sheth and Trupti Shah on this document, as well as the signatures of the purported

witness, Jay Smith (who died over ten months earlier):



412.    In advance of closing on the sale, Pankaj and/or Rajan Sheth directed

Calzaretto to prepare organizational documents purporting to evince Rishi's

ownership interest in Mount Holly, including an assignment of membership,

backdated to January 1, 2017, by which Ishwar Patel purported to transfer to Rishi

his sole ownership interest in Mount Holly for $1.00, as well as an undated letter to

Calzaretto, ostensibly from Ishwar Patel, purporting to "confirm" his

157

"understand[ing]" of the transfer of interest. This purported transfer contradicted numerous records and prior representations made by the Sheths.

413.    Pankaj and/or Rajan further directed Calzaretto to prepare documents purporting to evince Trupti Shah's ownership interest in Star Hospitality, including an operating agreement, dated March 1, 2019. Upon information and belief, Pankaj or Rajan Sheth forged Trupti Shah's signature on that document.

414.    Contrary to the bankruptcy court's order, various Sheth entities wired at least $700,000 from several accounts to satisfy Mount Holly's debt obligations associated with the SBA 7(a) loan prior to the closing date. More specifically:

   a.    On May 2, 2019, Star Hospitality wired $20,000 to "SBA Workout Dept." associated with "Loan #1955087-9001 Mount Holly Hosp";

   b.    On May 2, 2019, Pusti Management wired $30,000 to "SBA Workout Dept." associated with "Loan #1955087-9001 Mount Holly Hosp";

   c.    On May 15, 2019, Star Hospitality wired $50,000 to "SBA Workout Dept." associated with "Loan #1955087-9001 Mount Holly Hosp";

   d.    On May 30, 2019, K&D Hospitality wired $50,000 to "SBA Workout Dept." associated with "Loan #1955087"; and

   e.    On June 12, 2019, K&D Hospitality wired $550,000 to "SBA Workout Dept." associated with "Loan No. 1955087."

415.    Each of those wires was authorized by, and came from accounts controlled by, Pankaj Sheth, as he later appeared to acknowledge in an email to his title agent:

158

> **From:** Pankaj Sheth ████████143@gmail.com>
> **To:** Stephen Danastorg ████████
> **Subject:** Fwd: 18-34029 (CMG) Mount Holly Hospitality LLC - Sale of Real Property - 7-17-19 email
> **Date:** Mon, 30 Aug 2021 16:31:24 +0000
> **Importance:** Normal
> **Attachments:** Mount_Holly_Disbursement_Ledger.pdf; Mount_Holly_HUD-1.pdf
>
> ---
>
> I paid TD bank $ 785411.00 Plus $ 237,067 plus 4579.00 total $ 1,027,057.00
>
> I paid Td $ 550,000 and wire $ 477,057 to pay for the seller and
> buyer. different of 785411 -550,000 the balance $ 235,411 need proof

416.    Closing on Star Hospitality's purchase of the Browns Mills hotel occurred on June 20, 2019. Upon information and belief, Trupti Shah—purportedly the sole member of the purchasing entity—did not attend the closing. Rather, Pankaj and/or Rajan Sheth forged her signature on loan documents in advance, which they submitted to the title company at closing.

417.    On June 24, 2019—four days after the closing—a mortgage associated with the Browns Mills hotel was recorded in the Burlington County (New Jersey) Clerk's Office. The recorded mortgage agreement, dated May 1, 2019, purported to evince a $1 million loan from Piyush Bhaidaswala (the straw owner of 501 Hospitality in the 2017 First Bank transaction) to Star Hospitality. Despite representations less than a week earlier that Trupti Shah was the owner of Star Hospitality, Pankaj Sheth executed the mortgage agreement as the entity's "Sole Member."

418.    Star Hospitality never received the loan proceeds. Financial records in possession of the government show that, on May 1, 2019—the date of the mortgage agreement—Bhaidaswala wired $1 million to a different Sheth entity, K&D

Hospitality, which subsequently wired at least $600,000 to pay Mount Holly's debt obligations on the defaulted SBA 7(a) loan.

419.    In sum, through the concerted, fraudulent acts and omissions of Pankaj, Rajan, and Rishi Sheth, John Calzaretto, Calzaretto & Bernstein, Mount Holly Hospitality, Star Hospitality, Pusti Management, and K&D Hospitality, the Sheths fraudulently induced the federal bankruptcy court to approve a purported sale of the Browns Mills property to Star Hospitality, a Sheth entity controlled by Pankaj and/or Rajan Sheth; retained ownership of the hotel; and paid-off a defaulted SBA 7(a) loan for a compromise amount, resulting in a loss to the federal government and/or TD Bank, a federally insured financial institution.

420.    On August 15, 2019, the United States Trustee moved to convert the Mount Holly bankruptcy case to Chapter 7, citing the debtor's failure to file monthly operating reports. The court granted that motion on October 3, and the Trustee subsequently moved to dismiss. The court dismissed the Mount Holly bankruptcy case on January 14, 2020.

## VI.    The Northfield Bank Loan

421.    To pay-off the 2019 Bhaidaswala loan, Pankaj Sheth secured a $1.3 million short-term, high interest loan from Mercury Capital to Star Hospitality on September 20, 2019. Pankaj personally guaranteed the loan and executed loan documents as the "Manager" of Star Hospitality.

422.    On the same date, the title company disbursed loan proceeds in the amount of $1,090,000 to Piyush Bhaidaswala; $50,746.15 to Star Hospitality; and

160

various amounts to the State of New Jersey and a local municipality to pay tax bills owed by Star Hospitality, Pankaj Sheth, and Shri Bhaktinidhi, Inc. (the corporation that owned and/or operated the Temple).

423. Pankaj subsequently directed Calzaretto to create a document purporting to evince the transfer of ownership of Star Hospitality from Trupti Shah to Renuka Sheth. That document, entitled "Agreement to Amend the Operating Agreement of Star Hospitality," was backdated to September 1, 2019, and asserted that Trupti Shah "submitted her resignation as Sole Member of Star Hospitality . . . [and] relinquished her one hundred percent interest" to Renuka Sheth, apparently for no consideration. Upon information and belief, Pankaj forged the signatures of Trupti Shah and Renuka Sheth on this document.

424. In search of a lender to refinance the past-due Mercury Capital loan, Pankaj and/or Rajan submitted, or caused to be submitted, an application by Star Hospitality for a commercial loan to New Jersey-based Northfield Bank, a federally insured financial institution, falsely reporting the sole owner as Renuka Sheth.

425. By letter dated January 20, 2023, Northfield Bank approved a $2 million commercial loan to Star Hospitality, supported by the personal guaranty of its straw owner, Renuka Sheth, and the corporate guaranty of Julius Management, LLC, a Sheth entity controlled by Pankaj Sheth.

426. The Northfield Bank loan closed on March 17, 2023, with the proceeds disbursed to Mercury Capital to pay off the 2019 loan ($1,584,650) and to the Sheth family via Star Hospitality ($162,286.18). Thus, through the concerted fraudulent

acts and omissions of Pankaj, Rajan, and Renuka Sheth, Star Hospitality, and Julius Management, the Sheths fraudulently induced a $2 million commercial loan from Northfield Bank, a federally insured financial institution, using the proceeds to pay-off their past-due debt to Mercury Capital and to enrich themselves in the amount of at least $162,286.18.

## VII.  The CARES Act Loans

427.    From 2020 to 2021, Pankaj and Rajan Sheth fraudulently induced, for the benefit of various Sheth entities, at least eighteen (18) PPP and EIDL loans authorized by the CARES Act in response to the COVID-19 pandemic, totaling $2,447,675, plus accrued interest and processing fees.

428.    The Sheths did not repay the principal on any of these loans.

429.    Except for certain PPP loans that were forgiven, based on false representations made by or at the direction of Pankaj and/or Rajan Sheth in loan forgiveness applications, the Sheths defaulted on these obligations, and multiple loans were charged off as a loss to the federal government.

### A.    CARES Act Loans Associated with the Poconos Property

430.    After closing on the 2018 SBA 7(a) loan from Peapack-Gladstone Bank, Pankaj Sheth and PGB loan officer Andrew Glatz contemplated future loans from PGB to Sheth entities, including (a) another SBA 7(a) loan, purportedly to fund renovations to the Poconos property, and (b) a loan to fund Pankaj Sheth's planned establishment of one or more adult daycare facilities.

162

431.    Those plans were upended by the COVID-19 pandemic, which started in March 2020. Following news that Congress had authorized the Paycheck Protection Program, Pankaj promptly reached out to Glatz, inquiring as to whether PGB would be a participant. When Glatz responded in the affirmative, Pankaj forwarded him applications for PPP loans to six different Sheth entities—Chateau Hospitality, Penn Hospitality, Star Hospitality, Wonder Hospitality, CNH Management, and Puja Hospitality—listing various Sheth family members or associates as principals.

### The Chateau Hospitality PPP Loan

432.    By email dated April 22, 2020, Pankaj submitted to PGB a revised PPP application for the Sheth entity Chateau Hospitality Management, LLC. Among the fraudulent representations on this application were that (a) Vimal Madhiwala held an 81% ownership interest in the borrowing entity; (b) Madhiwala's email address was raj@***markh.com, which was used exclusively by Rajan Sheth; (c) the average monthly payroll of Chateau Hospitality was $36,563.42; (d) the entity had 35 employees; (e) no owner of the applicant was ineligible to receive SBA loans; (f) no owner of the applicant had obtained an SBA loan that was currently delinquent or defaulted in the last seven years, resulting in a loss to the government; and (g) no owner of the applicant was an owner of any other business.

433.    Upon information and belief, Pankaj or Rajan Sheth forged the signature of Vimal Madhiwala on the loan application, fraudulently certifying,

163

among other things, Madhiwala's understanding of the criminal and civil penalties for making a false statement to obtain an SBA-guaranteed loan.

434.    By email dated April 29, 2020, an attorney for Peapack-Gladstone Bank forwarded to Rajan Sheth documents (intended for Madhiwala) associated with a $91,400 PPP loan from PGB to Chateau Hospitality. Rajan promptly forwarded the email to Pankaj, who in turn forwarded it to Vimal Madhiwala, directing him to "sign and send back" the attached documents. Madhiwala did so on May 4. The next day, Pankaj Sheth forwarded the signed loan documents directly to PGB's attorney.

435.    Under the terms of the SBA Note, the borrower could apply for loan forgiveness in an amount equal to the sum of eligible costs incurred within eight weeks following disbursement of the loan, including (a) payroll costs; (b) payment of interest (but not principal) on a covered mortgage obligation; (c) payment of a covered rent obligation; and (d) any covered utility payment.

436.    On May 6, 2020, Peapack-Gladstone Bank disbursed the loan, depositing $91,400 into a PGB account in the name of Chateau Hospitality with an account number ending in 0210 ("Acct. No. 0210").

437.    According to bank statements in possession of the government, Chateau Hospitality did not promptly spend the loan proceeds. Rather, the funds remained in Acct. No. 0210 until the Sheths used them to make a series of payments to PGB on their 2018 SBA 7(a) loan obligation on November 18, 2021 ($35,221.78), December 28, 2021 ($10,247.08), January 27, 2022 ($29,974.40),

February 7, 2022 ($7,586.85), April 12, 2023 ($5,312.47), and May 19, 2023 ($21,568.98).

438. On or about October 15, 2021, Pankaj and/or Rajan Sheth submitted a loan forgiveness application to the SBA, fraudulently certifying that Chateau Hospitality had complied with all requirements for loan forgiveness, forging Vimal Madhiwala's electronic signature and initials on the application.

439. On October 20, 2021, in reliance on those false representations, the SBA approved loan forgiveness and paid to PGB the guaranteed loan amount of $91,400 and accrued interest of $1,332.19, thereby incurring a total loss of $92,732.19, plus processing fees, on the PPP loan to Chateau Hospitality.

### The "Chateau Resort Management, LLC" EIDL Loan

440. In mid-April 2020, Pankaj and/or Rajan submitted to the SBA an application for an EIDL loan to "Chateau Resort Management, LLC," which conflated the name of the Sheth entity that owned the Poconos property (Camelback Resort, LLC) with the Sheth entity that operated the Poconos property (Chateau Hospitality Management, LLC). The Employer Identification Number ("EIN") associated with the applicant, however, was assigned to the Sheth entity Chateau Hospitality Management, LLC—the same entity that applied for and received the PPP loan from Peapack-Gladstone Bank at around the same time.

441. The application falsely identified Vimal Madhiwala as an 81% owner of the borrowing entity and falsely reported as contact information for Madhiwala an email address and phone number used exclusively by Rajan Sheth.

165

442.    Upon information and belief, the application falsely reported the number of employees (21), gross revenues ($2.45 million) and the cost of goods sold ($400,000) for the twelve-month period preceding the pandemic, "lost rents due to the disaster" ($400,000), and that no owner of the applicant was prohibited from receiving federal grants or loans. Notably, this information was substantially different from the information reported on the PPP application to the same entity at around the same time.

443.    The EIDL loan application reported a Citizens Bank checking account for Chateau Hospitality with an account number ending in 0615 ("Acct. No. 0615"). According to bank records in possession of the government, the sole signatory on Acct. No. 0615 was Rajan Sheth, and the address listed on the account was for the Sheths' Englishtown hotel.

444.    On May 21, 2020, Vimal Madhiwala purportedly electronically signed, among other documents, an SBA Loan Authorization and Agreement authorizing a $150,000 EIDL loan to the misnamed Sheth entity Chateau Resort Management, LLC. The agreement provided that the loan proceeds must be used "solely as working capital to alleviate economic injury caused by [the COVID-19 pandemic]."

445.    On April 21, 2020, the SBA deposited an EIDL emergency advance amount of $10,000 (requested by the borrower) into Acct. No. 0615. This was followed, on May 28, 2020, by a deposit of the principal amount of $149,900 ($150,000, minus a $100 processing fee) into the same account.

166

446. "Chateau Resort Management, LLC," did not use the loan proceeds in the manner required by the loan agreement. Instead, it used them for the purpose of enriching the Sheth family. On June 10, 2020—less than two weeks after the SBA funded the loan—Chateau Hospitality transferred $130,000 to a Citizens Bank savings account, associated with the same entity, with an account number ending in 1328 ("Acct. No. 1328"). Less than two weeks later, Chateau Hospitality wired $165,000 from Acct. No. 1328 to a bank account in India in the name of Pankaj Sheth, with a memo line reading "investment."

447. According to internal SBA records, on or about December 16, 2020, the SBA flagged the loan for suspected identity theft.

448. By a letter dated March 8, 2024, the SBA advised Vimal Madhiwala of its concern that his "identity may have been used, without [his] knowledge or permission, to obtain a COVID-19 [EIDL loan] for which [he] never received any of the loan proceeds," requesting that Madhiwala respond.

449. When Madhiwala did not respond—indeed, he was complicit in the Sheths' use of his identity—the SBA charged off the loan due to identity theft on or about April 1, 2024, resulting in a loss to the federal government of $160,084 ($150,084 principal, plus the $10,000 advance).

### *The Camelback Resort EIDL Loan*

450. Despite having received both PPP and EIDL loans for the Poconos hotel through Chateau Hospitality, Pankaj and/or Rajan Sheth submitted another EIDL loan application to the SBA in May 2020—this time on behalf of Camelback

167

Resort, LLC, the Sheth entity that owned the Poconos property. Upon information and belief, Camelback Resort had no employees and no revenue.

451.   Like the EIDL loan application for "Chateau Resort Management, LLC", the application for Camelback Resort falsely identified Vimal Madhiwala as a principal of the borrowing entity and falsely reported as contact information for Madhiwala an email address and phone number used exclusively by Rajan Sheth.

452.   Upon information and belief, the application also falsely reported the number of employees (5), gross revenues ($500,000) and cost of goods sold ($25,000) for the twelve-month period preceding the pandemic, and that no owner of the applicant was prohibited from receiving federal grants or loans.

453.   The EIDL loan application reported a Citizens Bank checking account for Camelback Resort with an account number ending in 0985 ("Acct. No. 0985"). According to bank records in possession of the government, the sole signatory on Acct. No. 0985 was Rajan Sheth, and the address listed on the account was for the Sheths' Englishtown hotel.

454.   On July 3, 2020, Vimal Madhiwala purportedly electronically signed, among other documents, an SBA Loan Authorization and Agreement authorizing a $150,000 loan to Camelback Resort, LLC. The agreement provided that the loan proceeds must be used "solely as working capital to alleviate economic injury caused by [the COVID-19 pandemic]."

455.   On June 30, 2020, the SBA deposited an EIDL emergency advance amount of $5,000 (requested by the borrower) into Acct. No. 0985. This was

168

followed, on July 8, 2020, by a deposit of the principal amount of $149,900 ($150,000, minus a $100 processing fee) into the same account.

456.    Camelback Resort did not use the loan proceeds in the manner required by the loan agreement. Rather, according to bank records in possession of the government through January 2021, the loan proceeds remained unutilized in Acct. No. 0985.

457.    According to internal SBA records, on or about December 16, 2020, the SBA flagged the loan for suspected identity theft.

458.    By a letter dated April 8, 2024, the SBA advised Vimal Madhiwala of its belief that his "identity may have been used, without [his] knowledge or permission, to obtain a COVID-19 [EIDL loan] for which [he] never received any of the loan proceeds," requesting that Madhiwala respond.

459.    When Madhiwala did not immediately respond—indeed, he was complicit in the Sheths' use of his identity—the SBA charged off the loan due to identity theft on or about May 6, 2024, resulting in a loss to the federal government of approximately $155,000 ($150,000 principal, plus the $5,000 advance).

### B.    CARES Act Loan Associated with the Lincoln Highway Property.

460.    As noted previously, when the COVID-19 pandemic started in March 2020 the Sheths' Lincoln Highway hotel had been closed for approximately three years. Upon information and belief, the hotel had no employees, no operating expenses, and no revenue.

169

461.    Nevertheless, immediately upon learning that Congress had authorized the PPP, Pankaj Sheth submitted to Peapack-Gladstone Bank an application for a PPP loan to Wonder Hospitality, the Sheth entity purportedly owned by Rohit Sheth that operated the Lincoln Highway property. Upon information and belief, that loan was never funded.

### *The Fortune Holding EIDL Loan*

462.    On or about March 30, 2020, Pankaj and/or Rajan Sheth submitted to the SBA an application for an EIDL loan to Fortune Holding, LLC—the Sheth entity that owned the Lincoln Highway hotel—fraudulently identifying Rohit Sheth as the sole owner and falsely reporting as contact information an email address and phone number used exclusively by Rajan Sheth.

463.    Upon information and belief, the application falsely reported the number of employees (18), gross revenues ($400,000) and the cost of goods sold ($65,000) for the twelve-month period preceding the pandemic, "lost rents due to the disaster" ($400,000), and that no owner of the applicant was prohibited from receiving federal grants or loans.

464.    The EIDL application for Fortune Holding reported an Amboy Bank checking account for a different Sheth entity (CNH Management, LLC) with an account number ending in 5564 ("Acct. No. 5564"). According to bank records in possession of the government, the sole signatories on Acct. No. 5564 were Pankaj and Rajan Sheth, and the address listed on the account was for the Sheths' residence in Morganville, New Jersey.

465. On May 20, 2020, Rohit Sheth purportedly electronically signed, among other documents, an SBA Loan Authorization and Agreement authorizing a $150,000 EIDL loan to Fortune Holding. The agreement provided that the loan proceeds must be used "solely as working capital to alleviate economic injury caused by [the COVID-19 pandemic]."

466. On April 22, 2020, the SBA deposited an EIDL emergency advance amount of $10,000 (requested by the borrower) into Acct. No. 5564. This was followed, on May 28, 2020, by a deposit of the principal amount of $149,900 ($150,000, minus a $100 processing fee) into the same account.

467. Fortune Holding did not use the loan proceeds in the manner required by the loan agreement. Instead, it diverted the proceeds to other Sheth entities in a series of transfers, including: an April 22, 2020, wire transfer to Pusti Management ($5,000); April 28, 2020, wire transfer to Star Hospitality ($1,500); and June 3, 2020, wire transfer to K&D Hospitality ($165,000).

468. According to internal SBA records, on or about July 31, 2021, the SBA flagged the loan for suspected fraud.

469. The Sheths defaulted on the EIDL loan to Fortune Holding, making only sporadic interest-only payments, resulting in a loss to the SBA of $160,000 ($150,000 principal, plus $10,000 advance).

### C.    CARES ACT Loan Associated with the Temple Property

470. At all times relevant to this Complaint, the finances of Shri Bhaktinidhi, Inc.—the corporation that owned and/or operated the Temple—were

171

controlled by Pankaj Sheth, a Temple founder and the longtime chair of its board of trustees.

471. Pankaj regularly commingled the Temple's finances with those of various Sheth entities and facilitated the appointments to the Temple's board of trustees and executive body of numerous Sheth family members and associates who acted under his direction.

### *The Shri Bhaktinidhi EIDL Loan*

472. On or about March 30, 2020, Pankaj Sheth submitted to the SBA an application for an EIDL loan to Shri Bhaktinidhi, Inc., identifying himself as the "CEO."

473. Upon information and belief, the application falsely reported, among other things, the number of Temple employees (10), its gross revenues ($1.1 million) and cost of operations ($600,000) for the twelve-month period preceding the pandemic, and that no owner of the applicant was prohibited from receiving federal grants or loans.

474. The application reported an Amboy Bank checking account for Shri Bhaktinidhi, Inc., with an account number ending in 5254 ("Acct. No. 5254"). According to bank records in possession of the government, the signatories on Acct. No. 5254 included Pankaj Sheth.

475. On May 20, 2020, Pankaj electronically signed, among other documents, an SBA Loan Authorization and Agreement, followed later by a modification agreement, authorizing a total EIDL loan amount of $500,000 to Shri

172

Bhaktinidhi. The agreements provided that the loan proceeds must be used "solely as working capital to alleviate economic injury caused by [the COVID-19 pandemic]."

476. On April 20, 2020, the SBA deposited an EIDL emergency advance amount of $10,000 (requested by the borrower) into Acct. No. 5254. This was followed, on May 22, 2020, by the initial principal amount of $149,900 ($150,000, minus a $100 processing fee), and a subsequent deposit of the remaining principal ($350,000) on July 29, 2021.

477. Shri Bhaktinidhi did not use the loan proceeds in the manner required by the loan agreement. Instead, it diverted the proceeds to other Sheth entities and/or associates through a series of checks, including a June 3, 2020, check to K&D Hospitality ($125,000); a June 4, 2020, check to "Courtesy Inn" ($12,500); and a September 3, 2021, check to Fortune Holding ($55,000).

478. According to internal SBA records, on or about August 3, 2022, the SBA flagged the loan for suspected fraud. On or about March 9, 2023, the loan was referred for liquidation. And on or about December 8, 2023, the loan was charged off as a loss to the government.

479. The charge-off on the EIDL loan to Shri Bhaktinidhi, Inc., resulted in a loss to the SBA of $510,000 ($500,000 principal, plus $10,000 advance).

### D. CARES Act Loans Associated with the Penrose Property

480. Shortly after securing $8.1 million from BCB Bank through SBA and commercial loan transactions in the November 2018 SBA 7(a), the Sheths applied

173

for, and received, at least four (4) CARES Act loans to Sheth entities associated with the Penrose hotel.

### *The Penn Hospitality EIDL Loan*

481.    On or about March 30, 2020, Pankaj Sheth submitted to the SBA an application for an EIDL loan to Penn Hospitality Management, LLC, the Sheth entity that operated the Penrose hotel, fraudulently identifying Renuka Sheth as the sole owner and falsely reporting his own email address and phone number as her contact information.

482.    Upon information and belief, the application falsely reported the number of employees (25), gross revenues ($2,782,454) and the cost of goods sold ($35,000) for the twelve-month period preceding the pandemic, and that no owner of the applicant was prohibited from receiving federal grants or loans.

483.    The application reported a Citizens Bank checking account in the name of Penn Hospitality with an account number ending in 1184 ("Acct. No. 1184"). According to bank records in possession of the government, the signatories on Acct. 1184 included Rishi and Jayprakash Sheth.

484.    On May 17, 2020, Renuka Sheth purportedly electronically signed, among other documents, an SBA Loan Authorization and Agreement authorizing a $150,000 EIDL loan to Penn Hospitality. The agreement provided that the loan proceeds must be used "solely as working capital to alleviate economic injury caused by [the COVID-19 pandemic]."

174

485.   On April 21, 2020, the SBA deposited an advance amount of $10,000 (requested by the borrower) into Acct. No. 1184. This was followed, on May 22, 2020, by a deposit of the principal amount of $149,900 ($150,000, minus a $100 processing fee) into the same account.

486.   Penn Hospitality did not use the loan proceeds in the manner required by the loan agreement. Instead, it diverted the proceeds to a different Sheth entity. Specifically, on the same date the SBA deposited the proceeds into the Penn Hospitality account, Penn Hospitality made a wire transfer of $149,900 to Pusti Management, LLC, a Sheth entity associated with the Englishtown property.

487.   According to internal SBA records, on or about July 21, 2021, the SBA flagged the loan for suspected fraud.

488.   Penn Hospitality defaulted on the EIDL loan, making only sporadic interest-only payments, and resulting in a loss to the SBA of $160,000 ($150,000 principal, plus $10,000 advance).

### *The Vraj Brig EIDL Loan*

489.   On or about April 1, 2020, Pankaj Sheth submitted to the SBA an application for an EIDL loan to Vraj Brig PA, LLC, the Sheth entity that owned the Penrose property, fraudulently identifying Renuka Sheth as the sole owner and falsely reporting his own email address and phone number as contact information.

490.   Upon information and belief, Vraj Brig had no employees and no revenue.

175

491.   Upon information and belief, the application falsely reported the number of employees (25)—notably, the same number indicated on the EIDL application of Penn Hospitality—"lost rents due to the disaster" ($750,000), and that no owner of the applicant was prohibited from receiving federal grants or loans.

492.   The application reported an Amboy Bank checking account in the name of Vraj Brig with an account number ending in 5971 ("Acct. No. 5971"). According to bank records in possession of the government, the signatories on Acct. 5971 were Pankaj, Rohit, and Ravi Sheth.

493.   On July 1, 2020, Renuka Sheth purportedly electronically signed, among other documents, an SBA Loan Authorization and Agreement authorizing a $150,000 EIDL loan to Vraj Brig. The agreement provided that the loan proceeds must be used "solely as working capital to alleviate economic injury caused by [the COVID-19 pandemic]."

494.   On April 24, 2020, the SBA deposited an EIDL emergency advance amount of $10,000 (requested by the borrower) into Acct. No. 5971. This was followed, on July 6, 2020, by a deposit of the principal amount of $149,900 ($150,000, minus a $100 processing fee) into the same account.

495.   Vraj Brig did not use the loan proceeds in the manner required by the loan agreement. Instead, it diverted the proceeds to other Sheth entities through a series of transfers, including: on April 24, 2020, to Star Hospitality ($2,000), on May

176

1, 2020, to Star Hospitality ($2,500), and on July 7, 2020, to Julius Management ($149,900).

496.    According to internal SBA records, on or about July 21, 2021, the SBA flagged the loan for suspected fraud.

497.    Vraj Brig defaulted on the EIDL loan, making only sporadic interest-only payments, and resulting in a loss to the SBA of $160,000 ($150,000 principal, plus $10,000 advance).

### The Penn Hospitality PPP Loan

498.    Having already received an EIDL loan for Penn Hospitality, on or about May 22, 2020, Pankaj and/or Rajan Sheth submitted to lender Kabbage, Inc., an application for a PPP loan to the same entity.[18]

499.    Among the fraudulent representations on the application were that (a) Renuka Sheth held a 100% ownership interest in the borrowing entity; (b) Renuka's email address was ***143@gmail.com, which was used exclusively by Pankaj Sheth; (c) the average monthly payroll of Penn Hospitality was $25,867; (d) it had 27 employees; (e) no owner of the applicant was ineligible to receive SBA loans; (f) no owner of the applicant had obtained an SBA loan that was currently delinquent or

---

[18] Kabbage, Inc., filed for Chapter 11 bankruptcy in October 2022. In May 2024, it agreed to pay $120 million to resolve a DOJ False Claims Act investigation that Kabbage knowingly submitted thousands of false claims to the SBA in connection with PPP lending. See https://www.justice.gov/usao-ma/pr/kabbage-agrees-pay-120-million-resolve-allegations-it-defrauded-paycheck-protection (last accessed June 14, 2026).

177

that defaulted in the last seven years, resulting in a loss to the government; and (g) no owner of the applicant was an owner of any other business.

500. Upon information and belief, Pankaj or Rajan Sheth forged the electronic signature of Renuka Sheth on the loan application, fraudulently certifying, among other things, Renuka's understanding of the criminal and civil penalties for making a false statement to obtain an SBA-guaranteed loan.

501. Upon information and belief, on or about the same date, Pankaj or Rajan Sheth forged the electronic signature of Renuka Sheth on an SBA Note issued by Kabbage, Inc., for a $64,667 PPP loan to Penn Hospitality.

502. Under the terms of the SBA Note, the borrower could apply for loan forgiveness in an amount equal to the sum of eligible costs incurred within eight weeks following disbursement of the loan, including (a) payroll costs; (b) payment of interest (but not principal) on a covered mortgage obligation; (c) payment of a covered rent obligation; and (d) any covered utility payment.

503. On June 2, 2020, Kabbage, Inc., disbursed the loan, depositing $64,667 into Penn Hospitality's Citizen Bank Acct. No. 1184.

504. Penn Hospitality did not use the proceeds for a permissible purpose; rather, on the same date the loan was funded, it transferred the entire loan amount to a Citizens Bank account in the name of Pusti Management, a Sheth entity associated with the Englishtown property.

505. On or about December 7, 2021, Pankaj and/or Rajan Sheth submitted a loan forgiveness application to the SBA, fraudulently certifying that Penn

178

Hospitality had complied with all requirements for loan forgiveness, and forging Renuka Sheth's electronic signature and initials on the application.

506. On October 3, 2022, in reliance on those false representations, the SBA approved forgiveness and paid to the lender the guaranteed loan amount of $64,667, plus accrued interest of $1,511.26, thereby incurring a total loss of $66,178.26 on the PPP loan to Penn Hospitality, plus processing fees.

### *The Penn Hospitality Second Draw PPP Loan*

507. Pursuant to the Economic Aid Act, enacted in late 2020 and implemented by the SBA in early 2021, the Second Draw Paycheck Protection Program allowed small businesses that had previously received a PPP loan to apply for a second, forgivable loan provided they met certain criteria.

508. On or about March 29, 2021, Pankaj and/or Rajan Sheth submitted to Customers Bank an application for a second draw PPP loan to Penn Hospitality.

509. Among the fraudulent representations on the application were that (a) Renuka Sheth held a 100% ownership interest in the borrowing entity; (b) Renuka's email address was ***143@gmail.com, which was used exclusively by Pankaj Sheth; (c) the average monthly payroll of Penn Hospitality was $24,298; (d) it had 27 employees; (d) no owner of the applicant was ineligible to receive SBA loans; (e) no owner of the applicant had obtained an SBA loan that was currently delinquent or that defaulted in the last seven years, resulting in a loss to the government; (f) no owner of the applicant was an owner of any other business; and (g) the borrower had used the full amount of the first draw PPP loan only for eligible expenses.

510.   Upon information and belief, Pankaj or Rajan Sheth forged the electronic signature of Renuka Sheth on the loan application, fraudulently certifying, among other things, Renuka's understanding of the criminal and civil penalties for making a false statement to obtain an SBA-guaranteed loan.

511.   Upon information and belief, on or about the same date, Pankaj or Rajan Sheth forged the electronic signature of Renuka Sheth on an SBA Note issued by Customers Bank for a $60,493 second draw PPP loan to Penn Hospitality.

512.   On March 30, 2021, Customers Bank disbursed the loan, depositing $60,493 into an unspecified Penn Hospitality bank account.

513.   On or about November 3, 2021, Pankaj and/or Rajan Sheth submitted a loan forgiveness application to the SBA, fraudulently certifying that Penn Hospitality had complied with all requirements for loan forgiveness, forging Renuka Sheth's electronic signature and initials on the application.

514.   On July 21, 2022, the SBA denied forgiveness, finding that Penn Hospitality failed to provide sufficient documentation necessary to establish the borrower's eligibility.

515.   Through attorney Calzaretto, Penn Hospitality appealed this finding to the SBA's Office of Hearings and Appeals on or about August 22, 2022.

516.   On or about February 25, 2025, following a subsequent investigation, the SBA affirmed its decision to deny forgiveness based on a finding that Penn Hospitality was in default on the 2018 SBA 7(a) loan from BCB Bank at the time it

180

filed the forgiveness application and falsely certified that it was eligible for loan forgiveness.

517.    On April 17, 2025, the SBA honored its guaranty to Customers Bank on the second draw PPP loan to Penn Hospitality, paying a total amount of $62,891.20 (principal of $60,493 and interest of $2,398.20), thereby resulting in a loss to the federal government.

### E.    CARES Act Loan Associated with the Hershey Property

518.    Sheth entity Puja Hospitality, LLC, was organized by, or at the direction of, Pankaj Sheth in 2005, with an address at the Sheths' Keller Avenue property in Lancaster, Pennsylvania.

519.    Soon thereafter, Puja Hospitality purchased a small motel and adjacent office in Hershey, Pennsylvania, financed by a $504,000 loan from Sovereign Bank. At the time of the purchase Rohit Sheth, and his spouse Bindu Sheth, were identified as the principals of Puja Hospitality.

520.    The Sheths defaulted on the Sovereign Bank loan and, on or about August 20, 2018, Sovereign Bank commenced a confessed judgment action against Puja Hospitality in the Court of Common Pleas of Dauphin County, ultimately securing a judgment in the amount of $327,271.62. *See Sovereign Bank, et al. v. Puja Hospitality, LLC* (Dauphin Co. Ct. Comm. Pl. No. 2018-CV-05500).

521.    On or about September 16, 2021, Puja Hospitality sold the Hershey property for $671,480, thereby avoiding a sheriff's sale.

522.    Upon information and belief, in the years prior to the Sheths' sale of the Hershey property, Sheth associate Niranjan Patel and his family members operated the hotel, paying monthly rent to the Sheths at times relevant to this Complaint.

### *The Puja Hospitality EIDL Loan*

523.    At the time of the COVID-19 pandemic, Puja Hospitality was threatened with foreclosure and a sheriff's sale of the Hershey property, its sole asset.

524.    As noted, Puja Hospitality was among the Sheth entities for which Pankaj Sheth initially submitted PPP loan applications to Peapack-Gladstone Bank, although that loan was never funded.

525.    At around the same time, Rajan Sheth submitted to the SBA an application for an EIDL loan to Puja Hospitality, fraudulently identifying Niranjan Patel as the sole owner and falsely reporting his own email address and phone number as contact information for Niranjan Patel.

526.    Upon information and belief, the application falsely reported, among other things, the gross revenues ($175,000) for the twelve-month period preceding the pandemic, and that no owner of the applicant was prohibited from receiving federal grants or loans.

527.    The application reported a Fulton Bank checking account in the name of Puja Hospitality with an account number ending in 3421 ("Acct. No. 3421").

182

According to bank records in possession of the government, the sole signatory on Acct. No. 3421 was Niranjan Patel.

528. On May 17, 2020, Niranjan Patel purportedly electronically signed, among other documents, an SBA Loan Authorization and Agreement authorizing a $83,500 EIDL loan to Puja Hospitality. The agreement provided that the loan proceeds must be used "solely as working capital to alleviate economic injury caused by [the COVID-19 pandemic]."

529. On April 21, 2020, the SBA deposited an EIDL emergency advance amount of $4,000 (requested by the borrower) into Acct. No. 3421. This was followed, on May 28, 2020, by a deposit of $83,400 (the principal, minus a $100 processing fee) into the same account.

530. Puja Hospitality did not use the loan proceeds in the manner required by the loan agreement. Instead, it diverted them to various Sheth entities. At the direction of Pankaj or Rajan Sheth, Niranjan Patel wrote a June 1, 2020, check to Pusti Management ($85,000), a June 10, 2020, check to K&D Hospitality ($85,000), and a June 19, 2020, check to Mukesh Patel ($70,000), a member of the Temple's board of trustees.

531. Puja Hospitality defaulted on the EIDL loan, making only sporadic payments and resulting in a loss to the SBA of at least $86,576.21 ($82,576.21 principal balance as of January 15, 2026, plus the $4,000 advance).

### F.    CARES Act Loans Associated with the Englishtown Property

532.    As noted, the Sheths diverted the proceeds of multiple CARES Act loans to Sheth entities Pusti Management, LLC, and CNH Management, LLC—both of which were associated with the Sheths' Englishtown hotel. Nevertheless, they applied for and obtained two EIDL loans to the same entities at around the same time.

### *The Pusti Management EIDL Loan*

533.    On or about April 1, 2020, Pankaj Sheth submitted to the SBA an application for an EIDL loan to Pusti Management, LLC, fraudulently identifying Renuka Sheth as the sole owner and falsely reporting his own email address and phone number as contact information for his spouse.

534.    Upon information and belief, the application falsely reported the number of employees (2), gross revenues for the twelve-month period preceding the pandemic ($125,000), "lost rents due to the disaster" ($125,000), and that no owner of the applicant was prohibited from receiving federal grants or loans.

535.    The application reported an Amboy Bank checking account in the name of Pusti Management with an account number ending in 5289 ("Acct. 5289"). According to bank records in possession of the government, the signatories on Acct. 5289 were Pankaj, Rohit, and Ravi Sheth.

536.    On May 17, 2020, Renuka Sheth purportedly electronically signed, among other documents, an SBA Loan Authorization and Agreement authorizing a $60,500 EIDL loan to Pusti Management. The agreement provided that the loan

184

proceeds must be used "solely as working capital to alleviate economic injury caused by [the COVID-19 pandemic]."

537.    On April 24, 2020, the SBA deposited an advance amount of $2,000 (requested by the borrower) into Acct. No. 5289. This was followed, on May 19, 2020, by a deposit of the principal amount of $60,400 ($60,500, minus a $100 processing fee) into the same account.

538.    Pusti Management did not use the loan proceeds in the manner required by the loan agreement. Instead, it diverted the proceeds to other Sheth entities, associates, and family members through a series of checks and transfers, including: a May 22, 2020, check to Star Hospitality ($1,000), a May 26, 2020, check to Niranjan Patel ($1,000), a May 29, 2020, check to Sonia Sheth ($1,000), and transfers to Sheth entity K&D Hospitality on June 3, 2020 ($7,900) and June 4, 2020 ($50,000).

539.    According to internal SBA records, on or about July 21, 2021, the SBA flagged the loan for suspected fraud.

540.    Pusti Management defaulted on the EIDL loan, making only sporadic interest-only payments and resulting in a loss to the SBA of $62,500 ($60,500 principal, plus $2,000 advance).

### The CNH Management EIDL Loan

541.    On April 1, 2020—the same date that he submitted the EIDL application for Pusti Management—Pankaj Sheth separately submitted to the SBA an application for an EIDL loan to CNH Management, LLC, fraudulently

185

identifying Renuka Sheth as the sole owner and falsely reporting his own email address and phone number as contact information for his spouse.

542. Upon information and belief, the application falsely reported the number of employees (7), the gross revenues for the twelve-month period preceding the pandemic ($620,000), and that no owner of the applicant was prohibited from receiving federal grants or loans.

543. The application reported an Amboy Bank checking account in the name of CNH Management with an account number ending in 0183 ("Acct. No. 0183"), with an address at the Sheths' residence in Morganville, New Jersey. According to bank records in possession of the government, the signatories on Acct. No. 0183 were Pankaj and Rohit Sheth.

544. On June 1, 2020, Renuka Sheth purportedly electronically signed, among other documents, an SBA Loan Authorization and Agreement authorizing a $150,000 EIDL loan to CNH Management. The agreement provided that the loan proceeds must be used "solely as working capital to alleviate economic injury caused by [the COVID-19 pandemic]."

545. On April 20, 2020, the SBA deposited an EIDL emergency advance amount of $10,000 (requested by the borrower) into Acct. No. 0183. This was followed, on May 28, 2020, by a deposit of the principal amount of $149,900 ($150,000, minus a $100 processing fee) into the same account.

546. CNH Management did not use the loan proceeds in the manner required by the loan agreement. Instead, it diverted the proceeds to other Sheth

186

entities, including transfers to Vraj Brig on August 6 ($5,000) and August 11 ($1,000). On September 4, 2020, CNH Management transferred $102,000 to a different CNH Management Amboy Bank account (Acct. No. 5564) and, on September 7, 2020, Pankaj wrote a check from that account, in the same amount, to Fortune Holding, the Sheth entity that owned the Lincoln Highway property.

547. According to internal SBA records, on or about July 21, 2021, the SBA flagged the loan for suspected fraud.

548. CNH Management defaulted on the EIDL loan, making only sporadic interest-only payments and resulting in a loss to the SBA of $160,000 ($150,000 principal, plus $10,000 advance).

### G. CARES Act Loans Associated with the Ocean Township Property

549. As noted, at the time of the COVID-19 pandemic, Star Hospitality—the Sheth entity that owned and/or operated the Ocean Township hotel and recently purchased the Browns Mills hotel—had just fraudulently induced the United States Bankruptcy Court for the District of New Jersey to approve a compromise payment to TD Bank on a defaulted SBA 7(a) loan in the Mount Holly bankruptcy case.

550. Although the Browns Mills purchase was purportedly completed by non-defendant Sheth associate Trupti Shah as the sole owner of Star Hospitality, less than one-week later Star Hospitality took a $1 million loan from Sheth associate Piyush Bhaidaswala, with Pankaj Sheth executing the loan agreement as Star Hospitality's sole owner.

187

551.    Shortly thereafter, Star Hospitality applied for, and received, at least three (3) CARES Act loans, falsely reporting a different Sheth family member as its principal.

### *The Star Hospitality EIDL Loan*

552.    On March 30, 2020, Pankaj and/or Rajan Sheth submitted or caused to be submitted to the SBA an application for an EIDL loan to Star Hospitality, LLC, fraudulently identifying Renuka Sheth as the sole owner and falsely reporting an email address and phone number used exclusively by Ravi Sheth as the contact information for Renuka, his aunt.

553.    Upon information and belief, the application falsely reported the number of employees (8), the gross revenues for the twelve-month period preceding the pandemic ($890,000), "loss rents due to the disaster" ($200,000), and that no owner of the applicant was prohibited from receiving federal grants or loans.

554.    The application reported an Amboy Bank checking account in the name of Star Hospitality with an account number ending in 5912 ("Acct. No. 5912"), with an address at the Sheths' residence in Morganville, New Jersey. According to bank records in possession of the government, the signatories on Acct. No. 5912 were Pankaj and Ravi Sheth.

555.    On May 22, 2020, Renuka Sheth purportedly electronically signed, among other documents, an SBA Loan Authorization and Agreement authorizing a $150,000 EIDL loan to CNH Management. The agreement provided that the loan

188

proceeds must be used "solely as working capital to alleviate economic injury caused by [the COVID-19 pandemic]."

556.    On April 24 and 28, 2020, the SBA made separate deposits into Acct. No. 0183 of an EIDL emergency advance amount totaling $3,500 (requested by the borrower). This was followed, on June 1, 2020, by a deposit of the principal amount of $149,900 ($150,000, minus a $100 processing fee) into the same account.

557.    Star Hospitality did not use the loan proceeds in the manner required by the loan agreement. Instead, it diverted the proceeds to Sheth entity K&D Hospitality by way of a transfer of $164,500 on June 3, 2020.

558.    Star Hospitality defaulted on the EIDL loan, making only sporadic interest-only payments and resulting in a loss to the SBA of $153,500 ($150,000 principal, plus $3,500 advance).

### The Star Hospitality PPP Loan

559.    Having applied for and received an EIDL loan to Star Hospitality, Pankaj and/or Rajan Sheth also applied for and received a PPP loan to the same entity at around the same time.

560.    On or about May 6, 2020, Pankaj and/or Rajan Sheth submitted or caused to be submitted an application for a PPP loan for Star Hospitality LLC to Amboy Bank.

561.    Upon information and belief, among the fraudulent representations on the application were that (a) Renuka Sheth held a majority ownership interest in the borrowing entity; (b) no owner of the applicant was ineligible to receive SBA

189

loans; (c) no owner of the applicant obtained an SBA loan that was currently delinquent or that defaulted in the last seven years, resulting in a loss to the government; and (d) no owner of the applicant was an owner of any other business.

562. Upon information and belief, Pankaj or Rajan Sheth forged the electronic signature of Renuka Sheth on the loan application, fraudulently certifying, among other things, Renuka's understanding of the criminal and civil penalties for making a false statement to obtain an SBA-guaranteed loan.

563. Upon information and belief, on or about May 6, 2020, Pankaj or Rajan Sheth forged the written signature of Renuka Sheth on an SBA Note issued by Amboy Bank for a $17,200 PPP loan to Star Hospitality, which they requested be deposited in Star Hospitality's Amboy Acct. No. 5921. According to bank records in possession of the government, the signatories on Acct. No. 5921 were Pankaj and Ravi Sheth.

564. On May 11, 2020, Amboy Bank disbursed the loan, depositing $17,200 into Star Hospitality's Amboy Bank Acct. No. 5912.

565. Star Hospitality did not use the PPP loan proceeds for a permissible purpose; rather, it diverted the funds to other Sheth entities by way of a series of checks and transfers, including: a May 20, 2020, check to Vraj Brig ($4,300), a June 3, 2020, transfer to K&D Hospitality ($164,500), and an August 10, 2020, check to Pusti Management ($20,000).

566. On or about November 19, 2021, Pankaj or Rajan Sheth submitted a loan forgiveness application to the SBA, fraudulently certifying that Star

190

Hospitality had complied with all requirements for loan forgiveness, forging Renuka Sheth's electronic signature and initials on the application.

567.    On or about November 30, 2021, in reliance on those false representations, the SBA issued a forgiveness payment of the $17,200 principal and accrued interest of $273.77 to Amboy Bank, thereby incurring a total loss to the government of $17,473.77 on the PPP loan to Star Hospitality, plus processing fees.

### The Star Hospitality Second Draw PPP Loan

568.    On or about April 21, 2021, Pankaj and/or Ravi Sheth submitted or caused to be submitted to PPP lender Amur Equipment Co. ("Amur"), an application for a second draw PPP loan for Star Hospitality.

569.    Upon information and belief, among the fraudulent representations on this application were that (a) Renuka Sheth held a 99% ownership interest and Pankaj Sheth held a 1% ownership interest in the borrowing entity; (b) Renuka's email address was ***87@gmail.com, which was used exclusively by Ravi Sheth; (c) the average monthly payroll of Star Hospitality was $6,833; (d) it had 10 employees; (e) no owner of the applicant was ineligible to receive SBA loans; (f) no owner of the applicant had obtained an SBA loan that was currently delinquent or that defaulted in the last seven years, resulting in a loss to the government; (g) no owner of the applicant was an owner of any other business; and (h) the entire amount of the first draw PPP loan proceeds had been used on eligible expenses.

570.    Upon information and belief, Pankaj or Ravi Sheth forged the electronic signature of Renuka Sheth on the loan application, fraudulently

191

certifying, among other things, Renuka's understanding of the criminal and civil penalties for making a false statement to obtain an SBA-guaranteed loan.

571.    Upon information and belief, on or about the same date, Pankaj or Ravi Sheth forged the electronic signature of Renuka Sheth on an SBA Note issued by Amur for a $23,915 second draw PPP loan to Star Hospitality.

572.    On or about the same date, Amur submitted to the SBA a lender's application for a second draw loan guaranty. Based on fraudulent representations contained in the forgiveness application, Amur certified that neither Star Hospitality nor its owners were ineligible to transact business with the SBA.

573.    On April 29, 2021, Amur deposited the $23,915 loan into Star Hospitality's Amboy Acct. No. 5912. According to bank records in possession of the government, the sole signatories on Acct. No. 5921 were Pankaj and Ravi Sheth.

574.    Star Hospitality did not use the second draw PPP loan proceeds for a permissible purpose; rather, it diverted the proceeds to fund other financial interests of the Sheth family, including: a May 10, 2021, check to Lake Real Estate, LLC ($2,500), a real estate investment business owned and/or controlled by Alex Hartstein, the principal of private lender Rosdev.

575.    Upon information and belief, Customers Bank subsequently acquired the loan obligation from Amur.

576.    Star Hospitality defaulted on the second draw PPP loan in late 2021. On or about May 22, 2023, the SBA approved Customer Bank's guarantee purchase

192

request, disbursing $23,915 in principal and $435.12 in accrued interest to Customers Bank, thereby incurring a total loss of $24,350.12.

### H.   CARES Act Loan Associated with the Lebanon Property

577.   Prior to 2014, Pankaj Sheth, either individually or through a Sheth entity, entered into a business arrangement with Naresh Patel, either individually or through an entity he controlled, by which the Sheths leased the Relax Inn, a hotel in Lebanon, Pennsylvania, while they made payments toward the purchase of the property.

### *The Relax Inn EIDL Loan*

578.   On June 17, 2020, Pankaj Sheth submitted or caused to be submitted to the SBA an application for an EIDL loan to Relax Inn, reporting the Lebanon hotel as a sole proprietorship. The application fraudulently identified Renuka Sheth as the sole owner, falsely reporting an email address and phone number used exclusively by Pankaj Sheth as the contact information for his spouse.

579.   Upon information and belief, the application falsely reported the number of employees (5), the gross revenues for the twelve-month period preceding the pandemic ($235,000), and that no owner of the applicant was prohibited from receiving federal grants or loans.

580.   The application reported a Fulton Bank checking account with an account number ending in 9254 ("Acct. No. 9254"). Upon information and belief, Pankaj Sheth was a signatory on Acct. No. 9254.

193

581. On August 6, 2020, Renuka Sheth purportedly electronically signed, among other documents, an SBA Loan Authorization and Agreement authorizing a $112,500 EIDL loan to Relax Inn. The agreement provided that the loan proceeds must be used "solely as working capital to alleviate economic injury caused by [the COVID-19 pandemic]."

582. On June 18, 2020, the SBA deposited into Acct. No. 9254 an EIDL emergency advance amount of $5,000 (requested by the borrower). This was followed, on August 7, 2020, by the deposit of the principal amount of $112,400 ($112,500, minus a $100 processing fee) into the same account.

583. Upon information and belief, Relax Inn did not use the EIDL loan proceeds for a permissible purpose; rather, it diverted the proceeds to enrich the Sheth family and/or to pay the financial obligations of other Sheth entities.

584. According to internal SBA records, on or about July 21, 2021, the SBA flagged the loan for suspected fraud.

585. Relax Inn made regular interest-only payments on the EIDL loan. As of January 7, 2026, the outstanding principal balance of $112,354.38 was past due.

## I.    CARES Act Loan Associated with the Browns Mills Property

586. As noted, in 2019, Sheth entity Star Hospitality purportedly purchased the Browns Mills property from Mount Holly Hospitality in Mount Holly's bankruptcy case in the District of New Jersey.

587. Soon thereafter, the Sheths applied for, and received, at least one CARES Act loan to a different Sheth entity associated with the Browns Mills hotel.

194

### *The "Juliustown Management, LLC" EIDL Loan*

588.   On March 31, 2020, Pankaj and/or Rajan Sheth either submitted or caused to be submitted to the SBA an application for an EIDL loan to "Juliustown Management, LLC," apparently misnaming Julius Management, LLC, the Sheth entity that owned and/or operated the Browns Mills property.

589.   Among other misrepresentations, the application fraudulently identified Renuka Sheth as the sole owner and falsely reported an email address and phone number used exclusively by Pankaj Sheth as the contact information for his spouse.

590.   Upon information and belief, the application falsely reported the number of employees (6), the gross revenues for the twelve-month period preceding the pandemic ($450,000), and that no owner of the applicant was prohibited from receiving federal grants or loans.

591.   After initially reporting Julius Management's bank account as Amboy Acct. No. 5912—the account through which Star Hospitality received multiple CARES Act loans—Pankaj and Rohit Sheth opened a new Amboy Bank checking account in the name of Julius Management, LLC, in late June 2020 with an account number ending in 9136 ("Acct. No. 9136"), providing that account number to the SBA. Pankaj and Rohit Sheth were the sole signatories on Acct. No. 9136, which was the same account to which Vraj Brig transferred the entire amount of its EIDL loan proceeds on July 7, 2020.

195

592.    On November 21, 2020, Renuka Sheth purportedly electronically signed, among other documents, an SBA Loan Authorization and Agreement authorizing a $150,000 EIDL loan to "Juliustown Management, LLC." The agreement provided that the loan proceeds must be used "solely as working capital to alleviate economic injury caused by [the COVID-19 pandemic]."

593.    On November 27, 2020, the SBA deposited into Acct. No. 9136 the principal balance of $149,900 ($150,000, minus a $100 processing fee). This was followed, on July 1, 2021, by an EIDL emergency advance of $10,000.

594.    Julius Management did not use the loan proceeds in the manner required by the loan agreement. Instead, it diverted the proceeds to other Sheth entities, including a December 15, 2020, transfer to K&D Hospitality ($135,000).

595.    According to internal SBA records, on or about July 21,2021, the SBA flagged the loan for suspected fraud.

596.    Julius Management made sporadic interest-only payments on the loan. The principal balance as of January 7, 2026, was $149,545.86, which is past due.

### J.    CARES Act Loan Associated with the Clearfield Property

597.    The Sheths also applied for, and received, at least one CARES Act loan associated with the Clearfield property.

### *The JBL Holding EIDL Loan*

598.    On June 25, 2020, Pankaj or Rajan Sheth submitted or caused to be submitted to the SBA an application for an EIDL loan to JBL Holding, LLC, fraudulently identifying Rishi Sheth as the sole owner and falsely reporting an

196

email address and phone number used exclusively by Pankaj Sheth as the contact information for Rishi, his nephew.

599. Upon information and belief, the application falsely reported the number of employees (6), the gross revenues for the twelve-month period preceding the pandemic ($300,000), and that no owner of the applicant was prohibited from receiving federal grants or loans.

600. The application initially reported an Amboy Bank checking account in the name of JBL Holding, LLC with an account number ending in 5998 ("Acct. No. 5998"), and an address at the Sheths' residence in Morganville, New Jersey. According to bank records in possession of the government, the signatory on Acct. No. 5998 was Pankaj Sheth. However, the proceeds were ultimately disbursed to a Citizens Bank account with an account number ending in 7396 ("Acct. No. 7396"). According to bank records in possession of the government, the signatories on Acct. No. 7396 were Rishi and Rajan Sheth.

601. On or about July 13, 2020, Rishi Sheth purportedly electronically signed, among other documents, an SBA Loan Authorization and Agreement authorizing a $144,000 EIDL to JBL Holding LLC. The agreement provided that the loan proceeds must be used "solely as working capital to alleviate economic injury caused by [the COVID-19 pandemic]."

602. On July 13, 2020, the SBA deposited into Acct. No. 7396 the principal amount of $143,900 ($144,000, minus a $100 processing fee).

197

603.    Upon information and belief, the Sheths did not use the loan proceeds in the manner required by the loan agreement. Instead, they diverted the proceeds to other Sheth entities, including a wire transfer of $85,000 to K&D Hospitality on December 21, 2020.

604.    JBL Holding defaulted on its EIDL loan obligation, making only sporadic interest-only payments, and resulting in a loss to the SBA of the principal amount of $144,000.

## CAUSES OF ACTION

**I.    The Bank United SBA 7(a) Loan**

### COUNT ONE
**False Claims Act, 31 U.S.C. § 3729(a)(1)(A)**
**Presenting or Causing False Claims to Be Presented for Payment**

**(Defendants Pankaj Sheth, Renuka Sheth, Lisa Sheth, Rishi Sheth, Bhavesh Sheth, Sanjay Patel, JBL Holding, Creative Funding, John Calzaretto, and Calzaretto & Bernstein)**

605.    The United States repeats and realleges each allegation in Paragraphs 1 through and including 604, as if fully set forth herein.

606.    By reason of the foregoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(A), the defendants identified in this count knowingly presented, or caused to be presented, false claims for payment or approval to Bank United, an SBA preferred lender, while they were specifically aware of the falsity of the claims with regard to SBA 7(a) loan requirements, for the purpose of fraudulently inducing a $2,104,100 SBA 7(a) loan to JBL Holding.

198

607.    Every claim regarding the borrower's eligibility for the SBA 7(a) loan from Bank United, or request for payment submitted by the defendants identified in this count, constituted a false claim under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, and the defendants caused such false claims to be submitted by virtue of their agreement to fraudulently induce an SBA 7(a) loan to JBL Holding for which the borrower was, in truth, not eligible.

608.    Bank United paid the false or fraudulent claims because of the acts of the defendants identified in this count and, as a result, the United States incurred actual damages of $1,578,075, the 75% SBA guaranteed portion of the Bank United loan.

609.    Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the defendants identified in this count are liable to the United States under the treble damage and civil penalty provisions of the False Claims Act for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of the defendants' actions.

<div align="center">

**<u>COUNT TWO</u>**
**False Claims Act, 31 U.S.C. § 3729(a)(1)(B)**
**Using False Records or Statements to Get False Claims Paid**

**(Defendants Pankaj Sheth, Renuka Sheth, Lisa Sheth, Rishi Sheth, Bhavesh Sheth, Sanjay Patel, JBL Holding, Creative Funding, John Calzaretto, and Calzaretto & Bernstein)**

</div>

610.    The United States repeats and realleges each allegation in Paragraphs 1 through and including 609, as if fully set forth herein.

611.    By reason of the foregoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(B), the defendants identified in this count knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent claims to get false or fraudulent claims approved and paid by the United States.

612.    Bank United, in its capacity as an SBA preferred lender, paid the false or fraudulent claims because of the acts of the defendants identified in this count and, as a result, the United States has incurred actual damages of $1,578,075, the 75% SBA guaranteed portion of the Bank United loan.

613.    Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the defendants identified in this count are liable to the United States under the treble damage and civil penalty provisions of the False Claims Act for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of the defendants' actions.

## COUNT THREE
### False Claims Act, 31 U.S.C. § 3729(a)(1)(C)
### Conspiracy

**(Defendants Pankaj Sheth, Renuka Sheth, Lisa Sheth, Rishi Sheth, Bhavesh Sheth, Sanjay Patel, JBL Holding, Creative Funding, John Calzaretto, and Calzaretto & Bernstein)**

200

614.    The United States repeats and realleges each allegation in Paragraphs 1 through and including 613, as if fully set forth herein.

615.    By reason of the foregoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(C), the defendants identified in this count conspired to present, or caused to be presented, false claims for payment or approval to Bank United, an SBA preferred lender, while they were specifically aware of the falsity of the claims with regard to SBA loan requirements, for the purpose of fraudulently inducing a $2,104,100 SBA 7(a) loan to JBL Holding.

616.    By reason of the foregoing conduct, and in further violation of 31 U.S.C. § 3729(a)(1)(C), the defendants identified in this count knowingly conspired to make, use, or cause to be made or used, false records or statements material to false or fraudulent claims.

617.    Every claim regarding the borrowers' eligibility for the SBA 7(a) loan from Bank United, or request for payment submitted by the defendants identified in this count, constituted a false claim under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, and the defendants caused such false claims to be submitted by virtue of their agreement to fraudulently induce an SBA 7(a) loan to JBL Holding for which the borrower was, in truth, not eligible.

618.    Bank United paid the false or fraudulent claims because of the acts of the defendants identified in this count and, as a result, the United States incurred actual damages of $1,578,075, the 75% SBA guaranteed portion of the Bank United loan.

619.    Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the defendants identified in this count are liable to the United States under the treble damage and civil penalty provisions of the False Claims Act for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of the defendants' actions.

<div align="center">

**COUNT FOUR**
**FIRREA, 12 U.S.C. § 1833a**
**False Statements to the SBA**

**(Defendants Pankaj Sheth, Renuka Sheth, Lisa Sheth, Rishi Sheth, Bhavesh Sheth, Sanjay Patel, JBL Holding, Creative Funding, John Calzaretto, and Calzaretto & Bernstein)**

</div>

620.    The United States repeats and realleges each allegation in Paragraphs 1 through and including 619, as if fully set forth herein.

621.    By reason of the foregoing conduct, the defendants identified in this count, for the purpose of fraudulently obtaining a federally guaranteed SBA 7(a) loan in the amount of $2,104,100 from Bank United, an SBA preferred lender, unlawfully, willfully and knowingly made or caused to be made false statements or certifications to Bank United and the SBA in violation of 15 U.S.C. § 645(a).

622.    Under 12 U.S.C. § 1833a(c)(3) and 28 C.F.R. § 85.3(a)(6), the defendants identified in this count are liable for civil penalties.

II.    **The First Bank SBA 7(a) Loan**

<div align="center">

**COUNT FIVE**
**False Claims Act, 31 U.S.C. § 3729(a)(1)(A)**

</div>

<div align="center">

202

</div>

**Presenting or Causing False Claims to Be Presented for Payment**

**(Defendants Pankaj Sheth, Rohit Sheth, Rajan Sheth, Bhavesh Sheth, Sanjay Patel, Creative Funding, John Calzaretto, Calzaretto & Bernstein, 501 Hospitality, Piyush Bhaidaswala, Fortune Holding, and Wonder Hospitality)**

623.    The United States repeats and realleges each allegation in Paragraphs 1 through and including 622, as if fully set forth herein.

624.    By reason of the foregoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(A), the defendants identified in this count knowingly presented, or caused to be presented, false claims for payment or approval to First Bank, an SBA preferred lender, while they were specifically aware of the falsity of the claims with regard to SBA loan requirements, for the purpose of fraudulently inducing a $5 million SBA 7(a) loan to Fortune Holding and Wonder Hospitality.

625.    Every claim regarding the borrowers' eligibility for the SBA 7(a) loan from First Bank, or request for payment submitted by the defendants identified in this count, constituted a false claim under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, and the defendants caused such false claims to be submitted by virtue of their agreement to fraudulently induce an SBA 7(a) loan to Fortune Holding and Wonder Hospitality for which the borrowers were, in truth, not eligible.

626.    First Bank paid the false or fraudulent claims because of the acts of the defendants identified in this count and, as a result, the United States incurred actual damages of $3.75 million, the 75% SBA guaranteed portion of the First Bank loan.

203

627.    Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the defendants identified in this count are liable to the United States under the treble damage and civil penalty provisions of the False Claims Act for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of the defendants' actions.

## COUNT SIX
### False Claims Act, 31 U.S.C. § 3729(a)(1)(B)
### Using False Records or Statements to Get False Claims Paid

**(Defendants Pankaj Sheth, Rohit Sheth, Rajan Sheth, Bhavesh Sheth, Sanjay Patel, Creative Funding, John Calzaretto, Calzaretto & Bernstein, 501 Hospitality, Piyush Bhaidaswala, Fortune Holding, and Wonder Hospitality)**

628.    The United States repeats and realleges each allegation in Paragraphs 1 through and including 627, as if fully set forth herein.

629.    By reason of the foregoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(B), the defendants identified in this count knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent claims to get false or fraudulent claims approved and paid by the United States.

630.    First Bank, in its capacity as an SBA preferred lender, paid the false or fraudulent claims because of the acts of the defendants identified in this count and, as a result, the United States has incurred actual damages of $3.75 million, the 75% SBA guaranteed portion of the First Bank loan.

204

631.    Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the defendants identified in this count are liable to the United States under the treble damage and civil penalty provisions of the False Claims Act for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of the defendants' actions.

**COUNT SEVEN**
**False Claims Act, 31 U.S.C. § 3729(a)(1)(C)**
**Conspiracy**

**(Defendants Pankaj Sheth, Rohit Sheth, Rajan Sheth, Bhavesh Sheth, Sanjay Patel, Creative Funding, John Calzaretto, Calzaretto & Bernstein, 501 Hospitality, Piyush Bhaidaswala, Fortune Holding, and Wonder Hospitality)**

632.    The United States repeats and realleges each allegation in Paragraphs 1 through and including 631, as if fully set forth herein.

633.    By reason of the foregoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(C), the defendants identified in this count conspired to present, or caused to be presented, false claims for payment or approval to First Bank, an SBA preferred lender, while they were specifically aware of the falsity of the claims with regard to SBA loan requirements, for the purpose of fraudulently inducing a $5 million SBA 7(a) loan to Fortune Holding and Wonder Hospitality.

634.    By reason of the foregoing conduct, and in further violation of 31 U.S.C. § 3729(a)(1)(C), the defendants identified in this count knowingly conspired

205

to make, use, or cause to be made or used, false records or statements material to false or fraudulent claims.

635.    Every claim regarding the borrowers' eligibility for the SBA 7(a) loan from First Bank, or request for payment submitted by the defendants identified in this count, constituted a false claim under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, and the defendants caused such false claims to be submitted by virtue of their agreement to fraudulently induce an SBA 7(a) loan to Fortune Holding and Wonder Hospitality for which the borrowers were, in truth, not eligible.

636.    First Bank paid the false or fraudulent claims because of the acts of the defendants identified in this count and, as a result, the United States incurred actual damages of $3.75 million, the 75% SBA guaranteed portion of the First Bank loan.

637.    Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the defendants identified in this count are liable to the United States under the treble damage and civil penalty provisions of the False Claims Act for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of the defendants' actions.

**COUNT EIGHT**
**FIRREA, 12 U.S.C. § 1833a**
**False Statements to the SBA**

**(Defendants Pankaj Sheth, Rohit Sheth, Rajan Sheth, Bhavesh Sheth, Sanjay Patel, Creative Funding, John Calzaretto, Calzaretto & Bernstein,**

206

**501 Hospitality, Piyush Bhaidaswala, Fortune Holding, and Wonder Hospitality)**

638.    The United States repeats and realleges each allegation in Paragraphs 1 through and including 637, as if fully set forth herein.

639.    By reason of the foregoing conduct, the defendants identified in this count, for the purposes of fraudulently obtaining a federally guaranteed SBA 7(a) loan in the amount of $5 million from First Bank, an SBA preferred lender, unlawfully, willfully and knowingly made or caused to be made false statements or certifications to First Bank and the SBA in violation of 15 U.S.C. § 645(a).

640.    Under 12 U.S.C. § 1833a(c)(3) and 28 C.F.R. § 85.3(a)(6), the defendants identified in this count are liable for civil penalties.

**III.    The Parke Bank Commercial Loan**

**<u>COUNT NINE</u>**
**FIRREA, 12 U.S.C. § 1833a**
**Knowingly and willfully making or using a writing or document containing materially false, fictitious, or fraudulent statements**

**(Defendants Pankaj Sheth, Rajan Sheth, Vimal Madhiwala, Camelback Resort, Tannersville Beverage, K&D Associates, Star Hospitality, John Calzaretto, and Calzaretto & Bernstein)**

641.    The United States repeats and realleges each allegation in Paragraphs 1 through and including 640, as if fully set forth herein.

642.    By reason of the foregoing conduct, the defendants identified in this count, for the purposes of fraudulently obtaining a $3.675 million commercial loan from Parke Bank, a federally insured financial institution, knowingly and willfully made and used false writings and/or documents knowing the same to contain

207

materially false, fictitious, and fraudulent statements in violation of 18 U.S.C. §

1001(a).

643.    Under 12 U.S.C. § 1833a(c)(2), the defendants identified in this count

are liable for civil penalties.

## IV.    The Peapack-Gladstone Bank SBA 7(a) Loan

### COUNT TEN
**False Claims Act, 31 U.S.C. § 3729(a)(1)(A)**
**Presenting or Causing False Claims to Be Presented for Payment**

**(Defendants Pankaj Sheth, Rajan Sheth, Khushali Sheth, Bhavesh Sheth, Vimal Madhiwala, Sanjay Patel, Creative Funding, John Calzaretto, Calzaretto & Bernstein, Camelback Resort, Chateau Hospitality, and Tannersville Beverage)**

644.    The United States repeats and realleges each allegation in Paragraphs

1 through and including 643, as if fully set forth herein.

645.    By reason of the foregoing conduct, and in violation of 31 U.S.C. §

3729(a)(1)(A), the defendants identified in this count knowingly presented, or

caused to be presented, false claims for payment or approval to Peapack-Gladstone

Bank, an SBA preferred lender, while they were specifically aware of the falsity of

the claims with regard to SBA loan requirements, for the purpose of fraudulently

inducing a $4 million SBA 7(a) loan to Camelback Resort and Chateau Hospitality

Management.

646.    Every claim regarding the borrowers' eligibility for the SBA 7(a) loan

from Peapack-Gladstone Bank, or request for payment submitted by the defendants

identified in this count, constituted a false claim under the False Claims Act, 31

U.S.C. §§ 3729 *et seq.*, and the defendants caused such false claims to be submitted

by virtue of their agreement to fraudulently induce an SBA 7(a) loan to Camelback Resort and Chateau Hospitality Management for which the borrowers were, in truth, not eligible.

647.    Peapack-Gladstone Bank paid the false or fraudulent claims because of the acts of the defendants identified in this count and, as a result, the United States incurred actual damages of $3 million, the 75% SBA guaranteed portion of the Peapack-Gladstone loan.

648.    Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the defendants identified in this count are liable to the United States under the treble damage and civil penalty provisions of the False Claims Act for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of the defendants' actions.

## COUNT ELEVEN
### False Claims Act, 31 U.S.C. § 3729(a)(1)(B)
### Using False Records or Statements to Get False Claims Paid

**(Defendants Pankaj Sheth, Rajan Sheth, Khushali Sheth, Bhavesh Sheth, Vimal Madhiwala, Sanjay Patel, Creative Funding, John Calzaretto, Calzaretto & Bernstein, Camelback Resort, Chateau Hospitality, and Tannersville Beverage)**

649.    The United States repeats and realleges each allegation in Paragraphs 1 through and including 648, as if fully set forth herein.

650.    By reason of the foregoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(B), the defendants identified in this count knowingly made, used, or

209

caused to be made or used, false records or statements material to false or fraudulent claims to get false or fraudulent claims approved and paid by the United States.

651. Peapack-Gladstone Bank, in its capacity as an SBA preferred lender, paid the false or fraudulent claims because of the acts of the defendants identified in this count and, as a result, the United States has incurred actual damages of $3 million, the 75% SBA guaranteed portion of the Peapack-Gladstone Bank loan.

652. Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the defendants identified in this count are liable to the United States under the treble damage and civil penalty provisions of the False Claims Act for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of the defendants' actions.

### COUNT TWELVE
### False Claims Act, 31 U.S.C. § 3729(a)(1)(C)
### Conspiracy

**(Defendants Pankaj Sheth, Rajan Sheth, Khushali Sheth, Bhavesh Sheth, Vimal Madhiwala, Sanjay Patel, Creative Funding, John Calzaretto, Calzaretto & Bernstein, Camelback Resort, Chateau Hospitality, and Tannersville Beverage)**

653. The United States repeats and realleges each allegation in Paragraphs 1 through and including 652, as if fully set forth herein.

654. By reason of the forgoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(C), the defendants identified in this count conspired to present, or caused

210

to be presented, false claims for payment or approval to Peapack-Gladstone Bank, an SBA preferred lender, while they were specifically aware of the falsity of the claims with regard to SBA loan requirements, for the purpose of fraudulently inducing a $4 million SBA 7(a) loan to Camelback Resort and Chateau Hospitality Management.

655.    By reason of the foregoing conduct, and in further violation of 31 U.S.C. § 3729(a)(1)(C), the defendants identified in this count knowingly conspired to make, use, or cause to be made or used, false records or statements material to false or fraudulent claims.

656.    Every claim regarding the borrowers' eligibility for the SBA 7(a) loan from Peapack-Gladstone Bank, or request for payment submitted by the defendants identified in this count, constituted a false claim under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, and the defendants caused such false claims to be submitted by virtue of their agreement to fraudulently induce an SBA loan to Camelback Resort and Chateau Hospitality Management for which the borrowers were, in truth, not eligible.

657.    Peapack-Gladstone Bank paid the false or fraudulent claims because of the acts of the defendants identified in this count and, as a result, the United States incurred actual damages of $3 million, the 75% SBA guaranteed portion of the Peapack-Gladstone Bank loan.

658.    Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the defendants identified in this count are liable to the United States under the treble

211

damage and civil penalty provisions of the False Claims Act for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of the defendants' actions.

<div align="center">

**COUNT THIRTEEN**
**FIRREA, 12 U.S.C. § 1833a**
**False Statements to the SBA**

**(Defendants Pankaj Sheth, Rajan Sheth, Khushali Sheth, Bhavesh Sheth, Vimal Madhiwala, Sanjay Patel, Creative Funding, John Calzaretto, Calzaretto & Bernstein, Camelback Resort, Chateau Hospitality, and Tannersville Beverage)**

</div>

659.    The United States repeats and realleges each allegation in Paragraphs 1 through and including 658, as if fully set forth herein.

660.    By reason of the foregoing conduct, the defendants identified in this count, for the purposes of fraudulently obtaining a federally guaranteed SBA 7(a) loan in the amount of $4 million from Peapack-Gladstone Bank, an SBA preferred lender, in violation of 12 U.S.C. § 1833a, unlawfully, willfully and knowingly made or caused to be made false statements or certifications to Peapack-Gladstone Bank and the SBA in violation of 15 U.S.C. § 645(a).

661.    Under 12 U.S.C. § 1833a(c)(3) and 28 C.F.R. § 85.3(a)(6), the defendants identified in this count are liable for civil penalties.

V.    **The BCB Bank SBA 7(a) Loan**

<div align="center">

**COUNT FOURTEEN**
**False Claims Act, 31 U.S.C. § 3729(a)(1)(A)**
**Presenting or Causing False Claims to Be Presented for Payment**

</div>

**(Defendants Pankaj Sheth, Rajan Sheth, Renuka Sheth, Bhavesh Sheth, Sanjay Panel, Vraj Brig, Penn Hospitality, Creative Funding, John Calzaretto, and Calzaretto & Bernstein)**

662. The United States repeats and realleges each allegation in Paragraphs 1 through and including 661, as if fully set forth herein.

663. By reason of the foregoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(A), the defendants identified in this count knowingly presented, or caused to be presented, false claims for payment or approval to BCB Bank, an SBA preferred lender, while they were specifically aware of the falsity of the claims with regard to SBA loan requirements, for the purpose of fraudulently inducing a $5 million SBA 7(a) loan to Vraj Brig and Penn Hospitality Management.

664. Every claim regarding the borrowers' eligibility for the SBA 7(a) loan from BCB Bank, or request for payment submitted by the defendants identified in this count, constituted a false claim under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, and the defendants caused such false claims to be submitted by virtue of their agreement to fraudulently induce an SBA 7(a) loan to Vraj Brig and Penn Hospitality Management for which the borrowers were, in truth, not eligible.

665. BCB Bank paid the false or fraudulent claims because of the acts of the defendants identified in this count and, as a result, the United States incurred actual damages of $3.75 million, the 75% SBA guaranteed portion of the BCB Bank loan.

666. Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the defendants identified in this count are liable to the United States under the treble

213

damage and civil penalty provisions of the False Claims Act for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of the defendants' actions.

<div align="center">

**COUNT FIFTEEN**
**False Claims Act, 31 U.S.C. § 3729(a)(1)(B)**
**Using False Records or Statements to Get False Claims Paid**

**(Defendants Pankaj Sheth, Rajan Sheth, Renuka Sheth, Bhavesh Sheth, Sanjay Panel, Vraj Brig, Penn Hospitality, Creative Funding, John Calzaretto, and Calzaretto & Bernstein)**

</div>

667.   The United States repeats and realleges each allegation in Paragraphs 1 through and including 666, as if fully set forth herein.

668.   By reason of the foregoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(B), the defendants identified in this count knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent claims to get false or fraudulent claims approved and paid by the United States.

669.   BCB Bank, in its capacity as an SBA preferred lender, paid the false or fraudulent claims because of the acts of the defendants identified in this count and, as a result, the United States has incurred actual damages of $3.75 million, the 75% SBA guaranteed portion of the BCB Bank loan.

670.   Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the defendants identified in this count are liable to the United States under the treble

<div align="center">214</div>

damage and civil penalty provisions of the False Claims Act for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of the defendants' actions.

### COUNT SIXTEEN
### False Claims Act, 31 U.S.C. § 3729(a)(1)(C)
### Conspiracy

**(Defendants Pankaj Sheth, Rajan Sheth, Renuka Sheth, Bhavesh Sheth, Sanjay Panel, Vraj Brig, Penn Hospitality, Creative Funding, John Calzaretto, and Calzaretto & Bernstein)**

671. The United States repeats and realleges each allegation in Paragraphs 1 through and including 670, as if fully set forth herein.

672. By reason of the foregoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(C), the defendants identified in this count conspired to present, or caused to be presented, false claims for payment or approval to BCB Bank, an SBA preferred lender, while they were specifically aware of the falsity of the claims with regard to SBA loan requirements, for the purpose of fraudulently inducing a $5 million SBA 7(a) loan to Vraj Brig and Penn Hospitality Management.

673. By reason of the foregoing conduct, and in further violation of 31 U.S.C. § 3729(a)(1)(C), the defendants identified in this count knowingly conspired to make, use, or cause to be made or used, false records or statements material to false or fraudulent claims.

674.    Every claim regarding the borrowers' eligibility for the SBA 7(a) loan from BCB Bank, or request for payment submitted by the defendants identified in this count, constituted a false claim under the False Claims Act, 31 U.S.C. §§ 3729 *et seq*., and the defendants caused such false claims to be submitted by virtue of their agreement to fraudulently induce an SBA 7(a) loan to Vraj Brig and Penn Hospitality Management for which the borrowers were, in truth, not eligible.

675.    BCB Bank paid the false or fraudulent claims because of the acts of the defendants identified in this count and, as a result, the United States incurred actual damages of $3.75 million, the 75% SBA guaranteed portion of the BCB Bank loan.

676.    Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq*., the defendants identified in this count are liable to the United States under the treble damage and civil penalty provisions of the False Claims Act for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of the defendants' actions.

<u>COUNT SEVENTEEN</u>
**FIRREA, 12 U.S.C. § 1833a**
**False Statements to the SBA**

**(Defendants Pankaj Sheth, Rajan Sheth, Renuka Sheth, Bhavesh Sheth, Sanjay Panel, Vraj Brig, Penn Hospitality, Creative Funding, John Calzaretto, and Calzaretto & Bernstein)**

216

677.   The United States repeats and realleges each allegation in Paragraphs 1 through and including 676, as if fully set forth herein.

678.   By reason of the foregoing conduct, the defendants identified in this count, for the purposes of fraudulently obtaining a federally guaranteed SBA 7(a) loan in the amount of $5 million from BCB Bank, an SBA preferred lender, in violation of 12 U.S.C. § 1833a, unlawfully, willfully and knowingly made or caused to be made false statements or certifications to BCB Bank and the SBA in violation of 15 U.S.C. § 645(a).

679.   Under 12 U.S.C. § 1833a(c)(3) and 28 C.F.R. § 85.3(a)(6), the defendants identified in this count are liable for civil penalties.

## VI.    The 2018 BCB Bank Commercial Loan

### COUNT EIGHTEEN
**FIRREA, 12 U.S.C. § 1833a**
**Knowingly and willfully making or using a writing or document**
**containing materially false, fictitious, or fraudulent statements**

**(Defendants Pankaj Sheth, Rajan Sheth, Renuka Sheth, Bhavesh Sheth, Sanjay Panel, Vraj Brig, Penn Hospitality, Creative Funding, John Calzaretto, and Calzaretto & Bernstein)**

680.   The United States repeats and realleges each allegation in Paragraphs 1 through and including 679, as if fully set forth herein.

681.   By reason of the foregoing conduct, the defendants identified in this count, for the purposes of fraudulently obtaining, in 2018, a $3.1 million commercial loan from BCB Bank, a federally insured financial institution, knowingly and willfully made and used false writings and/or documents knowing the same to

217

contain materially false, fictitious, and fraudulent statements in violation of 18 U.S.C. § 1001(a).

682.    Under 12 U.S.C. § 1833a(c)(2), the defendants identified in this count are liable for civil penalties.

## VII.    The 2022 BCB Bank Commercial Loan

### COUNT NINETEEN
### FIRREA, 12 U.S.C. § 1833a
**Knowingly and willfully making or using a writing or document containing materially false, fictitious, or fraudulent statements**

**(Defendants Pankaj Sheth, Rajan Sheth, Renuka Sheth, Vraj Brig, 2015 Hospitality Management, John Calzaretto, and Calzaretto & Bernstein)**

683.    The United States repeats and realleges each allegation in Paragraphs 1 through and including 682, as if fully set forth herein.

684.    By reason of the foregoing conduct, the defendants identified in this count, for the purposes of fraudulently obtaining, in 2022, a $12 million commercial loan from BCB Bank, a federally insured financial institution, knowingly and willfully made and used false writings and/or documents knowing the same to contain materially false, fictitious, and fraudulent statements in violation of 18 U.S.C. § 1001(a).

685.    Under 12 U.S.C. § 1833a(c)(2), the defendants identified in this count are liable for civil penalties.

### COUNT TWENTY
**Unjust Enrichment – Illegally Earned Income**

**(Defendants Pankaj Sheth, Rajan Sheth, Renuka Sheth, Vraj Brig, 2015 Hospitality Management, John Calzaretto, and Calzaretto & Bernstein)**

218

686.   The United States repeats and realleges each allegation in Paragraphs 1 through and including 685, as if fully set forth herein.

687.   By reason of the foregoing conduct, the defendants identified in this count were paid, received, and maintained control over funds to which they were not entitled through the false claims the defendants submitted, or caused to be submitted, to BCB Bank.

688.   The defendants identified in this count are, therefore, liable to account and pay to the United States such amounts to be determined at trial, including actual damages, interest, and costs associated with the investigation, prosecution, and collection of the debt in this matter.

## COUNT TWENTY-ONE
### Payment by Mistake

**(Defendants Pankaj Sheth, Rajan Sheth, Renuka Sheth, Vraj Brig, 2015 Hospitality Management, John Calzaretto, and Calzaretto & Bernstein)**

689.   The United States repeats and realleges each allegation in Paragraphs 1 through and including 688, as if fully set forth herein.

690.   The false claims that the defendants identified in this count submitted, or caused to be submitted, to BCB Bank constituted misrepresentations of material fact, in that the defendants knowingly presented, or caused to be presented, false claims for payment or approval to BCB Bank while they were specifically aware of the falsity of these claims, for the purpose of fraudulently inducing a $12 million commercial loan.

219

691. BCB Bank, acting in reasonable reliance on the accuracy and truthfulness of the information contained in the claims, paid the borrower certain sums of money to which it was not entitled.

692. The defendants identified in this count, therefore, are liable to account for and pay to the United States such amounts to be determined at trial, including actual damages, interest, and costs associated with the investigation, prosecution, and collection of the debt in this matter.

## VIII.  The Mount Holly Bankruptcy/TD Bank SBA 7(a) Loan

### COUNT TWENTY-TWO
### FIRREA, 12 U.S.C. § 1833a
### Knowingly and willfully making or using a writing or document containing materially false, fictitious, or fraudulent statements

### (Defendants Pankaj Sheth, Rajan Sheth, Rishi Sheth, John Calzaretto, Calzaretto & Bernstein, Mount Holly, Star Hospitality, Pusti Management, and K&D Hospitality)

693. The United States repeats and realleges each allegation in Paragraphs 1 through and including 692, as if fully set forth herein.

694. By reason of the foregoing conduct, the defendants identified in this count, in 2019, for the purpose of fraudulently inducing TD Bank (following its acquisition of Commerce Bank), a federally insured financial institution, to accept a compromise payment in full satisfaction of the amount owed by Mount Holly Hospitality on a 2003 SBA 7(a) loan, and fraudulently inducing the United States Bankruptcy Court for the District of New Jersey to approve such compromise payment, knowingly and willfully made and used false writings and/or documents

220

knowing the same to contain materially false, fictitious, and fraudulent statements in violation of 18 U.S.C. § 1001(a).

695.    Under 12 U.S.C. § 1833a(c)(2), the defendants identified in this count are liable for civil penalties.

## IX.    The Northfield Bank Commercial Loan

### COUNT TWENTY-THREE
### FIRREA, 12 U.S.C. § 1833a
### Knowingly and willfully making or using a writing or document containing materially false, fictitious, or fraudulent statements

### (Defendants Pankaj Sheth, Rajan Sheth, Renuka Sheth, Julius Management, and Star Hospitality)

696.    The United States repeats and realleges each allegation in Paragraphs 1 through and including 695, as if fully set forth herein.

697.    By reason of the foregoing conduct, the defendants identified in this count, in 2023, for the purpose of fraudulently obtaining a commercial loan in the amount of $2 million from Northfield Bank, a federally insured financial institution, knowingly and willfully made and used false writings and/or documents knowing the same to contain materially false, fictitious, and fraudulent statements in violation of 18 U.S.C. § 1001(a).

698.    Under 12 U.S.C. § 1833a(c)(2), the defendants identified in this count are liable for civil penalties.

### COUNT TWENTY-FOUR
### Unjust Enrichment – Illegally Earned Income

### (Defendants Pankaj Sheth, Rajan Sheth, Renuka Sheth, Julius Management, and Star Hospitality)

221

699.    The United States repeats and realleges each allegation in Paragraphs 1 through and including 698, as if fully set forth herein.

700.    By reason of the foregoing conduct, the defendants identified in this count were paid, received, and maintained control over funds to which they were not entitled through the false claims the defendants submitted, or caused to be submitted, to Northfield Bank.

701.    The defendants identified in this count are, therefore, liable to account and pay to the United States such amounts to be determined at trial, including actual damages, interest, and costs associated with the investigation, prosecution, and collection of the debt in this matter.

### COUNT TWENTY-FIVE
**Payment by Mistake**

**(Defendants Pankaj Sheth, Rajan Sheth, Renuka Sheth, Julius Management, and Star Hospitality)**

702.    The United States repeats and realleges each allegation in Paragraphs 1 through and including 701, as if fully set forth herein.

703.    The false claims that the defendants identified in this count submitted, or caused to be submitted, to Northfield Bank constituted misrepresentations of material fact, in that the defendants knowingly presented, or caused to be presented, false claims for payment or approval to Northfield Bank while they were specifically aware of the falsity of these claims, for the purpose of fraudulently inducing a $2 million commercial loan.

222

704.    Northfield Bank, acting in reasonable reliance on the accuracy and truthfulness of the information contained in the claims, paid the borrower certain sums of money to which it was not entitled.

705.    The defendants identified in this count, therefore, are liable to account for and pay to the United States such amounts to be determined at trial, including actual damages, interest, and costs associated with the investigation, prosecution, and collection of the debt in this matter.

**X.    The Chateau Hospitality Management PPP Loan**

<u>**COUNT TWENTY-SIX**</u>
**False Claims Act, 31 U.S.C. § 3729(a)(1)(A)**
**Presenting or Causing False Claims to Be Presented for Payment**

**(Defendants Pankaj Sheth, Rajan Sheth, Vimal Madhiwala, Chateau Hospitality Management)**

706.    The United States repeats and realleges each allegation in Paragraphs 1 through and including 705, as if fully set forth herein.

707.    By reason of the foregoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(A), the defendants identified in this count knowingly presented, or caused to be presented false claims for payment or approval (a) to Peapack-Gladstone Bank, an SBA preferred lender, in the PPP loan application, and (b) to the SBA, in the PPP loan forgiveness application, while they were specifically aware of the falsity of the claims with regard to SBA loan requirements, for the purpose of fraudulently inducing a $91,400 SBA PPP loan to Chateau Hospitality Management and subsequent forgiveness of the loan obligation.

223

708. Every claim regarding the borrower's eligibility for the SBA PPP loan from Peapack-Gladstone Bank, for loan forgiveness from the SBA, or request for payment or forgiveness submitted by the defendants identified in this count, constituted a false claim under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, and the defendants caused such false claims to be submitted by virtue of their agreement to fraudulently induce an SBA PPP loan to Chateau Hospitality Management for which the borrower was, in truth, not eligible.

709. Peapack-Gladstone Bank paid the false or fraudulent claims, and the SBA approved loan forgiveness, because of the acts of the defendants identified in this count, and, as a result, the United States incurred actual damages of the principal amount, in addition to interest and processing fees.

710. Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the defendants identified in this count are liable to the United States under the treble damage and civil penalty provisions of the False Claims Act for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of the defendants' actions.

**COUNT TWENTY-SEVEN**
**False Claims Act, 31 U.S.C. § 3729(a)(1)(B)**
**Using False Records or Statements to Get False Claims Paid**

**(Defendants Pankaj Sheth, Rajan Sheth, Vimal Madhiwala, Chateau Hospitality Management)**

224

711. The United States repeats and realleges each allegation in Paragraphs 1 through and including 710, as if fully set forth herein.

712. By reason of the foregoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(B), the defendants identified in this count knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent claims to get false or fraudulent claims approved and paid by the United States.

713. Peapack-Gladstone Bank, in its capacity as an SBA preferred lender, paid the false or fraudulent claims, and the SBA approved loan forgiveness, because of the acts of the defendants identified in this count and, as a result, the United States has incurred actual damages of the principal amount, in addition to interest and processing fees.

714. Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the defendants identified in this count are liable to the United States under the treble damage and civil penalty provisions of the False Claims Act for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of the defendants' actions.

<u>COUNT TWENTY-EIGHT</u>
**False Claims Act, 31 U.S.C. § 3729(a)(1)(C)**
**Conspiracy**

**(Defendants Pankaj Sheth, Rajan Sheth, Vimal Madhiwala, Chateau Hospitality Management)**

225

715.    The United States repeats and realleges each allegation in Paragraphs 1 through and including 714, as if fully set forth herein.

716.    By reason of the foregoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(C), the defendants identified in this count conspired to present, or caused to be presented, false claims for payment or approval to Peapack-Gladstone Bank, an SBA preferred lender, and to the SBA, while they were specifically aware of the falsity of the claims with regard to SBA loan requirements, for the purpose of fraudulently inducing a $91,400 SBA PPP loan to "Chateau Resort, LLC."

717.    By reason of the foregoing conduct, and in further violation of 31 U.S.C. § 3729(a)(1)(C), the defendants identified in this count knowingly conspired to make, use, or cause to be made or used, false records or statements material to false or fraudulent claims.

718.    Every claim regarding the borrower's eligibility for the SBA PPP loan from Peapack-Gladstone Bank, for loan forgiveness from the SBA, or request for payment or forgiveness submitted by the defendants identified in this count, constituted a false claim under the False Claims Act, 31 U.S.C. §§ 3729 *et seq*., and the defendants caused such false claims to be submitted by virtue of their agreement to fraudulently induce an SBA loan to Chateau Hospitality Management for which the borrower was, in truth, not eligible.

719.    Peapack-Gladstone Bank paid the false or fraudulent claims, and the SBA approved forgiveness of the loan obligation, because of the acts of the

226

defendants identified in this count and, as a result, the United States incurred actual damages of the principal amount, in addition to interest and processing fees.

720.    Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the defendants identified in this count are liable to the United States under the treble damage and civil penalty provisions of the False Claims Act for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of the defendants' actions.

<div align="center">

**COUNT TWENTY-NINE**
**FIRREA, 12 U.S.C. § 1833a**
**False Statements to the SBA**

**(Defendants Pankaj Sheth, Rajan Sheth, Vimal Madhiwala, Chateau Hospitality Management)**

</div>

721.    The United States repeats and realleges each allegation in Paragraphs 1 through and including 720, as if fully set forth herein.

722.    By reason of the foregoing conduct, the defendants identified in this count, for the purposes of fraudulently obtaining a federally guaranteed SBA PPP loan in the amount of $91,400 from Peapack-Gladstone Bank, in violation of 12 U.S.C. § 1833a, unlawfully, willfully and knowingly made or caused to be made false statements or certifications to Peapack-Gladstone Bank and the SBA in violation of 15 U.S.C. § 645(a).

723.    Under 12 U.S.C. § 1833a(c)(3) and 28 C.F.R. § 85.3(a)(6), the defendants identified in this count are liable for civil penalties.

<div align="center">227</div>

## COUNT THIRTY
### Unjust Enrichment – Illegally Earned Income

**(Defendants Pankaj Sheth, Rajan Sheth, Vimal Madhiwala, Chateau Hospitality Management)**

724.    The United States repeats and realleges each allegation in Paragraphs 1 through and including 723, as if fully set forth herein.

725.    By reason of the foregoing conduct, the defendants identified in this count were paid, received, and maintained control over funds to which they were not entitled through the false claims the defendants submitted, or caused to be submitted, to Peapack-Gladstone Bank and to the SBA.

726.    The defendants identified in this count are, therefore, liable to account and pay to the United States such amounts to be determined at trial, including actual damages, interest, and costs associated with the investigation, prosecution, and collection of the debt in this matter.

## COUNT THIRTY-ONE
### Payment by Mistake

**(Defendants Pankaj Sheth, Rajan Sheth, Vimal Madhiwala, Chateau Hospitality Management)**

727.    The United States repeats and realleges each allegation in Paragraphs 1 through and including 726, as if fully set forth herein.

728.    The false claims that the defendants identified in this count submitted, or caused to be submitted, to Peapack-Gladstone Bank and the SBA constituted misrepresentations of material fact, in that the defendants knowingly presented, or caused to be presented, false claims for payment or approval to the SBA while they

228

were specifically aware of the falsity of these claims, for the purpose of fraudulently inducing a $91,400 PPP loan.

729.    Peapack-Gladstone Bank and the SBA, acting in reasonable reliance on the accuracy and truthfulness of the information contained in the claims, paid the borrower certain sums of money and approved loan forgiveness for which it was not entitled.

730.    The defendants identified in this count, therefore, are liable to account for and pay to the United States such amounts to be determined at trial, including actual damages, interest, and costs associated with the investigation, prosecution, and collection of the debt in this matter.

## XI.    The Star Hospitality PPP Loan

### COUNT THIRTY-TWO
### False Claims Act, 31 U.S.C. § 3729(a)(1)(A)
### Presenting or Causing False Claims to Be Presented for Payment

### (Defendants Pankaj Sheth, Rajan Sheth, Renuka Sheth, and Star Hospitality)

731.    The United States repeats and realleges each allegation in Paragraphs 1 through and including 730, as if fully set forth herein.

732.    By reason of the foregoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(A), the defendants identified in this count knowingly presented, or caused to be presented, false claims for payment or approval (a) to Amboy Bank in the PPP loan application, and (b) to the SBA, in the PPP loan forgiveness application, while they were specifically aware of the falsity of the claims with regard to SBA loan requirements, for the purpose of fraudulently inducing a

229

$17,200 SBA PPP loan to Star Hospitality and subsequent forgiveness of the loan obligation.

733.    Every claim regarding the borrower's eligibility for the SBA PPP loan from Amboy Bank, for loan forgiveness from the SBA, or request for payment submitted by the defendants identified in this count, constituted a false claim under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, and the defendants caused such false claims to be submitted by virtue of their agreement to fraudulently induce an SBA loan to Star Hospitality for which the borrower was, in truth, not eligible.

734.    Amboy Bank paid the false or fraudulent claims, and the SBA approved loan forgiveness, because of the acts of the defendants identified in this count and, as a result, the United States incurred actual damages of the principal amount, in addition to interest and processing fees.

735.    Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the defendants identified in this count are liable to the United States under the treble damage and civil penalty provisions of the False Claims Act for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of the defendants' actions.

## COUNT THIRTY-THREE
### False Claims Act, 31 U.S.C. § 3729(a)(1)(B)
### Using False Records or Statements to Get False Claims Paid

### (Defendants Pankaj Sheth, Rajan Sheth, Renuka Sheth, and Star Hospitality)

230

736.    The United States repeats and realleges each allegation in Paragraphs 1 through and including 735, as if fully set forth herein.

737.    By reason of the foregoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(B), the defendants identified in this count knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent claims to get false or fraudulent claims approved and paid by the United States.

738.    Amboy Bank paid the false or fraudulent claims, and the SBA approved loan forgiveness, because of the acts of the defendants identified in this count and, as a result, the United States has incurred actual damages of the principal amount, in addition to interest and processing fees.

739.    Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the defendants identified in this count are liable to the United States under the treble damage and civil penalty provisions of the False Claims Act for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of the defendants' actions.

### COUNT THIRTY-FOUR
**False Claims Act, 31 U.S.C. § 3729(a)(1)(C)**
**Conspiracy**

**(Defendants Pankaj Sheth, Rajan Sheth, Renuka Sheth, and Star Hospitality)**

231

740. The United States repeats and realleges each allegation in Paragraphs 1 through and including 739, as if fully set forth herein.

741. By reason of the foregoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(C), the defendants identified in this count conspired to present, or caused to be presented, false claims for payment or approval to Amboy Bank and to the SBA, while they were specifically aware of the falsity of the claims with regard to SBA loan requirements, for the purpose of fraudulently inducing a $17,200 SBA PPP loan to Star Hospitality.

742. By reason of the foregoing conduct, and in further violation of 31 U.S.C. § 3729(a)(1)(C), the defendants identified in this count knowingly conspired to make, use, or cause to be made or used, false records or statements material to false or fraudulent claims.

743. Every claim regarding the borrowers' eligibility for the SBA PPP loan from Amboy Bank, for loan forgiveness from the SBA, or request for payment or forgiveness submitted by the defendants identified in this count, constituted a false claim under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, and the defendants caused such false claims to be submitted by virtue of their agreement to fraudulently induce an SBA loan to Star Hospitality for which the borrower was, in truth, not eligible.

744. Amboy Bank paid the false or fraudulent claims because of the acts of the defendants identified in this count and, as a result, the United States incurred actual damages of the principal amount, in addition to interest and processing fees.

232

745.    Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the defendants identified in this count are liable to the United States under the treble damage and civil penalty provisions of the False Claims Act for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of the defendants' actions.

### COUNT THIRTY-FIVE
### FIRREA, 12 U.S.C. § 1833a
### False Statements to the SBA

**(Defendants Pankaj Sheth, Rajan Sheth, Renuka Sheth, and Star Hospitality)**

746.    The United States repeats and realleges each allegation in Paragraphs 1 through and including 745, as if fully set forth herein.

747.    By reason of the foregoing conduct, the defendants identified in this count, for the purposes of fraudulently obtaining a federally guaranteed SBA PPP loan in the amount of $17,200 from Amboy Bank, unlawfully, willfully and knowingly made or caused to be made false statements or certifications to Amboy Bank and the SBA in violation of 15 U.S.C. § 645(a).

748.    Under 12 U.S.C. § 1833a(c)(3) and 28 C.F.R. § 85.3(a)(6), the defendants identified in this count are liable for civil penalties.

### COUNT THIRTY-SIX
### Unjust Enrichment – Illegally Earned Income

**(Defendants Pankaj Sheth, Rajan Sheth, Renuka Sheth, and Star Hospitality)**

749. The United States repeats and realleges each allegation in Paragraphs 1 through and including 748, as if fully set forth herein.

750. By reason of the foregoing conduct, the defendants identified in this count were paid, received, and maintained control over funds to which they were not entitled through the false claims the defendants submitted, or caused to be submitted, to Amboy Bank and to the SBA.

751. The defendants identified in this count are, therefore, liable to account and pay to the United States such amounts to be determined at trial, including actual damages, interest, and costs associated with the investigation, prosecution, and collection of the debt in this matter.

## COUNT THIRTY-SEVEN
### Payment by Mistake

### (Defendants Pankaj Sheth, Rajan Sheth, Renuka Sheth, and Star Hospitality)

752. The United States repeats and realleges each allegation in Paragraphs 1 through and including 751, as if fully set forth herein.

753. The false claims that the defendants identified in this count submitted, or caused to be submitted, to Amboy Bank and the SBA constituted misrepresentations of material fact, in that the defendants knowingly presented, or caused to be presented, false claims for payment or approval to Amboy Bank and for loan forgiveness to the SBA while they were specifically aware of the falsity of these claims, for the purpose of fraudulently inducing a $17,200 PPP loan and forgiveness of the loan obligation.

234

754.    Amboy Bank and the SBA, acting in reasonable reliance on the accuracy and truthfulness of the information contained in the claims, paid the borrower certain sums of money to which it was not entitled and approved forgiveness of the loan obligation.

755.    The defendants identified in this count, therefore, are liable to account for and pay to the United States such amounts to be determined at trial, including actual damages, interest, and costs associated with the investigation, prosecution, and collection of the debt in this matter.

## XII.    The Penn Hospitality PPP Loan

### COUNT THIRTY-EIGHT
### False Claims Act, 31 U.S.C. § 3729(a)(1)(A)
### Presenting or Causing False Claims to Be Presented for Payment

### (Defendants Pankaj Sheth, Renuka Sheth, and Penn Hospitality)

756.    The United States repeats and realleges each allegation in Paragraphs 1 through and including 755, as if fully set forth herein.

757.    By reason of the foregoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(A), the defendants identified in this count knowingly presented, or caused to be presented, false claims for payment or approval (a) to Kabbage, Inc., in the PPP loan application, and (b) to the SBA, in the PPP loan forgiveness application, while they were specifically aware of the falsity of the claims with regard to SBA loan requirements, for the purpose of fraudulently inducing a $64,667 SBA PPP loan to Penn Hospitality and subsequent forgiveness of the loan obligation.

758.    Every claim regarding the borrower's eligibility for the SBA PPP loan from Kabbage, Inc., for loan forgiveness from the SBA, or request for payment submitted by the defendants identified in this count, constituted a false claim under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, and the defendants caused such false claims to be submitted by virtue of their agreement to fraudulently induce an SBA PPP loan to Penn Hospitality Management for which the borrower was, in truth, not eligible.

759.    Kabbage, Inc., paid the false or fraudulent claims, and the SBA approved loan forgiveness, because of the acts of the defendants identified in this count and, as a result, the United States incurred actual damages of the principal amount, in addition to interest and processing fees.

760.    Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the defendants identified in this count are liable to the United States under the treble damage and civil penalty provisions of the False Claims Act for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of the defendants' actions.

### COUNT THIRTY-NINE
**False Claims Act, 31 U.S.C. § 3729(a)(1)(B)**
**Using False Records or Statements to Get False Claims Paid**

**(Defendants Pankaj Sheth, Renuka Sheth, and Penn Hospitality)**

236

761.    The United States repeats and realleges each allegation in Paragraphs 1 through and including 760, as if fully set forth herein.

762.    By reason of the foregoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(B), the defendants identified in this count knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent claims to get false or fraudulent claims approved and paid by the United States.

763.    Kabbage, Inc., paid the false or fraudulent claims, and the SBA approved loan forgiveness, because of the acts of the defendants identified in this count and, as a result, the United States has incurred actual damages of the principal amount, in addition to interest and processing fees.

764.    Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the defendants identified in this count are liable to the United States under the treble damage and civil penalty provisions of the False Claims Act for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of the defendants' actions.

**COUNT FORTY**
**False Claims Act, 31 U.S.C. § 3729(a)(1)(C)**
**Conspiracy**

**(Defendants Pankaj Sheth, Renuka Sheth, and Penn Hospitality Management)**

237

765.   The United States repeats and realleges each allegation in Paragraphs 1 through and including 764, as if fully set forth herein.

766.   By reason of the foregoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(C), the defendants identified in this count conspired to present, or caused to be presented, false claims for payment or approval to Kabbage, Inc., and to the SBA, while they were specifically aware of the falsity of the claims with regard to SBA loan requirements, for the purpose of fraudulently inducing a $64,667 SBA PPP loan to Penn Hospitality Management.

767.   By reason of the foregoing conduct, and in further violation of 31 U.S.C. § 3729(a)(1)(C), the defendants identified in this count knowingly conspired to make, use, or cause to be made or used, false records or statements material to false or fraudulent claims.

768.   Every claim regarding the borrowers' eligibility for the SBA PPP loan from Kabbage, Inc., for loan forgiveness from the SBA, or request for payment or forgiveness submitted by the defendants identified in this count, constituted a false claim under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, and the defendants caused such false claims to be submitted by virtue of their agreement to fraudulently induce an SBA loan to Penn Hospitality Management for which the borrower was, in truth, not eligible.

769.   Kabbage, Inc., paid the false or fraudulent claims because of the acts of the defendants identified in this count and, as a result, the United States

238

incurred actual damages of the principal amount, in addition to interest and processing fees.

770.    Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the defendants identified in this count are liable to the United States under the treble damage and civil penalty provisions of the False Claims Act for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of the defendants' actions.

## COUNT FORTY-ONE
## FIRREA, 12 U.S.C. § 1833a
## False Statements to the SBA

### (Defendants Pankaj Sheth, Renuka Sheth, and Penn Hospitality Management)

771.    The United States repeats and realleges each allegation in Paragraphs 1 through and including 770, as if fully set forth herein.

772.    By reason of the foregoing conduct, the defendants identified in this count, for the purposes of fraudulently obtaining a federally guaranteed SBA PPP loan in the amount of $64,667 from Kabbage, Inc., unlawfully, willfully and knowingly made or caused to be made false statements or certifications to Kabbage, Inc., and the SBA in violation of 15 U.S.C. § 645(a).

773.    Under 12 U.S.C. § 1833a(c)(3) and 28 C.F.R. § 85.3(a)(6), the defendants identified in this count are liable for civil penalties.

239

## COUNT FORTY-TWO
### Unjust Enrichment – Illegally Earned Income

### (Defendants Pankaj Sheth, Renuka Sheth, and Penn Hospitality Management)

774.    The United States repeats and realleges each allegation in Paragraphs 1 through and including 773, as if fully set forth herein.

775.    By reason of the foregoing conduct, the defendants identified in this count were paid, received, and maintained control over funds to which they were not entitled through the false claims the defendants submitted, or caused to be submitted, to Kabbage, Inc and to the SBA.

776.    The defendants identified in this count are, therefore, liable to account and pay to the United States such amounts to be determined at trial, including actual damages, interest, and costs associated with the investigation, prosecution, and collection of the debt in this matter.

## COUNT FORTY-THREE
### Payment by Mistake

### (Defendants Pankaj Sheth, Renuka Sheth, and Penn Hospitality Management)

777.    The United States repeats and realleges each allegation in Paragraphs 1 through and including 776, as if fully set forth herein.

778.    The false claims that the defendants identified in this count submitted, or caused to be submitted, to Kabbage, Inc., and to the SBA constituted misrepresentations of material fact, in that the defendants knowingly presented, or caused to be presented, false claims for payment or approval to Kabbage, Inc while they were specifically aware of the falsity of these claims, for the purpose of

240

fraudulently inducing $64,667 SBA PPP loan to Penn Hospitality and forgiveness of the loan obligation.

779.    Kabbage, Inc., and the SBA, acting in reasonable reliance on the accuracy and truthfulness of the information contained in the claims, paid the borrower certain sums of money to which it was not entitled and approved forgiveness of the loan obligation.

780.    The defendants identified in this count, therefore, are liable to account for and pay to the United States such amounts to be determined at trial, including actual damages, interest, and costs associated with the investigation, prosecution, and collection of the debt in this matter.

## XIII.  The Penn Hospitality Second Draw PPP Loan

### COUNT FORTY-FOUR
### False Claims Act, 31 U.S.C. § 3729(a)(1)(A)
### Presenting or Causing False Claims to Be Presented for Payment

### (Defendants Pankaj Sheth, Renuka Sheth, and Penn Hospitality)

781.    The United States repeats and realleges each allegation in Paragraphs 1 through and including 780, as if fully set forth herein.

782.    By reason of the foregoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(A), the defendants identified in this count knowingly presented, or caused to be presented, false claims for payment or approval to Customers Bank while they were specifically aware of the falsity of the claims with regard to SBA loan requirements, for the purpose of fraudulently inducing a $60,493 SBA PPP loan to Penn Hospitality Management.

241

783.    Every claim regarding the borrower's eligibility for the SBA PPP loan from Customers Bank, or request for payment submitted by the defendants identified in this count, constituted a false claim under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, and the defendants caused such false claims to be submitted by virtue of their agreement to fraudulently induce an SBA loan to Penn Hospitality Management for which the borrower was, in truth, not eligible.

784.    Customers Bank paid the false or fraudulent claims because of the acts of the defendants identified in this count and, as a result, the United States incurred actual damages of the principal amount, in addition to interest and processing fees.

785.    Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the defendants identified in this count are liable to the United States under the treble damage and civil penalty provisions of the False Claims Act for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of the defendants' actions.

<u>COUNT FORTY-FIVE</u>
**False Claims Act, 31 U.S.C. § 3729(a)(1)(B)**
**Using False Records or Statements to Get False Claims Paid**

**(Defendants Pankaj Sheth, Renuka Sheth, and Penn Hospitality)**

786.    The United States repeats and realleges each allegation in Paragraphs 1 through and including 785, as if fully set forth herein.

242

787. By reason of the foregoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(B), the defendants identified in this count knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent claims to get false or fraudulent claims approved and paid by the United States.

788. Customers Bank paid the false or fraudulent claims because of the acts of the defendants identified in this count and, as a result, the United States has incurred actual damages of the principal amount, in addition to interest and processing fees.

789. Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the defendants identified in this count are liable to the United States under the treble damage and civil penalty provisions of the False Claims Act for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of the defendants' actions.

<u>**COUNT FORTY-SIX**</u>
**False Claims Act, 31 U.S.C. § 3729(a)(1)(C)**
**Conspiracy**

**(Defendants Pankaj Sheth, Renuka Sheth, and Penn Hospitality)**

790. The United States repeats and realleges each allegation in Paragraphs 1 through and including 789, as if fully set forth herein.

243

791.    By reason of the foregoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(C), the defendants identified in this count conspired to present, or caused to be presented, false claims for payment or approval to Customers Bank and the SBA, while they were specifically aware of the falsity of the claims with regard to SBA loan requirements, for the purpose of fraudulently inducing a $60,493 SBA PPP loan to Penn Hospitality Management.

792.    By reason of the foregoing conduct, and in further violation of 31 U.S.C. § 3729(a)(1)(C), the defendants identified in this count knowingly conspired to make, use, or cause to be made or used, false records or statements material to false or fraudulent claims.

793.    Every claim regarding the borrowers' eligibility for the SBA PPP loan from Customers Bank, or request for payment submitted by the defendants identified in this count, constituted a false claim under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, and the defendants caused such false claims to be submitted by virtue of their agreement to fraudulently induce an SBA loan to Penn Hospitality Management for which the borrower was, in truth, not eligible.

794.    Customers Bank paid the false or fraudulent claims because of the acts of the defendants identified in this count and, as a result, the United States incurred actual damages of the principal amount, in addition to interest and processing fees.

795.    Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the defendants identified in this count are liable to the United States under the treble

damage and civil penalty provisions of the False Claims Act for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of the defendants' actions.

<div align="center">

**COUNT FORTY-SEVEN**
**FIRREA, 12 U.S.C. § 1833a**
**False Statements to the SBA**

</div>

**(Defendants Pankaj Sheth, Renuka Sheth, and Penn Hospitality)**

796.    The United States repeats and realleges each allegation in Paragraphs 1 through and including 795, as if fully set forth herein.

797.    By reason of the foregoing conduct, the defendants identified in this count, for the purposes of fraudulently obtaining a federally guaranteed SBA PPP loan in the amount of $60,493 from Customers Bank, unlawfully, willfully and knowingly made or caused to be made false statements or certifications to Customers Bank and the SBA in violation of 15 U.S.C. § 645(a).

798.    Under 12 U.S.C. § 1833a(c)(3) and 28 C.F.R. § 85.3(a)(6), the defendants identified in this count are liable for civil penalties.

<div align="center">

**COUNT FORTY-EIGHT**
**Unjust Enrichment – Illegally Earned Income**

</div>

**(Defendants Pankaj Sheth, Renuka Sheth, and Penn Hospitality)**

799.    The United States repeats and realleges each allegation in Paragraphs 1 through and including 798, as if fully set forth herein.

<div align="center">

245

</div>

800. By reason of the foregoing conduct, the defendants identified in this count were paid, received, and maintained control over funds to which they were not entitled through the false claims the defendants submitted, or caused to be submitted, to Customers Bank.

801. The defendants identified in this count are, therefore, liable to account and pay to the United States such amounts to be determined at trial, including actual damages, interest, and costs associated with the investigation, prosecution, and collection of the debt in this matter.

## COUNT FORTY-NINE
### Payment by Mistake

### (Defendants Pankaj Sheth, Renuka Sheth, and Penn Hospitality)

802. The United States repeats and realleges each allegation in Paragraphs 1 through and including 801, as if fully set forth herein.

803. The false claims that the defendants identified in this count submitted, or caused to be submitted, to Customers Bank constituted misrepresentations of material fact, in that the defendants knowingly presented, or caused to be presented, false claims for payment or approval to Customers Bank while they were specifically aware of the falsity of these claims, for the purpose of fraudulently inducing a $60,493 SBA PPP loan to Penn Hospitality Management.

804. Customers Bank, acting in reasonable reliance on the accuracy and truthfulness of the information contained in the claims, paid the borrower certain sums of money to which it was not entitled.

805.    The defendants identified in this count, therefore, are liable to account for and pay to the United States such amounts to be determined at trial, including actual damages, interest, and costs associated with the investigation, prosecution, and collection of the debt in this matter.

## XIV.   The Star Hospitality Second Draw PPP Loan

### COUNT FIFTY
### False Claims Act, 31 U.S.C. § 3729(a)(1)(A)
### Presenting or Causing False Claims to Be Presented for Payment

### (Defendants Pankaj Sheth, Rajan Sheth, Renuka Sheth, and Star Hospitality)

806.    The United States repeats and realleges each allegation in Paragraphs 1 through and including 805, as if fully set forth herein.

807.    By reason of the foregoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(A), the defendants identified in this count knowingly presented, or caused to be presented, false claims for payment or approval to Amur Equipment Co. while they were specifically aware of the falsity of the claims with regard to SBA loan requirements, for the purpose of fraudulently inducing a $23,915 SBA PPP loan to Star Hospitality.

808.    Every claim regarding the borrower's eligibility for the SBA PPP loan from Amur Equipment Co., or request for payment submitted by the defendants identified in this count, constituted a false claim under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, and the defendants caused such false claims to be submitted by virtue of their agreement to fraudulently induce an SBA loan to Star Hospitality for which the borrower was, in truth, not eligible.

247

809.    Amur Equipment Co. paid the false or fraudulent claims because of the acts of the defendants identified in this count and, as a result, the United States incurred actual damages of the principal amount, in addition to interest and processing fees.

810.    Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the defendants identified in this count are liable to the United States under the treble damage and civil penalty provisions of the False Claims Act for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of the defendants' actions.

## COUNT FIFTY-ONE
### False Claims Act, 31 U.S.C. § 3729(a)(1)(B)
### Using False Records or Statements to Get False Claims Paid

### (Defendants Pankaj Sheth, Rajan Sheth, Renuka Sheth, and Star Hospitality)

811.    The United States repeats and realleges each allegation in Paragraphs 1 through and including 810, as if fully set forth herein.

812.    By reason of the foregoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(B), the defendants identified in this count knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent claims to get false or fraudulent claims approved and paid by the United States.

813.    Amur Equipment Co. paid the false or fraudulent claims because of the acts of the defendants identified in this count and, as a result, the United States has incurred actual damages of the principal amount, in addition to interest and processing fees.

814.    Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the defendants identified in this count are liable to the United States under the treble damage and civil penalty provisions of the False Claims Act for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of the defendants' actions.

### COUNT FIFTY-TWO
### False Claims Act, 31 U.S.C. § 3729(a)(1)(C)
### Conspiracy

### (Defendants Pankaj Sheth, Rajan Sheth, Renuka Sheth, and Star Hospitality)

815.    The United States repeats and realleges each allegation in Paragraphs 1 through and including 814, as if fully set forth herein.

816.    By reason of the foregoing acts, and in violation of 31 U.S.C. § 3729(a)(1)(C), the defendants identified in this count conspired to present, or caused to be presented, false claims for payment or approval to Amur Equipment Co. and the SBA, while they were specifically aware of the falsity of the claims with regard to SBA loan requirements, for the purpose of fraudulently inducing a $23,915 SBA PPP loan to Star Hospitality.

817. By reason of the foregoing acts, and in further violation of 31 U.S.C. § 3729(a)(1)(C), the defendants identified in this count knowingly conspired to make, use, or cause to be made or used, false records or statements material to false or fraudulent claims.

818. Every claim regarding the borrowers' eligibility for the SBA PPP loan from Amur Equipment Co., or request for payment submitted by the defendants identified in this count, constituted a false claim under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, and the defendants caused such false claims to be submitted by virtue of their agreement to fraudulently induce an SBA loan to Star Hospitality for which the borrower was, in truth, not eligible.

819. Amur Equipment Co. paid the false or fraudulent claims because of the acts of the defendants identified in this count and, as a result, the United States incurred actual damages of the principal amount, in addition to interest and processing fees.

820. Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the defendants identified in this count are liable to the United States under the treble damage and civil penalty provisions of the False Claims Act for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of the defendants' actions.

250

## COUNT FIFTY-THREE
### FIRREA, 12 U.S.C. § 1833a
### False Statements to the SBA

**(Defendants Pankaj Sheth, Rajan Sheth, Renuka Sheth, and Star Hospitality)**

821.    The United States repeats and realleges each allegation in Paragraphs 1 through and including 820, as if fully set forth herein.

822.    By reason of the foregoing acts, the defendants identified in this count, for the purposes of fraudulently obtaining a federally guaranteed SBA PPP loan in the amount of $23,915 from Amur Equipment Co., unlawfully, willfully and knowingly made or caused to be made false statements or certifications to Amur Equipment Co. and the SBA in violation of 15 U.S.C. § 645(a).

823.    Under 12 U.S.C. § 1833a(c)(3) and 28 C.F.R. § 85.3(a)(6), the defendants identified in this count are liable for civil penalties.

## COUNT FIFTY-FOUR
### Unjust Enrichment – Illegally Earned Income

**(Defendants Pankaj Sheth, Rajan Sheth, Renuka Sheth, and Star Hospitality)**

824.    The United States repeats and realleges each allegation in Paragraphs 1 through and including 823, as if fully set forth herein.

825.    By reason of the foregoing conduct, the defendants identified in this count were paid, received, and maintained control over funds to which they were not entitled through the false claims the defendants submitted, or caused to be submitted, to Amur Equipment Co.

251

826. The defendants identified in this count are, therefore, liable to account and pay to the United States such amounts to be determined at trial, including actual damages, interest, and costs associated with the investigation, prosecution, and collection of the debt in this matter.

## COUNT FIFTY-FIVE
### Payment by Mistake

### (Defendants Pankaj Sheth, Rajan Sheth, Renuka Sheth, and Star Hospitality)

827. The United States repeats and realleges each allegation in Paragraphs 1 through and including 826, as if fully set forth herein.

828. The false claims that the defendants identified in this count submitted, or caused to be submitted, to Amur Equipment Co. constituted misrepresentations of material fact, in that the defendants knowingly presented, or caused to be presented, false claims for payment or approval to Amur Equipment Co. while they were specifically aware of the falsity of these claims, for the purpose of fraudulently inducing $23,915 SBA PPP loan to Star Hospitality.

829. Amur Equipment Co., acting in reasonable reliance on the accuracy and truthfulness of the information contained in the claims, paid the borrower certain sums of money to which it was not entitled.

830. The defendants identified in this count, therefore, are liable to account for and pay to the United States such amounts to be determined at trial, including actual damages, interest, and costs associated with the investigation, prosecution, and collection of the debt in this matter.

252

## XV.    The "Chateau Resort Management, LLC" EIDL Loan

### COUNT FIFTY-SIX
### False Claims Act, 31 U.S.C. § 3729(a)(1)(A)
### Presenting or Causing False Claims to Be Presented for Payment

### (Defendants Pankaj Sheth, Rajan Sheth, Vimal Madhiwala, and Chateau Hospitality Management)

831.    The United States repeats and realleges each allegation in Paragraphs 1 through and including 830, as if fully set forth herein.

832.    By reason of the foregoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(A), the defendants identified in this count knowingly presented, or caused to be presented, false claims for payment or approval to the SBA while they were specifically aware of the falsity of the claims with regard to SBA loan requirements, for the purpose of fraudulently inducing a $10,000 SBA EIDL emergency advance and a $150,000 SBA EIDL loan to Chateau Hospitality Management.

833.    Every claim regarding the borrower's eligibility for the SBA EIDL loan, or request for payment submitted by the defendants identified in this count, constituted a false claim under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, and the defendants caused such false claims to be submitted by virtue of their agreement to fraudulently induce an SBA loan to Chateau Hospitality Management for which the borrower was, in truth, not eligible.

834.    The SBA paid the false or fraudulent claims because of the acts of the defendants identified in this count and, as a result, the United States incurred actual damages of $160,000, plus interest.

253

835. Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the defendants identified in this count are liable to the United States under the treble damage and civil penalty provisions of the False Claims Act for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of the defendants' actions.

### COUNT FIFTY-SEVEN
### False Claims Act, 31 U.S.C. § 3729(a)(1)(B)
### Using False Records or Statements to Get False Claims Paid

### (Defendants Pankaj Sheth, Rajan Sheth, Vimal Madhiwala, and Chateau Hospitality Management)

836. The United States repeats and realleges each allegation in Paragraphs 1 through and including 835, as if fully set forth herein.

837. By reason of the foregoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(B), the defendants identified in this count knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent claims to get false or fraudulent claims approved and paid by the United States.

838. The SBA paid the false or fraudulent claims because of the acts of the defendants identified in this count and, as a result, the United States has incurred actual damages of $160,000, plus interest.

839. Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the defendants identified in this count are liable to the United States under the treble

254

damage and civil penalty provisions of the False Claims Act for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of the defendants' actions.

<div align="center">

**COUNT FIFTY-EIGHT**
**False Claims Act, 31 U.S.C. § 3729(a)(1)(C)**
**Conspiracy**

**(Defendants Pankaj Sheth, Rajan Sheth, Vimal Madhiwala, and Chateau Hospitality Management)**

</div>

840.    The United States repeats and realleges each allegation in Paragraphs 1 through and including 839, as if fully set forth herein.

841.    By reason of the foregoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(C), the defendants identified in this count conspired to present, or caused to be presented, false claims for payment or approval to the SBA, while they were specifically aware of the falsity of the claims with regard to SBA loan requirements, for the purpose of fraudulently inducing a $10,000 SBA EIDL emergency advance and $150,000 SBA EIDL loan to Chateau Hospitality Management.

842.    By reason of the foregoing conduct, and in further violation of 31 U.S.C. § 3729(a)(1)(C), the defendants identified in this count knowingly conspired to make, use, or cause to be made or used, false records or statements material to false or fraudulent claims.

843.    Every claim regarding the borrowers' eligibility for the SBA EIDL loan to Chateau Hospitality Management, or request for payment submitted by the

<div align="center">255</div>

defendants identified in this count, constituted a false claim under the False Claims

Act, 31 U.S.C. §§ 3729 *et seq.*, and the defendants caused such false claims to be

submitted by virtue of their agreement to fraudulently induce an SBA loan to Penn

Hospitality Management for which the borrower was, in truth, not eligible.

844.    The SBA paid the false or fraudulent claims because of the acts of the

defendants identified in this count and, as a result, the United States incurred

actual damages of $160,000, plus interest.

845.    Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the

defendants identified in this count are liable to the United States under the treble

damage and civil penalty provisions of the False Claims Act for a civil penalty of not

less than $5,500 and not more than $11,000, as adjusted by the Federal Civil

Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent

claims herein, plus three (3) times the amount of damages which the United States

has sustained because of the defendants' actions.

## COUNT FIFTY-NINE
### FIRREA, 12 U.S.C. § 1833a
### False Statements to the SBA

### (Defendants Pankaj Sheth, Rajan Sheth, Vimal Madhiwala, and Chateau Hospitality Management)

846.    The United States repeats and realleges each allegation in Paragraphs

1 through and including 845, as if fully set forth herein.

847.    By reason of the foregoing conduct, the defendants identified in this

count, for the purpose of fraudulently obtaining a federally guaranteed SBA EIDL

emergency advance in the amount of $10,000 and SBA EIDL loan in the amount of

$150,000, in violation of 12 U.S.C. § 1833a, unlawfully, willfully and knowingly made or caused to be made false statements or certifications to the SBA in violation of 15 U.S.C. § 645(a).

848.    Under 12 U.S.C. § 1833a(c)(3) and 28 C.F.R. § 85.3(a)(6), the defendants identified in this count are liable for civil penalties.

## COUNT SIXTY
### Unjust Enrichment – Illegally Earned Income

**(Defendants Pankaj Sheth, Rajan Sheth, Vimal Madhiwala, and Chateau Hospitality Management)**

849.    The United States repeats and realleges each allegation in Paragraphs 1 through and including 848, as if fully set forth herein.

850.    By reason of the foregoing conduct, the defendants identified in this count were paid, received, and maintained control over funds to which they were not entitled through the false claims the defendants submitted, or caused to be submitted, to the SBA.

851.    The defendants identified in this count are, therefore, liable to account and pay to the United States such amounts to be determined at trial, including actual damages, interest, and costs associated with the investigation, prosecution, and collection of the debt in this matter.

## COUNT SIXTY-ONE
### Payment by Mistake

**(Defendants Pankaj Sheth, Rajan Sheth, Vimal Madhiwala, and Chateau Hospitality Management)**

257

852.    The United States repeats and realleges each allegation in Paragraphs 1 through and including 851, as if fully set forth herein.

853.    The false claims that the defendants identified in this count submitted, or caused to be submitted, to the SBA constituted misrepresentations of material fact, in that the defendants knowingly presented, or caused to be presented, false claims for payment or approval to the SBA while they were specifically aware of the falsity of these claims, for the purpose of fraudulently inducing a $10,000 SBA EIDL emergency advance and a $150,000 SBA EIDL.

854.    The SBA, acting in reasonable reliance on the accuracy and truthfulness of the information contained in the claims, paid the borrower certain sums of money to which it was not entitled.

855.    The defendants identified in this count, therefore, are liable to account for and pay to the United States such amounts to be determined at trial, including actual damages, interest, and costs associated with the investigation, prosecution, and collection of the debt in this matter.

## XVI.   The Puja Hospitality EIDL Loan

### COUNT SIXTY-TWO
### False Claims Act, 31 U.S.C. § 3729(a)(1)(A)
### Presenting or Causing False Claims to Be Presented for Payment

### (Defendants Pankaj Sheth, Rajan Sheth, Niranjan Patel, and Puja Hospitality)

856.    The United States repeats and realleges each allegation in Paragraphs 1 through and including 855, as if fully set forth herein.

258

857.    By reason of the foregoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(A), the defendants identified in this count knowingly presented, or caused to be presented, false claims for payment or approval to the SBA while they were specifically aware of the falsity of the claims with regard to SBA loan requirements, for the purpose of fraudulently inducing a $4,000 SBA EIDL emergency advance and a $83,500 SBA EIDL loan to Puja Hospitality.

858.    Every claim regarding the borrower's eligibility for the SBA EIDL loan, or request for payment submitted by the defendants identified in this count, constituted a false claim under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, and the defendants caused such false claims to be submitted by virtue of their agreement to fraudulently induce an SBA loan to Puja Hospitality for which the borrower was, in truth, not eligible.

859.    The SBA paid the false or fraudulent claims because of the acts of the defendants identified in this count and, as a result, the United States incurred actual damages of $87,500, plus interest.

860.    Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the defendants identified in this count are liable to the United States under the treble damage and civil penalty provisions of the False Claims Act for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of the defendants' actions.

259

## COUNT SIXTY-THREE
### False Claims Act, 31 U.S.C. § 3729(a)(1)(B)
### Using False Records or Statements to Get False Claims Paid

### (Defendants Pankaj Sheth, Rajan Sheth, Niranjan Patel, and Puja Hospitality)

861.    The United States repeats and realleges each allegation in Paragraphs 1 through and including 860, as if fully set forth herein.

862.    By reason of the foregoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(B), the defendants identified in this count knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent claims to get false or fraudulent claims approved and paid by the United States.

863.    The SBA paid the false or fraudulent claims because of the acts of the defendants identified in this count and, as a result, the United States has incurred actual damages of $87,500, plus interest.

864.    Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the defendants identified in this count are liable to the United States under the treble damage and civil penalty provisions of the False Claims Act for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of the defendants' actions.

## COUNT SIXTY-FOUR
### False Claims Act, 31 U.S.C. § 3729(a)(1)(C)
### Conspiracy

### (Defendants Pankaj Sheth, Rajan Sheth, Niranjan Patel, and Puja Hospitality)

865.    The United States repeats and realleges each allegation in Paragraphs 1 through and including 844, as if fully set forth herein.

866.    By reason of the foregoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(C), the defendants identified in this count conspired to present, or caused to be presented, false claims for payment or approval to the SBA, while they were specifically aware of the falsity of the claims with regard to SBA loan requirements, for the purpose of fraudulently inducing a $4,000 SBA EIDL emergency advance and a $83,500 SBA EIDL loan to Puja Hospitality.

867.    By reason of the foregoing conduct, and in further violation of 31 U.S.C. § 3729(a)(1)(C), the defendants identified in this count knowingly conspired to make, use, or cause to be made or used, false records or statements material to false or fraudulent claims.

868.    Every claim regarding the borrowers' eligibility for the SBA EIDL loan to Chateau Resort Management, or request for payment submitted by the defendants identified in this count, constituted a false claim under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, and the defendants caused such false claims to be submitted by virtue of their agreement to fraudulently induce an SBA loan to Penn Hospitality Management for which the borrower was, in truth, not eligible.

261

869.    The SBA paid the false or fraudulent claims because of the acts of the defendants identified in this count and, as a result, the United States incurred actual damages of $87,500, plus interest.

870.    Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the defendants identified in this count are liable to the United States under the treble damage and civil penalty provisions of the False Claims Act for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of the defendants' actions.

<div align="center">

**COUNT SIXTY-FIVE**
**FIRREA, 12 U.S.C. § 1833a**
**False Statements to the SBA**

**(Defendants Pankaj Sheth, Rajan Sheth, Niranjan Patel, and Puja Hospitality)**

</div>

871.    The United States repeats and realleges each allegation in Paragraphs 1 through and including 870, as if fully set forth herein.

872.    By reason of the foregoing conduct, the defendants identified in this count, for the purpose of fraudulently obtaining a federally guaranteed SBA EIDL emergency advance in the amount of $4,000 and SBA EIDL loan in the amount of $83,500, in violation of 12 U.S.C. § 1833a, unlawfully, willfully and knowingly made or caused to be made false statements or certifications to the SBA in violation of 15 U.S.C. § 645(a).

873.    Under 12 U.S.C. § 1833a(c)(3) and 28 C.F.R. § 85.3(a)(6), the defendants identified in this count are liable for civil penalties.

## COUNT SIXTY-SIX
### Unjust Enrichment – Illegally Earned Income

**(Defendants Pankaj Sheth, Rajan Sheth, Niranjan Patel, and Puja Hospitality)**

874.    The United States repeats and realleges each allegation in Paragraphs 1 through and including 873, as if fully set forth herein.

875.    By reason of the foregoing conduct, the defendants identified in this count were paid, received, and maintained control over funds to which they were not entitled through the false claims the defendants submitted, or caused to be submitted, to the SBA.

876.    The defendants identified in this count are, therefore, liable to account and pay to the United States such amounts to be determined at trial, including actual damages, interest, and costs associated with the investigation, prosecution, and collection of the debt in this matter.

## COUNT SIXTY-SEVEN
### Payment by Mistake

**(Defendants Pankaj Sheth, Rajan Sheth, Niranjan Patel, and Puja Hospitality)**

877.    The United States repeats and realleges each allegation in Paragraphs 1 through and including 876, as if fully set forth herein.

878.    The false claims that the defendants identified in this count submitted, or caused to be submitted, to the SBA constituted misrepresentations of material

263

fact, in that the defendants knowingly presented, or caused to be presented, false claims for payment or approval to the SBA while they were specifically aware of the falsity of these claims, for the purpose of fraudulently inducing a $4,000 SBA EIDL emergency advance and a $83,500 SBA EIDL loan to Puja Hospitality.

879. The SBA, acting in reasonable reliance on the accuracy and truthfulness of the information contained in the claims, paid the borrower certain sums of money to which it was not entitled.

880. The defendants identified in this count, therefore, are liable to account for and pay to the United States such amounts to be determined at trial, including actual damages, interest, and costs associated with the investigation, prosecution, and collection of the debt in this matter.

## XVII. The Penn Hospitality EIDL Loan

<u>**COUNT SIXTY-EIGHT**</u>
**False Claims Act, 31 U.S.C. § 3729(a)(1)(A)**
**Presenting or Causing False Claims to Be Presented for Payment**

**(Defendants Pankaj Sheth, Renuka Sheth, and Penn Hospitality)**

881. The United States repeats and realleges each allegation in Paragraphs 1 through and including 880, as if fully set forth herein.

882. By reason of the foregoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(A), the defendants identified in this count knowingly presented, or caused to be presented, false claims for payment or approval to the SBA while they were specifically aware of the falsity of the claims with regard to SBA loan requirements, for the purpose of fraudulently inducing a $10,000 SBA EIDL

264

emergency advance and a $150,000 SBA EIDL loan to Penn Hospitality

Management.

883.   Every claim regarding the borrower's eligibility for the SBA EIDL loan,

or request for payment submitted by the defendants identified in this count,

constituted a false claim under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, and

the defendants caused such false claims to be submitted by virtue of their

agreement to fraudulently induce an SBA loan to Penn Hospitality Management for

which the borrower was, in truth, not eligible.

884.   The SBA paid the false or fraudulent claims because of the acts of the

defendants identified in this count and, as a result, the United States incurred

actual damages of $160,000, plus interest.

885.   Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the

defendants identified in this count are liable to the United States under the treble

damage and civil penalty provisions of the False Claims Act for a civil penalty of not

less than $5,500 and not more than $11,000, as adjusted by the Federal Civil

Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent

claims herein, plus three (3) times the amount of damages which the United States

has sustained because of the defendants' actions.

### COUNT SIXTY-NINE
### False Claims Act, 31 U.S.C. § 3729(a)(1)(B)
### Using False Records or Statements to Get False Claims Paid

### (Defendants Pankaj Sheth, Renuka Sheth, and Penn Hospitality)

886.   The United States repeats and realleges each allegation in Paragraphs 1 through and including 885, as if fully set forth herein.

887.   By reason of the foregoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(B), the defendants identified in this count knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent claims to get false or fraudulent claims approved and paid by the United States.

888.   The SBA paid the false or fraudulent claims because of the acts of the defendants identified in this count and, as a result, the United States has incurred actual damages of $160,000, plus interest.

889.   Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the defendants identified in this count are liable to the United States under the treble damage and civil penalty provisions of the False Claims Act for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of the defendants' actions.

## COUNT SEVENTY
### False Claims Act, 31 U.S.C. § 3729(a)(1)(C)
### Conspiracy

### (Defendants Pankaj Sheth, Renuka Sheth, and Penn Hospitality)

890.   The United States repeats and realleges each allegation in Paragraphs 1 through and including 889, as if fully set forth herein.

266

891. By reason of the foregoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(C), the defendants identified in this count conspired to present, or caused to be presented, false claims for payment or approval to the SBA, while they were specifically aware of the falsity of the claims with regard to SBA loan requirements, for the purpose of fraudulently inducing a $10,000 SBA EIDL emergency advance and a $150,000 SBA EIDL loan to Penn Hospitality Management..

892. By reason of the foregoing conduct, and in further violation of 31 U.S.C. § 3729(a)(1)(C), the defendants identified in this count knowingly conspired to make, use, or cause to be made or used, false records or statements material to false or fraudulent claims.

893. Every claim regarding the borrowers' eligibility for the SBA EIDL loan to Penn Hospitality Management, or request for payment submitted by the defendants identified in this count, constituted a false claim under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, and the defendants caused such false claims to be submitted by virtue of their agreement to fraudulently induce an SBA loan to Penn Hospitality Management for which the borrower was, in truth, not eligible.

894. The SBA paid the false or fraudulent claims because of the acts of the defendants identified in this count and, as a result, the United States incurred actual damages of $160,000, plus interest.

895. Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the defendants identified in this count are liable to the United States under the treble damage and civil penalty provisions of the False Claims Act for a civil penalty of not

267

less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of the defendants' actions.

<div align="center">

**COUNT SEVENTY-ONE**
**FIRREA, 12 U.S.C. § 1833a**
**False Statements to the SBA**

**(Defendants Pankaj Sheth, Renuka Sheth, and Penn Hospitality)**

</div>

896.    The United States repeats and realleges each allegation in Paragraphs 1 through and including 895, as if fully set forth herein.

897.    By reason of the foregoing conduct, the defendants identified in this count, for the purpose of fraudulently obtaining a federally guaranteed SBA EIDL loan in the amount of $160,000, in violation of 12 U.S.C. § 1833a, unlawfully, willfully and knowingly made or caused to be made false statements or certifications to the SBA in violation of 15 U.S.C. § 645(a).

898.    Under 12 U.S.C. § 1833a(c)(3) and 28 C.F.R. § 85.3(a)(6), the defendants identified in this count are liable for civil penalties.

<div align="center">

**COUNT SEVENTY-TWO**
**Unjust Enrichment – Illegally Earned Income**

**(Defendants Pankaj Sheth, Renuka Sheth, and Penn Hospitality)**

</div>

899.    The United States repeats and realleges each allegation in Paragraphs 1 through and including 898, as if fully set forth herein.

900.    By reason of the foregoing conduct, the defendants identified in this count were paid, received, and maintained control over funds to which they were

<div align="center">268</div>

not entitled through the false claims the defendants submitted, or caused to be submitted, to the SBA.

901.    The defendants identified in this count are, therefore, liable to account and pay to the United States such amounts to be determined at trial, including actual damages, interest, and costs associated with the investigation, prosecution, and collection of the debt in this matter.

## COUNT SEVENTY-THREE
### Payment by Mistake

**(Defendants Pankaj Sheth, Renuka Sheth, and Penn Hospitality)**

902.    The United States repeats and realleges each allegation in Paragraphs 1 through and including 901, as if fully set forth herein.

903.    The false claims that the defendants identified in this count submitted, or caused to be submitted, to the SBA constituted misrepresentations of material fact, in that the defendants knowingly presented, or caused to be presented, false claims for payment or approval to the SBA while they were specifically aware of the falsity of these claims for the purpose of fraudulently inducing a $10,000 SBA EIDL emergency advance and a $150,000 SBA EIDL loan to Penn Hospitality Management.

904.    The SBA, acting in reasonable reliance on the accuracy and truthfulness of the information contained in the claims, paid the borrower certain sums of money to which it was not entitled.

905.    The defendants identified in this count, therefore, are liable to account for and pay to the United States such amounts to be determined at trial, including

actual damages, interest, and costs associated with the investigation, prosecution, and collection of the debt in this matter.

## XVIII.        The Pusti Management EIDL Loan

### COUNT SEVENTY-FOUR
### False Claims Act, 31 U.S.C. § 3729(a)(1)(A)
### Presenting or Causing False Claims to Be Presented for Payment

### (Defendants Pankaj Sheth, Renuka Sheth, and Pusti Management)

906.    The United States repeats and realleges each allegation in Paragraphs 1 through and including 905, as if fully set forth herein.

907.    By reason of the foregoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(A), the defendants identified in this count knowingly presented, or caused to be presented, false claims for payment or approval to the SBA while they were specifically aware of the falsity of the claims with regard to SBA loan requirements, for the purpose of fraudulently inducing a $2,000 SBA EIDL emergency advance and a $60,500 SBA EIDL loan to Pusti Management.

908.    Every claim regarding the borrower's eligibility for the SBA EIDL loan, or request for payment submitted by the defendants identified in this count, constituted a false claim under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, and the defendants caused such false claims to be submitted by virtue of their agreement to fraudulently induce an SBA loan to Pusti Management for which the borrower was, in truth, not eligible.

270

909.    The SBA paid the false or fraudulent claims because of the acts of the defendants identified in this count and, as a result, the United States incurred actual damages of $62,500, plus interest.

910.    Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the defendants identified in this count are liable to the United States under the treble damage and civil penalty provisions of the False Claims Act for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of the defendants' actions.

## COUNT SEVENTY-FIVE
### False Claims Act, 31 U.S.C. § 3729(a)(1)(B)
### Using False Records or Statements to Get False Claims Paid

### (Defendants Pankaj Sheth, Renuka Sheth, and Pusti Management)

911.    The United States repeats and realleges each allegation in Paragraphs 1 through and including 910, as if fully set forth herein.

912.    By reason of the foregoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(B), the defendants identified in this count knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent claims to get false or fraudulent claims approved and paid by the United States.

271

913. The SBA paid the false or fraudulent claims because of the acts of the defendants identified in this count and, as a result, the United States has incurred actual damages of $62,500, plus interest.

914. Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the defendants identified in this count are liable to the United States under the treble damage and civil penalty provisions of the False Claims Act for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of the defendants' actions.

## COUNT SEVENTY-SIX
### False Claims Act, 31 U.S.C. § 3729(a)(1)(C)
### Conspiracy

**(Defendants Pankaj Sheth, Renuka Sheth, and Pusti Management)**

915. The United States repeats and realleges each allegation in Paragraphs 1 through and including 914, as if fully set forth herein.

916. By reason of the foregoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(C), the defendants identified in this count conspired to present, or caused to be presented, false claims for payment or approval to the SBA, while they were specifically aware of the falsity of the claims with regard to SBA loan requirements, for the purpose of fraudulently inducing a $2,000 SBA EIDL emergency advance and a $60,500 SBA EIDL loan to Pusti Management..

272

917.    By reason of the foregoing conduct, and in further violation of 31 U.S.C. § 3729(a)(1)(C), the defendants identified in this count knowingly conspired to make, use, or cause to be made or used, false records or statements material to false or fraudulent claims.

918.    Every claim regarding the borrowers' eligibility for the SBA EIDL loan to Pusti Management, or request for payment submitted by the defendants identified in this count, constituted a false claim under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, and the defendants caused such false claims to be submitted by virtue of their agreement to fraudulently induce an SBA loan to Pusti Management for which the borrower was, in truth, not eligible.

919.    The SBA paid the false or fraudulent claims because of the acts of the defendants identified in this count and, as a result, the United States incurred actual damages of $62,500, plus interest.

920.    Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the defendants identified in this count are liable to the United States under the treble damage and civil penalty provisions of the False Claims Act for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of the defendants' actions.

## COUNT SEVENTY-SEVEN
### FIRREA, 12 U.S.C. § 1833a
### False Statements to the SBA

273

**(Defendants Pankaj Sheth, Renuka Sheth, and Pusti Management)**

921.    The United States repeats and realleges each allegation in Paragraphs 1 through and including 920, as if fully set forth herein.

922.    By reason of the foregoing conduct, the defendants identified in this count, for the purposes of fraudulently obtaining a federally guaranteed SBA EIDL loan in the amount of $62,500, unlawfully, willfully and knowingly made or caused to be made false statements or certifications to the SBA in violation of 15 U.S.C. § 645(a).

923.    Under 12 U.S.C. § 1833a(c)(3) and 28 C.F.R. § 85.3(a)(6), the defendants identified in this court are liable for civil penalties.

<div align="center">

**COUNT SEVENTY-EIGHT**
**Unjust Enrichment – Illegally Earned Income**

</div>

**(Defendants Pankaj Sheth, Renuka Sheth, and Pusti Management)**

924.    The United States repeats and realleges each allegation in Paragraphs 1 through and including 923, as if fully set forth herein.

925.    By reason of the foregoing conduct, the defendants identified in this count were paid, received, and maintained control over funds to which they were not entitled through the false claims the defendants submitted, or caused to be submitted, to the SBA.

926.    The defendants identified in this count are, therefore, liable to account and pay to the United States such amounts to be determined at trial, including actual damages, interest, and costs associated with the investigation, prosecution, and collection of the debt in this matter.

## COUNT SEVENTY-NINE
### Payment by Mistake

### (Defendants Pankaj Sheth, Renuka Sheth, and Pusti Management)

927.    The United States repeats and realleges each allegation in Paragraphs 1 through and including 926, as if fully set forth herein.

928.    The false claims that the defendants identified in this count submitted, or caused to be submitted, to the SBA constituted misrepresentations of material fact, in that the defendants knowingly presented, or caused to be presented, false claims for payment or approval to the SBA while they were specifically aware of the falsity of these claims, for the purpose of fraudulently inducing a $62,500 SBA loan.

929.    The SBA, acting in reasonable reliance on the accuracy and truthfulness of the information contained in the claims, paid the borrower certain sums of money to which it was not entitled.

930.    The defendants identified in this count, therefore, are liable to account for and pay to the United States such amounts to be determined at trial, including actual damages, interest, and costs associated with the investigation, prosecution, and collection of the debt in this matter.

## XIX.   The Shri Bhaktinidhi EIDL Loan

## COUNT EIGHTY
### False Claims Act, 31 U.S.C. § 3729(a)(1)(A)
### Presenting or Causing False Claims to Be Presented for Payment

### (Defendants Pankaj Sheth and Shri Bhaktinidhi, Inc.)

931.    The United States repeats and realleges each allegation in Paragraphs 1 through and including 930, as if fully set forth herein.

275

932.    By reason of the foregoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(A), the defendants identified in this count knowingly presented, or caused to be presented, false claims for payment or approval to the SBA while they were specifically aware of the falsity of the claims with regard to SBA loan requirements, for the purpose of fraudulently inducing a $10,000 SBA EIDL emergency advance and a $500,000 SBA EIDL loan to Shri Bhaktinidhi, Inc.

933.    Every claim regarding the borrower's eligibility for the SBA EIDL loan, or request for payment submitted by the defendants identified in this count, constituted a false claim under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, and the defendants caused such false claims to be submitted by virtue of their agreement to fraudulently induce an SBA loan to Shri Bhaktinidhi, Inc., for which the borrower was, in truth, not eligible.

934.    The SBA paid the false or fraudulent claims because of the acts of the defendants identified in this count and, as a result, the United States incurred actual damages of $510,000, plus interest.

935.    Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the defendants identified in this count are liable to the United States under the treble damage and civil penalty provisions of the False Claims Act for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of the defendants' actions.

## COUNT EIGHTY-ONE
### False Claims Act, 31 U.S.C. § 3729(a)(1)(B)
### Using False Records or Statements to Get False Claims Paid

### (Defendants Pankaj Sheth and Shri Bhaktinidhi, Inc.)

936.   The United States repeats and realleges each allegation in Paragraphs 1 through and including 935, as if fully set forth herein.

937.   By reason of the foregoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(B), the defendants identified in this count knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent claims to get false or fraudulent claims approved and paid by the United States.

938.   The SBA paid the false or fraudulent claims because of the acts of the defendants identified in this count and, as a result, the United States has incurred actual damages of $510,000, plus interest.

939.   Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the defendants identified in this count are liable to the United States under the treble damage and civil penalty provisions of the False Claims Act for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of the defendants' actions.

## COUNT EIGHTY-TWO
### False Claims Act, 31 U.S.C. § 3729(a)(1)(C)
### Conspiracy

277

**(Defendants Pankaj Sheth and Shri Bhaktinidhi, Inc.)**

940.    The United States repeats and realleges each allegation in Paragraphs 1 through and including 939, as if fully set forth herein.

941.    By reason of the foregoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(C), the defendants identified in this count conspired to present, or caused to be presented, false claims for payment or approval to the SBA, while they were specifically aware of the falsity of the claims with regard to SBA loan requirements, for the purpose of fraudulently inducing a $10,000 SBA EIDL emergency advance and a $500,000 SBA EIDL loan to Shri Bhaktinidhi, Inc.

942.    By reason of the foregoing conduct, and in further violation of 31 U.S.C. § 3729(a)(1)(C), the defendants identified in this count knowingly conspired to make, use, or cause to be made or used, false records or statements material to false or fraudulent claims.

943.    Every claim regarding the borrower's eligibility for the SBA EIDL loan to Shri Bhaktinidhi, Inc., or request for payment submitted by the defendants identified in this count, constituted a false claim under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, and the defendants caused such false claims to be submitted by virtue of their agreement to fraudulently induce an SBA loan to Shri Bhaktinidhi, Inc., for which the borrower was, in truth, not eligible.

944.    The SBA paid the false or fraudulent claims because of the acts of the defendants identified in this count and, as a result, the United States incurred actual damages of $510,000, plus interest.

278

945.    Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the defendants identified in this count are liable to the United States under the treble damage and civil penalty provisions of the False Claims Act for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of the defendants' actions.

<div align="center">

**COUNT EIGHTY-THREE**
**FIRREA, 12 U.S.C. § 1833a**
**False Statements to the SBA**

**(Defendants Pankaj Sheth and Shri Bhaktinidhi, Inc.)**

</div>

946.    The United States repeats and realleges each allegation in Paragraphs 1 through and including 945, as if fully set forth herein.

947.    By reason of the foregoing conduct, the defendants identified in this count, for the purposes of fraudulently obtaining a federally guaranteed SBA EIDL loan in the amount of $510,000, unlawfully, willfully and knowingly made or caused to be made false statements or certifications to the SBA in violation of 15 U.S.C. § 645(a).

948.    Under 12 U.S.C. § 1833a(c)(3) and 28 C.F.R. § 85.3(a)(6), the defendants identified in this count are liable for civil penalties.

<div align="center">

**COUNT EIGHTY-FOUR**
**Unjust Enrichment – Illegally Earned Income**

**(Defendants Pankaj Sheth, Shri Bhaktinidhi, John Calzaretto, and Calzaretto & Bernstein)**

</div>

<div align="center">279</div>

949. The United States repeats and realleges each allegation in Paragraphs 1 through and including 948, as if fully set forth herein.

950. By reason of the foregoing conduct, the defendants identified in this count were paid, received, and maintained control over funds to which they were not entitled through the false claims the defendants submitted, or caused to be submitted, to the SBA.

951. The defendants identified in this count are, therefore, liable to account and pay to the United States such amounts to be determined at trial, including actual damages, interest, and costs associated with the investigation, prosecution, and collection of the debt in this matter.

### COUNT EIGHTY-FIVE
### Payment by Mistake

**(Defendants Pankaj Sheth, Shri Bhaktinidhi, John Calzaretto, and Calzaretto & Bernstein)**

952. The United States repeats and realleges each allegation in Paragraphs 1 through and including 951, as if fully set forth herein.

953. The false claims that the defendants identified in this count submitted, or caused to be submitted, to the SBA constituted misrepresentations of material fact, in that the defendants knowingly presented, or caused to be presented, false claims for payment or approval to the SBA while they were specifically aware of the falsity of these claims, for the purpose of fraudulently inducing a $510,000 SBA loan.

280

954. The SBA, acting in reasonable reliance on the accuracy and truthfulness of the information contained in the claims, paid the borrower certain sums of money to which it was not entitled.

955. The defendants identified in this count, therefore, are liable to account for and pay to the United States such amounts to be determined at trial, including actual damages, interest, and costs associated with the investigation, prosecution, and collection of the debt in this matter.

## XX.   The Fortune Holding EIDL Loan

### COUNT EIGHTY-SIX
### False Claims Act, 31 U.S.C. § 3729(a)(1)(A)
### Presenting or Causing False Claims to Be Presented for Payment

### (Defendants Pankaj Sheth, Rajan Sheth, Rohit Sheth, and Fortune Holding)

956. The United States repeats and realleges each allegation in Paragraphs 1 through and including 955, as if fully set forth herein.

957. By reason of the foregoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(A), the defendants identified in this count knowingly presented, or caused to be presented, false claims for payment or approval to the SBA while they were specifically aware of the falsity of the claims with regard to SBA loan requirements, for the purpose of fraudulently inducing a $10,000 SBA EIDL emergency advance and a $150,000 SBA EIDL loan to Fortune Holding.

958. Every claim regarding the borrower's eligibility for the SBA EIDL loan, or request for payment submitted by the defendants identified in this count, constituted a false claim under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, and

281

the defendants caused such false claims to be submitted by virtue of their agreement to fraudulently induce an SBA loan to Fortune Holding for which the borrower was, in truth, not eligible.

959.    The SBA paid the false or fraudulent claims because of the acts of the defendants identified in this count and, as a result, the United States incurred actual damages of $160,000, plus interest.

960.    Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the defendants identified in this count are liable to the United States under the treble damage and civil penalty provisions of the False Claims Act for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of the defendants' actions.

<u>COUNT EIGHTY-SEVEN</u>
**False Claims Act, 31 U.S.C. § 3729(a)(1)(B)**
**Using False Records or Statements to Get False Claims Paid**

**(Defendants Pankaj Sheth, Rajan Sheth, Rohit Sheth, and Fortune Holding)**

961.    The United States repeats and realleges each allegation in Paragraphs 1 through and including 960, as if fully set forth herein.

962.    By reason of the foregoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(B), the defendants identified in this count knowingly made, used, or caused to be made or used, false records or statements material to false or

282

fraudulent claims to get false or fraudulent claims approved and paid by the United States.

963.    The SBA paid the false or fraudulent claims because of the acts of the defendants identified in this count and, as a result, the United States has incurred actual damages of $160,000, plus interest.

964.    Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the defendants identified in this count are liable to the United States under the treble damage and civil penalty provisions of the False Claims Act for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of the defendants' actions.

<div align="center">

**COUNT EIGHTY-EIGHT**
**False Claims Act, 31 U.S.C. § 3729(a)(1)(C)**
**Conspiracy**

**(Defendants Pankaj Sheth, Rajan Sheth, Rohit Sheth, and Fortune Holding)**

</div>

965.    The United States repeats and realleges each allegation in Paragraphs 1 through and including 964, as if fully set forth herein.

966.    By reason of the foregoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(C), the defendants identified in this count conspired to present, or caused to be presented, false claims for payment or approval to the SBA, while they were specifically aware of the falsity of the claims with regard to SBA loan requirements,

for the purpose of fraudulently inducing a $10,000 SBA EIDL emergency advance and a $150,000 SBA EIDL loan to Fortune Holding.

967. By reason of the foregoing conduct, and in further violation of 31 U.S.C. § 3729(a)(1)(C), the defendants identified in this count knowingly conspired to make, use, or cause to be made or used, false records or statements material to false or fraudulent claims.

968. Every claim regarding the borrower's eligibility for the SBA EIDL loan to Fortune Holding, or request for payment submitted by the defendants identified in this count, constituted a false claim under the False Claims Act, 31 U.S.C. §§ 3729 et seq., and the defendants caused such false claims to be submitted by virtue of their agreement to fraudulently induce an SBA loan to Fortune Holding for which the borrower was, in truth, not eligible.

969. The SBA paid the false or fraudulent claims because of the acts of the defendants identified in this count and, as a result, the United States incurred actual damages of $160,000, plus interest.

970. Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 et seq., the defendants identified in this count are liable to the United States under the treble damage and civil penalty provisions of the False Claims Act for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of the defendants' actions.

284

## COUNT EIGHTY-NINE
### FIRREA, 12 U.S.C. § 1833a
### False Statements to the SBA

**(Defendants Pankaj Sheth, Rajan Sheth, Rohit Sheth, and Fortune Holding)**

971.   The United States repeats and realleges each allegation in Paragraphs 1 through and including 970, as if fully set forth herein.

972.   By reason of the foregoing conduct, the defendants identified in this count, for the purposes of fraudulently obtaining a federally guaranteed SBA EIDL loan, unlawfully, willfully and knowingly made or caused to be made false statements or certifications to the SBA in violation of 15 U.S.C. § 645(a).

973.   Under 12 U.S.C. § 1833a(c)(3) and 28 C.F.R. § 85.3(a)(6), the defendants identified in this count are liable for civil penalties.

## COUNT NINETY
### Unjust Enrichment – Illegally Earned Income

**(Defendants Pankaj Sheth, Rajan Sheth, Rohit Sheth, and Fortune Holding)**

974.   The United States repeats and realleges each allegation in Paragraphs 1 through and including 973, as if fully set forth herein.

975.   By reason of the foregoing conduct, the defendants identified in this count were paid, received, and maintained control over funds to which they were not entitled through the false claims the defendants submitted, or caused to be submitted, to the SBA.

976.   The defendants identified in this count are, therefore, liable to account and pay to the United States such amounts to be determined at trial, including

285

actual damages, interest, and costs associated with the investigation, prosecution, and collection of the debt in this matter.

### COUNT NINETY-ONE
**Payment by Mistake**

**(Defendants Pankaj Sheth, Rajan Sheth, Rohit Sheth, and Fortune Holding)**

977.   The United States repeats and realleges each allegation in Paragraphs 1 through and including 976, as if fully set forth herein.

978.   The false claims that the defendants identified in this count submitted, or caused to be submitted, to the SBA constituted misrepresentations of material fact, in that the defendants knowingly presented, or caused to be presented, false claims for payment or approval to the SBA while they were specifically aware of the falsity of these claims, for the purpose of fraudulently inducing a $10,000 SBA EIDL emergency advance and a $110,000 SBA loan.

979.   The SBA, acting in reasonable reliance on the accuracy and truthfulness of the information contained in the claims, paid the borrower certain sums of money to which it was not entitled.

980.   The defendants identified in this count, therefore, are liable to account for and pay to the United States such amounts to be determined at trial, including actual damages, interest, and costs associated with the investigation, prosecution, and collection of the debt in this matter.

286

## XXI.  The Star Hospitality EIDL Loan

### COUNT NINETY-TWO
### False Claims Act, 31 U.S.C. § 3729(a)(1)(A)
### Presenting or Causing False Claims to Be Presented for Payment

### (Defendants Pankaj Sheth, Rajan Sheth, Renuka Sheth, and Star Hospitality)

981.   The United States repeats and realleges each allegation in Paragraphs 1 through and including 980, as if fully set forth herein.

982.   By reason of the foregoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(A), the defendants identified in this count knowingly presented, or caused to be presented, false claims for payment or approval to the SBA while they were specifically aware of the falsity of the claims with regard to SBA loan requirements, for the purpose of fraudulently inducing a $3,500 SBA EIDL emergency advance and a $150,000 SBA EIDL loan to Star Hospitality.

983.   Every claim regarding the borrower's eligibility for the SBA EIDL loan, or request for payment submitted by the defendants identified in this count, constituted a false claim under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, and the defendants caused such false claims to be submitted by virtue of their agreement to fraudulently induce an SBA loan to Fortune Holding for which the borrower was, in truth, not eligible.

984.   The SBA paid the false or fraudulent claims because of the acts of the defendants identified in this count and, as a result, the United States incurred actual damages of $153,500, plus interest.

985.    Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the defendants identified in this count are liable to the United States under the treble damage and civil penalty provisions of the False Claims Act for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of the defendants' actions.

### COUNT NINETY-THREE
### False Claims Act, 31 U.S.C. § 3729(a)(1)(B)
### Using False Records or Statements to Get False Claims Paid

### (Defendants Pankaj Sheth, Rajan Sheth, Renuka Sheth, and Star Hospitality)

986.    The United States repeats and realleges each allegation in Paragraphs 1 through and including 985, as if fully set forth herein.

987.    By reason of the foregoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(B), the defendants identified in this count knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent claims to get false or fraudulent claims approved and paid by the United States.

988.    The SBA paid the false or fraudulent claims because of the acts of the defendants identified in this count and, as a result, the United States has incurred actual damages of $153,500, plus interest.

989.    Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the defendants identified in this count are liable to the United States under the treble

288

damage and civil penalty provisions of the False Claims Act for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of the defendants' actions.

<div align="center">

**COUNT NINETY-FOUR**
**False Claims Act, 31 U.S.C. § 3729(a)(1)(C)**
**Conspiracy**

**(Defendants Pankaj Sheth, Rajan Sheth, Renuka Sheth, and Star Hospitality)**

</div>

990.   The United States repeats and realleges each allegation in Paragraphs 1 through and including 989, as if fully set forth herein.

991.   By reason of the foregoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(C), the defendants identified in this count conspired to present, or caused to be presented, false claims for payment or approval to the SBA, while they were specifically aware of the falsity of the claims with regard to SBA loan requirements, for the purpose of fraudulently inducing a $3,500 SBA EIDL emergency advance and a $150,000 SBA EIDL loan to Star Hospitality.

992.   By reason of the foregoing conduct, and in further violation of 31 U.S.C. § 3729(a)(1)(C), the defendants identified in this count knowingly conspired to make, use, or cause to be made or used, false records or statements material to false or fraudulent claims.

993.   Every claim regarding the borrower's eligibility for the SBA EIDL loan to Star Hospitality, or request for payment submitted by the defendants identified

<div align="center">289</div>

in this count, constituted a false claim under the False Claims Act, 31 U.S.C. §§

3729 *et seq*., and the defendants caused such false claims to be submitted by virtue

of their agreement to fraudulently induce an SBA loan to Star Hospitality for which

the borrower was, in truth, not eligible.

994.    The SBA paid the false or fraudulent claims because of the acts of the

defendants identified in this count and, as a result, the United States incurred

actual damages of $153,500, plus interest.

995.    Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq*., the

defendants identified in this count are liable to the United States under the treble

damage and civil penalty provisions of the False Claims Act for a civil penalty of not

less than $5,500 and not more than $11,000, as adjusted by the Federal Civil

Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent

claims herein, plus three (3) times the amount of damages which the United States

has sustained because of the defendants' actions.

### COUNT NINETY-FIVE
### FIRREA, 12 U.S.C. § 1833a
### False Statements to the SBA

### (Defendants Pankaj Sheth, Rajan Sheth, Renuka Sheth, and Star Hospitality)

996.    The United States repeats and realleges each allegation in Paragraphs

1 through and including 995, as if fully set forth herein.

997.    By reason of the foregoing conduct, the defendants identified in this

count, for the purposes of fraudulently obtaining a federally guaranteed SBA EIDL

loan in the amount of $153,500, unlawfully, willfully and knowingly made or caused

to be made false statements or certifications to the SBA in violation of 15 U.S.C. § 645(a).

998.   Under 12 U.S.C. § 1833a(c)(3) and 28 C.F.R. § 85.3(a)(6), the defendants identified in this count are liable for civil penalties.

<div align="center">

**COUNT NINETY-SIX**
**Unjust Enrichment – Illegally Earned Income**

**(Defendants Pankaj Sheth, Rajan Sheth, Renuka Sheth, and Star Hospitality)**

</div>

999.   The United States repeats and realleges each allegation in Paragraphs 1 through and including 998, as if fully set forth herein.

1000.  By reason of the foregoing conduct, the defendants identified in this count were paid, received, and maintained control over funds to which they were not entitled through the false claims the defendants submitted, or caused to be submitted, to the SBA.

1001.  The defendants identified in this count are, therefore, liable to account and pay to the United States such amounts to be determined at trial, including actual damages, interest, and costs associated with the investigation, prosecution, and collection of the debt in this matter.

<div align="center">

**COUNT NINETY-SEVEN**
**Payment by Mistake**

**(Defendants Pankaj Sheth, Rajan Sheth, Renuka Sheth, and Star Hospitality)**

</div>

1002.  The United States repeats and realleges each allegation in Paragraphs 1 through and including 1001, as if fully set forth herein.

<div align="center">

291

</div>

1003. The false claims that the defendants identified in this count submitted, or caused to be submitted, to the SBA constituted misrepresentations of material fact, in that the defendants knowingly presented, or caused to be presented, false claims for payment or approval to the SBA while they were specifically aware of the falsity of these claims, for the purpose of fraudulently inducing a $3,500 SBA EIDL emergency advance and a $150,000 SBA loan to Star Hospitality.

1004. The SBA, acting in reasonable reliance on the accuracy and truthfulness of the information contained in the claims, paid the borrower certain sums of money to which it was not entitled.

1005. The defendants identified in this count, therefore, are liable to account for and pay to the United States such amounts to be determined at trial, including actual damages, interest, and costs associated with the investigation, prosecution, and collection of the debt in this matter.

## XXII. The Vraj Brig EIDL Loan

### COUNT NINETY-EIGHT
### False Claims Act, 31 U.S.C. § 3729(a)(1)(A)
### Presenting or Causing False Claims to Be Presented for Payment

### (Defendants Pankaj Sheth, Renuka Sheth, and Vraj Brig)

1006. The United States repeats and realleges each allegation in Paragraphs 1 through and including 1005, as if fully set forth herein.

1007. By reason of the foregoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(A), the defendants identified in this count knowingly presented, or caused to be presented, false claims for payment or approval to the SBA while they

were specifically aware of the falsity of the claims with regard to SBA loan requirements, for the purpose of fraudulently inducing a $10,000 SBA EIDL emergency advance and a $150,000 SBA EIDL loan to Vraj Brig.

1008.  Every claim regarding the borrower's eligibility for the SBA EIDL loan, or request for payment submitted by the defendants identified in this count, constituted a false claim under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, and the defendants caused such false claims to be submitted by virtue of their agreement to fraudulently induce an SBA loan to Vraj Brig for which the borrower was, in truth, not eligible.

1009.  The SBA paid the false or fraudulent claims because of the acts of the defendants identified in this count and, as a result, the United States incurred actual damages of $160,000, plus interest.

1010.  Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the defendants identified in this count are liable to the United States under the treble damage and civil penalty provisions of the False Claims Act for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of the defendants' actions.

### COUNT NINETY-NINE
**False Claims Act, 31 U.S.C. § 3729(a)(1)(B)**
**Using False Records or Statements to Get False Claims Paid**

**(Defendants Pankaj Sheth, Renuka Sheth, and Vraj Brig)**

293

1011.  The United States repeats and realleges each allegation in Paragraphs 1 through and including 1010, as if fully set forth herein.

1012.  By reason of the foregoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(B), the defendants identified in this count knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent claims to get false or fraudulent claims approved and paid by the United States.

1013.  The SBA paid the false or fraudulent claims because of the acts of the defendants identified in this count and, as a result, the United States has incurred actual damages of $160,000, plus interest.

1014.  Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the defendants identified in this count are liable to the United States under the treble damage and civil penalty provisions of the False Claims Act for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of the defendants' actions.

<u>COUNT ONE HUNDRED</u>
**False Claims Act, 31 U.S.C. § 3729(a)(1)(C)**
**Conspiracy**

**(Defendants Pankaj Sheth, Renuka Sheth, and Vraj Brig)**

1015.  The United States repeats and realleges each allegation in Paragraphs 1 through and including 1014, as if fully set forth herein.

294

1016.  By reason of the foregoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(C), the defendants identified in this count conspired to present, or caused to be presented, false claims for payment or approval to the SBA, while they were specifically aware of the falsity of the claims with regard to SBA loan requirements, for the purpose of fraudulently inducing a $10,000 SBA EIDL emergency advance and a $150,000 SBA EIDL loan to Vraj Brig.

1017.  By reason of the foregoing conduct, and in further violation of 31 U.S.C. § 3729(a)(1)(C), the defendants identified in this count knowingly conspired to make, use, or cause to be made or used, false records or statements material to false or fraudulent claims.

1018.  Every claim regarding the borrower's eligibility for the SBA EIDL loan to Vraj Brig, or request for payment submitted by the defendants identified in this count, constituted a false claim under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, and the defendants caused such false claims to be submitted by virtue of their agreement to fraudulently induce an SBA loan to Vraj Brig for which the borrower was, in truth, not eligible.

1019.  The SBA paid the false or fraudulent claims because of the acts of the defendants identified in this count and, as a result, the United States incurred actual damages of $160,000, plus interest.

1020.  Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the defendants identified in this count are liable to the United States under the treble damage and civil penalty provisions of the False Claims Act for a civil penalty of not

295

less than $5,500 and not more than $11,000, as adjusted by the Federal Civil

Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent

claims herein, plus three (3) times the amount of damages which the United States

has sustained because of the defendants' actions.

## COUNT ONE HUNDRED ONE
### FIRREA, 12 U.S.C. § 1833a
### False Statements to the SBA

### (Defendants Pankaj Sheth, Renuka Sheth, and Vraj Brig)

1021.  The United States repeats and realleges each allegation in Paragraphs

1 through and including 1020, as if fully set forth herein.

1022.  By reason of the foregoing conduct, the defendants identified in this

count, for the purposes of fraudulently obtaining a federally guaranteed SBA EIDL

loan in the amount of $160,000, unlawfully, willfully and knowingly made or caused

to be made false statements or certifications to the SBA in violation of 15 U.S.C. §

645(a).

1023.  Under 12 U.S.C. § 1833a(c)(3) and 28 C.F.R. § 85.3(a)(6), the

defendants identified in this count are liable for civil penalties.

## COUNT ONE HUNDRED TWO
### Unjust Enrichment – Illegally Earned Income

### (Defendants Pankaj Sheth, Renuka Sheth, and Vraj Brig, John Calzaretto, and Calzaretto & Bernstein)

1024.  The United States repeats and realleges each allegation in Paragraphs

1 through and including 1023, as if fully set forth herein.

296

1025. By reason of the foregoing conduct, the defendants identified in this count were paid, received, and maintained control over funds to which they were not entitled through the false claims the defendants submitted, or caused to be submitted, to the SBA.

1026. The defendants identified in this count are, therefore, liable to account and pay to the United States such amounts to be determined at trial, including actual damages, interest, and costs associated with the investigation, prosecution, and collection of the debt in this matter.

## COUNT ONE HUNDRED THREE
### Payment by Mistake

### (Defendants Pankaj Sheth, Renuka Sheth, and Vraj Brig, John Calzaretto, and Calzaretto & Bernstein)

1027. The United States repeats and realleges each allegation in Paragraphs 1 through and including 1026, as if fully set forth herein.

1028. The false claims that the defendants identified in this count submitted, or caused to be submitted, to the SBA constituted misrepresentations of material fact, in that the defendants knowingly presented, or caused to be presented, false claims for payment or approval to the SBA while they were specifically aware of the falsity of these claims, for the purpose of fraudulently inducing a $10,000 SBA EIDL emergency advance and a $150,000 SBA loan.

1029. The SBA, acting in reasonable reliance on the accuracy and truthfulness of the information contained in the claims, paid the borrower certain sums of money to which it was not entitled.

297

1030. The defendants identified in this count, therefore, are liable to account for and pay to the United States such amounts to be determined at trial, including actual damages, interest, and costs associated with the investigation, prosecution, and collection of the debt in this matter.

## XXIII.        The CNH Management EIDL Loan

### COUNT ONE HUNDRED FOUR
### False Claims Act, 31 U.S.C. § 3729(a)(1)(A)
### Presenting or Causing False Claims to Be Presented for Payment

### (Defendants Pankaj Sheth, Renuka Sheth, and CNH Management)

1031. The United States repeats and realleges each allegation in Paragraphs 1 through and including 1030, as if fully set forth herein.

1032. By reason of the foregoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(A), the defendants identified in this count knowingly presented, or caused to be presented, false claims for payment or approval to the SBA while they were specifically aware of the falsity of the claims with regard to SBA loan requirements, for the purpose of fraudulently inducing a $10,000 SBA EIDL emergency advance and a $150,000 SBA EIDL loan to CNH Management.

1033. Every claim regarding the borrower's eligibility for the SBA EIDL loan, or request for payment submitted by the defendants identified in this count, constituted a false claim under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, and the defendants caused such false claims to be submitted by virtue of their agreement to fraudulently induce an SBA loan to CNH Management for which the borrower was, in truth, not eligible.

1034.  The SBA paid the false or fraudulent claims because of the acts of the defendants identified in this count and, as a result, the United States incurred actual damages of $160,000, plus interest.

1035.  Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the defendants identified in this count are liable to the United States under the treble damage and civil penalty provisions of the False Claims Act for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of the defendants' actions.

## COUNT ONE HUNDRED FIVE
### False Claims Act, 31 U.S.C. § 3729(a)(1)(B)
### Using False Records or Statements to Get False Claims Paid

### (Defendants Pankaj Sheth, Renuka Sheth, and CNH Management)

1036.  The United States repeats and realleges each allegation in Paragraphs 1 through and including 1035, as if fully set forth herein.

1037.  By reason of the foregoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(B), the defendants identified in this count knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent claims to get false or fraudulent claims approved and paid by the United States.

299

1038.  The SBA paid the false or fraudulent claims because of the acts of the defendants identified in this count and, as a result, the United States has incurred actual damages of $160,000.

1039.  Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the defendants identified in this count are liable to the United States under the treble damage and civil penalty provisions of the False Claims Act for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of the defendants' actions.

<div align="center">

**COUNT ONE HUNDRED SIX**
**False Claims Act, 31 U.S.C. § 3729(a)(1)(C)**
**Conspiracy**

</div>

**(Defendants Pankaj Sheth, Renuka Sheth, and CNH Management)**

1040.  The United States repeats and realleges each allegation in Paragraphs 1 through and including 1039, as if fully set forth herein.

1041.  By reason of the foregoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(C), the defendants identified in this count conspired to present, or caused to be presented, false claims for payment or approval to the SBA, while they were specifically aware of the falsity of the claims with regard to SBA loan requirements, for the purpose of fraudulently inducing a $10,000 SBA EIDL emergency advance and a $150,000 SBA EIDL loan to CNH Management.

<div align="center">300</div>

1042.  By reason of the foregoing conduct, and in further violation of 31 U.S.C. § 3729(a)(1)(C), the defendants identified in this count knowingly conspired to make, use, or cause to be made or used, false records or statements material to false or fraudulent claims.

1043.  Every claim regarding the borrower's eligibility for the SBA EIDL loan to CNH Management, or request for payment submitted by the defendants identified in this count, constituted a false claim under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, and the defendants caused such false claims to be submitted by virtue of their agreement to fraudulently induce an SBA loan to CNH Management for which the borrower was, in truth, not eligible.

1044.  The SBA paid the false or fraudulent claims because of the acts of the defendants identified in this count and, as a result, the United States incurred actual damages of $160,000, plus interest.

1045.  Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the defendants identified in this count are liable to the United States under the treble damage and civil penalty provisions of the False Claims Act for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of the defendants' actions.

<div align="center">

**<u>COUNT ONE HUNDRED SEVEN</u>**
**FIRREA, 12 U.S.C. § 1833a**
**False Statements to the SBA**

</div>

<div align="center">301</div>

**(Defendants Pankaj Sheth, Renuka Sheth, and CNH Management)**

1046. The United States repeats and realleges each allegation in Paragraphs 1 through and including 1025, as if fully set forth herein.

1047. By reason of the foregoing conduct, the defendants identified in this count, for the purposes of fraudulently obtaining a federally guaranteed SBA loan in the amount of $160,000, unlawfully, willfully and knowingly made or caused to be made false statements or certifications to the SBA in violation of 15 U.S.C. § 645(a).

1048. Under 12 U.S.C. § 1833a(c)(3) and 28 C.F.R. § 85.3(a)(6), the defendants identified in this count are liable for civil penalties.

## COUNT ONE HUNDRED EIGHT
### Unjust Enrichment – Illegally Earned Income

**(Defendants Pankaj Sheth, Renuka Sheth, and CNH Management)**

1049. The United States repeats and realleges each allegation in Paragraphs 1 through and including 1028, as if fully set forth herein.

1050. By reason of the foregoing conduct, the defendants identified in this count were paid, received, and maintained control over funds to which they were not entitled through the false claims the defendants submitted, or caused to be submitted, to the SBA.

1051. The defendants identified in this count are, therefore, liable to account and pay to the United States such amounts to be determined at trial, including actual damages, interest, and costs associated with the investigation, prosecution, and collection of the debt in this matter.

## COUNT ONE HUNDRED NINE
### Payment by Mistake

### (Defendants Pankaj Sheth, Renuka Sheth, and CNH Management)

1052.  The United States repeats and realleges each allegation in Paragraphs 1 through and including 1031, as if fully set forth herein.

1053.  The false claims that the defendants identified in this count submitted, or caused to be submitted, to the SBA constituted misrepresentations of material fact, in that the defendants knowingly presented, or caused to be presented, false claims for payment or approval to the SBA while they were specifically aware of the falsity of these claims, for the purpose of fraudulently inducing a $10,000 SBA EIDL emergency advance and a $150,000 SBA EIDL loan to CNH Management.

1054.  The SBA, acting in reasonable reliance on the accuracy and truthfulness of the information contained in the claims, paid the borrower certain sums of money to which it was not entitled.

1055.  The defendants identified in this count, therefore, are liable to account for and pay to the United States such amounts to be determined at trial, including actual damages, interest, and costs associated with the investigation, prosecution, and collection of the debt in this matter.

## XXIV. The JBL Holding EIDL Loan

## COUNT ONE HUNDRED TEN
### False Claims Act, 31 U.S.C. § 3729(a)(1)(A)
### Presenting or Causing False Claims to Be Presented for Payment

### (Defendants Pankaj Sheth, Rajan Sheth, Rishi Sheth, and JBL Holding)

303

1056. The United States repeats and realleges each allegation in Paragraphs 1 through and including 1035, as if fully set forth herein.

1057. By reason of the foregoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(A), the defendants identified in this count knowingly presented, or caused to be presented, false claims for payment or approval to the SBA while they were specifically aware of the falsity of the claims with regard to SBA loan requirements, for the purpose of fraudulently inducing a $144,000 SBA EIDL loan to JBL Holding.

1058. Every claim regarding the borrower's eligibility for the SBA EIDL loan, or request for payment submitted by the defendants identified in this count, constituted a false claim under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, and the defendants caused such false claims to be submitted by virtue of their agreement to fraudulently induce an SBA loan to JBL Holding for which the borrower was, in truth, not eligible.

1059. The SBA paid the false or fraudulent claims because of the acts of the defendants identified in this count and, as a result, the United States incurred actual damages of $144,000, plus interest.

1060. Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the defendants identified in this count are liable to the United States under the treble damage and civil penalty provisions of the False Claims Act for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent

claims herein, plus three (3) times the amount of damages which the United States has sustained because of the defendants' actions.

## COUNT ONE HUNDRED ELEVEN
**False Claims Act, 31 U.S.C. § 3729(a)(1)(B)**
**Using False Records or Statements to Get False Claims Paid**

**(Defendants Pankaj Sheth, Rajan Sheth, Rishi Sheth, and JBL Holding)**

1061. The United States repeats and realleges each allegation in Paragraphs 1 through and including 1060, as if fully set forth herein.

1062. By reason of the foregoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(B), the defendants identified in this count knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent claims to get false or fraudulent claims approved and paid by the United States.

1063. The SBA paid the false or fraudulent claims because of the acts of the defendants identified in this count and, as a result, the United States has incurred actual damages of $144,000, plus interest.

1064. Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the defendants identified in this count are liable to the United States under the treble damage and civil penalty provisions of the False Claims Act for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of the defendants' actions.

305

## COUNT ONE HUNDRED TWELVE
### False Claims Act, 31 U.S.C. § 3729(a)(1)(C)
### Conspiracy

**(Defendants Pankaj Sheth, Rajan Sheth, Rishi Sheth, and JBL Holding)**

1065. The United States repeats and realleges each allegation in Paragraphs 1 through and including 1064, as if fully set forth herein.

1066. By reason of the foregoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(C), the defendants identified in this count conspired to present, or caused to be presented, false claims for payment or approval to the SBA, while they were specifically aware of the falsity of the claims with regard to SBA loan requirements, for the purpose of fraudulently inducing a $144,000 SBA EIDL loan to JBL Holding.

1067. By reason of the foregoing conduct, and in further violation of 31 U.S.C. § 3729(a)(1)(C), the defendants identified in this count knowingly conspired to make, use, or cause to be made or used, false records or statements material to false or fraudulent claims.

1068. Every claim regarding the borrower's eligibility for the SBA EIDL loan to JBL Holding, or request for payment submitted by the defendants identified in this count, constituted a false claim under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, and the defendants caused such false claims to be submitted by virtue of their agreement to fraudulently induce an SBA loan to JBL Holding for which the borrower was, in truth, not eligible.

306

1069.  The SBA paid the false or fraudulent claims because of the acts of the defendants identified in this count and, as a result, the United States incurred actual damages of $144,000, plus interest.

1070.  Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq*., the defendants identified in this count are liable to the United States under the treble damage and civil penalty provisions of the False Claims Act for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of the defendants' actions.

## COUNT ONE HUNDRED THIRTEEN
### FIRREA, 12 U.S.C. § 1833a
### False Statements to the SBA

**(Defendants Pankaj Sheth, Rajan Sheth, Rishi Sheth, and JBL Holding)**

1071.  The United States repeats and realleges each allegation in Paragraphs 1 through and including 1070, as if fully set forth herein.

1072.  For reason of the foregoing conduct, the defendants identified in this count, for the purposes of fraudulently obtaining a federally guaranteed SBA EIDL loan in the amount of $144,000, unlawfully, willfully and knowingly made or caused to be made false statements or certifications to the SBA in violation of 15 U.S.C. § 645(a).

1073.  Under 12 U.S.C. § 1833a(c)(3) and 28 C.F.R. § 85.3(a)(6), the defendants identified in this count are liable for civil penalties.

307

## COUNT ONE HUNDRED FOURTEEN
### Unjust Enrichment – Illegally Earned Income

### (Defendants Pankaj Sheth, Rajan Sheth, Rishi Sheth, and JBL Holding)

1074. The United States repeats and realleges each allegation in Paragraphs 1 through and including 1073, as if fully set forth herein.

1075. By reason of the foregoing conduct, the defendants identified in this count were paid, received, and maintained control over funds to which they were not entitled through the false claims the defendants submitted, or caused to be submitted, to the SBA.

1076. The defendants identified in this count are, therefore, liable to account and pay to the United States such amounts to be determined at trial, including actual damages, interest, and costs associated with the investigation, prosecution, and collection of the debt in this matter.

## COUNT ONE HUNDRED FIFTEEN
### Payment by Mistake

### (Defendants Pankaj Sheth, Rajan Sheth, Rishi Sheth, and JBL Holding)

1077. The United States repeats and realleges each allegation in Paragraphs 1 through and including 1076, as if fully set forth herein.

1078. The false claims that the defendants identified in this count submitted, or caused to be submitted, to the SBA constituted misrepresentations of material fact, in that the defendants knowingly presented, or caused to be presented, false claims for payment or approval to the SBA while they were specifically aware of the

308

falsity of these claims, for the purpose of fraudulently inducing a $144,000 SBA loan.

1079. The SBA, acting in reasonable reliance on the accuracy and truthfulness of the information contained in the claims, paid the borrower certain sums of money to which it was not entitled.

1080. The defendants identified in this count, therefore, are liable to account for and pay to the United States such amounts to be determined at trial, including actual damages, interest, and costs associated with the investigation, prosecution, and collection of the debt in this matter.

## XXV.  The "Julius Management, LLC" EIDL Loan

### COUNT ONE HUNDRED SIXTEEN
**False Claims Act, 31 U.S.C. § 3729(a)(1)(A)**
**Presenting or Causing False Claims to Be Presented for Payment**

**(Defendants Pankaj Sheth, Rajan Sheth, Renuka Sheth, and Julius Management)**

1081. The United States repeats and realleges each allegation in Paragraphs 1 through and including 1080, as if fully set forth herein.

1082. By reason of the foregoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(A), the defendants identified in this count knowingly presented, or caused to be presented, false claims for payment or approval to the SBA while they were specifically aware of the falsity of the claims with regard to SBA loan requirements, for the purpose of fraudulently inducing a $10,000 SBA EIDL emergency advance and a $150,000 SBA EIDL loan to Julius Management.

309

1083.  Every claim regarding the borrower's eligibility for the SBA EIDL loan, or request for payment submitted by the defendants identified in this count, constituted a false claim under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, and the defendants caused such false claims to be submitted by virtue of their agreement to fraudulently induce an SBA loan to Julius Management, for which the borrower was, in truth, not eligible.

1084.  The SBA paid the false or fraudulent claims because of the acts of the defendants identified in this count and, as a result, the United States incurred actual damages of $160,000, plus interest.

1085.  Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the defendants identified in this count are liable to the United States under the treble damage and civil penalty provisions of the False Claims Act for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of the defendants' actions.

<div align="center">

**COUNT ONE HUNDRED SEVENTEEN**
**False Claims Act, 31 U.S.C. § 3729(a)(1)(B)**
**Using False Records or Statements to Get False Claims Paid**

**(Defendants Pankaj Sheth, Rajan Sheth, Renuka Sheth, and Julius Management)**

</div>

1086.  The United States repeats and realleges each allegation in Paragraphs 1 through and including 1085, as if fully set forth herein.

<div align="center">310</div>

1087. By reason of the foregoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(B), the defendants identified in this count knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent claims to get false or fraudulent claims approved and paid by the United States.

1088. The SBA paid the false or fraudulent claims because of the acts of the defendants identified in this count and, as a result, the United States has incurred actual damages of $160,000, plus interest.

1089. Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the defendants identified in this count are liable to the United States under the treble damage and civil penalty provisions of the False Claims Act for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of the defendants' actions.

### COUNT ONE HUNDRED EIGHTEEN
### False Claims Act, 31 U.S.C. § 3729(a)(1)(C)
### Conspiracy

### (Defendants Pankaj Sheth, Rajan Sheth, Renuka Sheth, and Julius Management)

1090. The United States repeats and realleges each allegation in Paragraphs 1 through and including 1089, as if fully set forth herein.

311

1091.  By reason of the foregoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(C), the defendants identified in this count conspired to present, or caused to be presented, false claims for payment or approval to the SBA, while they were specifically aware of the falsity of the claims with regard to SBA loan requirements, for the purpose of fraudulently inducing a $10,000 SBA EIDL emergency advance and a $150,000 SBA EIDL loan to Julius Management.

1092.  By reason of the foregoing conduct, and in further violation of 31 U.S.C. § 3729(a)(1)(C), the defendants identified in this count knowingly conspired to make, use, or cause to be made or used, false records or statements material to false or fraudulent claims.

1093.  Every claim regarding the borrower's eligibility for the SBA EIDL loan to Julius Management, or request for payment submitted by the defendants identified in this count, constituted a false claim under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, and the defendants caused such false claims to be submitted by virtue of their agreement to fraudulently induce an SBA loan to Julius Management, for which the borrower was, in truth, not eligible.

1094.  The SBA paid the false or fraudulent claims because of the acts of the defendants identified in this count and, as a result, the United States incurred actual damages of $160,000, plus interest.

1095.  Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the defendants identified in this count are liable to the United States under the treble damage and civil penalty provisions of the False Claims Act for a civil penalty of not

312

less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of the defendants' actions.

<div align="center">

**COUNT ONE HUNDRED NINETEEN**
**FIRREA, 12 U.S.C. § 1833a**
**False Statements to the SBA**

**(Defendants Pankaj Sheth, Rajan Sheth, Renuka Sheth, and Julius Management)**

</div>

1096.  The United States repeats and realleges each allegation in Paragraphs 1 through and including 1095, as if fully set forth herein.

1097.  By reason of the foregoing conduct, the defendants identified in this count, for the purposes of fraudulently obtaining a federally guaranteed SBA loan in the amount of $160,000, unlawfully, willfully and knowingly made or caused to be made false statements or certifications to the SBA in violation of 15 U.S.C. § 645(a).

1098.  Under 12 U.S.C. § 1833a(c)(3) and 28 C.F.R. § 85.3(a)(6), the defendants identified in this count are liable for civil penalties.

<div align="center">

**COUNT ONE HUNDRED TWENTY**
**Unjust Enrichment – Illegally Earned Income**

**(Defendants Pankaj Sheth, Rajan Sheth, Renuka Sheth, and Julius Management)**

</div>

1099.  The United States repeats and realleges each allegation in Paragraphs 1 through and including 1098, as if fully set forth herein.

1100.  By reason of the foregoing conduct, the defendants identified in this count were paid, received, and maintained control over funds to which they were

<div align="center">313</div>

not entitled through the false claims the defendants submitted, or caused to be submitted, to the SBA.

1101.  The defendants identified in this count are, therefore, liable to account and pay to the United States such amounts to be determined at trial, including actual damages, interest, and costs associated with the investigation, prosecution, and collection of the debt in this matter.

<div align="center">

### COUNT ONE HUNDRED TWENTY-ONE
**Payment by Mistake**

**(Defendants Pankaj Sheth, Rajan Sheth, Renuka Sheth, and Julius Management)**

</div>

1102.  The United States repeats and realleges each allegation in Paragraphs 1 through and including 1101, as if fully set forth herein.

1103.  The false claims that the defendants identified in this count submitted, or caused to be submitted, to the SBA constituted misrepresentations of material fact, in that the defendants knowingly presented, or caused to be presented, false claims for payment or approval to the SBA while they were specifically aware of the falsity of these claims, for the purpose of fraudulently inducing a $10,000 SBA EIDL emergency advance and a $150,000 SBA loan.

1104.  The SBA, acting in reasonable reliance on the accuracy and truthfulness of the information contained in the claims, paid the borrower certain sums of money to which it was not entitled.

1105.  The defendants identified in this count, therefore, are liable to account for and pay to the United States such amounts to be determined at trial, including

<div align="center">314</div>

actual damages, interest, and costs associated with the investigation, prosecution, and collection of the debt in this matter.

## XXVI. The Camelback Resort EIDL Loan

### COUNT ONE HUNDRED TWENTY-TWO
**False Claims Act, 31 U.S.C. § 3729(a)(1)(A)**
**Presenting or Causing False Claims to Be Presented for Payment**

**(Defendants Pankaj Sheth, Rajan Sheth, Vimal Madhiwala, and Camelback Resort)**

1106.  The United States repeats and realleges each allegation in Paragraphs 1 through and including 1105, as if fully set forth herein.

1107.  By reason of the foregoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(A), the defendants identified in this count knowingly presented, or caused to be presented, false claims for payment or approval to the SBA while they were specifically aware of the falsity of the claims with regard to SBA loan requirements, for the purpose of fraudulently inducing a  $5,000 SBA EIDL emergency advance and a $150,000 SBA EIDL loan to Camelback Resort.

1108.  Every claim regarding the borrower's eligibility for the SBA EIDL loan, or request for payment submitted by the defendants identified in this count, constituted a false claim under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, and the defendants caused such false claims to be submitted by virtue of their agreement to fraudulently induce an SBA loan to Camelback Resort, for which the borrower was, in truth, not eligible.

1109.  The SBA paid the false or fraudulent claims because of the acts of the defendants identified in this count and, as a result, the United States incurred actual damages of $155,000, plus interest.

1110.  Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the defendants identified in this count are liable to the United States under the treble damage and civil penalty provisions of the False Claims Act for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of the defendants' actions.

### COUNT ONE HUNDRED TWENTY-THREE
**False Claims Act, 31 U.S.C. § 3729(a)(1)(B)**
**Using False Records or Statements to Get False Claims Paid**

**(Defendants Pankaj Sheth, Rajan Sheth, Vimal Madhiwala, and Camelback Resort)**

1111.  The United States repeats and realleges each allegation in Paragraphs 1 through and including 1110, as if fully set forth herein.

1112.  By reason of the foregoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(B), the defendants identified in this count knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent claims to get false or fraudulent claims approved and paid by the United States.

316

1113. The SBA paid the false or fraudulent claims because of the acts of the defendants identified in this count and, as a result, the United States has incurred actual damages of $155,000, plus interest.

1114. Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the defendants identified in this count are liable to the United States under the treble damage and civil penalty provisions of the False Claims Act for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of the defendants' actions.

## COUNT ONE HUNDRED TWENTY-FOUR
### False Claims Act, 31 U.S.C. § 3729(a)(1)(C)
### Conspiracy

**(Defendants Pankaj Sheth, Rajan Sheth, Vimal Madhiwala, and Camelback Resort)**

1115. The United States repeats and realleges each allegation in Paragraphs 1 through and including 1114, as if fully set forth herein.

1116. By reason of the foregoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(C), the defendants identified in this count conspired to present, or caused to be presented, false claims for payment or approval to the SBA, while they were specifically aware of the falsity of the claims with regard to SBA loan requirements, for the purpose of fraudulently inducing a $5,000 SBA EIDL emergency advance and a $150,000 SBA EIDL loan to Camelback Resort.

317

1117.  By reason of the foregoing conduct, and in further violation of 31 U.S.C. § 3729(a)(1)(C), the defendants identified in this count knowingly conspired to make, use, or cause to be made or used, false records or statements material to false or fraudulent claims.

1118.  Every claim regarding the borrower's eligibility for the SBA EIDL loan to Camelback Resort, or request for payment submitted by the defendants identified in this count, constituted a false claim under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, and the defendants caused such false claims to be submitted by virtue of their agreement to fraudulently induce an SBA loan to Camelback Resort, for which the borrower was, in truth, not eligible.

1119.  The SBA paid the false or fraudulent claims because of the acts of the defendants identified in this count and, as a result, the United States incurred actual damages of $155,000, plus interest.

1120.  Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the defendants identified in this count are liable to the United States under the treble damage and civil penalty provisions of the False Claims Act for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of the defendants' actions.

<div align="center">

**COUNT ONE HUNDRED TWENTY-FIVE**
**FIRREA, 12 U.S.C. § 1833a**
**False Statements to the SBA**

</div>

318

**(Defendants Pankaj Sheth, Rajan Sheth, Vimal Madhiwala, and Camelback Resort)**

1121.  The United States repeats and realleges each allegation in Paragraphs 1 through and including 1120, as if fully set forth herein.

1122.  By reason of the foregoing conduct, the defendants identified in this count, for the purposes of fraudulently obtaining a federally guaranteed SBA loan in the amount of $155,000, unlawfully, willfully and knowingly made or caused to be made false statements or certifications to the SBA in violation of 15 U.S.C. § 645(a).

1123.  Under 12 U.S.C. § 1833a(c)(3) and 28 C.F.R. § 85.3(a)(6), the defendants identified in this count are liable for civil penalties.

### COUNT ONE HUNDRED TWENTY-SIX
### Unjust Enrichment – Illegally Earned Income

**(Defendants Pankaj Sheth, Rajan Sheth, Vimal Madhiwala, and Camelback Resort)**

1124.  The United States repeats and realleges each allegation in Paragraphs 1 through and including 1103, as if fully set forth herein.

1125.  By reason of the foregoing conduct, the defendants identified in this count were paid, received, and maintained control over funds to which they were not entitled through the false claims the defendants submitted, or caused to be submitted, to the SBA.

1126.  The defendants identified in this count are, therefore, liable to account and pay to the United States such amounts to be determined at trial, including actual damages, interest, and costs associated with the investigation, prosecution, and collection of the debt in this matter.

319

## COUNT ONE HUNDRED TWENTY-SEVEN
### Payment by Mistake

### (Defendants Pankaj Sheth, Rajan Sheth, Vimal Madhiwala, and Camelback Resort)

1127.  The United States repeats and realleges each allegation in Paragraphs 1 through and including 1126, as if fully set forth herein.

1128.  The false claims that the defendants identified in this count submitted, or caused to be submitted, to the SBA constituted misrepresentations of material fact, in that the defendants knowingly presented, or caused to be presented, false claims for payment or approval to the SBA while they were specifically aware of the falsity of these claims, for the purpose of fraudulently inducing a $5,000 SBA EIDL emergency advance and a $150,000 SBA loan.

1129.  The SBA, acting in reasonable reliance on the accuracy and truthfulness of the information contained in the claims, paid the borrower certain sums of money to which it was not entitled.

1130.  The defendants identified in this count, therefore, are liable to account for and pay to the United States such amounts to be determined at trial, including actual damages, interest, and costs associated with the investigation, prosecution, and collection of the debt in this matter.

XXVII.    The Relax Inn EIDL Loan

## COUNT ONE HUNDRED TWENTY-EIGHT
### False Claims Act, 31 U.S.C. § 3729(a)(1)(A)
### Presenting or Causing False Claims to Be Presented for Payment

### (Defendants Pankaj Sheth, Renuka Sheth, and Relax Inn)

320

1131.  The United States repeats and realleges each allegation in Paragraphs 1 through and including 1130, as if fully set forth herein.

1132.  By reason of the foregoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(A), the defendants identified in this count knowingly presented, or caused to be presented, false claims for payment or approval to the SBA while they were specifically aware of the falsity of the claims with regard to SBA loan requirements, for the purpose of fraudulently inducing a $5,000 SBA EIDL emergency advance and a $112,500 SBA EIDL loan to Relax Inn.

1133.  Every claim regarding the borrower's eligibility for the SBA EIDL loan, or request for payment submitted by the defendants identified in this count, constituted a false claim under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, and the defendants caused such false claims to be submitted by virtue of their agreement to fraudulently induce an SBA loan to Relax Inn, for which the borrower was, in truth, not eligible.

1134.  The SBA paid the false or fraudulent claims because of the acts of the defendants identified in this count and, as a result, the United States incurred actual damages of $117,500, plus interest.

1135.  Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the defendants identified in this count are liable to the United States under the treble damage and civil penalty provisions of the False Claims Act for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent

321

claims herein, plus three (3) times the amount of damages which the United States has sustained because of the defendants' actions.

### COUNT ONE HUNDRED TWENTY-NINE
**False Claims Act, 31 U.S.C. § 3729(a)(1)(B)**
**Using False Records or Statements to Get False Claims Paid**

**(Defendants Pankaj Sheth, Renuka Sheth, and Relax Inn)**

1136. The United States repeats and realleges each allegation in Paragraphs 1 through and including 1135, as if fully set forth herein.

1137. By reason of the foregoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(B), the defendants identified in this count knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent claims to get false or fraudulent claims approved and paid by the United States.

1138. The SBA paid the false or fraudulent claims because of the acts of the defendants identified in this count and, as a result, the United States has incurred actual damages of $117,500, plus interest.

1139. Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the defendants identified in this count are liable to the United States under the treble damage and civil penalty provisions of the False Claims Act for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of the defendants' actions.

322

## COUNT ONE HUNDRED THIRTY
### False Claims Act, 31 U.S.C. § 3729(a)(1)(C)
### Conspiracy

### (Defendants Pankaj Sheth, Renuka Sheth, and Relax Inn)

1140. The United States repeats and realleges each allegation in Paragraphs 1 through and including 1139, as if fully set forth herein.

1141. By reason of the foregoing conduct, and in violation of 31 U.S.C. § 3729(a)(1)(C), the defendants identified in this count conspired to present, or caused to be presented, false claims for payment or approval to the SBA, while they were specifically aware of the falsity of the claims with regard to SBA loan requirements, for the purpose of fraudulently inducing a $5,000 SBA EIDL emergency advance and a $112,500 SBA EIDL loan to Relax Inn.

1142. By reason of the foregoing conduct, and in further violation of 31 U.S.C. § 3729(a)(1)(C), the defendants identified in this count knowingly conspired to make, use, or cause to be made or used, false records or statements material to false or fraudulent claims.

1143. Every claim regarding the borrower's eligibility for the SBA EIDL loan to Relax Inn or request for payment submitted by the defendants identified in this count, constituted a false claim under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, and the defendants caused such false claims to be submitted by virtue of their agreement to fraudulently induce an SBA loan to Relax Inn, for which the borrower was, in truth, not eligible.

323

1144.  The SBA paid the false or fraudulent claims because of the acts of the defendants identified in this count and, as a result, the United States incurred actual damages of $117,500, plus interest.

1145.  Pursuant to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, the defendants identified in this count are liable to the United States under the treble damage and civil penalty provisions of the False Claims Act for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of the defendants' actions.

<div align="center">

**COUNT ONE HUNDRED THIRTY-ONE**
**FIRREA, 12 U.S.C. § 1833a**
**False Statements to the SBA**

**(Defendants Pankaj Sheth, Renuka Sheth, and Relax Inn)**

</div>

1146.  The United States repeats and realleges each allegation in Paragraphs 1 through and including 1145, as if fully set forth herein.

1147.  By reason of the foregoing conduct, the defendants identified in this count, for the purposes of fraudulently obtaining a federally guaranteed SBA loan in the amount of $117,500, unlawfully, willfully and knowingly made or caused to be made false statements or certifications to the SBA in violation of 15 U.S.C. § 645(a).

1148.  Under 12 U.S.C. § 1833a(c)(3) and 28 C.F.R. § 85.3(a)(6), the defendants identified in this count are liable for civil penalties.

## COUNT ONE HUNDRED THIRTY-TWO
### Unjust Enrichment – Illegally Earned Income

### (Defendants Pankaj Sheth, Renuka Sheth, and Relax Inn)

1149.  The United States repeats and realleges each allegation in Paragraphs 1 through and including 1148, as if fully set forth herein.

1150.  By reason of the foregoing conduct, the defendants identified in this count were paid, received, and maintained control over funds to which they were not entitled through the false claims the defendants submitted, or caused to be submitted, to the SBA.

1151.  The defendants identified in this count are, therefore, liable to account and pay to the United States such amounts to be determined at trial, including actual damages, interest, and costs associated with the investigation, prosecution, and collection of the debt in this matter.

## COUNT ONE HUNDRED THIRTY-THREE
### Payment by Mistake

### (Defendants Pankaj Sheth, Renuka Sheth, and Relax Inn)

1152.  The United States repeats and realleges each allegation in Paragraphs 1 through and including 1151, as if fully set forth herein.

1153.  The false claims that the defendants identified in this count submitted, or caused to be submitted, to the SBA constituted misrepresentations of material fact, in that the defendants knowingly presented, or caused to be presented, false claims for payment or approval to the SBA while they were specifically aware of the

falsity of these claims, for the purpose of fraudulently inducing a $5,000 SBA EIDL emergency advance and a $112,500 SBA loan.

1154. The SBA, acting in reasonable reliance on the accuracy and truthfulness of the information contained in the claims, paid the borrower certain sums of money to which it was not entitled.

1155. The defendants identified in this count, therefore, are liable to account for and pay to the United States such amounts to be determined at trial, including actual damages, interest, and costs associated with the investigation, prosecution, and collection of the debt in this matter.

## **PRAYER FOR RELIEF**

WHEREFORE, the United States demands and prays that judgment be entered in its favor as follows:

A.     With respect to counts under the False Claims Act, that the Court order the defendants identified in each count to pay the United States treble the amount of damages, plus civil penalties for each false claim of not less than $5,500 and not more than 11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, and for such other and further relief as the Court deems just and proper;

B.     With respect to counts under FIRREA, that the Court order the defendants identified in each count to pay civil penalties pursuant to 12 U.S.C. § 1833a in the maximum amount allowed, and for such other and further relief as the Court deems just and proper;

326

C.     With respect to counts for unjust enrichment, that the Court order the defendants identified in each count to return all funds paid by the United States by which the defendants were unjustly enriched to the detriment of the United States, along with prejudgment interest, fees, and costs;

D.     With respect to counts for payment by mistake, that the Court order the defendants identified in each count to return all funds paid by the United States to the defendants by mistake of fact to the United States, along with prejudgment interest, fees, and costs; and

E.     The Court award such other and further relief as the Court deems just, equitable, and proper.

<div style="margin-left:50%">

Respectfully submitted,

DAVID METCALF
United States Attorney

/s/ *Gregory B. David*
GREGORY B. DAVID
Assistant United States Attorney
Chief, Civil Division

/s/ *Bryan C. Hughes*
BRYAN C. HUGHES
ISAAC J. JEAN-PIERRE
FERNANDO I. RIVERA
Assistant United States Attorneys
615 Chestnut St., Ste. 1250
Philadelphia, PA 19106
(215) 861-8433/8372/8432
Bryan.Hughes@usdoj.gov
Isaac.Jean-Pierre@usdoj.gov
Fernando.Rivera@usdoj.gov

*Counsel for the United States*

</div>

Dated: August 14, 2026